# Exhibit A

(Declaration of Colette G. Matzzie)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| United States of America ex rel. Charles R. Shepherd, Danny V. Rude, Robert Scott Dillard, and Rickey Mackey,<br><br>Plaintiffs,<br><br>v.<br><br>Fluor Corporation, Inc. and Fluor Intercontinental, Inc.,<br><br>Defendants. | Civil Action No: 6:13-cv-02428-TMC<br><br>**DECLARATION OF COLETTE G. MATZZIE** |

I, Colette G. Matzzie, hereby declare and state as follows:

1.      I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      I am a partner at Phillips & Cohen LLP ("P&C").  I have been an attorney with Phillips & Cohen since 2004.  Previous to that I worked as an attorney with the Civil Appellate Staff at the United States Department of Justice from 1999 to 2004 and with Public Citizen Litigation Group from 1995 to 1999.  I am a 1994 graduate of Georgetown University Law Center and I served as a law clerk for the Honorable Dolores K. Sloviter of the United States Court of Appeals for the Third Circuit from 1994 to 1995.

3.      I am providing this Declaration to respond to the assertions made by Fluor in its Motion for Limited Expedited Discovery about documents that P&C produced to the United States on behalf of our client, Jeffrey Nix, and over which Fluor Corporation ("Fluor") has asserted a claim of attorney client privilege and work product protection.

4.      Mr. Nix is not a plaintiff in the above-captioned case.  He was the *qui tam* plaintiff in *United States ex rel. Jeffrey Nix v. Fluor Corporation, Inc., et al*, No. 6:13-cv-

01528-TMC (D.S.C.), and my firm represented him in that action.  On February 6, 2019, Mr. Nix voluntarily dismissed his *qui tam* allegations with the consent of the United States.  On February 26, 2019, this Court entered as order staying litigation of Mr. Nix's pending employment retaliation claims.  Mr. Nix is represented by W. Andrew Arnold of the Horton Law Firm, P.A. and William A. Coates and Joseph O. Smith of Roe Cassidy Coates & Price, P.A. in his pending employment claims.

5.      There are substantial factual disputes over Fluor's assertion of privilege over certain documents produced by Mr. Nix to the United States, including a dispute over Fluor's assertion that those documents were created for the purpose of a legal investigation, rather than in the ordinary course of Mr. Nix and his colleagues' regular business activities as members of Fluor's compliance department.  There also is a significant dispute over Fluor's characterization of Mr. Nix as having "misappropriated" and "stolen" documents.  Fluor's Motion at 2, 5.  It is my understanding that Mr. Nix was rightfully in possession of the documents he provided to the United States as part of its False Claims Act investigation and that the documents are not privileged.  If discovery proceeds in this case and Mr. Nix's deposition is noticed, he can provide testimony on these topics.

6.      This Declaration is not intended to address the factual disputes about which Fluor has sought discovery or Fluor's misstatements of fact concerning the nature and provenance of the documents over which it asserts privilege.  I am submitting this Declaration to provide the Court with a chronology of events to demonstrate the efforts that counsel for Mr. Nix undertook in good faith immediately upon learning of Fluor's privilege assertions, both to protect the documents at issue from review or use until resolution of Fluor's privilege claims and to attempt to resolve those privilege issues—including through judicial intervention— despite Fluor's delay and surprising refusal to cooperate in any such resolution.  Nix's counsel

acted in good faith at all times and did not use any documents or information that we knew to be subject to any claim of attorney client privilege or work product protection.

**P&C's Attempts to Obtain Resolution of Fluor's Privilege Claims and Fluor's Responses**

7.     On March 7, 2013, Mr. Nix contacted Phillips & Cohen to request representation in a *qui tam* action against Fluor.  At the time, Mr. Nix was employed by Fluor as a Compliance Officer located at Bagram Air Field in Afghanistan.

8.     On June 5, 2013, P&C filed Mr. Nix's *qui tam* action against Fluor under seal. On that same day, P&C served the sealed Complaint and a disclosure of relevant documents on the Attorney General of the United States and the United States Attorney for the District of South Carolina.  Fluor does not assert a claim of privilege over any of the documents in the initial June 5, 2013 disclosure of documents or over any information set forth in the June 5, 2013 complaint.

9.     Between September 2013 and March 2014, P&C produced additional documents to the United States on Mr. Nix's behalf.  My understanding is that these documents were in Mr. Nix's possession because of his involvement in the ordinary business activities of Fluor's Compliance Department in evaluating inventory losses of materials in Afghanistan.

10.     In May 2014, Fluor terminated Mr. Nix, purportedly as part of a reduction in force.  Mr. Nix returned to Greenville, South Carolina.  It is my understanding that Fluor never contacted Mr. Nix to request return of any documents and, apart from communications commencing in May 2017 with Mr. Nix's counsel and the United States (as described more fully below), has never notified him that he might have possession of documents over which Fluor claims attorney-client privilege or work product protection.

11.     On July 1, 2016, at the request of the Government, I accompanied counsel for the United States—Assistant United States Attorneys Fran Trapp and Beth Warren and Department

of Justice Trial Attorney Art Coulter—to a conference in chambers with the Honorable Bruce

Hendricks in Charleston, South Carolina.  The purpose of the conference, requested by the

Government, was to seek judicial direction over an assertion made by Fluor that certain

witnesses, including Mr. Nix, might have possession of unspecified documents over which

Fluor might assert a claim of privilege.  At the time of that conference, to my knowledge, Fluor

had not identified any specific documents that it believed were subject to a claim of privilege.  I

informed Judge Hendricks that I was not aware of any document provided to P&C or that P&C

provided to the United States on Nix's behalf that appeared to be subject to a claim of privilege.

Judge Hendricks told us that there was nothing ripe for resolution without a dispute over a

particular document, but that the Court would be available to resolve any disputes and that we

could return to her if any privilege claims became ripe for resolution.  After that short

discussion, I was excused from Chambers so that attorneys for the Government could finish

their discussion with Judge Hendricks without me.  My understanding is that attorneys for the

Government also requested that Fluor provide the Government with a privilege log for

documents responsive to the Government's outstanding subpoenas.

      12.     On April 25, 2017, the Government hosted a meeting with all Relators' counsel

and counsel for Fluor at the United States Department of Justice.  After the conclusion of that

meeting, the Government informed us that Fluor's counsel had told the Government after the

meeting that Fluor intended to assert a claim of privilege over several pages of a September

2013 Fluor PowerPoint discussed in that meeting, which P&C had earlier produced to the

Government on behalf of Mr. Nix.  I also learned that the Government had requested that Fluor

state the basis for its privilege claim.  Although P&C attorneys attended the April 25 meeting

with Fluor's counsel for multiple hours, counsel for Fluor did not address us directly about the

purportedly privileged document that was discussed in that meeting or about Fluor's privilege

claim. Fluor did not ask us at that meeting to segregate, return, or destroy the purportedly

privileged document or make any request to us to review documents produced by Mr. Nix to the

United States.

13.    Nonetheless, in light of Fluor's assertion of privilege over one document, and in

order to determine as quickly as possible whether Fluor might raise similar assertions as to other

documents, on May 5, 2017, without being asked to do so by Fluor or its counsel, I sent counsel

for Fluor a full set of the documents that P&C had produced to the Government on behalf of

Mr. Nix. The only documents that P&C produced to the Government that were not included in

this set were ten documents that we later discovered were inadvertently omitted (as set forth

below) and as to which Fluor has never asserted any claim of privilege or work product. I

requested that Fluor confirm that none of the documents attached to my May 5 letter were

privileged or, in the alternative, that Fluor identify any documents for which Fluor may assert a

privilege or work product claim and state the basis for any such claim. I copied counsel for the

Government on the May 5 letter. On the same day, I also sent a copy of the May 5 letter to

counsel for Relators in all of the actions consolidated with Mr. Nix's case (hereafter

"Relators"). A copy of the May 5 letter and cover email are attached as Exhibit A.

14.    On May 8, 2017, Fluor's counsel, Craig Margolis, sent me an email confirming

receipt of my May 5 letter and the accompanying documents. Mr. Margolis's letter stated that

Fluor would be "writing separately to respond to your letter more fully hopefully by the end of

next week." A copy of the May 8 email is attached as Exhibit B.

15.    Despite Mr. Margolis's promise to respond "more fully hopefully by the end of

next week," counsel for Fluor did not send P&C a response to my May 5 letter. However, I

understand that, on June 7, 2017, the Government received a letter from Fluor asserting a claim

of attorney client privilege over the September 2013 PowerPoint and an additional July 2013

PowerPoint, and making additional arguments. *See* Exhibit C (enclosing Exhibit N to Fluor's

Motion for Limited Discovery (Letter from Craig Margolis to Art Coulter, Stanley Ragsdale,

and Beth Warren, June 7, 2017)). Despite its earlier promise to respond to my May 5, 2017

letter, Fluor did not send P&C a copy of its June 7 letter to the Government, did not notify P&C

directly of its privilege claim over the additional document, and did not, at that time, ask P&C

to segregate, destroy, or return the two documents over which it claimed privilege.

        16.      Although Fluor did not ask us to do so, on June 13, 2017, I sent a letter to Fluor's

counsel transmitting electronic copies of the September 2013 and July 2013 PowerPoint

documents and stating that our firm had destroyed all copies of the two documents. My June 13

letter requested that Fluor preserve the electronic copies of those documents, with metadata

intact, for later judicial review. My June 13 letter also requested that Fluor notify us directly of

any claims of privilege. I also sent a copy of the June 13 letter to counsel for the Government

the same day and a copy to counsel for the Relators the next day, June 14. A copy of the June

13 letter is attached as Exhibit D.

        17.      Fluor's counsel did not immediately respond to my June 13, 2017 letter and did

not, at that time, provide any indication that Fluor intended to claim privilege over any

additional documents. Accordingly, on July 20, 2017, I sent an email to Fluor's counsel

reiterating my June 13 request that Fluor identify any other documents over which it intended to

assert a claim of attorney client privilege or work product, and that Fluor copy us on any

correspondence with the Government asserting a claim of privilege or work product or stating

the basis for any such claims. I copied counsel for the Government on the July 20 email. A

copy of the July 20 email is attached as Exhibit E.

        18.      On July 25, 2017—nearly three months after P&C provided Fluor with the

documents we had produced to the United States on behalf of Mr. Nix—I received a letter from

Fluor asserting a claim of privilege or work product over 29 documents, including the two documents it had previously identified to the Government. The July 25 letter requested that the documents be immediately destroyed. A copy of the July 25 letter and cover email are attached as Exhibit F.

19.    Fluor included with the July 25 letter a document captioned "Fluor Privilege Log – Documents Produced to Government by Mr. Nix." A copy of Fluor's July 25, 2017 Privilege Log is attached as Exhibit G.

20.    On July 28, 2017, I wrote to Fluor's counsel to confirm that P&C destroyed copies of the additional 27 documents identified on Fluor's July 25 privilege log. I confirmed, as I had stated in previous correspondence to Fluor's counsel, that P&C had previously destroyed the two documents over which Fluor had asserted a privilege to the Government in June. I requested that Fluor confirm that it would preserve electronic copies of all 29 documents, with metadata intact. The next day I sent a copy of the July 28 letter to counsel for the Government and counsel for Relators. A copy of the July 28 letter is attached as Exhibit H.

21.    On August 1, 2017, I wrote to Fluor's counsel to notify Fluor that we had discovered ten additional documents that P&C produced to the Government on behalf of Mr. Nix, and that had inadvertently been omitted from my May 5 letter to Fluor's counsel. I provided Fluor with copies of the ten documents and requested that Fluor confirm that the ten documents are not privileged or identify any of these documents for which they may assert a privilege. I also emailed the August 1 letter to Fluor's counsel and counsel for the Government on August 2. Also on August 2, I sent copies of the August 1 letter and the August 2 email to counsel for Relators. A copy of the August 1 letter and the August 2 email are attached as Exhibit I.

22.    Fluor did not respond to my August 1, 2017 letter. To my knowledge, Fluor has

never asserted that any of the ten documents identified in and attached to my August 1, 2017 letter are subject to any privilege or work product protection.

23.     On August 25, 2017, I sent Fluor a letter stating that Fluor had not yet confirmed that it had maintained and would continue to maintain the documents we had returned to it in electronic form with all metadata, as I had requested in my July 28, 2017 letter. My August 25 letter requested a revised privilege log. I also proposed, in an attempt to obtain certainty about which documents were subject to legitimate claims of privilege and which were not (and that therefore could be used by the parties), that the parties proceed with judicial resolution of Fluor's privilege and work product claims. I copied counsel for the Government on the August 25 letter. On August 27, I sent counsel for Relators a copy of the August 25 letter and email. A copy of the August 25 letter and cover email are attached as Exhibit J.

24.     Fluor rejected P&C's attempt to obtain a judicial resolution of its privilege claims. On August 31, 2017, Fluor sent me a letter stating that it would not participate in any substantive discussion with P&C or Mr. Nix concerning the documents at that time. Instead, Fluor's counsel wrote that "[w]e do not believe that Relators have standing to make discovery demands of Fluor at this time, nor do Relators have standing to request the 'adjudication' of any responses to such demands before a federal court." A copy of the August 31 letter is attached as Exhibit K.

25.     In summary, since learning that Fluor claimed privilege and work product protection over documents that we did not and do not believe merit that protection, P&C and Nix made every reasonable effort to obtain the swiftest and fairest resolution of Fluor's privilege claims, while at the same time protecting against the review or use of those documents until their status is settled. P&C, without awaiting a request from Fluor, sent Fluor's counsel copies of all of the documents that Mr. Nix provided to counsel (including associated electronic

metadata) so that Fluor could review them and identify any potentially privileged documents; P&C deleted and destroyed electronic and paper copies of documents over which Fluor asserted a claim of privilege or work product; and P&C twice sought or proposed judicial determination of Fluor's privilege claims at the earliest possible time. P&C and Mr. Nix did all of this even though they dispute Fluor's assertion that the documents are subject to any protection. And although P&C and Mr. Nix acted quickly to ensure protection of Fluor's purportedly privileged documents pending resolution of those claims, Fluor repeatedly delayed identification of supposedly privileged documents, did not respond to P&C's correspondence without further prompting, refused to engage in discussions with P&C concerning its privilege claims, and rejected P&C's proposal to obtain judicial review of those privilege claims in August 2017, nearly two years ago.

### Fluor's Assertion that a Document Was Altered to Remove a Privilege Legend

26.     In its Motion for Limited Discovery, Fluor asserts that there is one document that P&C produced to the United States on Mr. Nix's behalf that is identical to a document found on Fluor's servers except that the document given to the Government does not have a header or privilege markings. Motion at 12 n. 7; Declaration of Don Yenovkian 33-34. This document is a Microsoft Word document identified as Document No. 9 on Fluor's July 25, 2017 privilege log. Fluor suggests that a paralegal working for Phillips & Cohen, Benjamin Chaiken, tampered with the document to remove the privilege markings because the document's metadata shows that it was "Last Updated" by Mr. Chaiken. Motion at 12 n. 7; Declaration of Don Yenovkian 33-34. On the basis of that conjecture, lacking any foundation, Fluor asserts that "Relators (and their counsel) have engaged in misconduct regarding Fluor's privileged material over the course of years." Motion at 18.

27.     I did not alter a document received from a client to remove a privilege legend. I

would not instruct anyone else to do so, and I am confident that no one else employed by or acting on behalf of P&C did or would do so. I have confidence that P&C's support staff, including Ben Chaiken, would have alerted a lawyer if they had discovered a legend indicating attorney client privilege on a document received from a Relator. Fluor's accusations that our firm engaged in misconduct or acted in bad faith are wholly without merit and completely unwarranted.

28.    It is my understanding that saving a Microsoft Word document can cause the metadata to update automatically simply because the user saved the document to a new location or storage medium (*e.g.*, Phillips & Cohen's server, a compact disc, or a thumb drive). Mr. Chaiken is submitting a Declaration to this Court to explain that, while he has no specific recollection of saving documents for the Fluor matter, his normal practice in 2013 would have been to save documents onto the Phillips & Cohen server or, if preparing a disclosure to the United States, onto a compact disc or thumb drive.

29.    We performed a test to corroborate our understanding that saving a Microsoft Word document onto the Phillips & Cohen server or other storage medium, without further altering the document, could change the document's metadata to reflect that the document was "Last Updated" with the name of the Phillips & Cohen employee who saved the document. On June 27, 2019, my colleague Larry Zoglin created a test document and sent it to me. Attached as Exhibit L is a printout of the metadata from the June 27, 2019 document showing that Larry Zoglin created it and "Last Updated" it. I then sent the document to a current P&C paralegal, T.J. Budetti, and asked him to save it onto the Phillips & Cohen server and also separately onto a compact disc as would have been done in 2013. I asked him to save it first without changing the name of the document and then, second, by changing the name of the document. I instructed Mr. Budetti not to make any other alterations or edits to the document. Under each of

the methods Mr. Budetti used to save the document to P&C's server or another storage medium (using the "save" command; using the "save as" command; changing the name of the document; not changing the name of the document) these actions changed the document's metadata to indicate that Mr. Budetti "Last Updated" the document. Attached as Exhibit M are July 11, 2019 printouts of the metadata from each of the versions he saved. [1]

30.     I am aware that there are other methods of transferring documents to storage media (like compact discs and thumb drives) that, unlike using the "save" or "save as" prompts from within the document, do not revise the documents' "Last Updated" metadata to reflect the identity of the person transferring them. Those methods include copying and pasting the documents using a control+C command or drag-and-drop in a graphical user interface, or saving the document without opening it using a drop-down menu activated by right-clicking on the document icon. My understanding is that our staff have used all of these methods to save documents on to our servers and on to compact discs.

31.     Accordingly, the fact that Mr. Chaiken's name appears as the person who "Last Updated" Document No. 9 means only that Mr. Chaiken was the person who saved that document to P&C's server or other storage medium. It neither demonstrates nor suggests that Mr. Chaiken or anyone else made any alterations to the document, despite Fluor's accusations to the contrary. Fluor should be required to retract its baseless accusation that P&C tampered with Fluor's documents to remove a privilege legend.

---

[1] Since 2013, Phillips & Cohen has transferred our document management to an IManage platform and now, when using the save function, the user is prompted to save to IManage. My understanding is saving in this way is the same as saving to the Phillips & Cohen resident server. In all circumstances, the metadata was changed simply by saving the document to the server.

32.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 12th day of July, 2019, at Washington, DC.

Colette G. Matzzie

# Exhibit A

*Letter and Email from Matzzie to Margolis*
*(May 5, 2017)*

**Colette Matzzie**

| | |
|---|---|
| **From:** | Colette Matzzie |
| **Sent:** | Friday, May 05, 2017 2:11 PM |
| **To:** | MMoore@nexsenpruet.com; cmargolis@velaw.com; don.yenovkian@fluor.com; ty@hugheslawplc.com |
| **Cc:** | Larry Zoglin (lzoglin@pcsf.com); Bill Coates (wac@roecassidy.com); Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov); Coulter, Art (CIV) (Art.Coulter@usdoj.gov) |
| **Subject:** | Under Seal Qui Tam Case |
| **Attachments:** | May 5 2017 Letter to Fluor Counsel (Under Seal).pdf |

Dear Colleagues,

Enclosed please find a letter concerning a *qui tam* case pending under seal in the District of South Carolina.  We are delivering a hard copy of the letter and a flash drive to Craig Margolis at Vinson & Elkins this afternoon.

Have a good weekend.

Colette Matzzie

---

**Colette G. Matzzie** | **Attorney At Law** | cmatzzie@phillipsandcohen.com
**PHILLIPS & COHEN LLP**
2000 Massachusetts Avenue, NW | Washington, DC 20036
*t* (202) 833-4567 | *f* (202) 833-1815
www.phillipsandcohen.com | www.irswhistleblowerlawyers.com

---

This e-mail is intended solely for the use of the intended recipient(s) named above and may contain
information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, immediately
notify the sender, permanently delete any copies of the email, and do not use or disclose the
contents of the email.

 Please consider the environment before printing this e-mail

# PHILLIPS & COHEN LLP

### ATTORNEYS AT LAW
*www.phillipsandcohen.com*

2000 MASSACHUSETTS AVENUE NW
1ST FLOOR
WASHINGTON, DC 20036
(202) 833-4567

100 THE EMBARCADERO
SUITE 300
SAN FRANCISCO, CA 94105
(415) 836-9000

May 5, 2017

**By Electronic Mail (Cover Letter) and Hand Delivery (Flash Drive)**

Craig D. Margolis
Vinson & Elkins LLP
2200 Pennsylvania Ave., NW
Suite 500 West
Washington, DC 20037-1701

Dear Craig,

As you know, we represent Jeffrey Nix in a sealed *qui tam* matter filed in June 2013 and pending in the District of South Carolina. On April 25, 2017, at the close of the Department of Justice's presentation to your client, Fluor, Assistant United States Attorney Beth Warren and Civil Frauds Trial Attorney Art Coulter informed us that Fluor intends to assert a claim of privilege over pages of a Fluor PowerPoint document that was part of the Government's presentation.

Nothing about the Fluor PowerPoint document indicates that it could be subject to a privilege claim. It is our understanding that the Government has requested that Fluor provide the basis for any privilege claim it may assert over this document. To our knowledge, Fluor has not yet responded.

Nevertheless, because of your claim that one of the documents we received from Mr. Nix may be privileged, out of an abundance of caution, we are enclosing a full set of the Fluor documents that were provided to us by Mr. Nix to confirm that you do not intend to assert privilege over any of them. We do not believe any of the documents he provided to us are privileged. We request that you confirm our understanding, or, if you disagree, that you identify by file name, bates number, and exhibit number (if applicable), any documents among the enclosed set of documents for which you may assert a privilege and provide the basis for any such claim so that any privilege claims may be resolved by the parties, or if necessary, by the court.

Nothing in this letter, or the provision of the enclosed documents to you, is intended to waive or should be construed as a waiver of any applicable privileges or protections adhering to

May 5, 2017
Page Two

Mr. Nix or the United States Government, including but not limited to the attorney client, work product, common interest, joint prosecution, or negotiation privileges.

Please let us know if you have any question or would like to discuss.

Very truly yours,

Colette G. Matzzie

Cc:    Mark C. Moore (by email)
       Donald M. Yenovkian (by email)
       Ty Hughes (by email)
       Assistant United States Attorney Beth Warren (by email)
       Art Coulter, U.S. Department of Justice (by email)
       Bill Coates (by email)
       Larry Zoglin (by email)

# Exhibit B

*Email from Margolis to Matzzie*
*(May 8, 2017)*

## Colette Matzzie

| | |
|---|---|
| **From:** | Margolis, Craig <cmargolis@velaw.com> |
| **Sent:** | Monday, May 08, 2017 3:52 PM |
| **To:** | Colette Matzzie |
| **Cc:** | SF-Larry Zoglin; Bill Coates (wac@roecassidy.com); Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov); Coulter, Art (CIV) (Art.Coulter@usdoj.gov); MMoore@nexsenpruet.com; ty@hugheslawplc.com; don.yenovkian@fluor.com |
| **Subject:** | RE: Under Seal Qui Tam Case |

Colette

I wanted to write to confirm receipt of your letter and the accompanying documents.  We will be writing separately to respond to your letter more fully hopefully by the end of next week.

As you know, however, Mr. Nix was in a compliance role at Fluor and often worked with and under the supervision of individuals in the Law Department, including Mr. Hughes with respect to a counsel-directed investigation of materials management.  The documents and data that you supplied to us were Fluor property taken by Mr. Nix in violation of the terms of his employment.  Fluor reserves all remedies with respect to the theft and use of the documents and data both with respect to his counsel's review and use of privileged material and any other remedy at law relating to the theft and/or conversion of his employer's property.   Fluor does not concede that your providing us with copies of the documents – long after the documents were reviewed and used by you and the government – is an adequate remedy for the breach of privilege and theft of documents.

In the meantime, we are reviewing the documents and will respond shortly.

Regards,

Craig



**Craig D. Margolis**
Partner

**Vinson&Elkins**

E   cmargolis@velaw.com      Vinson & Elkins LLP
W   +1.202.639.6540           2200 Pennsylvania Avenue NW
                              Suite 500 West
                              Washington, DC 20037-1701

bio | vcard | velaw.com

**From:** Colette Matzzie [mailto:cmatzzie@phillipsandcohen.com]
**Sent:** Friday, May 05, 2017 2:11 PM
**To:** MMoore@nexsenpruet.com; Margolis, Craig; don.yenovkian@fluor.com; ty@hugheslawplc.com
**Cc:** SF-Larry Zoglin; Bill Coates (wac@roecassidy.com); Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov); Coulter, Art (CIV) (Art.Coulter@usdoj.gov)
**Subject:** Under Seal Qui Tam Case

Dear Colleagues,

Enclosed please find a letter concerning a *qui tam* case pending under seal in the District of South Carolina.  We are delivering a hard copy of the letter and a flash drive to Craig Margolis at Vinson & Elkins this afternoon.

Have a good weekend.

Colette Matzzie

**Colette G. Matzzie | Attorney At Law |** cmatzzie@phillipsandcohen.com
**PHILLIPS & COHEN LLP**
2000 Massachusetts Avenue, NW | Washington, DC 20036
*t* (202) 833-4567 | *f* (202) 833-1815
*www.phillipsandcohen.com | www.irswhistleblowerlawyers.com*

This e-mail is intended solely for the use of the intended recipient(s) named above and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, immediately notify the sender, permanently delete any copies of the email, and do not use or disclose the contents of the email.

 Please consider the environment before printing this e-mail

**CONFIDENTIALITY NOTICE:** The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

Thank You.

# Exhibit C

*Letter from Margolis to Coulter,*
*Ragsdale and Warren*
*(June 7, 2017)*

# Exhibit N

*Letter from Craig Margolis to Art Coulter, Stanley Ragsdale, and Beth Warren (June 7, 2017)*

# Vinson&Elkins

Craig D. Margolis  cmargolis@velaw.com
Tel +1.202.639.6540  Fax +1.202.879.8840

June 7, 2017

**By Email and Federal Express**

Art J. Coulter
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch, Civil Frauds Section
Washington, DC 20044

Stanley D. Ragsdale
Elizabeth C. Warren
Assistant United States Attorneys
United States Attorney's Office for the
District of South Carolina
1441 Main Street Suite 500
Columbia, SC 29201

Re:    LOGCAP IV Property Management Investigation

Dear Mr. Coulter, Mr. Ragsdale, and Ms. Warren:

As counsel to Fluor, I am writing to respond to your letters of April 28 and May 9, 2017, as well as to raise our concerns generally as to the manner in which this investigation has been conducted. We note below what we consider to be a pattern of troubling conduct, relating not only to the government's and relators' use of privileged documents, but also to repeated contacts by government lawyers or investigators working on their behalf with current employees, providing documents to relators without Fluor consent, interference with Fluor's retention of an expert witness, and failure to retain government documents. We discuss each of these issues below in greater detail. Because these issues implicate the integrity of the government's investigation as well as several applicable rules of professional responsibility, we request a prompt and detailed reply so that Fluor can assess whether it is necessary to seek relief from the Court or to bring the conduct to the attention of appropriate authorities for further review.

**Vinson & Elkins LLP  Attorneys at Law**
Austin  Beijing  Dallas  Dubai  Hong Kong  Houston  London  Moscow  New York
Palo Alto  Richmond  Riyadh  San Francisco  Taipei  Tokyo  Washington

2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037-1701
Tel +1.202.639.6500  Fax +1.202.639.6604  www.velaw.com

V&E

## I.    Privilege Issues

As we informed you in our letters of May 20 and August 23, 2016, as well as multiple telephone conversations, Fluor has been concerned for some time that the government has obtained confidential documents and information relating to a privileged internal investigation without its knowledge or consent.  Those fears were confirmed as well founded during the April 25 meeting when both government and relators' counsel featured in their respective presentations a privileged document apparently misappropriated by relator Jeffrey Nix that was created during the course of that investigation.    We identified that document for you specifically and immediately at the close of the presentation, when you confirmed that the document in question had in fact been provided by Nix through his counsel at Phillips and Cohen.

Since that time, Fluor has uncovered additional privileged documents either that were shown during the April 25 meeting as part of the CaseMap presentation (during which we were able to take limited notes) as well as from copies of documents provided by counsel for Mr. Nix, as explained below.[1]  Following the meeting, on May 5, 2017, Phillips and Cohen provided us with 142 additional Fluor documents (not including family members) that were stolen by Mr. Nix in violation of Fluor policy and his obligations to keep confidential at a minimum Fluor's internal investigations in which he participated.  Fluor's review of these documents is ongoing, and Fluor will provide a log identifying all privileged documents at the conclusion of this review.  Without waiving privilege over the contents of the documents, we set out below in greater detail the basis on which we claim privilege over documents discovered thus far.

As you know, the government has for some time been contacting current and former employees of Fluor in connection with its investigation.  On May 20, 2016, Fluor wrote to government counsel noting that it had become aware of these contacts and specifically informed the government that Fluor had conducted a privileged internal investigation under the supervision of Ty Hughes beginning in or about May 23, 2013.  Att. 1, Letter from Don

---

[1]      We acknowledge that the government has now provided Fluor with the documents cited in that CaseMap presentation, which documents Fluor is also reviewing for privilege.

V&E                                                                                                    June 7, 2017   Page 3

Yenovkian to Art Coulter and Beth Warren (May 20, 2016).[2]  It did so out of its substantial concern that persons being interviewed without Fluor's knowledge, participation, or consent might divulge without authorization privileged communications or work product relating to that investigation.  At that time, Fluor warned the government that Mr. Nix was one of several individuals who participated in the investigation and further asked the government to allow Fluor to produce documents rather than to obtain them from third parties, and to allow Fluor to participate in interviews.  The letter specifically stated "[s]hould you decline to allow us to do so, please note that Fluor does intend vigorously to safeguard its privilege and reserves all of its rights in the event that government counsel or investigators review Fluor's privileged documents from third-parties or other sources or interview former Fluor employees relating to its privileged review of property management practices."  The government did not inform Fluor that it had already obtained documents from Mr. Nix and was using such documents in its investigation (including, presumably, interviews).  It declined to accept Fluor's offer to assist the government in safeguarding Fluor's privilege.

Once again, in August 2016, Fluor informed the government of its concern that the government may have obtained privileged documents from third parties.  Fluor informed the government that through forensic analysis it learned that it was likely that Mr. Nix may have copied and misappropriated documents in a "compliance share drive folder" he created just prior to his separation from the company.  We asked at that time, out of concerns that Mr. Nix may have copied, stolen, and shared privileged documents, that the government return to Fluor a copy of all documents obtained from third parties so that it could review such documents for privilege.  Att. 2, Letter from Don Yenovkian to Art Coulter and Beth Warren (Aug. 23, 2016).  The government declined, instead asking Fluor to provide a privilege log.  Fluor has informed the government on multiple occasions that it would be impractical for it to log all documents created in the course of an internal investigation (indeed, at least with respect to undersigned counsel, such a request would be unprecedented) and it is impossible for Fluor to "log" documents that are in the government's possession obtained from third parties.  Again, the government did not at that time inform Fluor that Mr. Nix was a relator and that he through counsel had already provided the government with volumes of misappropriated documents.

---

[2]      Certain investigative documents pre-dating Mr. Hughes' assumption of the investigation may also qualify as privileged due to intermittent involvement by Fluor attorneys during that time period.  If any such documents are identified, the basis for the privilege will of course be noted on the privilege log.

V&E                                                                                    June 7, 2017   Page 4

It was only shortly before the April 25 meeting that the government informed Fluor that Mr. Nix was a relator, and only at the meeting itself did Fluor learn that Mr. Nix had in fact stolen privileged documents and provided them to the government. Fluor's review has already identified several privileged documents from the set provided by Mr. Nix, many of which appear to have originated from the compliance share drive identified specifically to you in our August 23 letter. These documents include the PowerPoint presentation we identified to you on April 25 after seeing excerpts from it in your and several relators' presentations (appearing at slide numbers 65-72 and 143 of the April 25 presentation): a PowerPoint presentation authored by Mr. Nix and others summarizing information aggregated and analyzed at the request of company counsel as part of an ongoing internal investigation. Fluor has in its files a version of this document forwarded among members of the investigation team, including Mr. Nix, bearing a cover email clearly marked privileged dated September 20, 2013 after the internal investigation had begun. Another privileged document stolen by Mr. Nix is a July 2013 PowerPoint presentation that was made to senior management and in house counsel to summarize the status of that same privileged internal investigation. That document was identified and quoted from directly on slide number 139 of the April 25 presentation. Our initial review also has identified at least one document provided by Mr. Nix to his counsel from which it appears a privilege marking was in fact *removed*. This document has raised further concerns that the government's attempts – if any – to screen for privilege without input from Fluor were ineffective, and increases the likelihood that additional privileged documents have been reviewed and distributed among the government and relators.

As we notified you in August, the compliance share drive contains, among other things, information and documents relating to the internal investigation supervised and directed by then in-house counsel Ty Hughes and accordingly all communications and work product generated as a result of that investigation are privileged. This includes documents created by non-attorneys such as Mr. Nix. *See generally Upjohn Co. v. United States*, 449 U.S. 383 (1981); *see also In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014) ("[C]ommunications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege."). As we have previously noted to you, that investigation came under the direction of counsel at least as of May 23, 2013. Without waiving privilege over the contents of any privileged communications or revealing additional privileged information, we represent to you that all work performed by Mr. Nix and several others with respect to this internal investigation after that date, including the PowerPoint in question, was directed by and performed at the request

V&E

of counsel. Should this matter ever come before the Court, Fluor is prepared to make an *in camera* submission that will establish these facts beyond doubt.

While we understand the inherent difficulties the government faced in identifying privileged documents in isolation that may not bear privilege markings, as set out above, the government has been on actual notice for some time of the likelihood that Mr. Nix provided privileged documents. Had the government accepted Fluor's requests to allow it to screen documents obtained from third parties for privilege, the government could have prevented privileged materials from tainting its investigation. Nevertheless, with actual knowledge of a substantial likelihood that third parties had provided privileged documents to it, the government proceeded at its own risk. While belatedly, counsel for Mr. Nix has now provided copies of documents that were stolen from Fluor, this token comes long after the government has reviewed and used these documents in its investigation. Fluor remains concerned that the government may have obtained documents from other sources that may too reflect privileged communications.

The government's repeated refusals to heed Fluor's cautions or to work cooperatively to avoid infringing on Fluor's privilege predictably has now resulted in the distribution and review of privileged information by the government and relators. The government's behavior here defies both common sense and ethical rules that require the recipient of privileged communications to take reasonable remedial action when it becomes aware of that receipt. *See Gomez v.* Vernon, 255 F.3d 1118, 1134 (9th Cir. 2001). The government's conduct here may warrant disqualification of any attorney or investigator who, in spite of Fluor's repeated warnings that the government possessed documents that are likely privileged, nevertheless reviewed or used them. *See, e.g., U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. 08-1885, 2013 WL 2278122, at *2 (C.D. Cal. May 20, 2013) (disqualifying counsel who used privileged documents in pleadings without first taking reasonable remedial actions once they were on notice that the documents may be privileged); *see also U.S. ex rel. Frazier v. IASIS Healthcare Corp.*, No. 2:05-CV-766, 2012 WL 130332, at *15 (D. Ariz. Jan. 10, 2012) (disqualifying counsel who "played dumb" when asked to return privileged documents it had obtained from relator, rather than responding to the privilege-holder's request for the documents).

During our April 25 meeting, after we raised the issue of your use of privileged documents, you indicated that you would have to consult with the Department of Justice Professional Responsibility Advisory Office (PRAO) before responding to our concerns. We

V&E                                                                                          June 7, 2017   Page 6

are aware that PRAO provides ethics advice to DOJ attorneys, and ask whether you
consulted with PRAO after receiving our warnings in May and August, 2016, referenced
above, and before you accepted documents from Mr. Nix. We would also like to know if and
when any of the documents provided by the relator were screened by a taint or filter team
before they were provided to your investigative team.

At a minimum, Fluor requests that while it conducts its review of documents provided
by Mr. Nix's counsel, that the government refrains from further use or review of such
documents. It further requests that any documents that Fluor identifies as privileged should
be immediately destroyed by the government, relators and their counsel, and any other third
parties to whom they may have been distributed. We also request that the government
furnish to us a list identifying all persons with whom the documents stolen by Mr. Nix were
shared, the dates on which the documents were shared, and their roles in the investigation.
Once we have completed the review and assessed the government's response, Fluor will
determine what additional steps to take to safeguard its privilege.

## II.    Improper Sharing of Documents

From its very first production, Fluor has made it clear that the documents provided to
the government in connection with this investigation includes documents that may be
exempt, in whole or in part, from public release under the Freedom of Information Act or
included confidential and proprietary commercial or financial information. Fluor expressly
informed you as early as March 2015 that it does not consent to the government sharing any
of these documents, but stated also that Fluor was willing to discuss any particular needs to
share specific documents outside of the government.

Rather than object to this condition, the government chose instead unilaterally and
surreptitiously to share with relators and their counsel information produced pursuant to a
DoD Inspector General subpoena dated February 25, 2015.

While, as noted in Ms. Warren's letter of April 28, 2017, the False Claims Act was
amended in 2009 to permit sharing of documents and information obtained by Civil
Investigative Demand with relators, there is no such statutory grant of authority under the
Inspector General Act relating to IG subpoenas. To the contrary, the Inspector General Act
states, "Nothing in this section shall be construed as authorizing an Inspector General to
publicly disclose information otherwise prohibited from disclosure by law." 5 U.S.C. App. §
6(b). Much of the information that Fluor produced under the DoD-IG subpoena is protected

V&E                                                                    June 7, 2017  Page 7

by the Trade Secrets Act, 18 U.S.C. § 1905, which imposes criminal sanctions on government employees who disclose confidential or proprietary information "in any manner or to any extent not authorized by law."

As you are aware, outside of the Maximo and Matman databases, the remaining millions of pages of documents (including all of the ESI) have been produced pursuant to DoD-IG subpoena.   We are unaware of any authority for the proposition that information and documents produced under DoD-IG subpoena may be freely shared with relators, and we would request the government furnish to us any authority for this proposition.

Notwithstanding the FCA provision relating to CIDs, and the absence of any such grant of authority under the Inspector General Act, the Department of Justice itself has observed that federal laws nevertheless preclude the disclosure of certain types of information, such as that protected by the Trade Secrets Act.[3]  Even the False Claims Act does not clearly abrogate other federal laws in this way, much less the Inspector General Act.[4]  Fluor believes that information that it provided pursuant to CID and subpoena in this matter are subject to the Trade Secrets Act and that the sharing of this information without Fluor's knowledge and consent is highly problematic. Many of the relators with whom information and documents have been shared are material and property management professionals and the unauthorized release or Fluor's proprietary information carries a substantial risk of harm.

You have represented that the government obtained an *ex parte* protective order from the Court, which may authorize the sharing of information. We request that this order and the application that procured it be provided to us as well.  We question the circumstances under which the order was procured, and in particular, what representations where made to the Court as to the need for an Order.  We assume, for example, that the Court was not informed of Fluor's objections.  Certainly, in any event, Fluor did not have an opportunity to be heard. Fluor continues to object to the sharing of information produced by it and awaits your

_____

[3]      *See* Office of Legal Policy, U.S. Dep't of Justice, Rep. to Congress on the Use of Administrative Subpoena Authorities by Exec. Branch Agencies and Entities, (May 13, 2002) https://www.justice.gov/archive/olp/rpt_to_congress.htm. at Section II(A)(3)(b)(iii)(dd).

[4]      *See The False Claims Act Correction Act (S. 2041): Strengthening the Government's Most Effective Tool Against Fraud for the 21st Century*, 110th Cong. 77–78 (submission for the record from Brian A. Benczkowski, Principal Deputy Assistant Attorney General).

V&E

response before producing any further documents or information pursuant to subpoena or CID.

### III.    Improper Contact of Current Fluor Employees

As Fluor has repeatedly emphasized to the government throughout this investigation, at least as early as May 2016, it does not consent to the government conducting interviews of current Fluor employees without company counsel being present. Yet both before and after Fluor communicated this position to the government, the government has continued to contact current employees, the most recent of which we are aware was Ed Nukic in January 2017. As set out in our letter of May 20, 2016, we have offered to coordinate contacts with employees current and former; however, the government has declined. Had Mr. Nukic not informed his supervisor of the contact, it is entirely possible that he would have given an interview to government investigators in violation of Rule 4.2 of the South Carolina Rules of Professional Conduct. We request that the government inform us whether any then current employees of Fluor have been interviewed without Fluor's knowledge or consent in the context of the investigation and if so to identify any such individuals interviewed, the dates of interview, and the substance of the communications. We also would ask the government inform Fluor of persons to be interviewed so that Fluor can inform the government whether the person is a current employee or consultant (to avoid the issue for example that recently arose with respect to Shane Ramirez a Fluor consultant with whom Fluor had already begun the process of retaining prior to the government's contact with him).

### IV.    Improper Interference with Prospective Expert

While we of course hope this matter does not ultimately proceed to litigation, it is only prudent for Fluor to secure the assistance of experts (as has the government). Nevertheless, the government has interfered with Fluor's ability to retain Dr. Douglas N. Goetz, a pre-eminent expert on government property and material management practices. Fluor first contacted Dr. Goetz in December 2015 through Rita Wells, who is working with Fluor as a consultant in this matter. Ms. Wells and Dr. Goetz communicated thereafter, as did Don Yenovkian by telephone on January 21, 2016, leading to a second telephone conversation between Fluor and Dr. Goetz on May 16, 2017. Dr. Goetz informed Fluor that he had been contacted by the government, but that he had informed government counsel that he had previously been contacted by Fluor. Rather than immediately cease the conversation and contact Fluor counsel, we understand that the government instead proceeded to consider whether to retain Dr. Goetz itself.

V&E

In itself, this conduct is troubling; however, the government proceeded later actively to interfere with Fluor's ability to retain Dr. Goetz. In the May 16 conversation, Dr. Goetz specifically informed Fluor counsel that he remained available to consult with Fluor and that he had *not* entered into an agreement with the government. As Fluor was proceeding to formalize its arrangement with Dr. Goetz through a written agreement, Dr. Goetz informed Fluor counsel that he again had been contacted by the government. Dr. Goetz reported that when he informed the government of his arrangement with Fluor, the government objected and sent Dr. Goetz a "hostile" email, which caused Dr. Goetz to refrain from dealing further with Fluor.

The government's threatening email to Dr. Goetz is effectively a demand that Dr. Goetz refrain from "voluntarily giving relevant information" to Fluor, without any legal basis or justification, in apparent violation of Rule 3.4 of the South Carolina Rules of Professional Conduct.[5] Government interference with Fluor's ability to communicate with potential witnesses also may have implications under various obstruction of justice and witness tampering statutes. We request that the government provide us with a copy of the email that was sent to Dr. Goetz and its own account of its conduct in this matter. If the government were to contend that it had retained Dr. Goetz, we would ask for any evidence to that effect (particularly in light of the fact that Dr. Goetz himself obviously did *not* consider himself to be retained).

## V.    Failure to Retain Documents

Fluor is deeply concerned by the government's representation in its May 9, 2016 letter that it refuses to implement a litigation hold in order to preserve documents related to its own monitoring and supervision of Fluor's materials management during LOGCAP IV performance. The government has a duty to preserve material evidence created during the course of its investigation when litigation has been initiated – i.e., when a relator files a complaint. *See Miller v. Holzmann*, No. 95-01231, 2007 WL 172327 at *4 (D.D.C. Jan. 17, 2007), *report recommendation adopted*, 2007 WL 781941, at *3 (D.D.C. Mar. 12, 2007) ("existence of litigation" initiated upon relator filing complaint). In other words, the government should have been taking steps to preserve documents, including issuing litigation holds, as early as 2013 when the first relators' complaint was filed and this investigation

---

[5]    S.C. RULES OF PROF'L CONDUCT R. 3.4(f); *see also Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1993).

V&E                                                                June 7, 2017  Page 10

initiated. Further, the government's position that it need not preserve documents while its intervention decision is pending has already been rejected by at least one court which found spoliation under similar circumstances. *See* Opinion and Order, *United States ex rel. Baker v. Community Health Sys., Inc.*, No. 1:05-cv-00279-WJ-ACT (D. New Mex. Oct. 3, 2012) [Dkt. 544].

The Supreme Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar* makes it clear that such pre-intervention evidence demonstrating government knowledge of alleged wrongdoing may be highly relevant to materiality. 136 S.Ct. 1989, 1995 (2016). As you well know, during the alleged mismanagement of materials by Fluor, not only did the government continue to pay Fluor's claims, it did not withhold any money relating to material management issues. It also did not revoke Fluor's property management authority. Any loss of evidence relating to the government's knowledge of the allegations at issue in this investigation, or any other relevant evidence, due to the government's failure to implement litigation holds will highly prejudice Fluor and will warrant a finding of spoliation in the event of actual litigation. Accordingly, while it may be too late, Fluor again requests that the government implement a litigation hold and take every precaution to preserve all material evidence in this matter.

## VI.    Conclusion

As the government well knows, it has an obligation vigorously to pursue investigations of potential violations of federal law, and while Fluor is confident that it has not violated the False Claims Act, it has cooperated fully with this long-running investigation, producing millions of pages of documents at great expense as well as making substantive presentations. The government's obligation to investigate, however, does not license what at best is questionable conduct that interferes with Fluor's privilege and prejudices its ability to defend itself. As the Supreme Court long ago observed in the context of a criminal case, "while [the prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935). We would hope that the government would believe this principle applies equally to investigations and cases brought under the False Claims Act.

V&E

We look forward to your prompt response and are prepared to discuss this matter further.

Sincerely,

Craig D. Margolis

CC:   Don Yenovkian, Senior Counsel, Fluor

Ty Hughes, Hughes Law PLC

Mark Moore, Nexsen Pruet, LLC

# Exhibit D

*Letter from Matzzie to Margolis
(June 13, 2017)*

# PHILLIPS & COHEN LLP

ATTORNEYS AT LAW

*www.phillipsandcohen.com*

2000 MASSACHUSETTS AVENUE NW
1ST FLOOR
WASHINGTON, DC 20036
(202) 833-4567

100 THE EMBARCADERO
SUITE 300
SAN FRANCISCO, CA 94105
(415) 836-9000

June 13, 2017

**By Hand Delivery**

Craig D. Margolis
Vinson & Elkins LLP
2200 Pennsylvania Ave., NW
Suite 500 West
Washington, DC 20037-1701

**By Federal Express Overnight Delivery**

Mark Moore
Nexsen Pruet
1230 Main Street
Suite 700
Columbia, SC 29201

Dear Craig and Mark,

Last Thursday, June 8, we learned from the Government that you have informed them of Fluor's claim that two documents provided by our client, Jeffrey Nix, to the Government – a September 2013 PowerPoint and a July 2013 PowerPoint -- are subject to a claim of attorney client privilege. Further, you requested that these documents be destroyed.

We do not concede that these documents are privileged. Nonetheless, as requested, we are destroying any copies of the two documents – paper or electronic.

Meanwhile, to preserve a record for possible judicial review, we are returning to each of you a flash drive containing copies of the original electronic documents that were provided to us by Mr. Nix in 2013. Please note that because the documents were provided to us in electronic form, and we are sending you these electronic copies, these copies should contain metadata that may be needed for any later judicial review of the documents. Accordingly, it is our expectation that you will preserve the flash drives and these copies of the documents in their electronic form so that, if necessary, they may be presented to a Court with the metadata intact.

Please let us know if you would like to discuss.

Very truly yours,

Colette Matzzie

Cc:    Larry Zoglin, Bill Coates, Art Coulter, Beth Warren

# Exhibit E

*Email from Matzzie to Margolis*
*(July 20, 2017)*

## Colette Matzzie

| | |
|---|---|
| **From:** | Colette Matzzie |
| **Sent:** | Thursday, July 20, 2017 3:14 PM |
| **To:** | Margolis, Craig |
| **Cc:** | SF-Larry Zoglin; Bill Coates (wac@roecassidy.com); Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov); Coulter, Art (CIV) (Art.Coulter@usdoj.gov); MMoore@nexsenpruet.com; ty@hugheslawplc.com; don.yenovkian@fluor.com |
| **Subject:** | RE: Under Seal Qui Tam Case |
| **Attachments:** | June 13 2017 Letter to Margolis and Moore.pdf |

Dear Counsel,

On May 5, we sent by hand delivery to Mr. Margolis a full set of all documents provided by Relator Jeff Nix to the Government as part of his statutory disclosure in his *qui tam* action. In response, we received the May 8 email set forth below. Mr. Margolis suggested, among other things, that the documents may include "privileged" material and that he would write separately to "respond to our letter more fully hopefully by the end of next week."

It has now been over two months since we received the May 8 email from Mr. Margolis and you have not written to us to identify any document for which you assert a privilege. On June 8, we learned that Mr. Margolis sent a June 7 letter to the Government asserting, among other things, that two documents provided by Mr. Nix to the Government are subject to a claim of attorney-client privilege. On June 13, we sent to Mr. Margolis by hand-delivery, and to Mr. Moore by overnight delivery, flash drives with copies of the two documents identified in the June 7 Margolis letter. We requested that the documents on the flash drive be preserved in their electronic form with all metadata intact. We also informed Mr. Margolis and Mr. Moore that we had destroyed all copies of these two documents in our possession. (See attached June 13 letter).

Please promptly identify any of the other documents returned to you on May 5 for which you assert a privilege and please copy us on any correspondence if Fluor asserts to the Government a claim of privilege over any document or provides a basis for its claims. This will allow all parties an opportunity to address any claims of privilege, including by presenting the issue to the Court.

Very truly yours,

Colette Matzzie
Cc: Larry Zoglin, Bill Coates, Beth Warren, Art Coulter

_____

Colette G. Matzzie | Attorney At Law | cmatzzie@phillipsandcohen.com
**PHILLIPS & COHEN LLP**

**From:** Margolis, Craig [mailto:cmargolis@velaw.com]
**Sent:** Monday, May 08, 2017 3:52 PM
**To:** Colette Matzzie <cmatzzie@phillipsandcohen.com>
**Cc:** SF-Larry Zoglin <lzoglin@pcsf.com>; Bill Coates (wac@roecassidy.com) <wac@roecassidy.com>; Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov) <Beth.C.Warren@usdoj.gov>; Coulter, Art (CIV) (Art.Coulter@usdoj.gov)

\<Art.Coulter@usdoj.gov>; MMoore@nexsenpruet.com; ty@hugheslawplc.com; don.yenovkian@fluor.com
**Subject:** RE: Under Seal Qui Tam Case

Colette

I wanted to write to confirm receipt of your letter and the accompanying documents. We will be writing separately to respond to your letter more fully hopefully by the end of next week.

As you know, however, Mr. Nix was in a compliance role at Fluor and often worked with and under the supervision of individuals in the Law Department, including Mr. Hughes with respect to a counsel-directed investigation of materials management. The documents and data that you supplied to us were Fluor property taken by Mr. Nix in violation of the terms of his employment. Fluor reserves all remedies with respect to the theft and use of the documents and data both with respect to his counsel's review and use of privileged material and any other remedy at law relating to the theft and/or conversion of his employer's property. Fluor does not concede that your providing us with copies of the documents – long after the documents were reviewed and used by you and the government – is an adequate remedy for the breach of privilege and theft of documents.

In the meantime, we are reviewing the documents and will respond shortly.

Regards,

Craig



Craig D. Margolis
Partner

**Vinson&Elkins**

E  cmargolis@velaw.com    Vinson & Elkins LLP
W  +1.202.639.6540    2200 Pennsylvania Avenue NW
                        Suite 500 West
                        Washington, DC 20037-1701

bio    |    vcard    |    velaw.com

**From:** Colette Matzzie [mailto:cmatzzie@phillipsandcohen.com]
**Sent:** Friday, May 05, 2017 2:11 PM
**To:** MMoore@nexsenpruet.com; Margolis, Craig; don.yenovkian@fluor.com; ty@hugheslawplc.com
**Cc:** SF-Larry Zoglin; Bill Coates (wac@roecassidy.com); Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov); Coulter, Art (CIV) (Art.Coulter@usdoj.gov)
**Subject:** Under Seal Qui Tam Case

Dear Colleagues,

Enclosed please find a letter concerning a *qui tam* case pending under seal in the District of South Carolina. We are delivering a hard copy of the letter and a flash drive to Craig Margolis at Vinson & Elkins this afternoon.

Have a good weekend.

Colette Matzzie

# Exhibit F

*Letter and Email from Margolis to Matzzie*
*(July 25, 2017)*

## Colette Matzzie

| | |
|---|---|
| **From:** | Margolis, Craig <cmargolis@velaw.com> |
| **Sent:** | Tuesday, July 25, 2017 5:29 PM |
| **To:** | Colette Matzzie |
| **Cc:** | SF-Larry Zoglin; Bill Coates (wac@roecassidy.com); Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov); Coulter, Art (CIV) (Art.Coulter@usdoj.gov); MMoore@nexsenpruet.com; ty@hugheslawplc.com; don.yenovkian@fluor.com; Cooperstein, Kathleen |
| **Subject:** | RE: Under Seal Qui Tam Case |
| **Attachments:** | 2017-07-25 VE letter to Relators re LCIV Property Management Investigati....pdf; Fluor Privilege Log - Documents Produced to Government by Mr. Nix.pdf |

Counsel

Please see the attached correspondence.

Regards,

Craig

**From:** Colette Matzzie [mailto:cmatzzie@phillipsandcohen.com]
**Sent:** Thursday, July 20, 2017 3:14 PM
**To:** Margolis, Craig
**Cc:** SF-Larry Zoglin; Bill Coates (wac@roecassidy.com); Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov); Coulter, Art (CIV) (Art.Coulter@usdoj.gov); MMoore@nexsenpruet.com; ty@hugheslawplc.com; don.yenovkian@fluor.com
**Subject:** RE: Under Seal Qui Tam Case

Dear Counsel,

On May 5, we sent by hand delivery to Mr. Margolis a full set of all documents provided by Relator Jeff Nix to the Government as part of his statutory disclosure in his *qui tam* action. In response, we received the May 8 email set forth below. Mr. Margolis suggested, among other things, that the documents may include "privileged" material and that he would write separately to "respond to our letter more fully hopefully by the end of next week."

It has now been over two months since we received the May 8 email from Mr. Margolis and you have not written to us to identify any document for which you assert a privilege. On June 8, we learned that Mr. Margolis sent a June 7 letter to the Government asserting, among other things, that two documents provided by Mr. Nix to the Government are subject to a claim of attorney-client privilege. On June 13, we sent to Mr. Margolis by hand-delivery, and to Mr. Moore by overnight delivery, flash drives with copies of the two documents identified in the June 7 Margolis letter. We requested that the documents on the flash drive be preserved in their electronic form with all metadata intact. We also informed Mr. Margolis and Mr. Moore that we had destroyed all copies of these two documents in our possession. (See attached June 13 letter).

Please promptly identify any of the other documents returned to you on May 5 for which you assert a privilege and please copy us on any correspondence if Fluor asserts to the Government a claim of privilege over any document or provides a basis for its claims. This will allow all parties an opportunity to address any claims of privilege, including by presenting the issue to the Court.

1

Very truly yours,

Colette Matzzie
Cc: Larry Zoglin, Bill Coates, Beth Warren, Art Coulter

Colette G. Matzzie | Attorney At Law | cmatzzie@phillipsandcohen.com
**PHILLIPS & COHEN LLP**


**From:** Margolis, Craig [mailto:cmargolis@velaw.com]
**Sent:** Monday, May 08, 2017 3:52 PM
**To:** Colette Matzzie <cmatzzie@phillipsandcohen.com>
**Cc:** SF-Larry Zoglin <lzoglin@pcsf.com>; Bill Coates (wac@roecassidy.com) <wac@roecassidy.com>; Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov) <Beth.C.Warren@usdoj.gov>; Coulter, Art (CIV) (Art.Coulter@usdoj.gov) <Art.Coulter@usdoj.gov>; MMoore@nexsenpruet.com; ty@hugheslawplc.com; don.yenovkian@fluor.com
**Subject:** RE: Under Seal Qui Tam Case

Colette

I wanted to write to confirm receipt of your letter and the accompanying documents.  We will be writing separately to respond to your letter more fully hopefully by the end of next week.

As you know, however, Mr. Nix was in a compliance role at Fluor and often worked with and under the supervision of individuals in the Law Department, including Mr. Hughes with respect to a counsel-directed investigation of materials management.  The documents and data that you supplied to us were Fluor property taken by Mr. Nix in violation of the terms of his employment.  Fluor reserves all remedies with respect to the theft and use of the documents and data both with respect to his counsel's review and use of privileged material and any other remedy at law relating to the theft and/or conversion of his employer's property.  Fluor does not concede that your providing us with copies of the documents – long after the documents were reviewed and used by you and the government – is an adequate remedy for the breach of privilege and theft of documents.

In the meantime, we are reviewing the documents and will respond shortly.

Regards,

Craig



Craig D. Margolis
Partner

Vinson&Elkins
Established 1917

E  cmargolis@velaw.com        Vinson & Elkins LLP
W  +1.202.639.6540            2200 Pennsylvania Avenue NW
                              Suite 500 West
                              Washington, DC 20037-1701

bio      vcard      velaw.com

Vinson&Elkins

Craig D. Margolis  cmargolis@velaw.com
Tel +1.202.639.6540  Fax +1.202.879.8840

July 25, 2017

**Via Federal Express and E-mail**

Colette Matzzie
Phillips & Cohen LLP
2000 Massachusetts Avenue, NW
1st Floor
Washington, DC 20036

Re:    LOGCAP IV Property Management Investigation: Privilege Claims

Dear Ms. Matzzie:

As counsel to Fluor, I am writing in regards to privileged Fluor documents that your client Jeffrey Nix improperly provided to the government as part of this investigation.  On June 7, 2017, we notified you of two documents identified as privileged based on our preliminary review of documents provided by Mr. Nix.  Fluor has now completed its full review of the Nix documents, and has identified a total of 29 privileged documents among that set, including the two previously identified.  Those documents are listed and the basis for privilege asserted is described on the attached privilege log.

Each of the documents identified as privileged during this review were located on the Compliance share drive to which Mr. Nix had access during his tenure at Fluor.  Had Fluor been invited to conduct privilege review over documents obtained from this sensitive source prior to your reviewing them directly or providing them to the government, it might have been possible for Fluor to have identified these documents at an earlier stage.  Unfortunately, it appears now that not only you, but also the government, and likely the rest of the relators and their counsel have reviewed these privileged documents.  Accordingly, we request that you provide a list identifying all persons with whom the documents stolen by Mr. Nix were shared, the dates on which the documents were shared, and the roles of each recipient in the investigation so that Fluor may assess what additional steps are necessary to safeguard its privilege in light of these documents' circulation and review.  Fluor also requests that you identify all other documents provided for your review by third parties (even if through the government) so that Fluor may conduct privilege review over those documents.

Vinson & Elkins LLP  Attorneys at Law
Austin  Beijing  Dallas  Dubai  Hong Kong  Houston  London  Moscow  New York
Palo Alto  Richmond  Riyadh  San Francisco  Taipei  Tokyo  Washington

2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037-1701
Tel +1.202.639.6500  Fax +1.202.639.6604  www.velaw.com

V&E

In providing the attached log, Fluor does not concede that there are no other privileged documents in the Mr. Nix's possession. Nor does Fluor waive its ability to make privilege claims over any such documents identified at a later date. With respect to the documents identified in the attached privilege log, Fluor requests that these documents be immediately destroyed by Mr. Nix, his counsel, and any other parties to whom they may have been distributed. Please confirm when you have completed destroying these documents.

By identifying and raising privileged documents, we similarly do not concede or waive any rights that Fluor would have at law to the return of all documents misappropriated by your client and reserves its rights in that respect.


Regards,

Craig D. Margolis

Enclosure

CC    Art J. Coulter, United States Department of Justice
      Stanley D. Ragsdale, Assistant United States Attorney
      Elizabeth C. Warren, Assistant United States Attorney

      Don Yenovkian, Senior Counsel, Fluor
      Ty Hughes, Hughes Law PLC
      Mark Moore, Nexsen Pruet, LLC

# Exhibit G

*Fluor's Privilege Log – Documents
Produced to Government by Mr. Nix
(July 25, 2017)*

Fluor Privilege Log – Documents Produced to Government by Mr. Nix

July 25, 2017

| | Date | Document Type | From | To | Description | Privilege Asserted | Location Within Nix Disclosures | Special notes |
|---|---|---|---|---|---|---|---|---|
| 1. | 9-Jul-13 | PowerPoint | | | Presentation made to senior management and in house counsel summarizing status of Compliance investigation of materials management practices conducted at the direction and under the supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13). CD Bates No. A0785A0785\Exhibit G\Compliance Materials Brief- Sr VP 9-July-13.pptx | This document was located on the Compliance Share Drive and portions of it were quoted in the April DOJ presentation on Slide 139. |
| 2. | 27-Jul-13 | Excel | | | Summary of information requested by in house counsel and/or Compliance investigators working at the direction and under the supervision of in house counsel for use in investigation of materials management practices. | Attorney-Client Communication and Attorney Work Product | Second Supplemental Disclosure Documents (11.12.13). CD Bates No. A0786A0786\Exh. Q\LOGCAP TO 5 PMSA History - 02 July 2013.xlsx | This document was located on the Compliance Share Drive. |
| 3. | 29-Jul-13 | Excel | | | Summary of information requested by in house counsel and/or Compliance investigators working at the direction and under the supervision of in house counsel for use in investigation of materials management practices. | Attorney-Client Communication and Attorney Work Product | Second Supplemental Disclosure Documents (11.12.13). CD Bates No. A0786A0786\Exh. P\LOGCAP TO 5 Pre-PMSA History - 29 July 2013.xlsx | This document was located on the Compliance Share Drive. |
| 4. | 31-Aug-13 | PDF | | | Screen capture of information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13). CD Bates No. A0785A0785\Exhibit B\WO9557853 Maximo Screen Print.pdf | This document was located on the Compliance Share Drive. |
| 5. | 31-Aug-13 | PDF | | | Screen capture of information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13). CD Bates No. A0785A0785\Exhibit C\WO8215742 Maximo Screen Shot.pdf | This document was located on the Compliance Share Drive. |

* Denotes an attorney or individual working under the direction of an attorney in the specified document.

| # | Date | Type | Description | Privilege | Document | Explanation |
|---|------|------|-------------|-----------|----------|-------------|
| 6. | 31-Aug-13 | PDF | Screen capture of information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785A0785\Exhibit D\W0802617 6 Maximo Screen Print.pdf | This document was located on the Compliance Share Drive. |
| 7. | 31-Aug-13 | PDF | Screen capture of information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785A0785\Exhibit E\W0 13615484_Maximo Screen Print.pdf | This document was located on the Compliance Share Drive. |
| 8. | 31-Aug-13 | PDF | Screen capture of information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785A0785\Exhibit E\W012298267 Maximo Screen Print.pdf | This document was located on the Compliance Share Drive. |
| 9. | 13-Sep-13 | Word | Document summarizing findings of Compliance investigation of materials management practices conducted at the direction and under the supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785A0785\Exhibit A\Overview.docx | This document exists on the Compliance Share Drive with identical text to the document produced by Mr. Nix, but with a privilege marking. Fluor therefore believes Mr. Nix may have intentionally removed that marking prior to providing this document to the government. |
| 10. | 13-Sep-13 | Excel | Document summarizing information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785A0785\Exhibit B\Copy of WO9557853 Actuals Tab Material List.xlsx | This document was located on the Compliance Share Drive. |

* Denotes an attorney or individual working under the direction of an attorney in the specified document.

| # | Date | Type | Description | Privilege | Document | Comments |
|---|------|------|-------------|-----------|----------|----------|
| 11. | 13-Sep-13 | Excel | Document summarizing information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit B\Copy of WO9557853 Plans Tab Materials List.xlsx | This document was located on the Compliance Share Drive. |
| 12. | 13-Sep-13 | Word | Document summarizing findings of Compliance investigation of materials management practices conducted at the direction and under the supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit B\WO9557853 Summary.docx | This document was located on the Compliance Share Drive. |
| 13. | 13-Sep-13 | Excel | Document summarizing information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit C\Copy of WO8215742 Actuals Tab Material List from Maximo.xlsx | This document was located on the Compliance Share Drive. |
| 14. | 13-Sep-13 | Excel | Document summarizing information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit C\Copy of WO8215742 Plans Tab Materials List from Maximo.xlsx | This document was located on the Compliance Share Drive. |
| 15. | 13-Sep-13 | Word | Document summarizing findings of Compliance investigation of materials management practices conducted at the direction and under the supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit C\Work Order 8215742 Summary.docx | This document was located on the Compliance Share Drive. |
| 16. | 13-Sep-13 | Excel | Document summarizing information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit D\Copy of WO8026176 Materials List from Maximo.xlsx | This document was located on the Compliance Share Drive. |

\* Denotes an attorney or individual working under the direction of an attorney in the specified document.

| # | Date | Type | Description | Privilege | Document | Location |
|---|------|------|-------------|-----------|----------|----------|
| 17. | 13-Sep-13 | Word | Document summarizing findings of Compliance investigation of materials management practices conducted at the direction and under the supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit D\Work Order 8026176 Summary.docx | This document was located on the Compliance Share Drive. |
| 18. | 13-Sep-13 | Excel | Document summarizing information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit E\Copy of WO12298267 Materials List.xlsx | This document was located on the Compliance Share Drive. |
| 19. | 13-Sep-13 | Excel | Document summarizing information requested by in house counsel and/or Compliance investigators working on investigation of materials management practices at direction and under supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit E\Copy of WO13615484 Material List from Maximo.xlsx | This document was located on the Compliance Share Drive. |
| 20. | 13-Sep-13 | Word | Document summarizing findings of Compliance investigation of materials management practices conducted at the direction and under the supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit E\WO12298267 Example of transferring from DRMO to SWO issue.docx | This document was located on the Compliance Share Drive. |
| 21. | 13-Sep-13 | Word | Document summarizing findings of Compliance investigation of materials management practices conducted at the direction and under the supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit E\Work Order 12298267 Summary.docx | This document was located on the Compliance Share Drive. |
| 22. | 13-Sep-13 | Word | Document summarizing findings of Compliance investigation of materials management practices conducted at the direction and under the supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | First Set of Supplemental Disclosure Documents (9.13.13), CD Bates No. A0785\A0785\Exhibit E\Work Order 13615484 Summary.docx | This document was located on the Compliance Share Drive. |
| 23. | 20-Sep-13 | PowerPoint | Presentation summarizing status of Compliance investigation of materials management practices conducted at the direction and under the supervision of in house counsel. | Attorney-Client Communication and Attorney Work Product | Second Supplemental Disclosure Documents (11.12.13), CD Bates No. A0786\A0786\Exh. O\PMSA Trend Brief-Complete.pptx | This document was located on the Compliance Share Drive and portions of it were featured in the April DOJ presentation on Slides 65-72 and 143 |

* Denotes an attorney or individual working under the direction of an attorney in the specified document.

| # | Date | Type | Description | Privilege | Document | Notes |
|---|---|---|---|---|---|---|
| 24. | 21-Sep-13 | Excel | Summary of information and analysis requested by in house counsel and/or Compliance investigators working at the direction and under the supervision of in house counsel for use in investigation of materials management practices. | Attorney-Client Communication and Attorney Work Product | Second Supplemental Disclosure Documents (11.12.13). CD Bates No. A0786A0786lExh. RlPre PMSA Sampling Pre PMSA Dates.xlsx | This document was located on the Compliance Share Drive. |
| 25. | 21-Sep-13 | Excel | Summary of information and analysis requested by in house counsel and/or Compliance investigators working at the direction and under the supervision of in house counsel for use in investigation of materials management practices. | Attorney-Client Communication and Attorney Work Product | Second Supplemental Disclosure Documents (11.12.13). CD Bates No. A0786A0786lExh. RlPre PMSA Sampling Sample Data.xlsx | This document was located on the Compliance Share Drive. |
| 26. | 21-Sep-13 | Excel | Summary of information and analysis requested by in house counsel and/or Compliance investigators working at the direction and under the supervision of in house counsel for use in investigation of materials management practices. | Attorney-Client Communication and Attorney Work Product | Second Supplemental Disclosure Documents (11.12.13). CD Bates No. A0786A0786lExh. RlPre PMSA Sampling Sample Universe.xlsx | This document was located on the Compliance Share Drive. |
| 27. | 21-Sep-13 | Excel | Summary of information and analysis requested by in house counsel and/or Compliance investigators working at the direction and under the supervision of in house counsel for use in investigation of materials management practices. | Attorney-Client Communication and Attorney Work Product | Second Supplemental Disclosure Documents (11.12.13). CD Bates No. A0786A0786lExh. RlPre PMSA Sampling Size and Random Numbers.xlsx | This document was located on the Compliance Share Drive. |
| 28. | 21-Sep-13 | Excel | Summary of information and analysis requested by in house counsel and/or Compliance investigators working at the direction and under the supervision of in house counsel for use in investigation of materials management practices. | Attorney-Client Communication and Attorney Work Product | Second Supplemental Disclosure Documents (11.12.13). CD Bates No. A0786A0786lExh. RlPre PMSA Sampling Summary.xlsx | This document was located on the Compliance Share Drive. |

| 29 | 29-Sep-13 | PDF of email | Rickey Mackey | Andrew Bowden, Jeffrey Nix*, Justin Jones** | Email transmitting information requested by in house attorneys and/or Compliance investigators working at the direction and under the supervision of in house counsel for use in investigation of materials management practices. | Attorney-Client Communication | Second Supplemental Disclosure Documents (11.12.13) CD Bates No. A0786A0786Exh. TExh. T (c)Email of 9-29-13 from Rickey Mackey re Salerno (00053556).pdf | Later correspondence indicates that Mr. Mackey intended to address this email to Andrew Johnson (a Fluor corporate investigator working at the direction of counsel) but erroneously sent this initial email to Andrew Bowden instead due to an auto-complete error. |

* Denotes an attorney or individual working under the direction of an attorney in the specified document.

# Exhibit H

*Letter from Matzzie to Margolis
(July 28, 2017)*

# PHILLIPS & COHEN LLP

### ATTORNEYS AT LAW
*www.phillipsandcohen.com*

2000 MASSACHUSETTS AVENUE NW
1ST FLOOR
WASHINGTON, DC 20036
(202) 833-4567

100 THE EMBARCADERO
SUITE 300
SAN FRANCISCO, CA 94105
(415) 836-9000

July 28, 2017

**By Hand Delivery**

Craig D. Margolis
Vinson & Elkins LLP
2200 Pennsylvania Ave., NW
Suite 500 West
Washington, DC 20037-1701

**By Federal Express Overnight Delivery**

Mark Moore
Nexsen Pruet
1230 Main Street
Suite 700
Columbia, SC 29201

Dear Craig and Mark,

On May 5, 2017, we sent to Fluor a full set of documents that Relator Jeffrey Nix had provided to the Department of Justice and requested that you identify any of these documents for which Fluor asserts a privilege.

In a June 7, 2017 letter to the Department of Justice, you identified two of those documents as potentially privileged (First Set of Supplemental Disclosures, Exhibit G, and Second Supplemental Disclosure, Exhibit O now designated as Item 1 and 23 on Fluor's July 25 Privilege Log). We informed you by letter on June 13 that we had destroyed copies of those two documents and sent, to each of you, flash drives with copies of the documents and metadata intact and requested that you maintain those copies.

On July 20, we wrote to you noting that we had not heard from you directly and requesting that you identify any other documents that Fluor contends are privileged.

On July 25, we received a letter from you identifying 29 of the documents we provided to you on May 5 as potentially privileged. Your July 25 letter includes reference to the two documents that you had identified as potentially privileged in your June 7 letter to the Department of Justice that we had already destroyed.

July 28, 2017
Page Two

We are now writing to confirm that we have destroyed the additional 27 documents identified on your July 25 privilege log (designated as Items 2-22 and 24-29). We also are sending you flash drives with copies of these documents with metadata intact. We request that you confirm that you are preserving the flash drives sent to you on June 13 and today, July 28.

Nothing in this letter or in our actions should be construed to suggest that we concede that any of the documents produced by Mr. Nix to the Department of Justice are subject to a valid privilege claim by Fluor. We will address in a subsequent letter several questions raised by your July 25 letter and the accompanying privilege log.

Very truly yours,

Colette G. Matzzie

Cc: Bill Coates, Larry Zoglin, Art Coulter, Beth Warren

# Exhibit I

*Letter and Email from Matzzie to Margolis
(August 1, 2017)*

## Colette Matzzie

| | |
|---|---|
| **From:** | Colette Matzzie |
| **Sent:** | Wednesday, August 02, 2017 12:34 PM |
| **To:** | Margolis, Craig; MMoore@nexsenpruet.com; don.yenovkian@fluor.com; ty@hugheslawplc.com |
| **Cc:** | Coulter, Art (CIV) (Art.Coulter@usdoj.gov); Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov); Larry Zoglin; Bill Coates (wac@roecassidy.com) |
| **Subject:** | Under Seal Qui Tam |
| **Attachments:** | August 1 2017 Letter to Margolis.pdf |

All –

Attached is a letter that was hand-delivered to Craig Margolis along with a flash drive.

Regards,

Colette

---

**Colette G. Matzzie** | Attorney At Law |  cmatzzie@phillipsandcohen.com
**PHILLIPS & COHEN LLP**
2000 Massachusetts Avenue, NW | Washington, DC 20036
*t* (202) 833-4567 | *f* (202) 833-1815
*www.phillipsandcohen.com* | *www.irswhistleblowerlawyers.com*

---

This e-mail is intended solely for the use of the intended recipient(s) named above and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, immediately notify the sender, permanently delete any copies of the email, and do not use or disclose the contents of the email.

 Please consider the environment before printing this e-mail

# PHILLIPS & COHEN LLP

### ATTORNEYS AT LAW
*www.phillipsandcohen.com*

2000 MASSACHUSETTS AVENUE NW
1ST FLOOR
WASHINGTON, DC 20036
(202) 833-4567

100 THE EMBARCADERO
SUITE 300
SAN FRANCISCO, CA 94105
(415) 836-9000

August 1, 2017

**By Electronic Mail (Cover Letter) and Hand Delivery (Flash Drive)**

Craig D. Margolis
Vinson & Elkins LLP
2200 Pennsylvania Ave., NW
Suite 500 West
Washington, DC 20037-1701

Dear Craig,

We are writing to inform you that we have discovered some additional documents produced by Jeffrey Nix to the United States. It appears these were not provided to you on May 5. We are enclosing a flash drive with these ten documents for your review. The documents are designated as January 2014 Disclosure (Documents 1-2) and March 2014 Disclosure (Documents 3-10).

We do not believe any of the documents Mr. Nix provided to us, including the enclosed ten documents, are privileged. However, as with the documents we previously provided to you, we request that you confirm our understanding that the enclosed documents are not privileged, or, if you disagree, that you identify by file name, bates number, and exhibit number (if applicable), any documents among the enclosed set of documents for which you may assert a privilege and provide the basis for any such claim so that any privilege claims may be resolved by the parties, or if necessary, by the court.

Nothing in this letter, or the provision of the enclosed documents to you, is intended to waive or should be construed as a waiver of any applicable privileges or protections adhering to Mr. Nix or the United States Government, including but not limited to the attorney client, work product, common interest, joint prosecution, or negotiation privileges.

Very truly yours,

Colette G. Matzzie

Cc: Mark Moore, Art Coulter, Beth Warren, Bill Coates, Larry Zoglin

# Exhibit J

*Letter and Email from Matzzie to Margolis*
*(August 25, 2017)*

## Colette Matzzie

| | |
|---|---|
| **From:** | Colette Matzzie |
| **Sent:** | Friday, August 25, 2017 2:33 PM |
| **To:** | Margolis, Craig; ty@hugheslawplc.com; don.yenovkian@fluor.com; MMoore@nexsenpruet.com |
| **Cc:** | Bill Coates (wac@roecassidy.com); Larry Zoglin; Coulter, Art (CIV) (Art.Coulter@usdoj.gov); Warren, Beth C. (USASC) (Beth.C.Warren@usdoj.gov); Ragsdale, Stan (USASC) |
| **Subject:** | Fluor |
| **Attachments:** | August 25 2017 Letter.pdf |

All –

Attached please find a letter responding to Fluor's letter of July 25.

Have a good weekend.

Colette

---

**Colette G. Matzzie** | **Attorney At Law** | cmatzzie@phillipsandcohen.com
**PHILLIPS & COHEN LLP**
2000 Massachusetts Avenue, NW | Washington, DC 20036
*t* (202) 833-4567 | *f* (202) 833-1815
www.phillipsandcohen.com | www.irswhistleblowerlawyers.com

---

This e-mail is intended solely for the use of the intended recipient(s) named above and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, immediately notify the sender, permanently delete any copies of the email, and do not use or disclose the contents of the email.

 Please consider the environment before printing this e-mail

# PHILLIPS & COHEN LLP

### ATTORNEYS AT LAW
*www.phillipsandcohen.com*

2000 MASSACHUSETTS AVENUE NW
1ST FLOOR
WASHINGTON, DC 20036
(202) 833-4567

100 THE EMBARCADERO
SUITE 300
SAN FRANCISCO, CA 94105
(415) 836-9000

August 25, 2017

Via Email & U.S. Mail

Craig Margolis
Vinson & Elkins LLP
2200 Pennsylvania Ave., NW
Suite 500 West
Washington, DC 20037-1701

Dear Craig,

We are writing to respond further to your July 25 letter in which you provided us and the Government with a log of documents that you contend are subject to a claim of attorney client privilege and/or work product protection. As we informed you on July 28, we have destroyed any copies of those twenty-nine documents excepting the one set of electronic copies of the documents that we returned to you. We have asked that you preserve the documents we returned to you in electronic form with all metadata intact but, to date, have not yet received confirmation that you have done so.

The July 25 privilege log is insufficient for any meaningful review of Fluor's privilege claim by us or by the Court. If Fluor intends to continue to assert a claim of privilege over the twenty-nine listed documents, we ask that you provide a revised privilege log by September 5, 2017, to provide us sufficient time to review in advance of our meeting to discuss your privilege claims. The revised privilege log should contain, at a minimum, the following information:

- all authors of each document;
- all recipients of each document, with a notation showing which, if any, of those recipients were attorneys;
- the dates on which each recipient received the document (so that we can determine if those recipients were intended recipients or merely incidental, unintended, or second-hand recipients);
- the names of the attorneys whom you claim directed each document's author(s) to prepare the document or perform the work reflected in the document;

August 25, 2017
Page Two

- the names of the attorneys whom you claim supervised the preparation of each document or the performance of the work reflected in those document;
- the dates on which any such attorney directed the author(s) to create the document or perform the work reflected in the document; and
- the pending or imminent litigation for which the work was performed (to the extent you assert work product protection for the document).

As to each of the twenty-nine documents, we also ask that you inform us whether the document was created for a business purpose, including for implementation of Fluor's obligation to manage materials inventory under the LogCap IV contract and its duties to report on such management to DCMA and other Governmental entities.

Without the information set forth above, it will be impossible for a Court to adjudicate Fluor's privilege claims.

Meanwhile, you have asked us to provide you with a list of all persons with whom documents Mr. Nix provided to the Government were shared, the dates on which they were shared, and the role of that person in the Government's investigation. As you know, our communications with the Government pertinent to the Government's investigation including its use of investigators, auditors, and other personnel are protected by joint prosecution and common interest privileges and we are not at liberty to share with you such details. What we can tell you is that we did not provide the documents to anyone outside of the Government's investigative team which has included counsel for the other Relators.

In addition, it is our understanding that the Government has provided Fluor with a full set of all documents produced by all of the Relators in the four pending qui tam cases and other witnesses in the investigation. We ask that, if Fluor intends to assert a claim of privilege over any of those documents, you inform us so that we may take steps to destroy any copies of those documents in our possession pending adjudication of Fluor's privilege claims.

Finally, we reject your characterization of Mr. Nix's production of Fluor's documents to the Government as "improper," or the documents as "stolen" or "misappropriated." Mr. Nix properly possessed the documents and the federal False Claims Act contemplates that a relator who files a qui tam case will provide material information in his possession to the United States. We also reject your suggestion that documents Fluor maintains on its Compliance share drive are necessarily subject to a claim of privilege or work product protection. You should be aware that many documents maintained on the Compliance share drive are widely distributed within Fluor both in Afghanistan and elsewhere. In addition, many such documents, including those related to Fluor's many compliance reviews, are routinely shared by Fluor with the Government.

August 25, 2017
Page Three


    Please let us know when we may expect a revised privilege log and please confirm that you are preserving the electronic copies of the documents we provided to you for future adjudication if necessary.

                       Very truly yours,

                       Colette G. Matzzie


Cc:    Larry Zoglin
        Bill Coates (email)
        Art Coulter (email)
        Beth Warren (email)
        Stan Ragsdale (email)
        Ty Hughes (email)
        Don Yenovkian (email)
        Mark Moore (email)

# Exhibit K

*Letter from Margolis to Matzzie*
*(August 31, 2017)*

Vinson&Elkins

Craig D. Margolis  cmargolis@velaw.com
Tel +1.202.639.6540  Fax +1.202.879.8840

August 31, 2017

**By Email**

Colette Matzzie
Phillips & Cohen LLP
2000 Massachusetts Avenue, NW
1st Floor
Washington, DC 20036
cmatzzie@phillipsandcohen.com

Re:     LOGCAP IV Property Management Investigation: Privilege Claims

Dear Ms. Matzzie:

I am writing in response to your August 25, 2017 letter regarding Fluor's claims of privilege over documents misappropriated by your client Jeffrey Nix in relation to the False Claims Act case currently under investigation by the Department of Justice.

While we furnished a copy of Fluor's privilege log submitted to the government to you in order to place you on notice of our legitimate privilege claims and preserve Fluor's rights with respect to those documents, we did not intend to initiate a substantive discussion about the underlying claims on a document-by-document basis. Fluor does not intend to engage substantively with any Relators on privilege issues at this time. Fluor has not been served with any complaint by Relator's counsel as the government has not yet made an intervention decision. We do not believe that Relators have standing to make discovery demands of Fluor at this time, nor do Relators have standing to request the "adjudication" of any responses to such demands before a federal court. If necessary, we will engage with

**Vinson & Elkins LLP  Attorneys at Law**
Austin  Beijing  Dallas  Dubai  Hong Kong  Houston  London  Moscow  New York
Palo Alto  Richmond  Riyadh  San Francisco  Taipei  Tokyo  Washington

2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037-1701
Tel +1.202.639.6500  Fax +1.202.639.6604  www.velaw.com

V&E

Relators relating to the theft of privileged documents at the appropriate time, including in the context of a motion for disqualification of counsel and/or other sanctions.

Sincerely,

Craig D. Margolis

cc:    Don Yenovkian, Senior Counsel, Fluor
       Mark Moore, Nexsen Pruet, LLC
       Ty Hughes, Hughes Law PLC

       Art J. Coulter, United States Department of Justice
       Stanley D. Ragsdale, Assistant United States Attorney
       Elizabeth C. Warren, Assistant United States Attorney

# Exhibit L

*Word Document Metadata Printout*
*(Zoglin)*
*(June 27, 2019)*

## Properties

| | |
|---|---|
| Size | 26.4KB |
| Pages | 1 |
| Words | 7 |
| Total Editing Time | 0 Minutes |
| Title | Add a title |
| Tags | Add a tag |
| Comments | Add comments |
| Template | Normal |
| Status | Add text |
| Categories | Add a category |
| Subject | Specify the subject |
| Hyperlink Base | Add text |
| Company | Microsoft |

## Related Dates

| | |
|---|---|
| Last Modified | 6/27/2019 10:53 AM |
| Created | 6/27/2019 10:53 AM |
| Last Printed | |

## Related People

| | |
|---|---|
| Manager | Specify the manager |
| Author | Larry Zoglin |
| | Add an author |
| Last Modified By | Larry Zoglin |

Show Fewer Properties

# Exhibit M

*Word Document Metadata Printouts
(Budetti)
(July 11, 2019)*









