**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| United States of America ex rel. Charles R. Shepherd, Danny V. Rude, Robert Scott Dillard, and Rickey Mackey,<br><br>                    Plaintiffs,<br><br>v.<br><br>Fluor Corporation, Inc. and Fluor Intercontinental, Inc.,<br><br>                    Defendants. | Civil Action No: 6:13-cv-02428-JDIII<br><br>**MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE FOR A STAY, AND SUPPORTING MEMORANDUM** |

## I.    INTRODUCTION

Third party Jeffrey Nix moves this Court for an order quashing defendant Fluor Corporation's September 8, 2020 subpoena to Mr. Nix (the "Subpoena") without prejudice to Fluor's ability to serve a subpoena after the resolution of key privilege issues that the parties presently are attempting to raise before the Court, or, in the alternative, for an order staying execution of the subpoena and any motion to enforce it until after the resolution of those issues. Prior to the filing of this Motion, counsel for movant Mr. Nix attempted to confer with opposing counsel to resolve in good faith the matter contained herein, but the parties were unable to reach agreement.

    The Subpoena seeks production of virtually all of Mr. Nix and his counsel's attorney-client privileged and work-product documents created in the course of a nearly eight-year (and ongoing) representation. Fluor contends that Mr. Nix possessed 29 documents that Fluor now contends are privileged (but that Mr. Nix and the plaintiffs in this lawsuit contend are not privileged), that Mr. Nix disclosed those documents to the United States government in

1

connection with a *qui tam* lawsuit that he filed against Fluor, and that that disclosure now taints the entirety of this case. Fluor's argument is that because it contends those 29 documents are privileged, the crime-fraud doctrine strips Mr. Nix and his counsel from any right to claim privilege or protection from discovery of their attorney-client privileged communications and communications with Government attorneys.

That argument, of course, is entirely dependent upon the predicate question of whether the 29 documents are privileged. If they are not, there is no basis for conducting discovery of Mr. Nix's privileged communications and the crime-fraud exception certainly could not apply.

The parties in this litigation intend to present to this Court a plan to resolve that predicate privilege question. The parties, Relators Charles Shepherd, Danny Rude, Robert Scott Dillard, and Rickey Mackey, and Defendants Fluor Corporation and Fluor Intercontinental have proposed dates for a status conference through a Joint Request for Protection, filed February 9, 2021. Dkt 225. The purpose of the proposed status conference is to discuss the process for resolving the disputed privilege issue. Mr. Nix and his counsel understand that that issue has implications for this case far beyond its effect on the Subpoena, since Fluor's position appears to be that Mr. Nix's possession and disclosure of the 29 purportedly privileged documents warrants dismissal of this entire case. Accordingly, Mr. Nix understands that plaintiffs will propose that both parties take discovery necessary to test Fluor's privilege assertions so that they may present the matter to the Court for resolution.

That resolution is a prerequisite for resolution of issues relating to the Subpoena directed to Mr. Nix. Since the parties already are preparing to litigate the issue, allowing its resolution before any effort to enforce the Subpoena will save the Court, the parties, and Mr. Nix unnecessary burdens. It also will eliminate the need for the Court to make an important privilege ruling in the context of a third-party subpoena, creating the risk that later discovery will contradict the incomplete record on which the Court was forced to rule. Accordingly, Mr. Nix moves this Court for an order quashing the subpoena without prejudice, or, in the alternative, staying any effort to enforce it until after the Court's ruling on the predicate privilege issue.

## II.     FACTUAL BACKGROUND

Jeffrey Nix is a 22-year veteran of the United States Army. He worked for Fluor from August 2011 until May 2014, including as a Compliance Manager for the Fluor Government Group from December 2012 until he left the company. In June 2013, before leaving Fluor, Mr. Nix filed a *qui tam* complaint alleging that Fluor Corporation defrauded the United States in its performance of a contract concerning logistics support services for wars in the Middle East, in violation of the False Claims Act (the "FCA"). Nix also alleged employment retaliation claims against Fluor under the FCA. From June 2013 to September 2018, Mr. Nix and his counsel, Phillips & Cohen LLP ("P&C") and Roe Cassidy Coates & Price, PC ("RCCP"), along with four other sets of *qui tam* plaintiffs in related cases, assisted the United States Department of Justice in its investigation of allegations of fraud in Fluor's contract in Afghanistan. In February 2019, with the consent of the United States, Mr. Nix voluntarily dismissed his *qui tam* claims. His employment claims were and currently are stayed. *United States ex rel. Jeffrey Nix v. Fluor Corporation*, et al., No. 6:13-cv-1528-TMC, Dkt. 107. P&C and RCCP continue to represent Mr. Nix with respect to matters related to his *qui tam* suit, including the matters described herein. Declaration of Colette G. Matzzie ¶ 5 (hereinafter Matzzie Decl.) (See Exhbit 1)

The FCA requires that *qui tam* plaintiffs, or "relators," provide the Government with the evidence in their possession concerning their allegations. 31 U.S.C. § 3730(b). Accordingly, both before and after the filing of his complaint, Mr. Nix provided documents to P&C, including some documents that Mr. Nix had in his possession as a result of his employment at Fluor. Mr. Nix believed all of the documents he provided to counsel to be non-privileged. Matzzie Decl. ¶ 6.

On April 27, 2017, after the Court ordered a limited unsealing of Mr. Nix's case to enable the Government to discuss it with Fluor, P&C learned that Fluor claimed privilege with respect to one document that P&C provided to the United States on Nix's behalf. Although P&C did not believe that Fluor's assertion of privilege was justified, to ensure that all privilege issues could be raised and resolved fully, on May 5, 2017, P&C voluntarily provided Fluor's counsel with a

copy of <u>all</u> of the documents that Nix provided to his counsel.  Thereafter, Fluor asserted privilege with respect to 29 documents (the "Disputed Documents"), each of which Mr. Nix first provided to his counsel after the filing of his complaint.  Fluor asserted privilege with respect to:

- Eighteen work orders, *i.e.*, orders for the performance of non-privileged tasks in the ordinary course of Fluor's business;
- A Microsoft Word document that Mr. Nix created on his own initiative in the ordinary course of his Fluor business responsibilities;
- A PowerPoint presentation that Mr. Nix and a non-lawyer colleague created to brief a non-lawyer Fluor executive concerning their ordinary Fluor business responsibilities;
- Another PowerPoint presentation that Mr. Nix and a non-lawyer colleague created concerning his ordinary business responsibilities, and related information gathered when preparing this presentation; and
- An email from a non-lawyer to Mr. Nix and two other non-lawyer colleagues.

Matzzie Decl. ¶¶ 7-8.  Each of these documents was (or, in the case of the work orders, appeared to be) authored by non-attorneys—including some by Nix himself—and none was addressed to any attorney.  None bears any privilege or work-product legend.

Other than the Disputed Documents, Fluor has not claimed privilege with respect to any documents that Nix provided to his counsel (and that P&C thereafter provided to Fluor for its privilege review).  On their own initiative, P&C and RCCP destroyed all copies of the documents as to which Fluor claimed privilege, but requested that Fluor's counsel maintain copies of them.

On August 25, 2017, P&C wrote to counsel for Fluor and proposed that the parties jointly seek judicial resolution of Fluor's privilege claims as to the Disputed Documents.  On August 31, 2017, Fluor's counsel responded that it would not discuss those documents with Mr. Nix's counsel, and that it would oppose any effort by Mr. Nix's counsel to bring the matter to the Court for resolution.  Matzzie Decl., ¶¶ 10-11.

4

Fluor now seeks to bootstrap its dubious claims of privilege into unlimited access into virtually all of Mr. Nix and his counsel's attorney-client privileged and work-product communications. On September 8, 2020, Fluor served Nix, through counsel, with the Subpoena, which sought production of, among other things, all privileged and work-product communications "related to potential or actual claims against Fluor," "regarding the acquisition or review of any documents obtained from Fluor," and "regarding whether and what use to be made of any documents or information obtained from Fluor …." Matzzie Decl. ¶ 12 and Exhibit A. This encompasses more than 7,600 unique privileged or work-product communications whose authors or recipients include at least a dozen P&C or RCCP attorneys and staff, dozens of Department of Justice and Department of Defense attorneys, investigators, auditors, and support staff, and numerous attorneys for the *qui tam* plaintiffs in related cases against Fluor.[1] *Id.*, ¶ 13.

In a February 3, 2021 telephone conference, Fluor's counsel confirmed that its intent is to obtain Mr. Nix and his counsel's privileged and work product material. Matzzie Decl., ¶ 15. It stated that it does so on the basis that the "crime-fraud exception" defeats all of Mr. Nix and his counsel's protections from discovery, including the attorney-client privilege and the work product doctrine.[2] *Id.*,  One essential, but disputed, premise of that argument is Fluor's claim

---

[1] Fluor's Subpoena also asks Mr. Nix to produce all documents in his possession from his employment at Fluor that he has not disclosed to his counsel, to the Government, or to anybody else. *E.g.*, Matzzie Decl. ¶14, Ex. A, Request No. 3. Although it is unclear how Mr. Nix's mere possession, without use or disclosure, of employment-related documents has any relevance to this case, he is willing to produce them pursuant to the subpoena. Fluor, however, insists that if those documents include Fluor's privileged materials, Mr. Nix is not entitled to enlist the aid of counsel in producing those documents, and that if he provides those documents to his counsel for production in response to Fluor's subpoena and those documents contain materials over which Fluor asserts privilege, his counsel takes possession of the documents "at their own risk." Matzzie Decl., ¶ 14. It is not clear on what legal grounds Fluor believes it is entitled to demand that Mr. Nix, who it has already accused of committing a crime or fraud, respond to its subpoena without the aid of counsel.

[2] To show that the crime-fraud exception applies, Fluor would bear the burden of establishing that Mr. Nix "was engaged in or planning a criminal or fraudulent scheme," that he knowingly "sought the advice of [P&C and RCCP] to further the scheme," and that every privileged or work product document created in the course of P&C and RCCP's representation of Mr. Nix "bear[s] a close relationship" to that supposedly criminal or fraudulent scheme. *In re Grand Jury Proceedings #5*, 401 F.3d 247, 251 (4th Cir. 2005). Mr. Nix and his counsel vigorously dispute

5

that the Disputed Documents are privileged. If they are not privileged, then Fluor has no basis to claim that Mr. Nix has done anything wrong, and the crime-fraud exception cannot apply.[3]

Mr. Nix's counsel and Fluor's counsel met and conferred at length concerning Fluor's subpoena, both in written correspondence and in a telephonic conference. Matzzie Decl., ¶ 16. Mr. Nix's counsel asked that Fluor not "put the cart before the horse"; *i.e.*, that Fluor should first resolve whether the documents at issue are privileged in an adversary proceeding involving the *qui tam* plaintiffs in this case, Charles Shepherd, Danny Rude, Robert Scott Dillard, and Rickey Mackey ("Relators"), before burdening Nix and his counsel with enforcement of the subpoena. Fluor's counsel refused.

Mr. Nix's counsel is aware, however, that counsel for Relators already is attempting to facilitate resolution of Fluor's disputed privilege assertions through discovery and motion practice and that the parties have proposed to present this issue to the Court through their Joint Motion for Protection filed February 9, 2021 (Dkt 225). Mr. Nix accordingly requests that this Court quash the subpoena or stay its enforcement until all privilege and work product questions with respect to the Disputed Documents have been resolved with the full participation of Relators and Fluor.

---

Fluor's characterization of their work to report and assist the United States with serious allegations of fraud and false billing to be pursuit of a "crime or fraud." Relator and his counsel took great care with Fluor's documents and acted consistent with the False Claims Act. Matzzie Decl. ¶16.

[3] Fluor cannot meet its burden of showing that the crime-fraud exception is warranted even if the documents were deemed privileged, for a variety of reasons. But a finding that the documents are not privileged would disprove any crime-fraud argument and would obviate the need for further factual development or argument.

## III. ARGUMENT

### A. A Third Party Subpoena Is Not the Proper Context for Resolution of a Disputed Privilege Claim

Fluor's "crime-fraud" claim necessarily depends upon the predicate question of whether Disputed Documents actually are privileged.[4] It stands to reason, therefore, that the Court must first adjudicate that privilege question before addressing the parties' disputes over whether Mr. Nix's alleged "use" of the documents entitles Fluor to all of Mr. Nix and his counsel's privileged and work-product communications over the course of a nearly eight-year attorney-client relationship.

Mr. Nix's counsel understands that counsel for the Relators, is attempting to obtain just such an adjudication. Mr. Shepherd's counsel seeks discovery to test Fluor's assertions of privilege, thus enabling the Court to resolve the matter with the benefit of full adversary presentations of evidence.

Resolution of Fluor's disputed privilege claim in the context of Fluor's third-party subpoena to Mr. Nix, however, would preclude full adversary participation. Other than the information in Mr. Nix's possession, Fluor would control the entirety of the evidence submitted to the Court on the privilege question. Because Fluor controls most or all of the relevant witnesses (other than Mr. Nix), it can present evidence with little fear of rebuttal or impeachment. Its affiants and declarants will not be subject to cross-examination by any litigation adversary, much less the ones—Relators—with the greatest interest in doing so thoroughly.

This presents two related risks that warrant postponing enforcement of the Subpoena. First, resolution of disputes about the Subpoena before the full adversary exploration of the facts

---

[4] Fluor's crime-fraud argument cannot simply be that it was improper for Mr. Nix to provide any Fluor documents, even non-privileged ones, to the Department of Justice or to use them in Mr. Nix's case. It is neither criminal nor fraudulent to provide evidence to a Government law-enforcement agency or to use that evidence in litigation. Indeed, the FCA itself requires a *qui tam* plaintiff to provide the DOJ with all such evidence in his possession. 31 U.S.C. § 3730(b).

7

risks forcing the Court to adjudicate the central question of privilege on only half a record. The Court will be deprived of relevant information that Plaintiffs would obtain through party discovery. Second, premature resolution of the privilege question in the context of the Subpoena presents a risk that the parties will uncover facts in later discovery that will cast doubt on Fluor's one-sided submissions during the subpoena process, potentially undermining the initial privilege determination.

There is no legitimate reason why the Court should proceed in a way that requires it to rule on an incomplete record and expose itself to the substantial risk that later discovery would yield important information bearing on its decision. Postponing enforcement of the Subpoena preserves the status quo until the Court can hear a full adversary presentation of facts concerning Fluor's purported privileged documents. Having refused to cooperate in raising this issue with the Court nearly four years ago, Fluor cannot contend that it will be prejudiced if it must wait a little longer for a full airing of the issues.

### B. Premature Enforcement of the Subpoena Imposes an Undue Burden and Substantial Potential Prejudice upon this Court and Third-Party Mr. Nix

The potential burden and prejudice upon Mr. Nix, a third party, is sufficient to warrant granting the motion to quash or postpone enforcement of the Subpoena until after the full adversary litigation of privilege issues.

First, the burden of preparing a privilege log is itself very significant. Mr. Nix's counsel has offered to provide a privilege log by category (rather than by individual document): (1) identifying the time period encompassed by the withheld documents; (2) identifying the individuals who were authors, addressees, or carbon-copy recipients of documents in each category; and (3) representing that all of the documents on the privilege log either were prepared to assist in anticipated or pending litigation or contain information reflecting communications between counsel (or counsel's representatives) and Jeffrey Nix (or his representatives) for the purpose of facilitating the rendition of legal services to Mr. Nix. *See*, *e.g.*, *Asghari-Kamrani v. United Servs. Auto. Ass'n.*, 2016 WL 8243171, at *3-4 (E.D. Va. Oct. 21, 2016) (finding that

8

privilege log meeting those requirements is sufficient when creating item-by-item log would be unduly burdensome and omitted information would be of no material benefit in testing privilege). Because Fluor's Subpoena implicates more than 7,600 unique communications (many of which may include attachments or threaded emails that would have to be separately evaluated for privilege claims by Mr. Nix's counsel, or, in many cases, by senders and recipients other than Mr. Nix and his counsel), the preparation of even this privilege log would be substantially burdensome. And Fluor wishes to impose an even greater burden. Even though greater detail would not aid it in evaluating the applicability of the privilege (since Fluor's argument is that the privilege does not apply at all), it insists that Mr. Nix must provide a document-by-document log. All of these issues will be mooted if the Court concludes that the Disputed Documents are not privileged. In addition, many of the thousands of communications that Fluor seeks from Nix are the same communications it has sought from the Relators and from the Government and multiple productions of the same documents would be extraordinarily wasteful.

Second, a premature decision concerning whether the Disputed Documents are privileged would risk imposing extraordinary and irreparable prejudice upon Mr. Nix. As described above, a ruling before full adversary discovery creates an intractable risk that discovery will later cast doubt on those rulings. If the Court rules that the documents are not privileged, thereby preserving the status quo, it can revisit that ruling in light of later evidence without prejudice to anyone. But if the Court rules otherwise and compels the production of all of Mr. Nix's privileged information on the basis of evidence largely curated by Fluor and without the benefit of discovery by Mr. Shepherd, then if fuller discovery shows that ruling to be in error, the prejudice to Mr. Nix cannot be reversed. "[T]he bell of disclosure cannot be 'unrung' …. There is no way for a court … to wipe from an adversary's mind any mental impressions or litigation strategy that may have been disclosed." *Cont'l. Cas Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 773 (D. Md. 2008), *quoting* Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 615 (2001).

9

The balance of these burdens and risks clearly tips in favor of postponing enforcement of the Subpoena until after a full adversary presentation of the facts relating to Fluor's assertion of privilege. Resolving the privilege issue fully and fairly before addressing the third-party Subpoena preserves the status quo and imposes no harm or burden upon anyone. Moreover, it conserves judicial resources by allowing for the Court to resolve the initial question of whether the disputed documents are privileged first which may end up mooting the second question about discovery of all of Mr. Nix's privileged communications and communications over which Department of Justice and Department of Defense officials will claim privilege. By contrast, rushing to resolve the essential privilege question on an incomplete record may impose unwarranted burdens and incurable prejudice upon Mr. Nix.

For the foregoing reasons, Mr. Nix, through his counsel, respectfully requests that this Court quash the Subpoena without prejudice, or, in the alternative, stay its enforcement (including any motions to enforce it) until after resolution of the parties' dispute over whether the Disputed Documents are privileged.

(Signature Page to Follow)

Respectfully submitted,

s/ William A. Coates_____
William A. Coates (Federal ID # 00183)
ROE CASSIDY COATES & PRICE, P.A.
Post Office Box 10529
Greenville, South Carolina  29603
Telephone: 864-349-2600
E-mail wac@roecassidy.com
*Attorney for Third-Party Jeffrey Nix*

Greenville, South Carolina
February 12, 2021

**OF COUNSEL:**
Colette G. Matzzie (Admitted PHV)
PHILLIPS & COHEN LLP
2000 Massachusetts Avenue, NW
Washington, DC 20036
Telephone: 202-833-4567
Fax: 202-833-1815
E-mail:  cmatzzie@phillipsandcohen.com

As set forth above and in Exhibit 1, counsel conferred with counsel for Fluor Corporation and was unable to reach an agreement on this matter.