IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| United States of America, ex rel. Charles R. Shepherd; Danny V. Rude; Robert Scott Dillard; Rickey Mackey,<br><br>    Plaintiff-Relators,<br><br>vs.<br><br>Fluor Corporation, Inc.; Fluor Intercontinental, Inc.,<br><br>    Defendants. | Case No.: 6:13-cv-02428-JD<br><br>**ORDER AND OPINION** |

This is a False Claims Act ("FCA") case, and pending before the Court is Defendants Fluor Corporation and Fluor Intercontinental, Inc.'s (collectively "Fluor" or "Defendants") Motion to Compel Discovery (DE 296). Fluor seeks to compel "targeted discovery [to include privileged materials under the crime-fraud exception] regarding the issue of [Plaintiff-Relators'] potential receipt and use of Fluor's attorney-client privileged information and protected attorney work product . . . ." (DE 296, p. 2.) Plaintiffs United States of America, ex rel. Charles R. Shepherd, Danny V. Rude, Robert Scott Dillard, and Rickey Mackey (collectively "Relators," not including the United Stated of America) oppose the motion arguing the requested discovery is improper because the materials Fluor claims privilege over: 1) are not privileged, 2) were never received by Relators, or 3) were immediately and voluntarily destroyed/clawed back years ago when Fluor asserted the privilege. (DE 311, p. 1.) Furthermore, Relators contend Defendants' are not entitled to Relators' privileged attorney work product and attorney-client communications; therefore, Fluor's purported invasion of Relators' privilege under the "crime-fraud exception" is improper. (Id. at p. 49.)

1

The parties have fully briefed the motion; therefore, it is ripe for review and decision. After a thorough review of the motion and memoranda submitted, the Court grants in part and denies in part Defendants' motion (DE 296) as provided herein.

## BACKGROUND

The underlying suit deals with claims under the False Claims Act against Fluor regarding "LOGCAP IV," a United States Army contract that employed civilian contractors to support military personnel at Forward Operating Bases ("FOBs") across the Middle East. Fluor contracted with the United States Army to provide Base Life Support services at 74 FOBs in Northern Afghanistan and was responsible for managing and tracking Government property, maintaining on-base buildings and facilities, providing meals and laundry services at FOBs, and other logistical support. On February 22, 2013, Relators Charles Shepherd ("Shepherd")[1] and Danny Rude ("Rude")[2] who worked in Fluor's Materials Management Group, filed their lawsuit against Fluor, alleging various forms of misconduct related to Fluor's materials management practices. (DE 1-2.) In March 2013, Fluor received a civil investigative demand ("CID"), a type of subpoena authorized under the FCA, issued by DOJ requesting records from Fluor's MAXIMO database. (DE 127-2.) Due to the CID, Fluor contends it reasonably anticipated litigation and initiated an internal investigation under the direction of its Law Department for the purpose of providing legal advice to the Fluor Government Group (FGG).[3] On May 10, 2016, and August 26, 2016,

---

[1] Shepard worked as the Country "Maximo" Manager. and Deputy Country Maximo Manager. MAXIMO is software Fluor used to manage and track government property.

[2] Rude worked as the Deputy Country Maximo Manager.

[3] The FGG maintains a "corporate Compliance and Business Ethics Program designed to prevent, detect, and respond to potential misconduct." (DE 286-1, p. 8.)

respectively, Relators Rickey Mackey ("Mackey")[4] and Scott Dillard ("Dillard")[5], also employed in Fluor's Materials Management Group, filed their lawsuits, also alleging fraud related to Fluor's management of materials and property.

The discovery dispute at issue here relates to forty-five documents Fluor alleges were privileged and improperly disseminated by two of Fluor's former employees, Jeffrey Nix ("Nix") and David Payne ("Payne"). Nix worked for Fluor as an in-theatre Compliance Manager while Payne worked for Fluor as an Investigator in the Corporate Security Department. On June 5, 2013, Nix, a non-party to the current suit, filed a lawsuit against Fluor that alleged fraudulent schemes related to Fluor's LOGCAP IV contract. Nix voluntarily dismissed his lawsuit on February 6, 2019.[6] On April 12, 2018, Payne, also a non-party to the current suit, filed a lawsuit against Fluor alleging similar allegations as Nix. Payne voluntarily dismissed his lawsuit against Fluor on January 20, 2019.[7]

Fluor contends that upon Nix's return from a rest and relaxation period on June 29, 2013, he joined Fluor's privileged internal investigation. (DE 296-1, p. 7.) Fluor contends Nix was instructed that his work was privileged during this time, but nevertheless, he emailed privileged documents to his personal email account and eventually disseminated privileged materials to the government beginning in September 2013. (Id. at 9.) Similarly, Fluor contends Payne began work on Fluor's privileged internal investigation team in mid-2013 but provided privileged communications to the Department of the Defense Office for the Special Inspector General for Afghanistan Reconstruction ("SIGAR"). (Id. at 10.)

---

4    Mackey worked as the Theater Property Manager.

5    Dillard worked as Deputy Director of Fluor's Material Management Group.

6    Counsel for Relators in the current suit never represented Nix in the course of his suit.

7    Counsel for Relators in the current suit never represented Payne in the course of his suit.

Fluor contends it had suspicions about the disclosure of its privileged information, which were confirmed on April 25, 2017, during a meeting where the government and Relators jointly presented evidence gathered in the course of the government investigation of Fluor. (Id. at 12.) During the presentation, two documents reflecting counsel-directed analysis from Fluor's internal investigation were shown in a PowerPoint. Subsequently, after Fluor brought the issue to the government's attention, Nix's counsel sent Fluor a full set of documents that Nix had produced to the government. (DE 311, p. 16.) On July 26, 2017, Fluor identified 29 of those documents as privileged and provided a privilege log for those items (Nix Privilege Log). (DE 296-1, p. 18-19.) On July 28, 2017, Nix's counsel confirmed in writing that copies of those 29 documents had been destroyed. (DE 311, p. 17.) Fluor also contends that around July 2017, Fluor received CDs provided by the government containing documents the government received from third parties other than Nix, and Fluor identified 19 documents they deemed privileged. (DE 296-1, p. 19.) The government maintains that it never shared these documents with Relator's counsel, and Relators' counsel confirms they have not seen these documents. (DE 311, p. 15.)

Fluor contends Nix and Payne relied on Fluor's privileged information to develop some of their allegations, and these same allegations were not present in Relators' original suit but added to Relators' First Amended Complaint after Nix and Payne voluntarily dismissed their own suits. (DE 296-1, p. 21.) Once discovery in the current suit began, Fluor sought discovery regarding the Relators' receipt and reliance on Fluor's privileged documents to develop Relators' allegations, specifically:

- Request for Production ("RFP") 30 requested documents provided to or received from the government, including "all documents [Relators] received from the government that were produced to the government by any Relator, Jeffrey Nix, [or] David Payne."

- RFP 32 requested the production of "[d]ocuments [Relators] obtained from Jeffrey Nix or David Payne."

- RFP 33 requested "[c]ommunications with anyone, including but not limited to any of the Relators, Jeffrey Nix, or David Payne regarding the acquisition or review of any documents obtained from Fluor by . . . Nix . . . or . . . Payne."

- RFP 34 requested "[c]ommunications with anyone, including but not limited to any of the Relators, Jeffrey Nix, or David Payne regarding whether and to what extent to rely, for the purpose of developing Relators' allegations, on documents obtained from Fluor by . . . Nix . . . or Payne.

- Interrogatory 5 asked Relators to describe "communications with . . . co-relators, Jeffrey Nix, and David Payne related to . . . [Relators'] receipt and/or use of documents obtained from Fluor" by "Relators, Jeffrey Nix, David Payne, or any third party."

(DE 296-1, p. 18.)

Relators asserted that responses to the above discovery were protected by their attorney-client privilege, as well as the work product doctrine, joint litigation privilege, and common interest privilege. (DE 296-15.) Relators also claimed they were entitled to take discovery on the threshold question of whether Fluor's investigation, including the work of Nix and Payne, was privileged. (See DE 247). In 2021, the Court directed the parties to develop a procedure that would allow Relators to take limited discovery regarding Fluor's privilege assertions, while preserving Fluor's privilege. Id. Relators and Fluor negotiated a written deposition question procedure, which was approved by the Court in July 2021. Id. Relators subsequently served written deposition questions on Justin Jones, who provided non-privileged testimony regarding the Materials Management Investigation and the documents on the Nix and Payne privilege logs. Fluor contends it has fully complied with the Court's March 2021 order and thus the current Motion to Compel Discovery (DE 296) is ripe for adjudication.

## **LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To determine whether discovery is proportional to the needs of the case, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

"[A] district court has wide latitude in controlling discovery and [its] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv., 798 F.2d 679, 682 (4th Cir. 1986) (citations omitted). "The latitude given the district court extends as well to the manner in which it orders the course and scope of discovery." Id. (citations omitted).

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Oppenheimer v. Episcopal Communicators, Inc., No. 1:19-CV-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020); See Basf Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org., No. 2:17-CV-503, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019). "Thus, once the moving party has made 'a *prima facie* showing of discoverability,' the resisting party has the burden of showing either: (1) that the discovery sought is not relevant

6

within the meaning of Rule 26(b)(1); or (2) that the discovery sought 'is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery.'" Gilmore v. Jones, No. 3:18-CV-00017, 2021 WL 68684, *3-4 (W.D. Va. Jan. 8, 2021) (quoting Eramo v. Rolling Stone LLC, 314 F.R.D. 205, 209 (W.D. Va. 2016)).

The court has broad discretion in deciding to grant or deny a motion to compel. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal citation omitted); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988); LaRouche v. Nat'l Broad. Co., 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court.").

## DISCUSSION

Fluor seeks to compel discovery regarding Relators and Relators' counsel's acquisition, dissemination, and use of a set of allegedly privileged Fluor documents ("Nix and Payne Documents") that Fluor claims were stolen by Nix and Payne. To that end, Fluor specifically served the following discovery requests upon Relators:

- Request for Production ("RFP") 30 requested documents provided to or received from the government, including "all documents [Relators] received from the government that were produced to the government by any Relator, Jeffrey Nix, [or] David Payne."

- RFP 32 requested the production of "[d]ocuments [Relators] obtained from Jeffrey Nix or David Payne."

- RFP 33 requested "[c]ommunications with anyone, including but not limited to any of the Relators, Jeffrey Nix, or David Payne regarding the acquisition or review of any documents obtained from Fluor by . . . Nix . . . or . . . Payne."

- RFP 34 requested "[c]ommunications with anyone, including but not limited to any of the Relators, Jeffrey Nix, or David Payne regarding whether and to what

7

   extent to rely, for the purpose of developing Relators' allegations, on documents obtained from Fluor by . . . Nix . . . or Payne.

- Interrogatory 5 asked Relators to describe "communications with . . . co-relators, Jeffrey Nix, and David Payne related to . . . [Relators'] receipt and/or use of documents obtained from Fluor" by "Relators, Jeffrey Nix, David Payne, or any third party."

(DE 296-1, p. 18.)  In Fluor's reply, Fluor clarified that it only seeks the information in the discovery at issue regarding the forty-five Nix and Payne Documents, not *all* the documents as the RFPs and Interrogatory imply.  Fluor contends that Relators have failed to provide an adequate response; conversely, Relators contend the requests seek documents and communications that are protected by Relators' attorney-client privilege and attorney work-product.

As a preliminary matter, regardless of whether the "Nix and Payne documents" are in fact privileged, some of the discovery sought by Fluor, above, would not require Relators to disclose their own privileged documents or communications.  For example, responses that identify who received the Nix and Payne Documents and when they received them do not invade Relators' privilege; rather, this information is often necessarily disclosed to satisfy Fed. R. Civ. P. 26(b)(5) to assert privilege.[8]  See e.g., Mach. Sols., Inc. v. Doosan Infracore Am. Corp., 323 F.R.D. 522, 538 (D.S.C. 2018) (internal citation omitted) ("To comply with the requirements set forth in Rule

---

[8] Specifically, Request for Production 30 and 32, documents received from Nix and Payne by the government and Relators, respectively, do not themselves seek privileged material from Defendants. Accordingly, to the extent such documents have not been produced, Relators are compelled to produce them.  Additionally, Interrogatory 5 asks to describe "communications with . . . co relators, Jeffrey Nix, and David Payne related to . . . [Relators'] receipt and/or use of documents obtained from Fluor" by "Relators, Jeffrey Nix, David Payne, or any third party." (DE 296, p. 18.)  Because providing a description of communications between co-relators, Nix and Payne, regarding *the receipt* of any documents obtained from Fluor by *anyone* would not force Relators to disclose any privileged information, Relators are compelled to answer Interrogatory 5 only regarding *the receipt* of the Nix and Payne Documents.  Similarly, regarding RFP 33, which requests communications regarding the acquisition or review of any documents obtained from Fluor by Nix or Payne, to the extent such production does not require Relators to disclose privileged information, they are compelled to produce those communications regarding the Nix and Payne Documents.

26(b)(5)(A), a party seeking protection from producing documents must produce a privilege log that 'identifies each document withheld, information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter.'"). Accordingly, without disclosing the content of privileged documents or communications, Relators are compelled to respond to those discovery requests regarding the Nix and Payne Documents.

Fluor also contends that it is entitled to discovery responses, despite Relators' assertion of attorney-client and work-product privilege, because the privilege is lost under the "crime-fraud exception" given Relators and their counsel's *use* of the Nix and Payne Documents to develop their allegations. This Court disagrees. The crime-fraud exception provides "[b]oth the attorney-client and work product privileges may be lost [] when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004, 401 F.3d 247, 251 (4th Cir. 2005). The party asserting the crime-fraud exception must make a prima facie showing that the privileged communications fall within the exception. Id. (citing Chaudhry v. Gallerizzo, 174 F.3d 394, 403 (4th Cir. 1999). Specifically, the party invoking the crime-fraud exception must make a prima facie showing that "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." Id. "Prong one of this test is satisfied by a prima facie showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." Id. "Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity." Id.

Satisfying this prima facie standard does not require proof either by a preponderance or beyond a reasonable doubt of the crime or fraud; rather, the proof "must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted." Id. (quoting Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215, 1220 (4th Cir. 1976). Further, "[w]hile such a showing may justify a finding in favor of the offering party, it does not necessarily compel such a finding." Id. That is, if the evidence is sufficient to allow the opposing party to "come forward with [an] explanation . . . [and] the court finds the explanation satisfactory, *the privilege remains*." In re Grand Jury Proc., Thursday Special Grand Jury Sept. Term, 1991, 33 F.3d 342, 352 (4th Cir. 1994) (emphasis added) (internal quotations and citation omitted).

Fluor contends they meet the prime facie standard warranting the crime-fraud exception under the theory that "Nix and Payne stole privileged documents and shared them with the government and Relators' counsel, presumably for the purpose of developing their allegations against Fluor." (DE 296-1, p. 31.) However, when applying the crime-fraud exception to obtain discovery protected under the *attorney-client privilege*, the Fourth Circuit has held "the attorney need not be aware of the illegality involved;" rather "it is the *client's* knowledge and intentions that are of paramount concern because the client is the holder of the privilege." Id. (citing In re Grand Jury Proceedings (U.S. v. Under Seal), 102 F.3d 748, 751 (4th Cir. 1996) (emphasis added). "It is enough that the communication furthered, or was intended *by the client* to further, that illegality." Id. (emphasis added). Fluor has not cited to any support that *the clients* in this case, Relators Shepherd, Rude, Dillard, and Mackey were "engaged in or planning a criminal or fraudulent scheme when [they] sought the advice of counsel to further the scheme." In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004, 401 F.3d 247, 251 (4th Cir. 2005). Fluor has not alleged

10

or cited to any support to show that Relators had any knowledge of the alleged privileged Nix and Payne documents, that Relators had any knowledge of the alleged illegality of the way in which those documents were attained or used, or that they had any intent to use counsel for any wrongful conduct.[9] Accordingly, even if any wrongful conduct occurred that may be considered under the crime-fraud exception, without knowledge or intent of the Relators in this specific case, an invasion of Relators' attorney-client privilege would be unjustified.

Additionally, "while the attorney-client privilege may be vitiated without showing that the attorney knew of the fraud or crime, those seeking to overcome the *opinion work product privilege* must make a prima facie showing that the '*attorney* in question was aware of or a knowing participant in the criminal conduct.'" Id. at 252 (citing In re Grand Jury Proceedings, Thurs. Special Grand Jury Session Sept. Term, 1991, 33 F.3d 342, 348 (4th Cir. 1994) (emphasis added). "If the attorney was not aware of the criminal conduct, a court must redact any portions of subpoenaed materials containing opinion work product." Id. Fluor contends "there is certainly circumstantial evidence that Relators' counsel, Nix's counsel, and the government were aware of the privileged nature of at least some of the documents at the time they received them." (DE 296-1, p. 36.) Specifically, and in support thereof, Fluor points to the 2017 Joint Presentation where Fluor's privileged materials were used in the government's PowerPoint and outlining a timeline of events that shows Relators amended their complaint to incorporate allegations of issues that "appear to be based on [Nix and Payne's] access to the stolen privileged documents [Nix and Payne

---

[9]     Although Fluor contends that because Nix remains part of a "sharing agreement" under which he will share in the recovery of any judgement against Fluor in the current action, and, therefore, Nix in effect remains a "party in all but name – [Nix] stands to gain should Relators prevail," (DE 296-1, p. 17), Nix's alleged wrongful conduct cannot be attributed to the Relators in the current case who hold the attorney-client privilege.

Documents]."[10] (DE 296-1, p. 17.) Additionally, Fluor contends Nix provided the government with a document (Nix Priv. Log 9) that originally had privilege markings that were removed before dissemination to the government. (Id. at p. 14.) Furthermore, Fluor contends that the government reviewed the Payne documents that Fluor had previously identified as privileged but that the government did not disclose whether those documents were also shared with Relator's counsel. (DE 296-1, p. 15.)

Relators rebut Fluor's contention that they and/or their counsel knowingly used privileged Fluor documents to develop allegations in their Complaint by asserting the Nix and Payne documents were either not privileged,[11] never received by Relators,[12] or immediately and voluntarily destroyed/clawed back years ago when Flour asserted privileged.[13] Although Fluor points out that Nix and Payne stole privileged documents rather than inadvertently disclosing them, while not controlling here, the Court notes that Rule 502(b), Fed. R. Evid., addresses inadvertent disclosures of attorney-client privilege and work product, which provides in pertinent part that the privilege is not waived and directs the parties to follow the remedies found in Rule 26(b)(5)B), Fed. R. Civ. P. Accordingly, Rule 26(b) requires a receiving party to "promptly return, sequester,

---

[10] At the hearing, Fluor contended that allegations regarding "pre-PMSA maximo adjustments" and "issuing lost materials to work orders" were absent in Relators and Nix's original complaints (filed February 2013 to August 2016), Fluor alleges Nix then provided the DOJ and DOD SIGAR privileged Fluor documents (on September 13, 2013, November 12, 2013, and May 10, 2014), and that it learned in July 2017 that Payne had also disclosed privilege documents to the government, and, subsequently, allegations regarding "pre-PMSA maximo adjustments" and "issuing lost materials to work orders" were added to Relators' complaints in October of 2018 and April 2019. Fluor relies on this timeline as circumstantial evidence that Relators' used Fluor's privileged documents to develop their allegations against Fluor.

[11] Relators contend that Nix Privilege log entries 2-29 are not privileged, as they were created in routine work rather than at the direction of counsel. (DE 311, pp. 35-41.)

[12] Relators state that the Government investigative team did not review the documents in Payne Privilege log entries 2-16. (DE 311, p. 34.) Accordingly, Relators contend, they "never used or relied on any of those 15 documents, because the Government never saw them, let alone shared them." (Id.)

[13] Relators contend Nix's counsel destroyed all the Nix documents after Fluor asserted privilege over them and confirmed the destruction of those documents to Fluor by letter. (DE 311, p. 17.)

or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified . . . ." While Nix and Payne's action *may* not fall under Rule 26(b) the Relators' receipt of the same does. Nevertheless, Fluor has not demonstrated that the Relators have not complied with Rule 26(b)(5)(B) after notice; therefore, invasion of Relators' (and the Government's) privilege is not an appropriate remedy.

In addition, Relators point to the documents and evidence they did rely on (none of which were part of the Nix and Payne documents) when developing their allegations regarding "pre-PMSA maximo adjustments" and "issuing lost materials to work orders." (See DE 367-1, Relators' Post-Hearing Supplement.)[14] For example, Relators point to documents that illustrate Relators Shepard, Rude, and Dillard had independent, personal knowledge of factual allegations concerning completed or closed work orders before the privileged Materials Management Investigation even occurred.[15] (DE 367-1, ¶¶ 17-18.)

Although Fluor's timeline of events shows it is theoretically possible that the Nix and Payne documents were disseminated to and used by Relators to amend their complaint, Relators have put forth a "satisfactory explanation" as to how they developed the allegations regarding

---

[14] Relators have filed a Motion for leave to submit a post-hearing supplement to their Opposition to Fluor's Motion to Compel the production of the Government and Relators' attorney client and work product privileged documents and communications (DE 367). Fluor has filed a Response in Opposition to the Relators' Motion (DE 370) and Relators have filed a Reply (DE 373). The Court grants Relators' motion and will consider the additional information and argument raised by the parties in the aforementioned filings to include the Notice of Filing by the United States (DE 366).

[15] Fluor's contention that the documents Relators rely on were not produced to them until after the Amended Complaint was filed, and therefore, could not have been the basis for their amended allegations (DE 370, p. 2) is misguided. Relators plausibly show that the documents they relied on demonstrate Relators had personal, contemporaneous knowledge of the facts in the allegations at issue. (DE 367-1, p. 7, n 1.) In response, Fluor contends that if Relators knew of these factual allegations, the FCA contains provisions that compelled them to include those allegations in their original complaint. (DE 370, p. 3, n, 4.) However, the Court declines to engage in this hypothetical supposition to decide whether the Relators relied on the Nix and Payne Documents to develop the allegations at issue in their Amended Complaint.

"pre-PMSA maximo adjustments" and "issuing lost materials to work orders" without using the Nix and Payne Documents. In re Grand Jury Proc., Thursday Special Grand Jury Sept. Term, 1991, 33 F.3d at 352. Furthermore, Defendants' theory requires an additional circumstantial assumption that some of the privileged material Nix disseminated to the *government* was also shared with Relators' counsel and used by Relators' counsel, an allegation that has been denied by both the government and Relators' counsel with circumstantial evidence to support their position. See supra note 12. Therefore, Relators have adequately rebutted Fluor's prima facia case that Relators' counsel was aware of, or a knowing participant in, the wrongful use of privileged information to develop Relators' amended complaint.[16] See In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004, 401 F.3d at 251. Accordingly, an invasion of Relators' counsel's attorney work product privilege would be inappropriate and unjustified.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Fluor's Motion to Compel (DE 296) "targeted discovery [to include privileged materials under the crime-fraud exception] regarding the issue of [Plaintiff-Relators'] potential receipt and use of Fluor's attorney-client privileged information and protected attorney work product[,]" regarding the distribution and use of Fluor materials as provided herein.

---

[16] Additionally, Relators have stated no communications exist regarding "the use" of any Nix and Payne Documents by Relators in the development of their allegations. (DE 311, p. 44.) However, to the extent Relators have not formally responded to Defendants' discovery requests on this issue, they are compelled to do so for the record. Whether any such communication occurred or did not occur is a fact not protected by privilege. See Upjohn Co. v. United States, 449 U.S. 383, 395–96 ("[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing.").

**IT IS SO ORDERED**.

                                            Joseph Dawson, III
                                            United States District Judge

June 23, 2023
Florence, South Carolina