# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| United States of America, *ex rel.* Charles R. Shepherd; Danny V. Rude; Robert Scott Dillard; Rickey Mackey, | C/A NO. 6:13-cv-02428-JD |
| Plaintiff-Relators, | |
| v. | **ORDER** |
| Fluor Corporation, Inc.; Fluor Intercontinental, Inc., | |
| Defendants. | |

This is a False Claims Act ("FCA") case. Defendants Fluor Corporation, Inc. and Fluor Intercontinental, Inc. (collectively, "Fluor") have moved to compel. (DE 420.) Relators Charles R. Shepherd, Danny V. Rude, Robert S. Dillard, and Rickey Mackey ("Relators") have responded in opposition to the motion to compel (DE 435). The United States of America ("the Government") has also responded in opposition (DE 434). Fluor has replied to those responses (DE 441).[1] For the reasons below, the Court denies Fluor's motion to compel.

## I. BACKGROUND

The Court supplements this case's history (recounted elsewhere[2]) with the following summary. Fluor believes two former employees named Nix and Payne

---

[1] Relators have moved to file a sur-reply to Fluor's motion to compel (DE 443), which was an exhibit. (DE 443-1). The motion is granted, and the Court has reviewed it as part of its analysis.

[2] For a fuller history of the case, see the Court's prior orders. (DE 379; DE 461.)

1

improperly took certain of Fluor's privileged documents ("Nix and Payne Documents"). (*See* DE 420-1 at 10.) Those materials were shared with Relators (and the United States), and Fluor believes Relators are inappropriately using those materials in the allegations of the operative pleading in this case.[3] (*See id.* at 420-3 at 2.) Fluor seeks to defend this lawsuit through discovery of the contours of this purported theft.[4]

However, on June 23, 2023, after a hearing, the Court rejected Fluor's contention that the crime-fraud exception to the attorney-client privilege applied to certain of Relators' materials ("C-FE Order"). (DE 379.) Nonetheless—and relevant here—the Court required Relators to respond to Fluor's interrogatory "regarding the *receipt* of the Nix and Payne Documents," among other discovery requests. (*See id.* at 8 n.8; *see also id.* at 9.)

In their compelled response, Relators admitted that they possessed the Nix and Payne Documents before the amended complaint was filed. (DE 420-2 at 9–10.) This response prompted Fluor's motion to compel Relators' FCA disclosure statements.[5] (DE 420-1 at 8.) The response also indirectly supports Fluor's other

---

[3] The Complaint has been amended since the asserted malfeasance. (*See* DE 121 (second amended complaint).) However, the allegations about which Fluor protests are still therein. These allegations deal with "'[P]re-PMSA [M]aximo [A]djustments' and '[I]ssuing [L]ost [M]aterials to [W]ork [O]rders." (DE 369 at 13 (first quoting DE 367-1 at 4, then quoting *id.* at 8).)

[4] Counsel for Fluor explained that, depending on the scope of malfeasance, it intends to seek "disqualification of [Relators'] counsel, to dismissal of counsel in the complaint, [or] dismissal of the complaint in the case as a whole," as warranted. (DE 82 at 12 (Tr. 12:19–24 (Mr. Margolis).)

[5] Specifically, Fluor seeks the "disclosure statements Relators submitted to the government pursuant to 31 U.S.C. § 3730(b)(2) when they first filed their respective *qui tam* actions against Fluor." (DE 420 at 2.)

request: Fluor asserts that it "learned" from the response and resulting conferrals that Relators had not logged certain of their assertions of privilege. (DE 420-1 at 13.) And so, Fluor moves to compel Relators to produce certain communications and, where necessary, privilege logs.[6] (*Id.*) These matters now are ripe for adjudication.

## II. STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphases added). Of course, courts must balance "fairness in the disposition of civil litigation" through "knowledge of the relevant facts" via discovery while ensuring "the effective assistance of lawyers, fostered by [] privacy" in communications and development of strategies. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992). Thus, information implicating the second policy requires the discovering party to "show[] that it has [a] substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3), Fed. R. Civ. P.

Rule 37(a)(3), Fed. R. Civ. P., provides that "[a] party seeking discovery may move for an order compelling . . . production[] . . . if: [] a party fails to produce documents . . . []as requested under Rule 34[,] [Fed. R. Civ. P.]. Of course, "[a] motion

---

[6] Specifically, Fluor seeks the "non-privileged communications between or among Relators, Jeffrey Nix, and/or David Payne without their counsel, and a prompt and appropriate privilege log any for such communications (including redacted portions of communications) as to which Relators have a valid privilege or work product claim." (DE 420 at 2.)

3

to compel discovery is addressed to the sound discretion of the district court." *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986).

### III. DISCUSSION

In the light of Relators' compelled response, Fluor asks this Court to compel Relators to produce FCA "disclosure statements submitted to the [United States] by Relators . . . when they first filed their respective *qui tam* suits against Fluor[.]" (DE 420-1 at 6.) And Fluor aims to compel production of "communications between . . . Nix, and/or [] Payne *without their counsel*," including privilege logs, if needed. (*Id.*)

### A.  Fluor May Not Obtain The FCA Disclosures Relators Originally Presented to the Government

Fluor contends that its "substantial need" for otherwise-protected FCA "disclosure statements [is] to discern exactly what Relators *did* rely on[]" in formulating the 2018 amended complaint. (DE 441 at 9.) This is so, Fluor says, because in their compelled response, Relators admitted that "their counsel did, in fact, receive all of the privileged Nix documents before" Relators filed the amended complaint (DE 420-1 at 8 (emphasis deleted)), and Relators have yet to produce documents *proving* Shepherd's or Rude's knowledge of the substance of the allegations in the amended complaint. (*Id.* at 18–19.)

The FCA itself does not address the discoverability of disclosure statements. Though the cases have long disagreed about how FCA disclosures should be treated in discovery, *U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 557 (C.D. Cal. 2003), the prevailing view is that they are discoverable. (*See* DE 434 at 4 (collecting cases).) Of course, the level of protection to which FCA disclosures are entitled as a general

4

matter—whether "fact" or "opinion" work product—is unsettled. *See, e.g.*, *United States ex rel. Calilung v. Ormat Indus., Ltd.*, No. 314CV00325RCJVPC, 2015 WL 13709969, at *2 (D. Nev. Dec. 23, 2015) ("Federal courts disagree as to whether disclosure statements are entirely fact work product, entirely opinion work product, or a combination of the two.").

But the Court need not resolve which bucket Relators' FCA disclosures belong in or order *in camera* review. Even if they were "[f]act work product," Fluor still needed to show "both a substantial need *and* an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (emphasis added and quoting another source). Fluor has not made this showing mainly because Relators' compelled response does not bear the weight Fluor places upon it. So, the Court's conclusion in the C-FE Order that no nefarious activity was shown by Fluor to have involved Relators—and the Court's reasoning on that point—decides this dispute.[7]

Taking the latter points first, the Court first recounts what it resolved already in the C-FE Order:

- First, Relators had to produce materials responsive to five of Fluor's discovery requests "without disclosing the content of privileged communications[]" (DE 379 at 9);

- Second, Fluor made no prima facie showing of Relators' "criminal or fraudulent scheme" sufficient to vitiate the attorney-client privilege regarding assertedly privileged materials (*id.* at 9–10 (quoting *In re Grand Jury Proc. # 5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005)));

---

[7] Plus, as noted below, Fluor could have obtained the substantial equivalent through depositions.

5

- Third, Fluor had offered no "alleg[ation]" of, or evidence to "support[,] . . . any knowledge of the alleged privileged Nix and Payne documents" on behalf of Relators, including how such documents "were attained or used[]"; or that Relators "had any intent to use counsel for any wrongful conduct[]" (*id.* at 11);

- Fourth, even if Relators did have such knowledge, Fluor had "not "demonstrated that the Relators ha[d] not complied with Rule 26(b)(5)(B)[,] [Fed. R. Civ. P.,]" and "therefore, invasion of Relators' . . . privilege is not an appropriate remedy[]" (*id.* at 379 at 13);

- Finally, that "Relators plausibly show that the documents they relied on demonstrate Relators had personal, contemporaneous knowledge of the facts in the allegations at issue." (*id.* at 379 at 13 n.15.)

To be sure, some of these rulings were provisional, and all were made in the context of a different discovery dispute. But chief among them for now is the Court's observation that "Relators' receipt of" the Nix and Payne Documents would "fall under Rule 26(b)[,] [Fed. R. Civ. P.]" (DE 379 at 13), such that *even supposing* Relators *had* these materials—i.e., in a counterfactual world that has become reality—"Fluor has not demonstrated" Relators' failure to abide by "Rule 26(b)(5)(B) after [Relators received] notice[.]" (*Id.*) This is after Fluor had every incentive to carry its burden to make a prima facie showing of Relators' use of the Nix and Payne Documents; but it did not. (DE 379 at 9.) Fluor must further squint to ignore the Court's conclusion that even if Fluor had made a prima facie showing, Relators would have carried their burden of persuasion because they proffered a satisfactory explanation for retaining their privilege. (*Id.* at 13–14.)

Relators' compelled disclosure must be evaluated in light of the Court's reasoning on that point. *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 419 (2024) (Gorsuch, J., concurring) (noting that in addition to "[a]n opinion's

6

holding [] the reasoning essential to it . . . merit[s] careful attention."). The disclosure merely puts on the record that Relators had the Nix and Payne Documents at one point.[8] But the unredacted attachments show Relators knew of the substance of the materials as of the amendment to the complaint and that they entered into a sharing agreement. Emails sent well before 2018 show at least Shepherd's knowledge of, and concerns about, re-opening work orders. What's more, a second batch of correspondence includes knowledge of the PMSA adjustments at the relevant time.

To this, Fluor makes two responses. First, these materials were produced by Fluor, *not* Relators. Thus, they do nothing to alleviate Fluor's concern that Relators profited from Nix and Payne's alleged pilferage. (DE 441 at 9–10.) Second, these emails and the amended complaint have conceptual gaps on the substance of the complaints and who knew what. (*Id.* at 10–12.) But these arguments ignore that in 2021 (four years ago), this Court "gave everybody permission to conduct discovery into this particular privilege[] fight to gather whatever additional information they felt they needed . . . ." (DE 369 (Tr. 82:9–12 (Mr. Swaminathan)); *see* DE 247.) That portion of discovery concluded, and the Court ruled on what it revealed in the C-FE Order of June 2023. The fact that Relators support their arguments with emails produced by Fluor does not change what the emails suggest, which is contemporaneous knowledge of the basis for Relators' allegations at the relevant time. And because Fluor must show a *substantial* need, quibbles about the merits of

---

[8]     Fluor apparently knew that certain information—including the Nix and Payne Documents—was shared well before. (*See* DE 296-1 at 14; DE 443 at 4.)

these emails cannot surmount its burden.[9] (DE 420-1 at 20 n. 11.) Ultimately, such arguments are insufficient to forestall a merits resolution to this case. *Cf. Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 757 n.4 (1980) ("The glacial pace of much litigation breeds frustration with the federal courts and, ultimately, disrespect for the law.").

In any event, the Court would still consider whether "other means of discovery are inadequate." *Ormat Indus., Ltd.*, 2015 WL 13709969, at *4. Fluor has not shown that other available discovery is inadequate, especially given Fluor's long delay in requesting these materials. On that point, even assuming timeliness under the Local Rules of this Court, Fluor's justification for not seeking the disclosure statements before "sworn, written confirmation" of the fact simply proves too much. (DE 441 at 35.) After all, this Court permitted further discovery when Fluor only "[s]uspect[ed] that Relators *may* have had *some* of the documents" (*id.*); and it bears noting that every single case Fluor relies on to argue it is entitled to FCA disclosures was decided as of June 2023. Fluor's able counsel could have sought such information via deposition.

Thus, Fluor's motion to compel the production of the FCA disclosure statements must be denied.

---

[9]     Notably, even if the Court concluded Fluor's arguments showed substantial need and *even if* Relators' disclosures showed exactly what Fluor hopes they do, it would only "demonstrat[e] a negative[] . . . ." (DE 434 at 6.)

**B.     Fluor May Not Obtain the Communications Between Nix and Payne Without Counsel Because of Its Untimeliness**

Fluor contends next that Relators have "categorically withh[e]ld from production" communications by and between Relators "without counsel included," and have done so "without privilege logging" anything. (DE 420-1 at 24 (emphasis deleted).) Fluor purports that it discovered this "upon review of Relators' supplemental responses to Interrogatory No. 5 and during the subsequent meet and confer process . . . ." (*Id*. at 13.) Relators respond that Fluor is untimely in its motion to compel such information (DE 435 at 23), but even if not, these materials are protected under the "common interest privilege." (*Id*. at 26.)

Fluor correctly observes that the common-interest privilege does not create a privilege of its own force. *See In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990) (explaining that "the joint defense or common interest rule presupposes the existence of an otherwise valid privilege"). Instead, to assert this derivative rule, a privilege must be shown, *id*. at 249 n.\*\*, and "[t]he burden of establishing that [a] privilege applies is on its proponent." *In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 256 (4th Cir. 2023).

The core problem here is that the Court has not had the opportunity to consider whether Relators have established any privilege at the appropriate time. And this is because the parties have not timely brought this issue before the Court. Rule 83 of the Federal Rules of Civil Procedure permits district courts of the United States to "adopt . . . rules governing [their] practice." Accordingly, the Local Rules established by this Court provide a twenty-one-day time window for matters to be addressed

9

before moving to compel discovery. Rule 37.01, Loc. Civil Rule (D.S.C.) That time is tolled so long as the parties are "actively engaged in attempts to resolve the discovery dispute" up to thirty days before the discovery deadline. *Id.* 37.01(A).

Here, Relators plainly and unambiguously asserted to Fluor in *2021* that they were declining not only to *produce* certain materials (DE 435-26 at 3 (February 2021); DE 435-25 at 3 (November 2020)), but even to *log* them. (DE 435-26 at 3 (explaining in February 2021 that Relators were "not [going to] produce *or log* communications among Relators, their counsel, or Nix and Payne").) Such a written response to Fluor's discovery requests—and, as to declination to produce, it was made at least twice—seems difficult to square with establishment of the predicate privilege(s) "the common way," which is to say, by a privilege log. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D. Md. 2008) (Grimm, J.); *see* Rule 26(b)(5)(A), Fed. R. Civ. P.

There is no credible argument that this entire time the parties have been actively engaged in discussions to resolve this dispute. Under the Local Rules, the time to address Relators' apparent declination to log such communications is *not* in a motion to compel two years removed from when Relators put Fluor on notice of the fact. As the Fifth Circuit has noted, "[a]dherence to reasonable deadlines is critical to restoring integrity in court proceedings." *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990); *cf. Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756–57 (7th Cir. 1994) (affirming denial of sanctions on district court's finding that "years earlier" and "long before trial" plaintiff "clearly possessed information indicating that defendant's

10

discovery responses were incomplete"). Thus, Fluor's untimely motion to compel these privilege logs must be denied.

The result of applying this Court's Local Rules as written—which is denying Fluor's motion—may appear disproportionate. But it is not. First, there has been substantial discovery already. (*See, e.g.*, DE 369 at 35 ("[Fluor] produced large volumes of documents, millions upon millions of documents in response to various document requests." (Tr. 35:9–11, Mr. Margolis); *id.* at 82 ("Fluor has access to all, all the million something emails that Mr. Nix, Mr. Payne, Mr. Shepherd, Mr. Rude, Mr. Dillard, Mr. Mackey, all these people were sending to, from, and among each other." (Tr. 82:3–6, Mr. Swaminathan); *cf.* DE 396-1 at 25 n. 8 (explaining "the costs to defend a case of this magnitude are substantial, running to tens of millions of dollars").) In fact, as noted *supra*, discovery here even included a special order permitting additional discovery on privilege—the very locus of Fluor's desired relief. (*See* DE 247 (permitting limited discovery "regarding the dissemination and use of documents" of assertedly privileged documents of Fluor's).) And the Court twice has now been presented with and ruled on the very issue of privilege, despite the parties' admirable restraint in presenting their disputes to the Court. Of course, there may well be more such disputes. (DE 462-1 at 9 (explaining that "[t]here will be more for the Court to consider if the case continues to progress, including resolution of discovery disputes, [and] *Daubert* motions[]"); DE 435 at 28 n.5 (explaining that another related issue of retention "is the subject of ongoing conferrals, and not yet ripe for adjudication").

11

Second, under the Local Rules, there is no reasonable basis to depart from "a strict interpretation of Local Civil Rule 37.01" given the extreme delay. *United Prop. & Cas. Ins. v. Couture*, No. 2:19-CV-01856-DCN, 2020 WL 2319086, at *3 (D.S.C. May 11, 2020). Fluor does not assert that it learned that Relators' privilege was "invoked invalidly" here. *Brown v. Lexington Cnty.*, No. CV 3:17-1426-MBS, 2021 WL 2949813, at *8 (D.S.C. July 14, 2021). Instead, Fluor argues Relators' February 2021 statement was "ambiguous" and unclear (DE 420-1 at 30); that Relators have been inconsistent in their own conduct (*see id.* at 31–32; DE 441 at 22–23); and that the Court should consider the merits of their position anyway. (DE 420-1 at 33–34.) As explained above, Relators' statement is neither ambiguous nor unclear. But even if the Court were to agree that these arguments were "an acceptable explanation for [the motion's] tardiness," *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002), the Court is not persuaded by the merits of Fluor's position.

Assuming the Court were to order production, vet Relators' assertion of privilege for each communication, and conclude privilege or protection exists—which Fluor naturally will dispute (*see, e.g.*, DE 420-1 at 8 ("Communications among non-lawyers are not presumptively privileged, nor are they presumptively protected as work product."); *id.* at 26 (signaling that "[i]f a document is not privileged under these rules, the common-interest doctrine is irrelevant"))—the common-interest doctrine may yet apply to Relators' withheld materials. That doctrine "focuses . . . on the circumstances surrounding the disclosure of privileged documents to a jointly interested third party." *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*,

12

902 F.2d at 249. Here, Relators have explained those circumstances. Namely, that "[t]he *only* communications among Relators and Nix and Payne that have *not* been produced are those communications that are clearly privileged: *communications that occurred after* [these parties] *separately retained counsel, filed a lawsuit, and entered into a joint prosecution and sharing agreement* under the Government's direction . . . ." (DE 435 at 22 (emphases added).) The Court recognizes that Relators have offered only their say-so on this fact, albeit backstopped by Rule 11, Fed. R. Civ. P. But Fluor's nearly two-year delay in bringing this issue to the Court's attention outweighs this concern. And so, on these facts, Relators' description of its privilege is sufficient.[10] *Cf. Collins & Aikman Corp. v. J. P. Stevens & Co.*, 51 F.R.D. 219, 221 (D.S.C. 1971) (relying "upon the good faith" of a subpoena recipient in categorizing substantiality of its objections).

When discovery is extremely voluminous and complex and the disputed issues seemingly infinite, the parties must proceed with due speed yet must do so deliberately. The rules of litigation exist to promote these aims. *See* Rule 1, Fed. R. Civ. P. (explaining that the Rules of Civil Procedure are to be "construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." (emphasis added)). As Judge Boudin explained, "[t]he reason for the rules is not that litigation is a game, like golf, with arbitrary rules to test the skill of the players. Rather, litigation is a

---

[10] An additional reason to decline Fluor's invitation is that to grant an exception under these circumstances would be unfair to litigants whose failure—often by far less than two years—is unexcused.

'winnowing process,' and the procedures for preserving or waiving issues are part of the machinery by which courts narrow what remains to be decided." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 531 (1st Cir. 1993) (citation omitted).

Thus, Fluor's motion to compel the production of communications between Relators without counsel included must be denied.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants Fluor Corporation, Inc. and Fluor Intercontinental, Inc.'s Motion to Compel (DE 420).

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

March 31, 2025
Florence, South Carolina