**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| United States of America, *ex rel.* Charles R. Shepherd, Danny V. Rude, Robert Scott Dillard, And Rickey Mackey<br><br>Plaintiff-Relators,<br><br>v.<br><br>Fluor Corporation, Inc., and Fluor Intercontinental, Inc.,<br><br>Defendants. | Case Number: 6:13-02428-JD<br><br>Honorable Joseph Dawson, III<br><br>JURY TRIAL DEMANDED |

## RELATORS' MOTIONS IN LIMINE 1-19

Jon Loevy
Mike Kanovitz
Daniel Twetten
Anand Swaminathan
Frank Newell
Anna Dover
Gwen Parker
Heather Sticht
Dominique Gilbert
**LOEVY & LOEVY**
311 N. Aberdeen St., Third Floor
Chicago, IL 60607
Telephone: (312) 243-5900
Facsimile: (312) 243-5902
dan@loevy.com
anand@loevy.com

Frank L. Eppes
**EPPES & PLUMBLEE, PA**
PO Box 10066
Greenville, SC 29603
Telephone: (864) 235-2600
Facsimile: (864) 235-4600
feppes@eppesandplumblee.com

Judah N. VanSyckel
**Saluda Law, LLC**
137 E. Butler Street
Lexington, SC 29072
Telephone: (803) 939-6927
Facsimile: (803) 902-8004
judah@saludalaw.com

Richard Harpootlian
**RICHARD A. HARPOOTLIAN P.A.**
1410 Laurel Street – P.O. Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810
rah@harpootlianlaw.com

## <u>TABLE OF CONTENTS</u>

LEGAL STANDARD ............................................................................................................ 1

MOTIONS ........................................................................................................................... 2

I.     Bar Any Argument, Evidence or Reference to the Government's Decision Not to Intervene, and Lack of Criminal Prosecution ........................................................ 2

II.    Bar Any Argument, Evidence or Reference to the Awarding of Damages Multipliers and Statutory Penalties Under the False Claims Act ........................................... 6

III.   Bar Any Argument, Evidence or Reference to Counsel's Ability to Recover Attorneys' Fees, Costs and Expenses under the FCA, and Relators' Fee and Sharing Agreements with Counsel and Co-Relators .......... 7

IV.   Bar Any Argument, Evidence or Reference to Whether Other Contractors (Not Fluor) Obtained Award Fees Relating to Different Contracts, or Other Evidence That Would Require Mini-Trials About Other Contractors' Performance ............................................. 9

V.    Bar Duplicative and Cumulative Expert Testimony from Multiple Experts from Same Opinions .................................................................................................... 12

VI.   Bar Fluor From Any Offensive Use of the 2013 Inventory Adjustment Analysis or 2014 DODIG Disclosure Based on Fluor's Assertion of Privilege Over the Underlying "Material Management Investigation" .............................................. 17

VII.  Bar Any Testimony Prohibited by *Touhy* Regulations and Any Arguments About Such Testimony or Lack Thereof ............................................................... 20

VIII. Bar Any Testimony, Evidence, or Argument About Lack of Mission Failure ................ 22

IX.   Bar Any Testimony, Evidence, or Argument that is Contrary to Fluor's Sworn Interrogatory Responses ................................................................................. 25

X.    Bar Any Testimony, Evidence, or Argument about Dismissal of Claims at Summary Judgment ...................................................................................................... 27

XI.   Bar Any Testimony, Evidence, or Argument about Dillard's Retaliation Claim ............ 28

XII.  Bar Any Argument, Evidence or Reference to Fluor Counsel's Trip to Afghanistan as Part of Their Representation of Fluor in this Matter ......................................... 28

XIII. Bar Any Argument, Evidence or Reference to Relators as "Bounty Hunters" or Other Disparaging Terms, or To Relators Not Having Been Personally Damaged by Fluor's Fraudulent Conduct .................................................................................... 29

XIV. Bar Reference to Out-Of-Town Attorneys // Bar any references to the fact that Relators' attorneys are from out of town ........................................................................... 31

XV. Bar Argument, Evidence or Reference to Settlement Discussions, or Demand, in This Matter ........................................................................................................................ 31

XVI. Bar Evidence, Argument or Testimony About Purported Bad Acts of Relators or Former Fluor Employees Who Signed Declarations In This Matter ............................... 32

XVII. Bar Any Argument, Evidence or Reference to Documents that Fluor Did Not Produce in Discovery ........................................................................................................................ 33

XVIII. Bar Any Argument, Evidence or Reference to Fluor's Good Reputation or Corporate Citizenship .......................................................................................................................... 34

XIX. Bar Implications or Suggestions of Impropriety in Counsel Paying Travel Expenses of Non-Local Witnesses ......................................................................................................... 35

CONCLUSION .................................................................................................................. 35

## LEGAL STANDARD

Motions *in limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Mancilla v. Chesapeake Outdoor Servs., LLC*, No. 1:22-CV-00032-JMC, 2024 WL 361328, at *1 (D. Md. Jan. 31, 2024) (citation omitted). The *in limine* motion then fosters efficiency for the court and for counsel by preventing needless arguments at trial. *Tailored Chem. Prods., Inc. v. DAFCO Inc.*, No. 521CV00069KDBSCR, 2023 WL 5944162, at *1 (W.D.N.C. Sept. 12, 2023) (motions *in limine* "help to streamline a case by allowing a court to avoid "lengthy argument at, or interruption of, the trial.").

Through motions *in limine*, the Court also fulfills its duty to shield the jury from unfairly prejudicial or irrelevant evidence. *See Brightview Grp., LP v. Teeters*, No. CV SAG-19-2774, 2022 WL 846208, at *9 (D. Md. Mar. 22, 2022) ("motions *in limine* are properly employed to exclude prejudicial evidence and narrow the scope of evidentiary issues to be determined at trial"); *see also United States v. Cone*, 714 F.3d 197, 225 (4th Cir. 2013) (Wynn, J. concurring) ("the policy underlying motions *in limine* . . . is to allow a party to exclude from consideration of the jury a prejudicial matter without drawing attention to the matter by having to contemporaneously object to it.") (citing Jeffrey F. Ghent, Annotation, *Modern Status of Rules as to Use of Motion In Limine or Similar Preliminary Motion to Secure Exclusion of Prejudicial Evidence or Reference to Prejudicial Matters*, 63 A.L.R.3d 311 § 1(a) (1975)).

The district court is given wide latitude in determining what should be allowed into evidence. *See Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013) (the appellate standard of review for a district court's motion *in limine* ruling is "abuse of discretion."); *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012) (the district court has "broad discretion" to grant or deny motions *in limine*); *see also United States v.*

*Smith*, 452 F.3d 323, 332 (4th Cir. 2006) ("Questions of trial management are quintessentially the province of the district courts.").

## MOTIONS

### I.     Bar Any Argument, Evidence or Reference to the Government's Decision Not to Intervene, and Lack of Criminal Prosecution

The Court should exclude any argument, evidence or other references to the Government's decision not to intervene in this False Claims Act case, or to the lack of criminal prosecution for the conduct at issue. It is well-established that such evidence is irrelevant and unduly prejudicial at trial in qui tam cases. There is no justification to depart from that rule here.

"Because the [G]overnment may have a host of reasons for not pursuing a [FCA] claim, courts do not assume that in each instance . . . it does so because it considers the evidence of wrongdoing insufficient or the qui tam relator's allegations [of] fraud to be without merit." *United States ex rel. Feldman v. Van Gorp*, 2010 WL 2911606, at *2, (S.D.N.Y. July 8, 2010) (quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006) (internal quotations omitted). Indeed, "the plain language of the [FCA] clearly anticipates that even after the Attorney General has 'diligently' investigated a violation [of the FCA], the Government will not necessarily pursue all meritorious claims." *United States ex rel. Berge v. Bd. of Trustees*, 104 F. 3d 1453, 1458 (4th Cir. 1997).

Given the clear purpose of the FCA, and that the Government's decision not to intervene is not an indication as to the merits, it is, at a minimum, irrelevant. *See, e.g., United States ex rel. Ubl v. IIF Data Sols.*, 650 F.3d 445, 457 (4th Cir. 2011) ("The government's decision not to intervene in an FCA action does not mean that the government believes the claims are without merit . . . therefore [it] is not relevant in an FCA action brought by a private party."); *Thompson v. Quorum Health Res., LLC*, No. 1:06-CV-168, 2010 WL 234801, at *4 (W.D. Ky. Jan. 13,

2

2010) (excluding evidence of government's decision not to intervene as irrelevant); *United States ex rel. Feldman v. van Gorp*, No. 03 Civ. 8135 (WHP), 2010 WL 2911606, at *2-3 (S.D.N.Y. July 8, 2010) (granting motion *in limine* to exclude evidence of government's decision not to intervene as irrelevant; *United States ex rel. El-Almin v. George Washington Univ.*, 533 F. Supp. 2d 12, 20 (D.D.C. 2008) ("Evidence showing the government decided not to intervene in the Relators' case is not relevant because there is no evidence linking the government's nonintervention with its actual motivation for doing so."); *cf.* Robin Page West, *Advising the Qui Tam Whistleblower*, 2nd Edition, American Bar Association, 51 (2009) (noting DOJ is less likely to intervene where "the relator's counsel has the perceived ability to litigate the case satisfactorily on its own").

At the same time, arguments or evidence that the Government conducted a years-long investigation, and that the Government ultimately decided not to intervene "would be highly prejudicial in that it could allow the jury to draw the inference that Relators' claim [is] substantively weak." *United States ex rel. Savage v. CH2M Hill Plateau Remediation Co.*, No. 4:14-cv-05002-SMJ, 2021 WL 802125, at *2 (E.D. Wash. Jan. 11, 2021) (quoting *United States ex rel. Kiro v. Jiaherb, Inc.*, 2019 WL 2869186, at *2 (C.D. Cal. July 3, 2019)). But that is for the jury to decide based on the evidence; not based on false and improper speculation about the reasons for the Government's decision not to intervene. Especially where, as here, the Government has continued to stay actively involved in this matter, appearing at hearings and actively supporting Relators' arguments at various stages of the litigation. *See, e.g.*, Dkts. 136, 411, 434 (statements of interest supporting Relators).

Relatedly, at times in this litigation Fluor has asked leading questions of witnesses referencing the Government's investigation and decision not to intervene in an effort to deflect

the blow of the contemporaneous communications indicating fraud. For example, in the deposition of Storme Guaraldi, the DCMA Theater Contract Officer, Fluor tried to use the Government's decision not to intervene in 2019 as evidence that its 2014 disclosure to the Department of Defense Inspector General was true and accurate. Fluor's counsel insisted in her questions that the Government "clos[ed] this matter without taking any action against Fluor" after a "multiyear investigation into these issues." Ex. 1 at 623:24-624:19.  This is a wholly improper use of the Government's non-intervention decision, for the reasons discussed above. It attempts to imply that the Government's non-intervention decision had to do with the merits of the fraud allegations, which is untrue; and in doing so substitute (a false version of) the Government's determination for the jury's own assessment of the evidence. In addition, this example is made even worse by the total lack of foundation for such a question. There is no evidence that the DOD-IG conducted any audit or investigation into Fluor's 2014 DOD-IG disclosure, or that it issued any finding or report absolving Fluor, and indeed Fluor's counsel never presented Ms. Guaraldi with any exhibit supporting counsel's insinuation. In fact, Fluor has not presented any evidence supporting counsel's assertion in its lengthy expert reports, or included such a document on its exhibit list. In other words, in addition to the other admissibility issues above, there is also no foundation or basis for counsel to present this type of argument or innuendo to the jury. It should be barred from doing so, including through these sorts of leading questions.

If Fluor were permitted to present evidence or argument about the Government's decision not to intervene, then Relators would have to be permitted to present evidence about why the Government made that decision, and about why the same Government investigation resulted in the Government's decision to permit Relators to continue to prosecute the case on the

Government's behalf (rather than seek dismissal of the case for lack of merit). But all of this would be an unnecessary and improper sideshow, and should be barred on both sides.

For these reasons, even if there were any relevance to the Government's decision not to intervene (there is not[1]), it would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury." Fed. R. Evid. 403; *Kiro*, 2019 WL 2869186, at *2 ("[E]vidence [of the Government's non-intervention] is irrelevant and would be highly prejudicial.").

Similarly, the Court should bar any reference to the lack of criminal prosecution in this matter. As stated in a recent False Claims Act case in this district, *United States ex rel. Lutz*, 9:14 Civ. 230-RMG (D.S.C. Nov, 20, 2017), granting a similar motion in limine, the court stated as follows:

> In the Fourth Circuit, evidence of lack of prosecution or acquittal "is not admissible in a civil action that involves the same or similar circumstances as those involved in the underlying criminal case," Stalnaker v. City of Charleston, 934 F .2d 320, 320 (4th Cir. 1991), in part because "a prosecutor's decision not to prosecute and a jury's decision to acquit in a criminal trial are based on different criteria than apply in a civil proceeding," *Rabon v. Great Sw. Fire Ins. Co.*, 818 F.2d 306, 309 (4th Cir. 1987). For example, when determining whether to file a criminal case, a prosecutor will consider many factors that do not apply in civil suits, such as the higher standard of proof required for civil cases. Rabon, 818 F.2d at 309. Evidence of non-prosecution "goes directly to the principal issue before the jury and is highly prejudicial" such that admitting evidence of a civil defendant's non-prosecution for the conduct alleged in the civil case is "reversible error" and "by itself would require a new trial." Id. at 309-10.

*Lutz*, Dkt. 736, attached as Ex.2 .

---

[1] *See United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 5 F.4th 315, 346 (3d Cir. 2021) (calling argument that DOJ nonintervention undermines materiality a "*trompe l'œil,*" *i.e.*, deceptive); *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 836 (6th Cir. 2018) ("If relators' ability to plead sufficiently the element of materiality were stymied by the government's choice not to intervene, this would undermine the purposes of the Act.").

For these reasons, the Court should bar Fluor from presenting any argument, evidence or other references to the Government's decision not to intervene in this False Claims Act case, or the lack of criminal prosecution.

## II.    Bar Any Argument, Evidence or Reference to the Awarding of Damages Multipliers and Statutory Penalties Under the False Claims Act

Under well-settled legal principles, the Court should exclude any argument, evidence or other references to the imposition of double damages (for backpay on retaliation claims), treble damages (for False Claims Act violations), and statutory penalties (and the amount of those penalties) under the False Claims Act case, because such evidence is irrelevant, and highly prejudicial. *See* Fed. R. Evid. 401, 403. Such evidence is inadmissible because it is the sole job of the jury "to determine the number of violations and fix the amount of actual damages, if any." *United States ex rel. Scutellaro v. Capitol Supply, Inc.*, 2017 WL 9889370, at *1 (D.D.C. Sept. 20, 2017) (collecting authorities).

Even Defendants presumably do not disagree. Courts routinely exclude such evidence because "there is a risk that a jury could use knowledge of the trebling of damages and statutory penalties 'as an invitation to keep the damages at a low level, in view of the fact that the amount allowed by the jury would be multiplied by three.'" *Id.*; *United States ex rel. Raven v. Ga. Cancer Specialists, P.C.*, 2021 WL 4080863, at *4 (N.D. Ga. Mar. 30, 2021) (granting "motion to exclude any evidence of . . .  the fact that the False Claims Act provides for treble damages and penalties for each false claim"); *United States ex rel. Savage v. CH2M Hill Plateau Remediation Co.*, No. 4:14-cv-05002-SMJ, 2021 WL 802125, at *1-2 (E.D. Wash. Jan. 11, 2021) (same); *see also Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 131-32 (2003) ("if [a jury] finds liability, its instruction is to return a verdict for actual damages, for which the court alone then determines any multiplier, just as the court alone sets any separate penalty"). As one

6

court explained in granting a motion to exclude such evidence, "a jury should not be put in a position where it has the temptation or the opportunity to tinker with the statutorily prescribed scheme." *United States ex rel. Miller v. Bill Harbert Int'l Constr.*, 2007 WL 851868, at *1-2 (D.D.C. Mar. 14, 2007); see also *United States ex rel. Lutz v. BlueWave Healthcare Consultants, Inc.*, 9:14-cv-00230-RMG, Dkt. 736 at 3, attached as Ex. 2 (D.S.C. Nov. 20, 2017) (J. Gergel) (prohibiting such references in an FCA case) (citations and quotation marks omitted).

Again, the Court should bar such evidence because it is irrelevant, and unfairly prejudicial.

### III.    Bar Any Argument, Evidence or Reference to Counsel's Ability to Recover Attorneys' Fees, Costs and Expenses under the FCA, and Relators' Fee and Sharing Agreements with Counsel and Co-Relators

The Court should also exclude any argument, evidence or other references to Counsel's ability to recover attorneys' fees, costs and expenses as permitted under the False Claims Act; and to Relators' fee agreements with counsel and joint sharing agreement among co-Relators. The presentation of such evidence is routinely barred, as it would be irrelevant and unfairly prejudicial under Fed. R. Evid. 401, 402 and 403.

1. Attorneys' Fees and Costs. For similar reasons discussed above regarding treble damages and statutory penalties, Relators' ability to recover reasonable attorneys' fees, costs and expenses if they prevail is controlled by statute, and "a jury should not be put in a position where it has the temptation or the opportunity to tinker with the statutorily prescribed scheme." *Miller*, 2007 WL 851868, at *1–2. As the Supreme Court explained regarding a similar fee-shifting statute, the statute "controls what the losing defendant must pay [in attorneys' fees]." *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990). Moreover, the amount of such an award of fees and costs is determined by the Court, not a jury. *See* 31 U.S.C. § 3730(d)(2). Because such an award to a prevailing party is not within the purview of the jury, they should not be prejudiced with such

evidence. *See Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, No. 09 C 7891, 2019 WL 1200780, at *4 (N.D. Ill. Mar. 14, 2019) (granting motion to bar such evidence, holding it is "clearly prejudicial to instruct a jury as to the potential for attorneys' fees when it is deciding the merits" of an FCA case).

2. <u>Retainer Agreements And Sharing Agreements.</u> Likewise, the Court should exclude any reference to the existence or terms of Relators' retainer agreement with counsel, and to the sharing agreement among Relators concerning the distribution of any award to Relators in this matter. Any agreements between the relators themselves and/or with their counsel would be irrelevant, only serving to distract the jury from the issues at bar. *See e.g., Tibbs v. Welded Construction, L.P.*, No. 5:19-CV-279, 2021 WL 5240881, at *2 (N.D.W. Va. Aug. 20, 2021) (barring evidence that plaintiff's counsel was retained pursuant to a contingency fee agreement); *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *78 (N.D. Ohio June 4, 2010) (granting plaintiff's motion to exclude references that "impugn the motives of counsel or denigrate the basis for fees," including "any observation that plaintiffs' counsel get paid on a contingent basis"); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-md-2244-K, 2017 WL 9807464, at *3 (N.D. Tex. Sept. 19, 2017) (granting similar motion in limine); *Positive Ions, Inc. v. Ion Media Networks, Inc.*, No. CV06-4296ABC(FFMx), 2007 WL 9701734, at *2 (C.D. Cal. Nov. 7, 2007) (granting plaintiff's motion in limine to exclude all evidence and reference to contingency fee agreements). Indeed, under the FCA, a relator "remains free to distribute his recovery as he sees fit (subject to the lawyer's ethical obligation to charge a reasonable fee) and the matter is of no moment to the United States," or the jury. *United States ex rel. Alderson v. Quorum Health Grp. Inc.*, 171 F. Supp. 2d 1323, 1335 n.35 (M.D. Fla. 2001).

The introduction of such evidence would serve only one purpose: to suggest an improper motive by Relators or their counsel in bringing the lawsuit or seeking a recovery, none of which is a permissible inference given that Congress created this statutory scheme for the express purpose of deliberately incentivizing Relators to come forward through the provision of a relators share of the Government's recovery, and incentivizing experienced attorneys to take such cases through a fee-shifting provision to recover attorneys' fees and costs. *See United States ex rel. Marcus v. Hess,* 317 U.S. 537, 541, n. 5 (1943) ("The FCA's *qui tam* provision is passed upon the theory, based on experience as old as modern civilization, that one of the least expensive and most effective means of preventing frauds on the Treasury is to make the perpetrators of them liable to actions by private persons acting, if you please, under the strong stimulus of personal ill will or the hope of gain."). Questioning on retainer agreements and sharing agreements would also invade Relators' privilege, as these fee arrangements between clients and counsel contain material that is privileged. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 402–03 (4th Cir. 1999) (attorney-client privilege extends to "correspondence, bills, ledgers, statements, and time records [that] reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided"). Indeed, Relators asserted privilege over their sharing agreement, a privilege that Fluor never challenged.

## IV.    Bar Any Argument, Evidence or Reference to Whether Other Contractors (Not Fluor) Obtained Award Fees Relating to Different Contracts, or Other Evidence That Would Require Mini-Trials About Other Contractors' Performance

In Fluor's expert reports and deposition questioning of witnesses, Fluor has suggested that various other LOGCAP contractors (serving bases in other parts of Afghanistan and elsewhere) allegedly performed more poorly than Fluor but supposedly still obtained award fees. This trial is about Fluor and this contract, not other contracts and other contractors, and the trial is already going to be long enough as it is. The Court should exclude any such argument,

evidence or other references to the Government's award fee decisions concerning other LOGCAP contractors, and any other alleged poor performance or misdeeds of other LOGCAP contractors, as a defense of Fluor's own conduct.

First, it is impossibly unfair. If Fluor suggested at trial, for example, that non-Fluor contractor "X" performed badly but still got paid, Plaintiffs would have to try to rebut that. The result would be a ridiculously inappropriate "mini-trial." For example, if Fluor is permitted to assert that DynCorp always obtained award fees for its LOGCAP work in Southern Afghanistan, that is totally meaningless unless one probes the question of how well DynCorp performed, what exactly the DynCorp contract required, how it was scored, and whether there were mitigating factors that justified payment, not to mention what the Government understood about DynCorp's performance versus what DynCorp's actual performance was. This would quickly devolve into a mini-trial on DynCorp's performance on a different contract than the one at issue here. That would be wildly inappropriate. As stated, the trial will already be long enough without litigating whether other contractors performed well enough under other contracts to merit award fees.

Moreover, if Fluor has its way, the problem will multiply out of control. There are many other contractors and contracts. Fluor (primarily through its experts) wants to tell the jury that many of them performed worse than Fluor but still got paid. That is not a subject that was disclosed in discovery, much less tested or the subject of Fluor's document production. There are no witnesses or exhibits on these subjects in the Final Pretrial Order. It is not legitimately part of this trial.

Relators stand committed to making every effort to shorten this trial and call the fewest witnesses possible, but even the streamlined version of this trial will be about four weeks. Adding mini-trials on other contractors' performance would drag this case out for months.

Independently, any mini-trials on other contractors' performance would inevitably be an exercise in speculation and conjecture. The reality is, Fluor produced virtually no discovery on the conduct or performance of other contractors. It issued no subpoenas or Touhy requests for records related to the performance of DynCorp or any other LOGCAP contractor; it has produced no collection of documents or testimony that would allow it to demonstrate any possible relevance (*i.e.*, not just whether they received award fees, but how they performed overall and in the specific areas of relevance in this matter); and it chose not to depose any LOGCAP contractors or Government participants in any other companies' award fee boards.

Fluor thus aspires to introduce this evidence largely through rank speculation and what would effectively be counsel testifying through leading questions full of unsupported assertions and insinuations that this or that contractor performed badly and still got paid. This would confuse the jury and invite them to speculate based on innuendo rather than evidence; the prejudice would far outweigh any possible probative value. Such evidence or argument would thus be improper under Fed. R. Evid. 401, 402 and 403.

The same is true of any other attempts to compare Fluor's performance to other contractors. Ultimately, the issue in this case is whether Fluor engaged in fraud in its performance of the contract. The fact that other contractors performing in other regions of Afghanistan or other parts of the world may have had performance issues of their own, or were also engaged in fraud, is not a valid defense. An everyone-was-doing-it defense is improper. *See Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1047 (4th Cir. 1984) (endorsing the principle that "no one should be exculpated from his own wrongful conduct merely because others are also guilty"). *Aloha Airlines, Inc. v. Civil Aero. Bd.*, 598 F.2d 250, 258 (D.C. Cir. 1979) ("Aloha could not justify a violation of [a statute] by proof that its competitor

also violated that [statute].”); *Consumer Fin. Prot. Bureau v. Navient Corp.*, 2018 WL 2088760, *5-7 (M.D. Pa. May 4, 2018) (explaining that “the actions, inactions, or understandings of other industry participants are not relevant”); *Ashby Farmers Ins. Co. of Or.*, 565 F. Supp. 2d 1188, 1214-15 (D. Or. 2008) (“The defense that ‘everyone did it’ is not an acceptable ground to absolve Defendants from liability”); *see also Kousisis v. United States*, 605 U.S. 114, 162–63 (2025) (Sotomayor, J., concurring) (“It is no answer to suggest that DBE fraud is ‘rampant.’ ‘Lots of people do it’ has never been, nor should be, a defense to criminal liability without more.”) (citations omitted).

For all these reasons, Fluor should be barred from referencing the Government’s award fee decisions concerning other LOGCAP contractors, and any other alleged poor performance or misdeeds of other LOGCAP contractors.

## V.    Bar Duplicative and Cumulative Expert Testimony from Multiple Experts from Same Opinions

By all accounts, this is going to be a long trial. Relators estimate trial will last about a month. Defendants, however, are threatening that it will take up to eight weeks.

Defendants’ over-estimation appears based, at least in part, on their belief that they can call multiple expert witnesses to provide the exact same opinions on the exact same subjects. That strategy should not be allowed.

Specifically, Fluor proffers four purportedly different experts, Mike Hoskin, Renee Richardson, Thomas Ruckdaschel, and Bill Walter–plus a fifth, David Robbins–to render the very same opinion: that Fluor’s alleged failures to follow basic Government-approved property management procedures, and its failures to disclose these deficiencies to the agencies overseeing the contract, would not have mattered to the Government.

12

Moreover, Fluor does not even pretend to address these same subjects from materially different perspectives. Four of these five expert witnesses share essentially the same background: government regulators with impressive resumes who have spent their careers with various Department of Defense agencies: Tom Ruckdaschel spent forty years in "DoD contracting policy with a focus on Government property management" (in his own words), including almost ten years at DCMA; Mike Hoskin spent 25 years at DCMA as a contracting official overseeing military contracting; Renee Richardson spent about two decades as a contracting official, including almost a decade at DCMA and related agencies; and Bill Walter, based on his 40 years of experience, describes himself as "an expert in government contracting." Other than the alphabet soup of DoD agencies, their backgrounds are nearly identical, and by their own characterization they all bring the same expertise in military contracting.

David Robbins, also offers essentially the same opinion (that Fluor would not have been debarred even if the problems had been disclosed), but he at least has a different background, that of a lawyer. But his opinions suffer from an even more serious flaw. If he wants to make a legal argument as a member of the bar about why Fluor should win, he should file his appearance in this case, and reserve some of Fluor's time during closing arguments – not give the same argument from the witness stand during trial.[2]

Redundant reinforcement of the same opinions is an inappropriate and abusive use of expert witness testimony. Litigants like Fluor with extremely deep pockets are not permitted to trot out multiple experts to repeat the same opinions just because they can afford to do so.

---

[2] Fluor's sixth expert, J. Bradley Rice, offers opinions based on Maximo experience (a different subject) and is thus not a subject of this motion.

Redundant expert testimony not only wastes valuable trial time, but also unfairly suggests to the jury that there is some sort of artificial consensus among like-minded experts.

Under Fourth Circuit law, courts grant motions *in limine* to bar expert testimony that results in a "needless presentation of cumulative evidence" under Federal Rule of Evidence 403. *May v. Stahl*, 91 F.3d 131 (4th Cir. 1996). *See also United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 324 (4th Cir. 1982) (courts exclude expert testimony that results in cumulative evidence); *Russell v. Wright*, No. 3:11 CV 00075, 2013 WL 596062, at *4 (W.D. Va. Feb. 15, 2013) (courts will strike testimony that "becomes redundant or duplicative at trial"); *Dorman v. Anne Arundel Med. Ctr.*, No. CV MJG 15 1102, 2018 WL 2431859, at *3 (D. Md. May 30, 2018), a*ff'd sub nom. Dorman v. Annapolis OB GYN Assocs., P.A.*, 781 F. App'x 136 (4th Cir. 2019).

That case law plainly applies here. As an initial matter, all four of Fluor's experts opined that, speaking as former members of the government agencies involved in military contracting, it is their opinion that Fluor was not required to report its failure to achieve mission objectives to the United States government. According to Hoskin, "the Government does not heavily weigh contractors' AFEB submissions [because] the Government understands and expects the contractor's self assessment will highlight the areas of the contract performance that the contractor believes show areas of strength and examples of where the contractor exceeded the terms of the contract." Hoskin at 14. Likewise. Richardson wrote in her report that "Fluor was not required to identify areas in which it performed at or below the minimum contract requirements." Richardson at 1, and, "Based on my experience participating in Award Fee Boards, the Government also understands that a contractor's self-assessment and slide deck will

always contain some 'puffery.'" Richardson at 21. Likewise, Robbins opines that "contractors may, but are not expected to or required to, disclose all facts." Robbins at 10.

Fluor also had multiple experts parrot their favored summary judgment theme that any analysis of Fluor's contract performance is impossible because it is inherently subjective. As Hoskin said in his report: "The AFEB [Award Fee Evaluation Board] process was deliberately subjective and it is impossible to determine, sitting here more than a decade later, how the AFEB would have weighed additional or different information." Hoskin at 15. Likewise, Richardson said, "This scoring is a reflection of how subjective the Award Fee process is . . . ." Richardson at 24. Ruckdaschel, piled on even further, asserting multiple times throughout his opinion that government's analysis of a contractor's performance is "subjective." Ruckdaschel at 29, 38, 45.

The repetition goes on. Fluor retained multiple experts to repeatedly opine that the Government would not have penalized Fluor even had the alleged fraud been uncovered or disclosed. Hoskin reports that, "no LOGCAP contractor has ever been suspended or debarred." Hoskin at 18. Robbins stated, "my opinion is that suspension and debarment consideration occurred in this case including a review of the framing of the issues as presented by Relators, and neither suspension nor debarment resulted." Robbins at 5.

Fluor's experts also redundantly assert that Fluor was not contractually obligated to abide by its Material Management Plan (MMP). Of the MMP, Richardson says, "it is just a plan; the contractor is not contractually required to follow every detail in that plan as long as the service is performed." Richardson at 30. Likewise, Ruckdaschel says, "Based on my experience interpreting property management requirements in contracts, at most, this PWS § 01.08 contractually obligated FLUOR to conduct inventories in accordance with its GPCS, which was the only plan approved by the Government," and nothing more. Ruckdaschel at 19.

15

These are only some of the examples. Fundamentally, these experts all cover the same ground from a very similar perspective. If the Court peruses their reports, it will see that Hoskin, Richardson, Ruckdaschel, and Walter all offer the same core opinions, from nearly identical backgrounds. Robbins is only marginally different.

As stated, that is not a legitimate trial strategy. Under the case law set forth above, and as a matter of very basic trial practice, Fluor should not be permitted to call multiple experts to offer the same opinions. *Kendra Oil & Gas, Inc. v. Homco, Ltd.*, 879 F.2d 240, 242 (7th Cir. 1989) (excluding expert who would not have added a new argument, but rather "the refrain 'me too'"). *Cf.* Local Rule of the Northern District of Illinois 16.1 n.7 ("Only one expert witness on each subject for each party will be permitted to testify absent good cause shown").

Such was the case in *Dillard v. Smith*, 558 F. Supp. 3d 308, 315 (W.D. Va. 2021), where the court granted a motion *in limine* to exclude the Defendant's medical expert. The Defendant's pretrial disclosures indicated that he planned to call a medical expert witness to testify about the Plaintiff's facial trauma. Id. Applying settled law, the court ruled that the defendant could not call a second medical witness to offer the same opinion, as doing so "would be cumulative and potentially confusing to the jury." *Id.* So too here. Hoskin, Richardson, Walter, Ruckdaschel, and Robbins all offer duplicative opinions alleging that Fluor was not required to inform the Government about its failure to meet mission requirements and that even if it had, it would have made no difference.

Not only is the trial already going to be long without hearing the same opinions multiple times, but it is contrary to the principles of fair play that a rich corporation like Fluor can spend endless amounts of money to put on a parade of "expert" witnesses that unfairly creates an impression to the jury that the world agrees with Fluor. Yes, Fluor should be allowed to present

16

an expert on a topic (assuming the expert is not barred under Daubert), but Fluor should not be allowed to have multiple experts testify about the same opinion. *See* Daniel C. Murrie & Marcus T. Boccaccini, Adversarial Allegiance Among Expert Witnesses, 11 Ann. Rev. L. & Soc. Sci. 37, 40 (2015) (analyzing how "attorneys with ample resources" can "take advantage . . .by retaining multiple experts").

Finally, rather than deny the motion to see how things play out, the Court should grant this motion prior to opening statements. Doing otherwise not only would permit the Defendants to discuss experts with the jurors even if the Court later decided the testimony was impermissibly redundant, but it would also prevent Plaintiffs from meaningfully addressing the record evidence in their own opening (because they have no idea who the jury will be hearing from). The Court should instead require Defendants to designate prior to trial which expert is going to testify on each subject matter at issue.

## VI.    Bar Fluor From Any Offensive Use of the 2013 Inventory Adjustment Analysis or 2014 DODIG Disclosure Based on Fluor's Assertion of Privilege Over the Underlying "Material Management Investigation"

As this Court is well aware, Fluor asserted privilege in this case over an internal investigation launched in 2013. That investigation is inextricably intertwined with two disclosures that Fluor made in 2013 and 2014. Because those 2013 and 2014 disclosures cannot be disentangled from the investigation over which Fluor claims privilege, Fluor must be barred from any offensive use of those 2013 and 2014 inventory disclosures.

On or about March 5, 2013, the United States issued a Civil Investigative Demand ("CID") to Fluor in this case. Within weeks of that CID, Fluor launched an internal investigation into the property management issues raised in this case, including Fluor's management of government property and material. Fluor called this investigation the "Materials Management Investigation" or "MMI."

17

The Court is familiar with the MMI. This is the investigation over which Fluor asserted privilege and argued that former relator Jeffrey Nix "stole" this information and used in his complaint. Throughout this litigation, Fluor has asserted privilege over the investigation. Fluor has never provided to Relators responsive documents related to the MMI and has instructed witnesses to not answer questions related to the MMI. *See*, *e.g.*, Ex. 3 (Jones Personal Deposition) at 151:23-152:5.

At the same time Fluor was conducting the MMI, it was performing an analysis of its inventory adjustments. The complaint in this case alleged that Fluor made inventory adjustments that had no basis in fact and were made to falsely reconcile inventory discrepancies. Eventually, in December 2013, Fluor presented to the Government the results of its inventory adjustment analysis. In that presentation, Fluor asserted that the vast majority of the inventory adjustments were administrative in nature and that Fluor actually lost very little of the Government's property and materials. Much of this information was repeated in a June 2014 disclosure from Fluor to the Department of Defense Inspector General, assuring the Government that the issues were minor.

The inventory adjustment analysis and the MMI are inextricably intertwined. Fluor witnesses testified that the MMI and inventory adjustment analysis were related to each other and that the information from the MMI was part of the December 2013 and June 2014 disclosures. For example, Justin Jones explicitly testified that the disclosures and the MMI were related:

> Relators' Counsel: Q. But the information that is in the June 2014 disclosure then, did that information come from the Materials Management Investigation itself?
>
> Fluor Counsel: I'll let you answer that question with a yes or no, if you know the answer Mr. Jones.
>
> Mr. Jones: A. Did the information in the disclosure stem from the Materials Management Investigation?

18

Relators' Counsel: Q. Correct.

Mr. Jones: A. Yes.

*See* Ex. 3 (Jones Personal Deposition) at 70:3-71:5.

Fluor's privilege log likewise demonstrates the intertwined nature of the investigations. Ernest Ridley was the Fluor employee with primary on-the-ground responsibility for the 2013 inventory adjustment analysis. Ridley is included in at least 15 entries on Fluor's privilege log between March 2013 and early 2014, with many of those entries explicitly stating the basis for asserting a privilege is that Ridley's documents were "Communication[s] made in the course of a counsel-directed investigation for the purpose of facilitating the provision of legal advice regarding property and materials management; LTDDs; work orders." *See* Ex. 4 (excerpts of Fluor's privilege log related to Ridley). Similarly, in this same time period Fluor asserted privilege over several communications with Tony Montalvo, who was Ridley's boss and was involved in the presentation to DCMA in December 2013 about the results of Fluor's inventory adjustment analysis. *See* Ex. 5 (excerpts of Fluor's privilege log related to Montalvo). And the same is true with Dave Methot, Fluor's Chief Compliance Officer who signed the 2014 DOD-IG disclosure. *See* Ex. 6 (excerpts of Fluor's privilege log related to Methot).

Because the inventory adjustment analysis is irreconcilably intertwined with the MMI, and because Fluor refused to allow any discovery into the MMI, Fluor cannot now turn around and offer any evidence or argument that its investigation determined that the inventory adjustment analysis was accurate. Under very basic legal principles, Fluor cannot use its privilege assertions as a shield to block Relators' discovery, and then use that same subject matter as a sword in this case. This is a classic abuse of discovery. It is well established that "[a] party may not use a privilege (or work product) as a shield during discovery and then hammer it

19

into a sword for use at the trial." *United States v. Duke Energy Corp.*, 208 F.R.D. 553, 558 (M.D.N.C. 2002); *see also Richardson v. Sexual Assault/Spouse Abuse Res. Ctr., Inc.*, 764 F. Supp. 2d 736, 739 (D. Md. 2011) ("[P]rivilege is impliedly waived by the patient when the interests of fairness require waiver, such as . . . when the party attempts to use the privilege both as a shield and a sword." (internal quotations omitted)); *Galaxy Computer Servs., Inc. v. Baker*, 325 B.R. 544, 559 (E.D. Va. 2005) ("The weight of authority indicates that to permit Mouer to testify to issues which she refused to testify to during her deposition based on privilege would allow the Defendants to use the attorney-client privilege as both a shield and a sword.").

In sum, Fluor should be barred from asking the jury to consider its 2013 inventory adjustment analysis or its 2014 DODIG disclosure–patting itself on the back for its diligent efforts and boasting that the results demonstrate that any problems were minimal——while at the same time (a) shielding the underlying MMI as privileged, *and* (b) having the jury remain in the dark about Fluor's assertion of privilege. That would be unfair to Relators and leave the jury with an incomplete picture of this case.

## VII.     Bar Any Testimony Prohibited by *Touhy* Regulations and Any Arguments About Such Testimony or Lack Thereof

The agencies of the United States government each promulgate regulations regarding the testimony that current and former employees can provide, commonly known as *Touhy* regulations after the Supreme Court case authorizing them.

In this case, the Army restricts the scope of the testimony provided by current and former employees. *See* 32 C.F.R. § 516; *see also* 32 C.F.R. § 97. The Army prohibits its employees from offering any type of expert or opinion testimony. *See,* 32 C.F.R. §516.49(a) ("Former [Army] personnel will not provide opinion or expert testimony . . . in private litigation or in litigation in which the United States has an interest for a party other than the United States.");

U.S. Dep't of Army Reg. 27-40, Litigation (Sept. 19, 1994), para. 7-10 (same); *see also* § 97.11. As such, the Army witnesses identified by the parties in this case cannot testify to anything beyond the contemporaneous facts as they experienced and observed.

A major theme in Fluor's summary judgment arguments is that Relators did not ask Lt. Col. Tommy Marks, the chairperson of Fluor's Award Fee Boards, if Fluor's score *would have* gone down if Fluor's lies and omissions were known to them at the time. *See, e.g.,* Dkt. 507-1 at 30. Similarly, Fluor argues that because DCMA's Property Administrators and Contracting Officer could not say with certainty that Fluor's property management system *would have* been disapproved if its lies and omissions were known, Relators have failed to prove their claim. Fluor and its "quadruple-expert" also unfairly take Relators to task for failing to depose members of the Board to establish this point.

Putting aside the practical absurdity of putting thousands of pages of evidence of misconduct in front of Government witnesses at their depositions and asking them to opine on the spot about how outcomes might have changed, Fluor's argument must fail because it would require testimony that is prohibited by the *Touhy* regulations. The Government's award fee board members and DCMA witnesses are prohibited from offering opinion testimony of exactly this type, or really any type. Instead, the task of deciding what would have happened if Fluor had been honest falls to the jury. That's what juries do – resolve unknown scenarios where there are disputed facts. But an Army witness cannot do that.

In fact, very recently, counsel for the Army again made clear that Government witnesses cannot offer testimony about hypotheticals and opinions. In the letter approving the testimony of Lt. Col. Tommy Marks at the upcoming trial in this matter, the Army stated: "Mr. Marks may only provide *factual information* related to his involvement in the events that gave rise to the

21

present litigation. He may not be qualified as an expert witness or be asked for personal opinions relating to official information. See AR 27-40, para. 7-10; 32 C.F.R. § 516.49(a)." *See* Ex. 7 (Dec. 31, 2025 Letter from William L. Detrick to Anna Dover).

Given the legal limits on the testimony of Government witnesses, it would be unfair and highly prejudicial to Relators for Fluor to offer evidence or argument that Relators' claims fail because Government witnesses have not offered prohibited opinion testimony about what would have happened in particular circumstances. Fluor's counsel's questions about whether a given fact, if disclosed, would or would not have actually affected the score are improper, and should not be permitted.

## VIII. Bar Any Testimony, Evidence, or Argument About Lack of Mission Failure

Fluor has argued repeatedly in this case, including throughout its summary judgment briefs, that the Army experienced no "mission failure" in Afghanistan as a result of Fluor's performance. This is untrue; but more problematic as an admissibility issue, it is a complete red herring that is irrelevant and will only confuse the jury about what matters in this case.

As an initial matter, Fluor is trying to have it both ways. As discussed in Relators' summary judgment briefing, mission failure indeed occurred in this case, for example, in the form of a tragic suicide bombing that killed several servicemembers and Fluor employees, including the Director of Materials Management, Jerrold Reeves. Dkt. 537 at 2-3. Fluor lost its bid to continue its work in Northern Afghanistan based in part on this incident, and the Army's finding that Fluor's lack of material control and lax security in its materials yard contributed to the tragedy. So, the "no mission failure" claim itself will be strongly rebutted at trial.

The United States paid Fluor billions of dollars to provide particular services, as spelled out in the LOGCAP IV, Task Order 5 contract and associated documents. In return, each time

that Fluor billed the Government, asked for award fees, and obtained relief of responsibility for losing the Government's property, Fluor told the Government that Fluor was being honest when it submitted those bills and that Fluor had provided those services in accordance with certain contractual promises. That was not true. And, in essence, that is what a False Claims Act case is all about.

It simply does not matter whether the lies, deception, and concealment Fluor employed to obtain payments had catastrophic consequences for military personnel. Indeed, even if Fluor fully performed every aspect of its contractual obligations (it did not) but charged the Government far more money than it should have, it can be held liable under the False Claims Act. Fluor concedes as much; it has never argued that the False Claims Act requires some sort of non-monetary "project impact." For good reason, because there is no such element of the False Claims Act. Indeed, even monetary damages are not necessary to establish liability under the FCA. *See ACLU v. Holder*, 673 F.3d 245, 249 (4th Cir. 2011) (violators of FCA are liable "regardless of whether the United States sustained damages.") (citations omitted); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 n.7 (4th Cir. 1999) ("In fact, there is no requirement that the government have suffered damages as a result of the fraud.").

Indeed, nowhere in the contract, or Federal Acquisition Regulation clauses incorporated therein, is there any requirement of planes-falling-out-of-the-sky type evidence. Likewise, Fluor cannot absolve itself of liability by arguing the absence of such evidence. That was not the standard Fluor promised to live up to, or that it represented that it had satisfied.

Fluor should not be permitted to offer evidence about an alleged "mission failure" standard—whether an industry standard or one made up by Fluor—that is plainly irrelevant to the jury's analysis of whether Fluor submitted knowingly false or fraudulent claims for payment

23

to the Government. Industry standards, for example, are not relevant to whether the Government was fraudulently billed. *U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 25 (D.D.C. 2008) ("What the Defendant may not do however, because it is not relevant, is present evidence demonstrating that its anesthesiologists comported with generally accepted anesthesiology practices. This case tests the merits of the Defendant's billing practices for reimbursement under Medicare; it does not test the adequacy [of] the Defendant's medical care."). Likewise, in *US ex rel Bassan v. Omnicare*, No. 15-cv-4179 (S.D.N.Y. Feb. 12, 2025), Dkt. 65 (attached as Ex. 8), the Court granted a motion *in limine* to exclude evidence of purported pharmacy-industry practices that contradict federal and/or state pharmacy law, because "Defendants are not free to substitute industry standards for the requirements of federal or state law." *Id.* at *1–3. Not only are non-contractual standards not a defense, they are not relevant to any finding of materiality. *Id*. at *2 (citing *Escobar*). If Fluor's argument were accepted, False Claims Act defendants could avoid liability simply by pointing to some worst-case outcome that didn't come to be. For example, the False Claims Act imposes liability on hospitals that bill the Government for medically unnecessary services. *See, e.g., United States v. JP Pharma, LLC*, No. 7:19-CV-839, 2025 WL 3640892, at *9–11 (W.D. Va. Dec. 16, 2025); *United States ex rel. Eastlick v. Odom*, 569 F. Supp. 3d 291, 313–14 (D.S.C. 2021). Fluor's argument is the equivalent of a defendant in such a case arguing that there should be no liability because a patient did not die on the table. Instead, so long as the services were not medically necessary, False Claims Act liability attaches regardless of the outcome of the procedure. *Id*.  Fluor's arguments about "mission failure" are similarly irrelevant.

By contrast, the risks of permitting evidence of a purported lack of "mission failure" are substantial. It would serve only to confuse the jury, and invite improper jury nullification.

IX.     **Bar Any Testimony, Evidence, or Argument that is Contrary to Fluor's Sworn Interrogatory Responses**

Over the many years of intense discovery litigation in this case, Fluor provided sworn responses to Relators' interrogatories. Relators are entitled to, and intend to, hold Fluor to those answers; any attempt by Fluor to offer evidence or argument contrary to those answers must be barred because it would be unfair to Relators and contrary to the entire purpose of discovery.

Relators properly used interrogatories to ensure Fluor put its cards on the table during discovery, while there was time for both sides to investigate and build their cases, and Fluor's sworn responses to Relators' interrogatories address important issues in this case. For example, Relators asked Fluor to identify what disclosures it made to the Government about the property management problems and other failures alleged in this case. Fluor's sworn interrogatory answer was that it would only identify disclosures made in response to the "formal disclosure requirements of the Federal Acquisition Regulation ('FAR'), the Defense Federal Acquisition Regulation Supplement ('DFARS'), or other applicable law," and that Fluor made only one disclosure: the 2014 disclosure to the Department of Defense Inspector General. *See* Ex. 9 (Fluor's Response to Shepherd's First INT) at 9. Fluor cannot now be allowed to present evidence or argument that Fluor made any other disclosure to the Government that was required by the FAR, the DFARS, or other applicable law.

In addition, Relators asked Fluor to identify the information that it provided the Government in connection with DCMA's Property Management System Audits at each site. Fluor responded that it did not know: "However, without the CDs provided to DCMA or access to documents sent via electronic file transfer, **Fluor cannot determine which information on the Materials Management shared drive was provided to DCMA in advance of PMSAs.**" *See* Ex. 10 (Fluor's Response to Dillard's First INTs) at 8. Because Fluor swore that it does not

25

know what information was shared with DCMA as part of the PMSAs, Fluor cannot now offer evidence or argument that Fluor, in fact, provided DCMA with certain specific documents or reports.

Interrogatory responses serve to "narrow the scope of litigation, reduce the element of surprise, [and] serve as admissions for trial." *In re Clean Burn Fuels, LLC*, *In re Clean Burn Fuels, LLC*, No. 11-09046, 2012 WL 4792907, at *1 (Bankr. M.D.N.C. Oct. 9, 2012) (quoting *Trueman v. N.Y. State Canal Corp.*, No. 1:09-CV-049, 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010)); *see also Passenti v. Veyo, LLC*, No. 21-CV-01350 (SRU), No. 21-CV-01350, 2022 WL 17261411, at *4 (D. Conn. Nov. 29, 2022) (interrogatories provide the opposing party with their opponent's theory of the case).

If a party subsequently takes a contrary position, they are obligated to seek leave (provided there is enough time to cure associated prejudice) to amend their answer under Federal Rule of Civil Procedure 26(e)(1). *See* Fed. R. Civ. P. 26(a)(1) ("A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ."). If a party fails to do so, "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). *See Castles v. Tricam Indus. Inc.*, No. 3:18-CV-00525-JMC, 2020 WL 6336063, at *1 (D.S.C. Oct. 29, 2020). Consequently, the District Court of South Carolina has barred parties from introducing evidence at trial that was not disclosed in interrogatories. *See Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, 297 F. Supp. 3d 547, 559 (D.S.C. 2018).

Fluor has had many years to comply with its discovery obligations and offer a more fulsome response to its sworn interrogatory responses. *See id.* at 559 (noting the defendant had "over two and one-half years" to supplement its interrogatory responses, "yet made absolutely no effort" to do so). At this late stage, it should not be allowed to present evidence that contradicts its prior sworn representations.

**X.    Bar Any Testimony, Evidence, or Argument about Dismissal of Claims at Summary Judgment**

In the event that this Court dismisses portions of Relators' case at summary judgment, Fluor should be barred from offering any testimony, evidence, or argument about such dismissal. Any such claims would, by definition, not be before the jury, and evidence of any such dismissal would be irrelevant and unfairly prejudicial to Relators. *See* Fed. R. Evid. 401, 403.

The ruling and its content are irrelevant to the questions before the jury. *See McLaughlin v. CSX Transportation, Inc.*, No. 4:15-CV-00245-RBH, 2017 WL 2403578, at *2 (D.S.C. June 2, 2017) ("This Court agrees that the Parties cannot discuss dismissed claims or introduce evidence on those claims."); *Brode v. Mon Health Care, Inc.*, No. 1:20-CV-253, 2023 WL 2755935, at *1–2 (N.D.W. Va. Mar. 31, 2023) (same) *Clipco, Ltd. v. Ignite Design, LLC*, No. 04 C 5043, 2005 WL 2861032, at *2 (N.D. Ill. Oct. 28, 2005) (same); *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, No. 01 C 0736, 2004 WL 1899927, at *2-3 (N.D.Ill. Aug.23, 2004) (issues decided as matter of law are not relevant during trial); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3852, 2002 WL 1613724, at *1 (N.D.Ill. July 17, 2002) (same); *Tompkins v. Eckerd*, No. CIV.A. 8:09-02369, 2012 WL 1110069, at *3 (D.S.C. Apr. 3, 2012) (barring evidence related to plaintiff's previously dismissed claims); *Hamza v. Saks Fifth Ave., Inc.*, No. 07 CIV. 5974 FPS, 2011 WL 6187078, at *7 (S.D.N.Y. Dec. 5, 2011).

27

XI. **Bar Any Testimony, Evidence, or Argument about Dillard's Retaliation Claim**

Similarly, Scott Dillard, one of the Relators in this case, brought a separate retaliation claim against Fluor. That claim was dismissed at summary judgment. Dillard does not pursue any retaliation claim in this case. Nor will Dillard offer any testimony that Fluor retaliated against him. As such, the adjudication of his retaliation claim is irrelevant to the issues this jury will consider, and allowing this information to be heard would be unfairly prejudicial to Relators, confuse the jury, and waste time. *See* Fed. R. Evid. 401, 403. Any testimony, evidence, or argument about that claim should be barred.

XII. **Bar Any Argument, Evidence or Reference to Fluor Counsel's Trip to Afghanistan as Part of Their Representation of Fluor in this Matter**

As part of their representation of Fluor in this matter, Fluor's counsel traveled to Afghanistan to visit Fluor's operations at American military bases. Fluor's counsel should be barred from referencing this trip, which is not admissible evidence.

During depositions in this matter, Fluor's counsel often referred to their trip to Afghanistan, and basically testified through their questions. This was for the purpose of demonstrating (superior) knowledge, familiarity, or simply to build credibility. Regardless of the purpose, any argument or reference to counsel's trip, or the knowledge they purport to have gained from their trip, would be inappropriate at trial. Counsel is not a witness. Trial questions implying counsel's personal knowledge of the scene are nothing but improper bolstering.

Similarly, any argument or reference to the fact that Relators' counsel has *not* been to Fluor-operated sites in Afghanistan should also be barred. Such argument or reference would be highly prejudicial, suggesting to the jury that it should accept the word of Fluor's counsel over that of Relators based on superior knowledge. The jury should not be invited to decide this case based on assessments of counsel's knowledge or expertise, but on the evidence presented to it.

28

More practically, any attempt to argue or introduce such evidence would be highly improper. The only practical way such "evidence" could come in is if Fluor's counsel introduces it through their own words, in argument or in leading questions to witnesses. But counsel cannot testify in this way. Indeed, they have not made themselves available as fact witnesses in this matter to discuss the details of their trip and what they observed and heard from Fluor employees; to the contrary, Fluor has consistently maintained privilege over every aspect of its employees' communications with counsel, without agreeing to any sort of waiver as to counsel's trip to Afghanistan. Accordingly, counsel cannot now selectively make arguments or insinuations—testifying, effectively—about that trip (or Relators' counsel's lack of such a trip). This would be improper, irrelevant, and highly prejudicial. Fed. R. Evid. 401, 402, 403.

Stated most succinctly, there is no permissible or appropriate reason for counsel to be talking about his trip to Afghanistan in front of the jurors. Unless counsel decides to become a trial witness, references should be barred.

**XIII. Bar Any Argument, Evidence or Reference to Relators as "Bounty Hunters" or Other Disparaging Terms, or To Relators Not Having Been Personally Damaged by Fluor's Fraudulent Conduct**

With regard to the False Claims act claims in this matter regarding Fluor's false or fraudulent claims and statements to the United States Government in support of payments (i.e., putting aside Relator Shepherd and Rude's retaliation claims), the Court should exclude any argument, evidence or other references to the fact that Relators did not suffer any damage personally as a result of Fluor's conduct. There is no requirement or element under the False Claims Act that Relators personally suffered damages based on Fluor's False Claims Act violations, and it is totally irrelevant to the issues to be tried. In addition, the introduction of such evidence would confuse the jury and be highly prejudicial.

29

The FCA authorizes private Relators to bring claims "in the name of the Government." 31 U.S.C. § 3730(b). When a relator acts on Congress's statutory authorization to bring a *qui tam* suit, "[t]he Government, and not the relator, must have suffered the 'injury' in fact required for Article III standing" under the Constitution. *United States ex rel. Milam v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 961 F. 2d 46, 49 (4th Cir. 1992); *see also Vt. Agency of Nat. Resources v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000). "Where there is evidence of palpable injury to the entity on whose behalf and in whose name the suit is brought [the Government], it is superfluous to require that the relator be individually aggrieved." *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993).

So, damages suffered by the Government are clearly all that matters. Any discussion of whether Relators individually suffered damages would be irrelevant, confusing and prejudicial, and serve only to impugn Relators as opportunists or, even worse, engage in improper jury nullification.

Relatedly, Fluor should not be permitted to present Relators as opportunists by referring to their lack of personal injury as a result of Fluor's fraudulent conduct. To that end, Fluor should not be permitted to use loaded and derogatory terms like "bounty" or "bounty hunters" or "opportunists" to describe Relators and their statutorily permitted right to obtain a portion of any Government recovery under the False Claims Act. More neutral terms, such as "complainants," "whistleblowers," or simply "plaintiffs," are more appropriate.

For all these reasons, the Court should exclude any argument, evidence or other references to the fact that Relators did not suffer any damage personally as a result of Fluor's false or fraudulent conduct under the False Claims Act, and should further be barred from

presenting Relators in a negative light for bringing claims on behalf of the Government by using terms like "bounty," "bounty hunters," and "opportunists."

### XIV.  Bar Reference to Out-Of-Town Attorneys // Bar any references to the fact that Relators' attorneys are from out of town

Most of Relators' primary attorneys practice from their office in Chicago. They do not have an office in Greenville or anywhere else in South Carolina. Where Relators' attorneys are from is not important to any issue that the jury must resolve, and Defendant should not be permitted to inform the jury that Relators' attorneys are from out of town or suggest that they should be viewed as outsiders. Any such information is irrelevant and contrary to Rule 401. *See* Fed. R. Evid. 401. *See Taylor v. Wexford Health Sources, Inc.*, No. 2:23-CV-00475, 2024 WL 3098162, at *6 (S.D.W. Va. June 21, 2024) (attorneys' office location is "irrelevant and should not be discussed"); *Williams v. Boley*, No. 4:21-CV-00068-TWP-KMB, 2023 WL 4351500, at *7 (S.D. Ind. July 5, 2023) (informing the jury attorneys are from out of town "has no bearing on this case and arguably could cause the jury to view the Plaintiff's counsel in a negative light").

### XV.  Bar Argument, Evidence or Reference to Settlement Discussions, or Demand, in This Matter

Federal Rule of Evidence 408 instructs that "[e]vidence of . . . conduct or statements made during compromise negotiations" are "not admissible . . . to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. Thus, it is well-established that settlement discussions and demands should be excluded from the jury's purview. *See Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988) ("The public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions.") (citing Wright & Graham, *Federal Practice and Procedure:* Evidence, § 5302 (1980); Weinstein & Berger, *Weinstein's Evidence*, § 408[1] (1986)); *W.W. McDonald Land Co. v. EQT Prod. Co.*, No. 2:11-

CV-00418, 2014 WL 4063870, at *2 (S.D.W. Va. Aug. 14, 2014) ("Evidence of settlement

discussions or negotiations is irrelevant and inadmissible.") (citing Fed.R.Evid. 408; Fed.R.Evid.

402); *Hospira, Inc. v. Alpha & Omega Transp. Servs., Inc.*, No. 1:06CV074, 2007 WL 1199124,

at *2 (W.D.N.C. Apr. 20, 2007) ("Rule 408 of the Federal Rules of Evidence . . . precludes

introduction into evidence at trial of settlement negotiations."); *see also Williams v. Haq*, No.

1:23-CV-66, 2024 WL 3317857, at *1 (M.D.N.C. May 30, 2024) ("Neither counsel shall

mention settlement discussions, offers, or demands in the presence of the jury, and all counsel

shall instruct all witnesses not to mention settlement discussions, offers, or demands in the

presence of the jury.").

## XVI.    Bar Evidence, Argument or Testimony About Purported Bad Acts of Relators or Former Fluor Employees Who Signed Declarations In This Matter

It is not clear what past bad acts evidence, if any, Fluor may seek to introduce (and

Relators are not aware of any such evidence), but Relators bring this motion to ensure there are

no surprises.

The Rules are clear: "Evidence of any other crime, wrong, or act is not admissible to

prove a person's character in order to show that on a particular occasion the person acted in

accordance with the character." Fed. R. Evid. 404(b). To the extent Fluor intends to introduce

any bad acts evidence, it would almost certainly run afoul of this rule. *See id.*; *see also* Fed. R.

Evid. 403. To prevent Fluor from slipping in a suggestion of bad acts before the jury to which

Relator's counsel will have an objection, the Court should preemptively clarify that no such

evidence may be presented at trial without first ensuring Relators have an opportunity to raise an

objection and the Court has an opportunity to rule outside the presence of the jury.

This is particularly critical here because any attempt to present bad acts evidence would

be improper for the additional reason that it is late-disclosed. Fluor has not identified in

discovery any arrests, convictions or other bad acts evidence it intends to introduce, or produced

such records that it intends to rely on, and so it would be doubly improper for Fluor to spring

new bad acts evidence on Relators in the presence of the jury. *See Contech Stormwater Sols.,*

*Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616, 625 (D. Md. 2008). Indeed, it is well-

established that the evidence presented at trial should be limited to those materials that were

timely produced in discovery. Relators would be severely prejudiced by any new evidence Fluor

may now seek to introduce without warning.[3]

Given the potential prejudice from any late-disclosed bad acts evidence, and the inherent

prejudice of such evidence under Fed. R. Evid. 403 and 404(b), it should be barred.

## XVII. Bar Any Argument, Evidence or Reference to Documents that Fluor Did Not Produce in Discovery

The Court should bar Fluor from presenting any argument, evidence or other references

to documents or evidence it did not produce in discovery. These motions *in limine* are being

submitted just two days after exhibit lists were first exchanged, in which Fluor disclosed a

voluminous set of hundreds and hundreds of exhibits. Upon initial review, Fluor is seeking to

introduce multiple documents that Fluor never produced in this. To the extent there are any

documents not disclosed by the document disclosure deadline, Fluor should be prohibited from

relying on them at trial. To do so would be enormously prejudicial. The parties participated in

years of discovery, during which they had a fair opportunity to investigate the documents that

---

[3] To be clear, Relators do not seek to bar Fluor from presenting evidence related to Relators Shepherd and Rude's terminations of employment as relevant to their retaliation claims, or to other evidence produced during discovery that relates to any of Relators' work for Fluor. This motion is limited to extraneous bad acts evidence such as arrests, convictions, allegations of misconduct or improprieties in other personal or professional settings, etc. Relators are not aware of any such evidence, but file this motion to ensure there are no surprises.

were produced. Surely Fluor cannot expect to pull out new ones on the eve of trial as part of its

FPTO disclosures.

There is an additional reason why this is inappropriate. Fluor previously asked this Court

to strictly enforce disclosure deadlines when it sought to strike the rebuttal report of Dr. Gary

Gaukler. It prevailed. It should be held to the same standard. Any documents on Fluor's exhibit

list that were not disclosed by the document discovery deadline should be barred.

## XVIII. Bar Any Argument, Evidence or Reference to Fluor's Good Reputation or Corporate Citizenship

Fluor should not be permitted to introduce supposed good character or reputation

evidence, such as evidence of good corporate citizenship, or charitable works or donations. Such

evidence is irrelevant to the jury's assessment and constitutes inadmissible character evidence.

This case concerns whether Fluor submitted claims to the United States, despite its failure

to perform its basic duties. The verdict will turn on facts relevant to Fluor's performance within

its theater of operations. Evidence of good corporate citizenship would bear no relevance to the

case at hand. Therefore, this court should exclude such evidence under Federal Rule of Evidence

401. *See Niver v. Travelers Indem. Co. of Illinois*, 433 F. Supp. 2d 968, 995 (N.D. Iowa 2006)

(finding "unrelated 'good acts' simply are not relevant pursuant to Rule 401, and therefore, not

admissible").

Accordingly, the sole purpose and probable effect of introducing evidence related to

Fluor's good character would be to persuade the jury that Fluor was less likely to have

participated in the illegal scheme alleged here. But such character evidence is plainly

inadmissible. According to Federal Rule of Evidence 404(a), "Evidence of a person's character

or character trait is not admissible to prove that on a particular occasion the person acted in

accordance with the character or trait." As a result, courts routinely exclude 404(a) evidence in

rulings on motions in limine. *See, e.g.*, *In re: Tylenol (Acetaminophen) Mktg.*, No. 2436, 2016 WL 3125428, at *11 (E.D. Pa. June 3, 2016) (barring evidence of "good corporate character"); *Bartlett v. Mut. Pharm. Co.*, No. 08-CV-358-JL, 2010 WL 3156555, at *4 (D.N.H. July 26, 2010) (same); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 510 F. Supp. 3d 538, 546 (S.D. Ohio 2020).

The court should bar the introduction of any evidence of good corporate citizenship.

## XIX. Bar Implications or Suggestions of Impropriety in Counsel Paying Travel Expenses of Non-Local Witnesses

As the Court is aware, FCA allows nationwide service. § 3731(a). Thus, third-party witnesses must travel to Greenville to testify at trial. Third party witnesses have no dog in the fight, and should not be asked to undertake the financial burden of going out of pocket to comply with a subpoena. Relators intend to cover reasonable travel expenses associated with this travel, namely, transportation, lodging and meals—as is common courtesy, if not standard protocol, to facilitate testimony from out-of-town witnesses. (Relators expect Fluor to do the same.) The parties should refrain from reference to these expenses because they are irrelevant.[4]

Pursuant to Local Civ. Rule 7.02, undersigned counsel consulted with counsel for Fluor who indicated they will oppose the motions in limine contained herein.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Relators respectfully asked this court to enter an order granting these motions *in limine.*

Respectfully submitted,

/s/ Andrew Hand
Richard Harpootlian

---

[4] If Fluor is concerned that third party witnesses might tend to be partial to the side footing the bill, Fluor is welcome to contribute half of the expenses. Should Fluor be inclined to do so, the witnesses could all be informed that their bills were covered equally by both sides.

Richard Harpootlian (Fed. ID No. 1730)
Andrew Hand (Fed. ID No. 12176)
RICHARD A. HARPOOTLIAN P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810
rah@harpootlianlaw.com

Jonathan Loevy
Michael Kanovitz
Daniel Twetten
Anand Swaminathan
Frank Newell
Anna Dover
Gwen Parker
Heather Sticht
Dominique Gilbert
**LOEVY & LOEVY**
311 N. Aberdeen St., Third Floor
Chicago, IL 60607
Telephone: (312) 243-5900
Facsimile: (312) 243-5902
anand@loevy.com
*Attorneys for Relators*
*Charles R. Shepherd*
*and Danny V. Rude*

Frank L. Eppes (Fed. ID No. 1003)
EPPES & PLUMBLEE, PA
PO Box 10066
Greenville, SC 29603
Telephone: (864) 235-2600
Facsimile: (864) 235-4600
feppes@eppesandplumblee.com

*Attorney for Relator Robert Scott*
*Dillard*

Judah N. VanSyckel
SALUDA LAW, LLC
137 E. Butler Street
Lexington, SC 29072
Telephone: (803) 939-6927

36

Facsimile: (803) 902-8004
judah@saludalaw.com

*Attorney for Relator Rickey Mackey*