IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* CHARLES R. SHEPHERD and DANNY V. RUDE; ROBERT SCOTT DILLARD; and RICKEY MACKEY, <br><br> Plaintiff-Relators, <br><br> v. <br><br> FLUOR CORPORATION, INC., FLUOR INTERCONTINENTAL, INC., <br><br> Defendants. | CASE NO.: 6:13-cv-02428-JD <br><br> **Memorandum Opinion and Order on Defendants' Motion to Exclude Sherman** |

Before the Court is Defendants Fluor Corporation, Inc., and Fluor Intercontinental, Inc.'s Motion to Exclude the Testimony of Relators' Expert James Sherman pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (DE 546.) Fluor challenges the admissibility of Mr. Sherman's proposed testimony concerning alleged overstaffing, unproductive labor time, and purported overbilling under LOGCAP IV, Task Order 0005 ("TO5"). Relators have filed a Response in Opposition (DE 561), and Fluor has filed a Reply (DE 580).

Fluor contends that Mr. Sherman's opinions are not grounded in a reliable methodology, do not fit Relators' operative theory of liability, and would not help the jury resolve the factual issues in dispute. Relators respond that Mr. Sherman is a qualified expert in government contracting and estimating, his opinions are based on a review of extensive record evidence, and his testimony will assist the jury in

1

understanding how Fluor allegedly charged the Government for non-productive labor. For the reasons below, the Court grants the motion.

## I. BACKGROUND

### A. LOGCAP IV and Task Order 0005

This case arises from Fluor's performance of LOGCAP IV, Task Order 0005, which required Fluor to provide logistics and support services to U.S. military operations in Afghanistan. TO5 included responsibilities related to material management and administration ("M&A"), property management, inventory functions, and associated administrative support. Fluor's performance was compensated on a cost-reimbursable basis, subject to award fees and Government oversight.

Under LOGCAP IV, Fluor was required to submit annual cost proposals, commonly referred to as Bases of Estimate ("BOEs"), describing anticipated staffing levels, labor categories, and assumptions regarding productivity and workload. Those proposals informed negotiations with the Government, but, standing alone, did not determine the amounts ultimately billed. Actual billing was based on costs incurred and invoiced to the Government during performance.

### B. Relators' Theory of Liability

Relators allege that Fluor knowingly overbilled the Government by charging for excessive and unproductive labor, particularly within the M&A function. As Relators have emphasized in their summary-judgment briefing, their claims turn on actual billing and performance— whether Fluor submitted claims for labor costs that were not reasonably necessary or supported by productive work—rather than on the

2

mere submission of estimates or proposals. (*See* DE 512 at 38–41.) Relators do not contend that the Government was defrauded merely by Fluor's submission of estimates or proposals; rather, they assert that Fluor billed the Government for labor costs that should not have been incurred in the first place. (*See* DE 512.)

**C.     James Sherman and His Opinions**

Relators retained James Sherman to offer expert opinions concerning Fluor's staffing and labor costs under TO5. Mr. Sherman has professional experience in government contracting and cost estimating, including experience reviewing contractor cost proposals, evaluating staffing and labor assumptions, and advising on procurement and contract administration matters. His background includes reviewing bases of estimate and contractor pricing submissions in government contracting. (DE 546-2 at 2–4.)

In his expert report, Mr. Sherman opines that Fluor overstaffed M&A and related functions, relied on unreasonable assumptions regarding employee productivity, and charged the Government excessive labor costs as a result. He further opines that Fluor failed to disclose key assumptions underlying its staffing estimates to the Government and that certain personnel were billed despite allegedly having insufficient productive work. (*Id.* at 4–6.)

To reach these conclusions, Mr. Sherman reviewed selected contract documents, BOEs, internal Fluor communications, deposition testimony, CPARS materials, and property management records. He did not review Fluor's timesheets,

3

invoices, public vouchers, or other records reflecting actual hours billed to the Government. (DE 546-3 at 22–24; DE 546-2 at 6–7.)

**D.     The Present Motion**

Fluor moves to exclude Mr. Sherman's testimony in its entirety pursuant to Rule 702. Fluor argues that Mr. Sherman's opinions do not "fit" Relators' theory of liability because they critique estimating and staffing assumptions rather than analyze the claims submitted to the Government or the labor hours actually billed under the LOGCAP cost-reimbursement framework. (DE 546-1 at 5.) Fluor further contends that Mr. Sherman did not apply a reliable methodology or rely on sufficient facts or data to determine whether Fluor overbilled the Government, and instead offered opinions grounded in subjective judgments and inferential leaps from estimates to alleged overbilling. (*Id.* at 5, 19–22.)

Relators respond that Mr. Sherman's experience qualifies him to assess the reasonableness of Fluor's staffing and productivity assumptions and that his opinions provide circumstantial evidence supporting their overbilling theory. (DE 561 at 10–24.) According to Relators, Mr. Sherman's critique of staffing levels, administrative time, and productivity assumptions bears directly on the amount of labor Fluor billed, and Fluor's challenges to his opinions concern credibility and weight rather than admissibility. (*Id.* at 10–12.)

## II.     LEGAL STANDARD

District courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509

U.S. 579, 589 (1993). Rule 702 of the Federal Rules of Evidence was amended in response to *Daubert* and its progeny to provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of an expert witness's testimony bears the burden of proving that such testimony meets the requirements of Rule 702 by a preponderance of evidence. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10). As the text of the rule suggests, district courts have a "special obligation" as gatekeepers. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Regardless of the content of the expert testimony, "a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Beginning with qualifications, "[t]he test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge,

skill, experience, training, or education." *Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006).

Turning to methodology, the court must consider "whether the reasoning or methodology underlying the testimony" is reliable. *Daubert*, 509 U.S at 592–93. Certain nonexclusive factors address the reliability of a particular theory or technique, namely, whether the theory or technique:

(1) can be and has been tested;

(2) has been subjected to peer review and publication;

(3) has a known or potential rate of error; and

(4) has attained general acceptance in the pertinent scientific community.

*See id.* at 593–94. Of course, given the district court's role regarding all expert testimony, "some of *Daubert*'s questions can help to evaluate the reliability even of experience-based testimony." *Kumho Tire Co.*, 526 U.S. at 151. But in any given case, which of these factors are applicable "depends upon the particular circumstances of the particular case at issue." *Id.* at 150. And importantly, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Finally, relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *See id.* at 593; *see also* Rule 402, Fed. R. Evid.

However, "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium)*

6

*Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018) (alteration omitted) (quoting another source).

## III. DISCUSSION

### A. Qualifications

Fluor does not dispute that Mr. Sherman has experience with government procurement and with reviewing contractor cost proposals and estimating assumptions. (DE 546-1 at 5.) Fluor argues, however, that this general background does not qualify Mr. Sherman to offer the specific opinions Relators seek to present—particularly opinions that Fluor "overbilled" the Government under LOGCAP IV, TO5 based on *actual* labor billed—because Mr. Sherman did not analyze the materials necessary to determine what Fluor actually charged (e.g., invoices, vouchers, or timesheets) and, therefore, cannot reliably translate estimating concepts into conclusions about actual overbilling. (DE 546-1 at 5–6; DE 546-3 at 23–24, 108–109, 113–114 (Sherman Dep.) 22:20–23:15, 107:16–108:9, 112:17–113:5.) Fluor also contends that Mr. Sherman's opinions rest on experience drawn largely from different contract settings and that he lacks contract-specific familiarity with LOGCAP/TO5 staffing and billing practices in a contingency environment. (DE 546-1 at 6; DE 546-3 at 84 (Sherman Dep.) 83:7–84:21.)

Relators respond that Mr. Sherman is qualified to evaluate the reasonableness of Fluor's staffing and productivity assumptions and to assess whether Fluor's approach reflects overstaffing and unproductive labor. They emphasize his experience in evaluating cost proposals, monitoring contractor costs, supervising

7

management and administrative functions, and property and materials management. (DE 561 at 6–7.) Relators further contend that his background is sufficient to assist the jury in understanding whether Fluor charged the Government for time that was not actually productive. (DE 561 at 15–19.)

Fluor replies that Relators overstate Mr. Sherman's credentials—specifically disputing Relators' repeated characterization of him as a long-serving "contracting officer"—and points to Mr. Sherman's deposition testimony that he was not and had never been a contracting officer. (DE 580 at 5; DE 546-3 at 59 (Sherman Dep.) 58:13–18.)

The Court finds that Mr. Sherman satisfies Rule 702's threshold requirement for general expertise in the evaluation of government contractor cost proposals and estimating assumptions. But an expert's general qualifications do not automatically permit testimony on every opinion within the same broad subject area. *See* Fed. R. Evid. 702. As discussed below, the principal dispute is whether Mr. Sherman—given the contract setting, the nature of LOGCAP cost-reimbursement billing, and the materials he did (and did not) review—may offer reliable and helpful opinions that Fluor submitted false or inflated *claims* based on actual labor billed under TO5.

### B. Fit, Reliability, and Methodology

Rule 702 requires not only that expert testimony be reliable, but that it "fit" the facts and issues the jury must decide. *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 591 (1993). Even methodologically sound opinions are inadmissible if they are not sufficiently tied to the facts of the case to assist the jury in resolving the

pertinent questions. *See id.*; *see also Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235–36 (4th Cir. 2001).

### 1. "Admin time" / alleged overbilling based on actuals

Fluor argues that Mr. Sherman's central opinions do not fit Relators' overbilling theory because his analysis critiques estimating assumptions rather than evaluating what Fluor actually billed or whether billed hours were not worked or otherwise nonchargeable under TO5. (DE 546-1 at 15–17.) Fluor emphasizes that LOGCAP is a cost-reimbursement contract under which Fluor billed based on actual incurred labor, not on estimates, and that Mr. Sherman did not review the documents necessary to determine "actual" overbilling (including timesheets, claims for payment, or vouchers). (DE 580 at 5–6; *see also* DE 546-1 at 16–17.)

Relators respond that Mr. Sherman's opinions fit because Fluor's BOEs and internal staffing/productivity assumptions bear directly on the labor that Fluor billed, and Mr. Sherman expressly opined that Fluor "charged the government" for labor "not actually provided," including by billing "admin time." (DE 561 at 13–14.) Relators also contend that any criticism of Mr. Sherman's use of assumptions goes to weight, not admissibility. (DE 561 at 20–22.)

Fluor replies that, notwithstanding wording in the report, Mr. Sherman admitted at deposition that his damages figures were not intended to reflect actual overbilling; they were derived by applying a 25% factor to Fluor's proposed direct labor amounts (i.e., a critique of estimated/proposed costs rather than an analysis of amounts actually billed). (DE 580 at 8.) Fluor further argues that because billing

9

under LOGCAP is based on actual hours worked, Mr. Sherman's estimate-based calculations do not provide a reliable method to determine whether Fluor overcharged the Government or by how much. (DE 580 at 7–8.)

The Court agrees with Fluor that Mr. Sherman's "overcharged/charged" opinions—i.e., his conclusions that Fluor overbilled the Government by specific dollar amounts based on a uniform "admin time" assumption—do not satisfy Rule 702's fit and reliability requirements on this record. Mr. Sherman did not analyze the underlying billing submissions or timekeeping records necessary to connect his critique of BOE assumptions to what was actually billed and paid. And the method he used to quantify "overcharging" (applying a fixed percentage to proposal amounts) is not a reliable application of principles and methods to sufficient facts or data to establish overbilling under a cost-reimbursement structure. As in *Garlinger*, the problem is not simply that the opinions are contested; it is that the analysis does not address the dispositive inquiry the jury must decide. *See Garlinger*, 16 F. App'x at 236.

### 2. Reliability of the "admin time" reasonableness critique

Even considered apart from Mr. Sherman's damages figures, Fluor argues that his "admin time" critique is impermissibly subjective and rests on a definition of "admin time" that does not match how Fluor used the term for estimating in a contingency environment. (DE 546-1 at 16–18.) Fluor points to testimony that "admin time" in the BOEs captured a wide range of unplanned and enabling activities—i.e., productive support work in a war-zone environment—and argues Mr. Sherman

10

conceded he instead relied on his own generalized understanding of "admin time" and lacked objective standards to determine how much was "reasonable." (DE 546-1 at 16–18; DE 546-3 at 147 (Sherman Dep.) 146:10–16.)

Relators respond that the "reasonableness" inquiry in this non-scientific context may permissibly be grounded in experience; some subjectivity is inherent in expert judgment; and Mr. Sherman's report and testimony reflect engagement with Fluor's internal materials and definitions. (DE 561 at 17–19.)

The Court finds that, in the circumstances presented here, Mr. Sherman's "admin time" reasonableness critique does not rest on a reliably applied methodology capable of assisting the jury. The record reflects that Mr. Sherman did not anchor his critique to an objective benchmark applicable to the LOGCAP contingency setting, and the parties' evidence and testimony describe "admin time" in ways that do not align with the nonproductive meaning Mr. Sherman assumed. Rule 702 does not permit the analytical gap between the underlying data and the ultimate conclusion to be bridged by the expert's say-so. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 292 (4th Cir. 2021).

### 3. Holiday staffing opinion

Fluor separately challenges Mr. Sherman's holiday staffing opinion as irrelevant and unreliable because it extrapolates alleged M&A overstaffing from service-order metrics performed by trades personnel and because the analysis rests on a minimal sampling period without accounting for alternative explanations such as staggered leave, cross-leveling of personnel, other performance metrics, or

11

overtime. (DE 546-1 at 18–19.) Relators respond that M&A functions support trades operations and that Fluor's criticisms go to weight rather than admissibility. (DE 561 at 19–20.) Fluor replies that Mr. Sherman did not supply the analytical linkage Relators posit and that the opinion rests on unsupported methodological leaps. (DE 580 at 12–13.)

On this record, the Court agrees with Fluor. Mr. Sherman's holiday staffing opinion lacks the required "fit" and rests on insufficiently reliable reasoning connecting the cited service-order metrics to the asserted conclusion that Fluor was overstaffed at the M&A level under TO5. *See Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235–36 (4th Cir. 2001) (expert testimony properly excluded where it did not address the dispositive issue before the jury); *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281–84 (4th Cir. 2021) (expert opinions inadmissible where analytical gaps were bridged by assumption rather than reliable methodology). Mr. Sherman assumes, rather than demonstrates, that unchanged trades-level service-order output during discrete holiday periods reliably reflects excess M&A staffing, and he does so without testing whether alternative explanations could account for the observed data. Such inferential leaps are insufficient under Rule 702. The Fourth Circuit has repeatedly held that expert testimony must be excluded where the opinion rests on unsupported assumptions, fails to account for obvious alternative explanations, or draws broad conclusions from limited or unrepresentative data. See *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283–84, 292–96 (4th Cir. 2021); *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142–43 (4th Cir. 1994). Thus, the

holiday staffing opinion does not satisfy Rule 702's requirements of relevance and reliability.

4.  **Inventory staffing / 10% inventories**

Fluor argues that Mr. Sherman's inventory opinion lacks a sufficient factual foundation and fails to connect alleged deficiencies in inventory performance to false or inflated claims for payment, particularly given Mr. Sherman's acknowledgment that personnel nominally assigned to inventory functions could have performed other contract-support work that would remain billable under a cost-reimbursement framework. (DE 546-1 at 19.) Relators respond that Fluor represented to the Government that it would staff and perform 10% inventories and that evidence of nonperformance supports their theory of overbilling; they contend that the possibility that such personnel performed other work goes to weight, not admissibility. (DE 561 at 20–21.) Fluor replies that Relators' argument departs from both the LOGCAP billing structure and Mr. Sherman's own deposition testimony and that FCA liability requires a demonstrable link to a false claim for payment. (DE 580 at 12–15.)

On this record, the Court concludes that Mr. Sherman's inventory opinion does not satisfy Rule 702. Although Rule 702 does not require an expert to eliminate every alternative explanation, it does require a reliable analytical connection between the facts relied upon and the conclusion offered. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Here, Mr. Sherman infers overbilling from evidence that inventories were allegedly not performed as planned, without analyzing how the employees at issue actually spent their time, how their hours were charged, or whether any claims

for payment included labor that was not performed or not allowable. He expressly acknowledged that personnel assigned to inventory roles could have performed other work in support of TO5 that would have been properly billable. (DE 546-3 at 227 (Sherman Dep.) 226:13–19.)

The resulting analytical gap is not a matter of competing inferences for the jury, but a failure of methodology. An expert may not ask the jury to assume the existence of a false claim where the expert has not examined claims data or provided a principled basis for concluding that billed labor corresponded to no work performed. *See Joiner*, 522 U.S. at 146; *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283–84 (4th Cir. 2021). Nor may an expert substitute conjecture about contractual nonperformance for the evidentiary showing required to connect alleged operational shortcomings to false claims for payment. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (excluding expert testimony that rests on speculation rather than a reliable application of expertise to the facts).

This Court has repeatedly emphasized that Rule 702 requires more than an expert's belief that conduct was inefficient or noncompliant; the expert must reliably apply his expertise to facts sufficient to support the conclusion offered. *See, e.g.*, *Frankenberry v. Sig Sauer, Inc.*, 2022 WL 22887079, at *4–6 (D.S.C. Feb. 4, 2022); *Mincey v. Southeast Farm Equip. Co.*, 2025 WL 2450913, at *3–4 (D.S.C. Aug. 25, 2025). Because Mr. Sherman does not bridge the gap between alleged inventory nonperformance and proof that Fluor submitted false or inflated claims for labor not performed, his inventory opinion would invite the jury to speculate about overbilling

14

rather than help it resolve a factual issue grounded in reliable expert analysis. Thus, the inventory staffing opinion is excluded under Rule 702.

5.  **Anecdotal emails / recorded statements**

Finally, Fluor argues that Mr. Sherman's narrative interpretations of certain emails and a recorded conversation are not proper expert opinions because they require no specialized expertise and because, at deposition, Mr. Sherman disavowed key characterizations contained in his report. (DE 546-1 at 20–21; DE 546-3 at 256–57, 270–77 (Sherman Dep.) 255:15–256:1, 269:11–276:22.) Relators respond that an expert may summarize documentary evidence to assist the jury in understanding its significance in context. (DE 561 at 21–22.)

The Court agrees with Fluor. Rule 702 does not permit an expert to offer narrative interpretations of non-technical documents or recorded statements where the jury is equally capable of interpreting the evidence without the aid of specialized knowledge. *See United States v. McIver*, 470 F.3d 550, 562–63 (4th Cir. 2006) (expert testimony inadmissible where it "merely summarizes evidence" and offers "no specialized expertise" beyond the jury's understanding); *Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188–89 (4th Cir. 1990) (excluding expert testimony that amounted to "nothing more than argument" about the meaning of evidence).

This limitation is especially important where, as here, the expert conceded that he was not in a better position than the jury to interpret the documents and later retreated from key characterizations in his report when questioned under oath. (DE 580 at 12–15.) An expert may not serve as a conduit for advocacy by offering

subjective interpretations of emails or conversations that require no technical analysis and that the expert himself no longer endorses. *See Moore v. Equitrans, L.P.*, 27 F.4th 221 (4th Cir. 2022) (affirming exclusion of expert testimony that failed to apply expertise to the facts and instead advanced a result-driven damages theory); *Riggins v. SSC Yanceyville Operating Co., LLC*, 800 F. App'x 151, 158–59 (4th Cir. 2020) (affirming exclusion of expert testimony that offered speculative conclusions and did not assist the jury in resolving a technical issue).

Allowing Mr. Sherman to present such narrative interpretations would risk cloaking ordinary advocacy in the mantle of expert authority, a practice the Fourth Circuit has repeatedly rejected. *See McIver*, 470 F.3d at 562. Accordingly, Mr. Sherman may not present lay interpretations of emails or recordings as expert testimony under Rule 702.

**C.     Relevance**

Finally, Rule 702 requires that expert testimony assist the trier of fact in resolving a factual issue actually in dispute. Testimony that risks confusing the jury, duplicating argument, or substituting an irrelevant analytical framework for the one governing the case must be excluded. *See* Fed. R. Evid. 702(a); *Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235 (4th Cir. 2001).

Allowing Mr. Sherman to testify would invite the jury to conflate proposal estimating with cost-reimbursement billing and draw conclusions about overbilling from staffing judgments untethered to an analysis of the claims actually submitted to the Government. Particularly in light of Relators' own summary-judgment position

emphasizing actual billing and performance, Mr. Sherman's testimony would not help the jury resolve the factual questions before it and would instead risk diverting the jury's attention from the evidence properly bearing on those issues.

Expert testimony that does no more than reframe non-technical evidence or invite the jury to draw inferences it is equally capable of drawing without expert assistance is not helpful under Rule 702. *See United States v. McIver*, 470 F.3d 550, 562–63 (4th Cir. 2006); *Moore v. Equitrans, L.P.*, 27 F.4th 221 (4th Cir. 2022).

Accordingly, the Court concludes that Mr. Sherman's testimony is not relevant or helpful under Rule 702.

## IV. CONCLUSION

The Court is mindful that challenges to an expert's assumptions, factual predicates, or conclusions often go to the weight of the evidence rather than its admissibility. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017). This is not such a case. Mr. Sherman's opinions do not merely rest on contested assumptions or debatable inferences; across multiple opinion categories, they fail to analyze the claims submitted, labor hours billed, or work actually performed—the very issues the jury must decide under Relators' theory.

Instead, Mr. Sherman's analysis asks the jury to draw conclusions about overbilling and false claims from retrospective critiques of estimating assumptions, without a reliable analytical bridge to actual billing data or claims for payment. Rule 702 does not permit expert testimony to substitute such speculation for reliable application of expertise to the facts of the case. *See Gen. Elec. Co. v. Joiner*, 522 U.S.

136, 146 (1997); *Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235–36 (4th Cir. 2001); *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283–84 (4th Cir. 2021).

Because each category of Mr. Sherman's proposed testimony suffers from these Rule 702 deficiencies and because his opinions would not assist the trier of fact in resolving the factual issues properly before it, Defendants' Motion to Exclude the Testimony of James Sherman (DE 546) is GRANTED. Mr. Sherman's testimony is excluded in its entirety.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
January 14, 2026