IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* CHARLES R. SHEPHERD and DANNY V. RUDE; ROBERT SCOTT DILLARD; and RICKEY MACKEY, <br><br> Plaintiff-Relators, <br><br> v. <br><br> FLUOR CORPORATION, INC., FLUOR INTERCONTINENTAL, INC., <br><br> Defendants. | CASE NO.: 6:13-cv-02428-JD <br><br><br><br> **Memorandum Opinion and Order on Defendants' Motion to Exclude Lyle** |

Before the Court is Defendants Fluor Corporation, Inc., and Fluor Intercontinental, Inc.'s Motion to Exclude the Testimony of Relators' Expert John Lyle pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (DE 545.) Relators have filed a Response in Opposition (DE 564), and Fluor has filed a Reply (DE 582). The motion challenges the admissibility and scope of Colonel (Ret.) Lyle's proposed expert testimony concerning the LOGCAP IV award-fee process, Fluor's performance under Task Order 0005, and the significance of certain information allegedly withheld from the Government during award-fee evaluations.

Fluor contends that Colonel Lyle is unqualified to offer several of his proffered opinions, portions of his testimony are not based on a reliable methodology, and certain opinions are speculative, impermissibly opine on intent or Government decision-making, or are otherwise unhelpful to the jury. Relators respond that

1

Colonel Lyle's extensive experience in military acquisition and logistics qualifies him to testify, his opinions are grounded in a thorough review of the record, and his testimony will assist the jury in understanding the structure and operation of the award-fee process.

For the reasons below, the Court grants the motion (DE 545) in part and denies it in part.

## I.    BACKGROUND

This action arises from allegations that Fluor Corporation, Inc., and Fluor Intercontinental, Inc. (collectively, "Fluor"), submitted false or misleading information to the United States Government in connection with performance and award-fee determinations under the Logistics Civil Augmentation Program IV ("LOGCAP IV"). LOGCAP IV was a multiple-award, indefinite-delivery/indefinite-quantity contract administered by the United States Army to provide logistics and life-support services to U.S. and coalition forces in contingency environments, including Afghanistan.

### A.    LOGCAP IV and Task Order 0005

Under LOGCAP IV, Fluor was awarded Task Order 0005 ("TO5"), a cost-plus-award-fee contract governing the provision of base operations and support services at numerous sites in Afghanistan. (*See* TO5 ¶ 1, DE 507-4 at 3; LOGCAP IV § A-5, DE 507-2 at 15.) TO5 required Fluor to provide a broad range of services, including food services, billeting, laundry, transportation, power generation, maintenance, and supply and property management, in an austere and dynamic operational environment. (*Id.* §§ 05.06, 05.09, DE 507-4 at 16–19.)

As a cost-plus-award-fee contract, TO5 permitted Fluor to recover allowable costs and to earn an additional fee based on performance exceeding contractual requirements. Award fee determinations were made periodically and were intended to incentivize superior performance rather than mere compliance with minimum contractual standards. (DE 507-2 at 36–38)

**B.   The Award Fee Process**

Award fee determinations under TO5 were governed by an Award Fee Plan, which established evaluation criteria, performance periods, and scoring methodologies. Performance was assessed by an Award Fee Evaluation Board ("AFEB"), composed of Government officials who reviewed Fluor's performance across multiple functional areas, including cost control, technical performance, schedule, and program management. (DE 545–4, Ex. 3, AFEB Scoring Demonstrative.)

The AFEB relied on multiple sources of information in conducting its evaluations, including Government monitoring reports, contractor self-assessments, briefings, and other contemporaneous documentation. The AFEB made recommendations regarding award fee scores, which were then forwarded to the Fee Determining Official for a final decision. (DE 545-7, Ex. 6, Zakheim Dep. Tr. at 32–35.) The award fee process included the exercise of judgment and discretion by Government officials and considered Fluor's performance as a whole during each evaluation period.

**C.   Relators' Allegations**

Relators allege that, during the performance of TO5, Fluor failed to disclose material information to the Government, including information concerning property

3

and materials management deficiencies, internal assessments, and performance issues at certain sites. According to Relators, this information was relevant to the Government's evaluation of Fluor's performance and, had it been disclosed, would have adversely affected Fluor's award fee scores and fee determinations. (DE 564 at 8–9; DE 545–5, Ex. 4, Lyle Rep.)

Fluor disputes these allegations and maintains that it performed the required services under TO5, that the Government was aware of performance challenges and addressed them through established oversight mechanisms, and that award fee determinations appropriately reflected Fluor's overall performance in a contingency environment. (DE 545-1.)

### D.     Colonel John Lyle's Retention and Opinions

Relators retained Colonel (Ret.) John Lyle to offer expert testimony concerning the LOGCAP IV award-fee process and Fluor's performance under TO5. Colonel Lyle retired from Government service after more than four decades in military and civilian contracting and acquisition roles, including senior leadership positions within the Air Force, the Army, and the Defense Contract Management Agency. (DE 545–5, Ex. 4, Lyle Rep. at 1–6.) His experience includes participation in, oversight of, and decision-making authority related to award fee contracts and award fee evaluation boards. (*Id*.)

In his expert report, Colonel Lyle describes the structure and purpose of award fee contracts, the operation of award fee evaluation boards, and the types of information typically considered in award fee determinations. (*Id*. at 17–25.) He

4

further offers opinions concerning Fluor's performance under TO5, the significance of certain alleged deficiencies and omissions, and the relevance of that information to the award fee process. (*Id*. at 42–78.) Certain opinions address how information was presented to the AFEB and the role such information plays in evaluating contractor performance.

### E.  The Present Motion

Fluor moves to exclude Colonel Lyle's testimony in whole or in part, arguing that portions of his proposed testimony exceed the scope of his expertise, are not based on reliable principles or methods, or improperly speculate about Government decision-making, intent, or hypothetical award-fee outcomes, including opinions regarding award-fee denial or other contractual consequences. Relators oppose the motion, contending that Colonel Lyle's testimony is grounded in extensive experience, supported by the record, and will assist the jury in understanding a complex Government contracting and evaluation framework.

## II.  LEGAL STANDARD

District courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). Rule 702 of the Federal Rules of Evidence was amended in response to *Daubert* and its progeny to provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of an expert witness's testimony bears the burden of proving that such testimony meets the requirements of Rule 702 by a preponderance of evidence. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10). As the text of the rule suggests, district courts have a "special obligation" as gatekeepers. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This means that regardless of the content of the expert testimony, "a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Beginning with qualifications, "[t]he test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006).

Turning to methodology, the court must consider "whether the reasoning or methodology underlying the testimony" is reliable. *Daubert*, 509 U.S at 592–93.

6

Certain nonexclusive factors address the reliability of a particular theory or technique, namely, whether the theory or technique:

(1)   can be and has been tested;

(2)   has been subjected to peer review and publication;

(3)   has a known or potential rate of error; and

(4)   has attained general acceptance in the pertinent scientific community.

*See id.* at 593–94. Of course, given the district court's role regarding all expert testimony, "some of *Daubert*'s questions can help to evaluate the reliability even of experience-based testimony." *Kumho Tire Co.*, 526 U.S. at 151. But in any given case, which of these factors are applicable "depends upon the particular circumstances of the particular case at issue." *Id.* at 150. And importantly, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Finally, relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *See id.* at 593; *see also* Rule 402, Fed. R. Evid.

However, "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018) (alteration omitted) (quoting another source).

### III.   DISCUSSION

7

## A.   Qualifications

Fluor first argues that Colonel Lyle is not qualified to offer several opinions contained in his expert report. Fluor does not dispute that Colonel Lyle has substantial experience in government contracting and acquisition. Instead, Fluor contends that his background does not qualify him to testify on certain specialized subject areas addressed in the report—particularly opinions concerning property and materials management, service order response and repair practices, and suspension or debarment consequences. (DE 545-1 at 17–29.) Fluor also argues that portions of Colonel Lyle's report impermissibly stray into opinions about Fluor's motive, intent, "culture," or credibility—topics that Fluor contends are not proper subjects for expert testimony because they invite speculation and merely tell the jury what inferences to draw. (*Id.* at 26–28.)

Relators respond that Colonel Lyle's qualifications are extensive and directly relevant to the subject matter of his testimony. They emphasize his more than four decades of military and civilian service in contracting and acquisition roles, including senior leadership positions involving award fee contracts, award fee evaluation boards, and fee determination authority. (DE 564 at 6–10.) According to Relators, this experience qualifies Colonel Lyle to explain the award-fee framework, the expectations placed on contractors during award-fee evaluations, and the types of performance information ordinarily relevant to award-fee determinations. (*Id.*)

Under Rule 702, the inquiry into qualifications is a "flexible one," and an expert may be qualified based on "knowledge, skill, experience, training, or education." Fed.

8

R. Evid. 702; *see also Santos v. Posadas de Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006). The relevant question is not whether the expert is qualified in some general sense, but whether he is qualified to offer the *specific opinions* at issue. *See*, e.g., *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Here, the record reflects that Colonel Lyle retired from Government service after more than forty years in military and civilian acquisition and contracting roles, including service as a warranted contracting officer, senior executive within the Defense Contract Management Agency, and participant in—and, at times, decision-maker for—award fee contracts and award fee boards. (DE 545-5 at 1–6 (Lyle Rep.)) His experience includes drafting award fee plans, serving on award fee evaluation boards, advising fee determining officials, and acting as a fee determining official himself. (*Id.* at 5–6.) He has also worked with LOGCAP contracts in multiple capacities during his career. (*Id.* at 3–4.) Based on this record, the Court finds that Colonel Lyle is qualified to offer testimony explaining the structure and purpose of award-fee contracts, the mechanics of the award-fee process, and the general types of information that are ordinarily relevant to award-fee evaluations.

However, qualification under Rule 702 is not unlimited. Fluor's challenges to Colonel Lyle's qualifications concern particular subject-matter opinions beyond the general award-fee framework—most notably opinions concerning property management, service order practices, and suspension/debarment—as well as opinions framed in terms of Fluor's intent, honesty, or corporate culture. (DE 545-1 at 28–31.) Those topic-specific objections are addressed in the corresponding sections

below. Separately, Fluor challenges Colonel Lyle's opinions regarding hypothetical award-fee outcomes and government decision-making primarily on reliability and factual foundation grounds under Rule 702(b)–(d), arguing such opinions amount to speculation about what decision-makers would have done under different circumstances. Those reliability issues are addressed below as well.

Accordingly, the Court concludes that Colonel Lyle is qualified under Rule 702 to offer expert testimony on the structure and operation of award-fee contracts and the award-fee evaluation process, subject to the limitations discussed in the sections that follow.

### B. Scope of Permissible Expert Testimony

Although the Court has determined that Colonel Lyle is generally qualified to testify regarding award fee contracts and the award fee evaluation process, that determination does not resolve the admissibility of all opinions contained in his report. Rule 702 requires not only that an expert be qualified, but that the testimony offered be confined to matters that will assist the trier of fact and do not intrude upon the role of the jury or speculate about matters beyond the expert's expertise. *See* Fed. R. Evid. 702(a); *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Fluor argues that substantial portions of Colonel Lyle's testimony exceed the permissible scope of expert opinion. In particular, Fluor challenges opinions that: (1) address Fluor's intent, honesty, or corporate culture; (2) speculate about how members of the Award Fee Evaluation Board ("AFEB") or other Government officials would have acted had they been presented with different information; and (3) assert

that Fluor would have received lower award fee scores or no award fee at all under hypothetical circumstances. (DE 545-1 at 14–23.) According to Fluor, these opinions are inadmissible because they speculate about subjective decision-making, lack a sufficient factual foundation or reliable methodology, and improperly substitute the expert's judgment for that of the jury or Government decisionmakers. (*Id.*)

Relators respond that Colonel Lyle's testimony is not intended to opine on Fluor's intent or to engage in impermissible mind-reading of Government officials. Rather, they characterize his opinions as experience-based testimony explaining how award fee contracts function in practice, what types of information award fee boards generally consider significant, and how certain categories of performance information bear on award fee eligibility and evaluation. (DE 564 at 12–13.) Relators contend that such testimony will assist the jury in understanding a complex Government contracting and evaluation framework beyond the experience of most lay jurors. (*Id.*)

The Court agrees that expert testimony explaining the structure and operation of award fee contracts, the role of award fee evaluation boards, and the general types of information ordinarily considered in award fee determinations may assist the jury. Colonel Lyle may therefore testify regarding how award fee contracts are designed to function, how performance information is generally evaluated within that framework, and why certain categories of information—such as performance deficiencies or compliance issues—are typically regarded as relevant in award fee evaluations. (*See* DE 545–5 at 17–25 (Lyle Rep.))

11

However, the Court agrees with Fluor that Colonel Lyle's testimony must be carefully circumscribed. Expert testimony may not speculate about a party's intent or credibility, nor may it opine on how particular decisionmakers would have acted under counterfactual circumstances. *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). This limitation is especially salient where, as here, the decision-making process at issue is concededly discretionary and subjective, and where the expert lacks a factual basis or reliable methodology for reconstructing the reasoning of individual decision-makers. This conclusion is reinforced by Colonel Lyle's own testimony acknowledging that award-fee determinations are inherently subjective and that, even after reviewing the record, he could only "guess" as to why individual board members scored Fluor as they did. (DE 545-3 at 325–326, Ex. 2, (Lyle Dep.) 324:16–325:7.)

Accordingly, Colonel Lyle may not offer opinions that purport to determine Fluor's intent, honesty, or state of mind, or that characterize Fluor's conduct as fraudulent, deceptive, or unethical. Nor may he testify that particular AFEB members—or a hypothetical "prudent" or "reasonable" AFEB member—would have altered their scores, recommendations, or fee determinations had they been provided with additional or different information. Likewise, opinions asserting that Fluor "would have" lost award fees or received lower award fee ratings under hypothetical scenarios lack a sufficient factual foundation and reliable methodology and therefore exceed the permissible scope of expert testimony under Rule 702.

In sum, Colonel Lyle's testimony is admissible only to the extent it provides general, experience-based explanatory context regarding the award fee process and the relevance of performance information within that process. Testimony that crosses the line into speculation about intent, credibility, or hypothetical Government decision-making is not permitted.

## C.  Reliability and Methodology

In addition to qualification and scope, Rule 702 requires that expert testimony be the product of reliable principles and methods and that the expert reliably apply those principles and methods to the facts of the case. *See* Fed. R. Evid. 702(b)–(d). When, as here, an expert's opinions are based primarily on experience rather than scientific testing, the Court's inquiry focuses on whether the expert has adequately explained how his experience leads to the conclusions reached and how that experience is reliably applied to the facts. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51 (1999).

Fluor argues that Colonel Lyle's opinions fail this standard because they are not grounded in any identifiable methodology beyond his personal views and hindsight assessment of the record. (DE 545-1 at 23–31.) Fluor contends that Colonel Lyle did not rely on evidence from the actual award-fee decisionmakers or any materials reflecting how individual board members weighed or evaluated information, and instead reconstructed the award-fee process retrospectively based on his own assessment of the record, did not articulate or apply a consistent analytical framework grounded in the Award Fee Plan for translating qualitative performance

13

information into specific award-fee consequences, and frequently substituted his own judgment for that of Government evaluators. (*Id.*) Fluor further argues that Colonel Lyle's testimony reflects little more than his belief that certain information was "important," without a reliable analytical framework connecting that belief to award fee outcomes. (*Id.*)

Relators respond that Colonel Lyle employed a reliable, experience-based methodology consistent with how award fee evaluations are conducted in practice. They emphasize that Colonel Lyle reviewed extensive documentary evidence, including contracts, award fee materials, deposition testimony, and contemporaneous performance records, and evaluated that information through the lens of decades of Government contracting experience. (DE 564 at 18–26.) According to Relators, this approach is precisely the type of methodology contemplated by Rule 702 for experience-based experts. (*Id.*)

The Court agrees that experience-based testimony may satisfy Rule 702 where the expert explains how that experience informs the analysis. Colonel Lyle reviewed the LOGCAP IV contract, the TO5 Award Fee Plan, award fee materials, and other contemporaneous records, and he drew upon his experience serving on award fee boards and acting as a fee determining official. (DE 545-5 at 7–12 (Lyle Rep.)) To the extent his testimony explains the general purpose of award fee contracts, the discretionary nature of award fee determinations, and why certain categories of information are typically viewed as relevant in that process, the Court finds that his methodology is sufficiently reliable.

However, the Court also finds that portions of Colonel Lyle's analysis lack the methodological rigor required by Rule 702. In several instances, Colonel Lyle moves from identifying information he believes to be significant to asserting conclusions about its impact on award fee determinations without articulating a reliable analytical bridge between the two. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). For example, opinions asserting that certain omissions "would have" altered award fee outcomes or that Government officials "would not have" awarded particular fees are not tied to objective criteria in the Award Fee Plan or supported by a discernible method for assessing causation. As discussed below, and in light of the parties' dispute over cases such as *Buckley* and *Mirena* (*see* n.1 *infra*), such opinions reflect Colonel Lyle's subjective judgment about how he believes the process should have operated.[1] The Fourth Circuit has emphasized that experience-based testimony must still be supported by a demonstrable analytical connection between the expert's experience and the opinions offered, and that admitting opinions resting on

---

[1]     In *Buckley v. Deloitte & Touche USA LLP*, the court excluded an expert's opinion that a corporate board and lenders would have restructured a company had they been presented with different information, reasoning that the decision at issue involved judgment and discretion and that the expert lacked a factual or methodological basis for reconstructing how individual decisionmakers would have acted. 888 F. Supp. 2d 404, 413–14 (S.D.N.Y. 2012), aff'd, 541 F. App'x 62 (2d Cir. 2013). Similarly, in *In re Mirena IUD Products Liability Litigation*, the court recognized that while experts may explain regulatory processes and the types of information typically considered by government bodies, they may not speculate as to how those bodies would have exercised their discretion if presented with different information. 169 F. Supp. 3d 396, 466–67 (S.D.N.Y. 2016).

These principles apply with particular force here. The Award Fee Evaluation Board's determinations are inherently subjective and discretionary, reflecting the qualitative judgments of multiple individual members rather than the application of objective or formulaic criteria. Where an expert seeks to predict how such a body would have exercised its discretion under hypothetical circumstances, the opinion rests on speculation rather than a reliable application of principles to facts and is inadmissible under Rule 702.

15

unexplained assumptions or ipse dixit constitutes an abuse of discretion. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283–84 (4th Cir. 2021).

This methodological deficiency is reinforced by Colonel Lyle's own testimony acknowledging that award-fee determinations are inherently subjective and that, even after reviewing the record, he could only "guess" as to why individual board members assigned the scores they did. (DE 545-3 at 325–326, Ex. 2, (Lyle Dep.) 324:16–325:7.) An expert's admission that his conclusions depend on conjecture rather than a reproducible analytical process underscores the absence of a reliable methodology under Rule 702.

The Court is mindful that the award fee process itself involves discretion and judgment. But Rule 702 does not permit an expert to replace that discretion with his own, particularly where the expert's conclusions depend on speculation about hypothetical decision-making by others. *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994). Where Colonel Lyle's opinions rest on generalized assertions untethered from a consistent application of the Award Fee Plan's criteria, they do not reflect a reliable application of principles to the facts.

Accordingly, the Court concludes that Colonel Lyle's methodology is reliable only to the extent he applies his experience to explain how award fee processes function and how performance information is ordinarily evaluated. His methodology is unreliable when it extends to counterfactual conclusions about specific award-fee outcomes, predictions of Government action, or retrospective judgments that are not grounded in an articulated and consistently applied framework.

16

**D.     Summary of Excluded Opinion Testimony (Trial Limitations)**

Consistent with the above analysis and for ease of trial management, the following categories of opinion testimony by Colonel Lyle are excluded under Rule 702 based on the Court's analysis above.

**1.  Opinions on Intent, Honesty, or State of Mind**

Colonel Lyle may not offer opinions regarding Fluor's intent, honesty, motive, credibility, or state of mind. This prohibition applies whether such opinions are stated expressly or implied through characterizations, narrative framing, or evaluative language describing Fluor's conduct or alleged motivations. Testimony characterizing Fluor's conduct as deceptive, misleading, unethical, or undertaken with an improper motive is not a proper subject of expert testimony and would invade the province of the jury. *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006).

**2.  Opinions Predicting Government or AFEB Decision-Making**

Colonel Lyle may not offer opinions speculating about how specific Government officials, exercising discretionary authority, or members of the AFEB would have acted had they been presented with different or additional information. This prohibition includes testimony predicting how particular AFEB members, a hypothetical "prudent" or "reasonable" AFEB member, the Fee Determining Official, or other reviewing authorities would have exercised their discretion under hypothetical circumstances. Such opinions are inherently speculative and lack a reliable methodological foundation. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### 3. Opinions Predicting Award-Fee Outcomes Under Hypothetical Scenarios

Colonel Lyle may not testify that Fluor would have received lower award fee scores, forfeited award fees, or otherwise suffered adverse award fee outcomes under counterfactual scenarios. Because award fee determinations are the product of discretionary judgments by Government decisionmakers, opinions predicting altered outcomes necessarily depend on impermissible speculation about how those officials would have acted. While Colonel Lyle may explain the types of information that are generally relevant to award fee evaluations, he may not opine on the ultimate effect of such information on specific award fee determinations. *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994).

### 4. Legal Conclusions and Opinions Applying Legal Standards

Colonel Lyle may not offer legal conclusions or opinions concerning whether Fluor violated contractual, regulatory, or statutory obligations, including whether Fluor engaged in fraud, submitted false claims, or failed to comply with disclosure or reporting requirements. This prohibition applies both to explicit legal conclusions and to opinions that effectively instruct the jury how to apply legal standards to the facts. Such determinations are reserved for the jury and the Court and are not appropriate subjects for expert testimony. *See United States v. Smith*, 919 F.3d 825, 836 (4th Cir. 2019).

### 5. Opinions Outside Colonel Lyle's Qualifications - Property Management and Service Orders

Colonel Lyle may not offer opinions concerning the adequacy of Fluor's property or materials management practices, service order response or repair time compliance, or the operation of specialized systems governing those functions. As explained above, Colonel Lyle lacks the specialized training or experience necessary to render expert opinions on these technical subject areas, and such testimony therefore falls outside the scope of his qualifications under Rule 702. (*See* DE 545-1 at 21–29.)

### 6. Opinions Predicting Collateral Administrative or Contractual Consequences

Colonel Lyle may not offer opinions predicting collateral consequences of Fluor's alleged conduct, including suspension, debarment, or other administrative or contractual remedies. Such opinions are speculative, irrelevant to the issues the jury must decide, and fall outside the scope of permissible expert testimony under Rule 702. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 196–97 (4th Cir. 2017); *In re Pella Corp. Arch. & Designer Series Windows Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2013 WL 2464048, at *6 (D.S.C. June 7, 2013).

Nothing in this Order precludes Colonel Lyle from testifying, consistent with the limitations above, regarding the structure and operation of award fee contracts, the role and function of award fee evaluation boards, or the types of information ordinarily considered relevant in award fee determinations.

## IV.   CONCLUSION

For the reasons above, Defendants Fluor Corporation, Inc., and Fluor Intercontinental, Inc.'s Motion to Exclude the Testimony of John Lyle (DE 545) is **GRANTED IN PART AND DENIED IN PART**. Colonel Lyle may testify consistent with the limitations imposed in this Order.

    **IT IS SO ORDERED**.

                                                Joseph Dawson, III
                                                United States District Judge

Florence, South Carolina
January 14, 2026