# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* CHARLES R. SHEPHERD and DANNY V. RUDE; ROBERT SCOTT DILLARD; and RICKEY MACKEY,<br><br>Plaintiff-Relators,<br><br>v.<br><br>FLUOR CORPORATION, INC., FLUOR INTERCONTINENTAL, INC.,<br><br>Defendants. | CASE NO.: 6:13-cv-02428-JD<br><br>**Memorandum Opinion and Order on Defendants' Motion to Exclude Zakheim** |

Before the Court is Defendants Fluor Corporation, Inc., and Fluor Intercontinental, Inc.'s Motion to Exclude the Testimony of Relators' Expert Dov S. Zakheim pursuant to Federal Rules of Evidence 702 and 403. (DE 548.) Fluor seeks to exclude Dr. Zakheim's testimony because he is unqualified to offer certain opinions, his methodology is unreliable, and portions of his testimony are irrelevant, speculative, or unfairly prejudicial. Relators have filed a Response in Opposition (DE 566), and Fluor has filed a Reply (DE 581).

For the reasons below, the motion is granted in part and denied in part.

## I.   BACKGROUND

**A.   LOGCAP IV, Task Order 0005, and Government Oversight**

This case arises from Fluor's performance under LOGCAP IV, Task Order 0005 ("TO5"), under which Fluor provided logistics and support services to U.S. military operations in Afghanistan. As a cost-reimbursable contract, TO5 was subject to

1

oversight by multiple Government entities, including the Defense Contract Management Agency ("DCMA") and the Defense Contract Audit Agency ("DCAA").

As part of that oversight, DCMA conducted periodic Property Management System Analyses, or Property Management System Analysis ("PMSAs"), to assess whether Fluor's property management system complied with applicable contractual and regulatory requirements. PMSAs evaluate the design and operation of a contractor's system and may result in findings, corrective action requests, or system approval determinations. PMSAs do not evaluate individual claims for payment and are not designed to function as fraud-detection mechanisms.

In addition to Government oversight, Fluor conducted internal audits and assessments related to its property and materials management practices and communicated with Government officials regarding performance issues during TO5.

## B.    Relators' Allegations and Fluor's Defense

Relators allege that Fluor failed to disclose material deficiencies in its property and materials management practices, misrepresented the adequacy of its systems, and improperly billed the Government under TO5. As relevant here, Relators contend that Government oversight mechanisms, including PMSAs, did not fully capture or resolve internal deficiencies known to Fluor.

Fluor disputes these allegations and asserts, among other defenses, that DCMA oversight—including multiple PMSAs—demonstrates that its property management system was acceptable and that the Government was aware of and addressed performance issues through established oversight processes.

## C.     Dr. Dov Zakheim and His Opinions

Relators retained Dr. Dov S. Zakheim to offer expert testimony regarding Department of Defense financial oversight, acquisition practices, and the operation and limitations of Government review mechanisms in contingency environments. (DE 548-3.) Dr. Zakheim served in senior roles within the Department of Defense, including as Under Secretary of Defense (Comptroller) and Chief Financial Officer, and has extensive experience with defense acquisition, financial management, and wartime contracting oversight. (DE 548-3 at 2–3.)

In his expert report, Dr. Zakheim describes the structure and purpose of PMSAs, the respective roles of the DCMA DCAA, and the practical constraints facing Government oversight entities during contingency operations. (DE 548-3 at 10–19.) He opines that PMSAs are system-level reviews designed not to detect all deficiencies in a contractor's property management system and that internal contractor audits and disclosures may identify issues not surfaced through Government reviews. (*Id.* at 20–27.) Dr. Zakheim further offers opinions regarding Fluor's communications with the Government, the significance of Fluor's internal assessments, and the limitations of relying on PMSA results as conclusive evidence of full compliance. (*Id.* at 27–35.)

Certain portions of Dr. Zakheim's report also address Fluor's conduct and communications, the extent of the Government's awareness of alleged deficiencies, and events in Afghanistan during TO5 performance. (*Id.* at 35–45.)

**D.     The Present Motion**

Fluor moves to exclude Dr. Zakheim's testimony in whole or in part. Fluor argues that Dr. Zakheim lacks a reliable basis to opine on Fluor's intent, credibility, or compliance with contractual and legal requirements; he improperly speculates about what the Government knew or would have done under different circumstances; and portions of his testimony—including narrative descriptions of violent events—extend beyond explaining Government oversight structures into irrelevant and unfairly prejudicial matters under Rule 403. (DE 548.)

Relators oppose exclusion, arguing that Dr. Zakheim's extensive experience qualifies him to explain the Government oversight framework, his opinions are grounded in record evidence, and Fluor's objections go to weight rather than admissibility. (DE 566.)

## II.     LEGAL STANDARD

District courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). Rule 702 of the Federal Rules of Evidence was amended in response to *Daubert* and its progeny to provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of an expert witness's testimony bears the burden of proving that such testimony meets the requirements of Rule 702 by a preponderance of evidence. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10). As the text of the rule suggests, district courts have a "special obligation" as gatekeepers. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Regardless of the content of the expert testimony, "a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

    Beginning with qualifications, "[t]he test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006).

    Turning to methodology, the court must consider "whether the reasoning or methodology underlying the testimony" is reliable. *Daubert*, 509 U.S at 592–93. Certain nonexclusive factors address the reliability of a particular theory or technique, namely, whether the theory or technique:

    (1)    can be and has been tested;

    (2)    has been subjected to peer review and publication;

  (3) has a known or potential rate of error; and

  (4) has attained general acceptance in the pertinent scientific community.

*See id.* at 593–94. Of course, given the district court's role regarding all expert testimony, "some of *Daubert*'s questions can help to evaluate the reliability even of experience-based testimony." *Kumho Tire Co.*, 526 U.S. at 151. But in any given case, which of these factors are applicable "depends upon the particular circumstances of the particular case at issue." *Id.* at 150. And importantly, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

  Finally, relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *See id.* at 593; *see also* Rule 402, Fed. R. Evid.

  However, "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018) (alteration omitted) (quoting another source).

### III. DISCUSSION

**A. Qualifications**

  Fluor does not dispute that Dr. Zakheim held senior positions within the Department of Defense and has substantial experience in Department-wide financial management, acquisition oversight, and wartime contracting. Dr. Zakheim served as Under Secretary of Defense (Comptroller) and Chief Financial Officer from 2001 to

2004 and later served as the Department of Defense's Civilian Coordinator for Afghanistan and as a commissioner on the Congressionally mandated Commission on Wartime Contracting in Iraq and Afghanistan. (DE 548-3 at 2–3; DE 548-6.)

The parties' dispute concerns not Dr. Zakheim's senior government service, but the extent to which that experience supplies specialized expertise for the particular subjects addressed in his proffered opinions. Fluor argues that Dr. Zakheim lacks specialized knowledge and experience in the day-to-day administration of Government property requirements, including the conduct of PMSAs, DCMA property administration, and the application of specific FAR/DFARS provisions governing contractor property systems and related consequences. (*See* generally DE 548-1 at 13–28.) Relators respond that Dr. Zakheim is not offered as an "in-theater" property administrator or contracting officer and that his testimony is instead intended to assist the jury in understanding the perspective and concerns of senior Department of Defense officials, including how integrity, candor, and reported performance issues could matter to decision-makers at that level. (See generally DE 566 at 10–15.) Relators further contend that Dr. Zakheim does not purport to interpret the contract or opine on the legal meaning of contractual or regulatory requirements. (*Id.* at 10–11.) Fluor disputes that characterization and argues, in any event, that any attempted narrowing does not cure the defects identified in the report and deposition testimony.

For purposes of Rule 702(a), and without resolving the parties' disputes regarding scope, fit, and the permissible bounds of the opinions ultimately offered,

7

the Court finds that Dr. Zakheim's education and experience at senior levels of the Department of Defense qualify him to provide experience-based testimony regarding (1) the structure and objectives of DoD oversight mechanisms in contingency environments, (2) the general roles of oversight entities within DoD, and (3) the practical constraints such entities may face in wartime settings. Dr. Zakheim also states that he reviewed a substantial body of case materials, including DCMA PMSA reports, internal audits, corrective action plans, and contemporaneous correspondence. (DE 548-3 at 3–5.) Whether, and to what extent, he may offer opinions applying those concepts to specific PMSA outcomes, disapproval decisions, contractual or regulatory compliance requirements, or downstream consequences is addressed below.

Accordingly, the Court concludes that Dr. Zakheim satisfies Rule 702's threshold "qualification" requirement for the limited purpose of offering experience-based testimony within the foregoing bounds.[1] *See* Fed. R. Evid. 702; *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (qualifications under Rule 702 are liberally construed).

---

[1] The Court emphasizes, however, that qualification under Rule 702 is a necessary but not a sufficient condition for admissibility. An expert's experience may qualify him to explain general frameworks, considerations, and institutional perspectives, yet still not support opinions that predict or declare how discretionary decisions would have been exercised in a particular case. Thus, while Dr. Zakheim's senior-level experience qualifies him to provide context regarding Government oversight and decision-making environments, it does not, standing alone, authorize testimony about specific outcomes, intent, or consequences in this matter. Those issues are addressed in the scope and reliability analysis below.

**B.     Scope, Reliability, and Fit**

Qualification alone, however, does not resolve admissibility. The Court must ensure that Dr. Zakheim's opinions are reliable, properly limited in scope, and sufficiently tied to the issues the jury must decide. *See Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 591 (1993); *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Because Dr. Zakheim's opinions are predominantly experience-based, reliability depends on whether he "explain[s] how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007).

**1.     Permissible Experience-Based Testimony**

Fluor argues that Dr. Zakheim's report is largely an advocacy narrative that does not employ a reliable methodology and does not assist the jury because jurors are capable of reading the documents for themselves. (DE 548-1 at 28–32.) Relators respond that Dr. Zakheim applied long-accepted experience-based methodology: he reviewed the record and, assuming the jury accepts the underlying facts, opines about why those facts would matter to senior Department of Defense officials and why Government oversight outcomes do not necessarily resolve contractor compliance or disclosure disputes. (DE 566 at 15–17.)

The Court agrees that certain general, experience-based testimony is both reliable and helpful. Dr. Zakheim may testify, in general terms, regarding the purpose and practical limitations of Government oversight mechanisms in

9

contingency environments—including that PMSAs are system-level reviews, may rely on sampling, are affected by resource and operational constraints, and are not designed as fraud-detection tools—and why the existence of PMSAs finding a system "adequate" does not, standing alone, foreclose factual disputes about what was occurring internally or what information was (or was not) disclosed. This testimony is sufficiently tied to Fluor's anticipated reliance on Government oversight and DCMA approval and will assist the jury in evaluating the weight to assign to that defense. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51 (1999).

At the same time, the Court emphasizes the limits of this ruling. Expert testimony may not simply summarize record evidence under the guise of expertise in a manner that risks presenting advocacy or speculation as specialized knowledge. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001). To the extent Dr. Zakheim's testimony becomes a document-by-document narrative offered to argue what happened or to urge the jury to adopt Relators' factual inferences, it is not admissible expert testimony.[2]

### 2.   Impermissible opinions regarding intent, credibility, and concealment

Fluor argues that Dr. Zakheim's report and testimony go beyond permissible expert context and instead offer conclusions that, in substance, attribute dishonest

---

[2]   The defect in such advocacy-style testimony is not merely one of tone or emphasis, but of methodology. Rule 702 requires that an expert reliably apply specialized knowledge to the facts of the case. Where an expert instead selects, summarizes, and characterizes documents without articulating a principled basis for doing so beyond advancing one party's theory of the case, the testimony ceases to be expert analysis and becomes impermissible factual argument. Rule 702 does not permit an expert to function as a narrator or advocate under the guise of specialized experience.

intent, concealment, or deception to Fluor based on his interpretation of internal documents. Fluor further contends that these opinions improperly encroach on the jury's role by inviting credibility determinations and intent-based inferences, particularly where Dr. Zakheim had no personal involvement in the underlying events and did not conduct any case-specific investigation, such as interviewing relevant witnesses. (DE 548-2 at 106–07, 126–127, 141–142 (Zakheim Dep.) 105:19–106:11, 140:10–141:1, 123:19–126:10.)

Relators respond that Dr. Zakheim does not attempt to opine on the subjective intent or mental states of Fluor personnel and that references in his report to Fluor *knowing* certain facts reflect permissible, document-based inferences regarding notice and the existence of information within the organization, rather than impermissible opinions about motive, intent, or credibility. (DE 566 at 23–24.)

The Court agrees with Fluor that Rule 702 does not permit expert testimony that directly, or in practical effect, instructs the jury to conclude that a party acted dishonestly, deceptively, or with intent to mislead, or that it concealed information from the Government. *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). Such determinations depend on credibility and intent assessments reserved for the jury and are not the product of a reliable expert application of specialized knowledge. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Accordingly, Dr. Zakheim may not testify that Fluor acted dishonestly or deceptively, engaged in a cover-up, concealed information, lacked integrity, or intentionally misled Government officials. (DE 548-3 at 31–40.) Nor may he offer

11

expert opinions framed as conclusions about Fluor's motive, intent, credibility, or corporate ethics.

This limitation does not preclude Dr. Zakheim from identifying categories of information reflected in the record that, if credited by the jury, would have placed a contractor on notice of operational or compliance issues, or from explaining why such information would be significant to senior Department of Defense officials. (*See* e.g., DE 566 at 23 (asserting Fluor was on *notice* of the issues).) The line is crossed, however, where the testimony moves from describing the existence or significance of information to directing the jury to draw conclusions about Fluor's honesty, intent, or credibility.

### 3. Counterfactual predictions of Government action and Legal conclusions

Fluor also challenges Dr. Zakheim's opinions regarding what DCMA, DCAA, an Award Fee Evaluation Board, an Inspector General, or suspension and debarment officials would have done had they possessed additional information, including assertions that the Government would have disapproved Fluor's business systems, imposed financial penalties, denied or clawed back award fees, or pursued suspension or debarment. (DE 548-1 at 18–27.) Fluor argues that these opinions are speculative, rest on no reliable methodology, and improperly predict the exercise of discretionary Government decision-making.

Relators respond that these opinions are offered to establish materiality—namely, that the information at issue would have mattered to senior Department of

Defense officials—and that an expert may assume the jury accepts the factual predicates underlying the opinion. (DE 566 at 15–22.)

The Court finds that Dr. Zakheim may, at a general level, describe the existence and purpose of Government oversight and response mechanisms, including that contractors are subject to system reviews and that corrective-action and enforcement processes exist. He may also explain why integrity, candor, and accurate reporting can matter to senior Government officials.

However, Dr. Zakheim may not opine that particular Government actors would have reached different outcomes in this case, exercised their discretion in a specific manner, or imposed particular contractual, regulatory, or financial consequences had they known additional information. Such testimony consists of speculative counterfactual predictions that depend on discretionary, multi-factor decision-making and is not supported by an articulated, reliable method for forecasting how the Government would have acted on this record.[3] *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *Joiner*, 522 U.S. at 146.

For the same reasons, Dr. Zakheim may not offer legal conclusions regarding what the contract or regulations require or instruct the jury on what legal or

---

[3] The Court recognizes that, in a False Claims Act case, materiality may be informed by evidence that certain information would have been important to Government decision-makers. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016). Nothing in this ruling precludes general testimony explaining why integrity, candor, and accurate reporting are relevant considerations within Government oversight regimes. What Rule 702 forbids, however, is expert speculation that particular officials would have exercised their discretion in a specific manner, or that defined contractual, financial, or enforcement consequences would have followed on this record. Such counterfactual outcome predictions exceed the bounds of reliable expert testimony and intrude on the jury's role.

13

contractual consequences should follow from a given set of facts. *See McIver*, 470 F.3d at 562. He may describe processes in general terms, but he may not apply those processes to declare the proper outcome in this case. This limitation applies regardless of whether such opinions are framed as what the Government "would have done," "likely would have done," or "typically does." Testimony describing the existence of oversight mechanisms or the factors such mechanisms may consider is permissible; testimony that applies those processes to declare the proper or expected outcome in this case is not. Recasting excluded opinions in generalized or hypothetical terms does not render them admissible where their substance remains predictive or conclusory.

**C.     Rule 403**

Fluor separately seeks to exclude, under Rule 403, narrative testimony concerning violent incidents in Afghanistan, including references to a suicide bombing and related loss of life. (DE 548-1 at 35–37.) Fluor argues such testimony has minimal probative value to the claims and defenses being tried, would invite a collateral mini-trial over a tragic event, and creates a substantial risk of unfair prejudice and jury distraction. (*Id*.) Relators respond that the incident is probative to rebut anticipated defenses—particularly contentions that Fluor's alleged property-management failures had no "mission" impact and that the alleged misconduct was immaterial because the Government imposed no meaningful consequences when it learned of performance failures—and they contend the issue is better addressed through motions in limine. (DE 566 at 24–25.)

14

The Court recognizes the parties' competing positions. Even assuming the incident has some probative value for context, Rule 403 permits exclusion where the risk of unfair prejudice, confusion of the issues, and undue consumption of time substantially outweighs that probative value.[4] *See* Fed. R. Evid. 403. Here, detailed testimony about violent events—particularly where the proffer would invite the jury to attribute casualties to Fluor or to litigate the causes and responsibility for the attack—poses a substantial risk of inflaming the jury and diverting attention from the elements the jury must decide in this False Claims Act case. *See Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235 (4th Cir. 2001).

Accordingly, Dr. Zakheim may testify in general terms regarding the operational challenges of contingency environments to the extent that such context informs the limitations of oversight mechanisms. But he may not offer detailed or emotionally charged accounts of violent incidents, and he may not opine—directly or by implication—that Fluor's alleged property-management practices "caused" such incidents or "cost lives." (DE 548-1 at 35–37.) If Relators contend the incident is admissible for a specific, limited purpose tied to a discrete defense as it develops at trial, they may seek a ruling outside the jury's presence. The Court will consider any tailored proffer and limiting instruction as appropriate.

---

[4] The probative value of detailed testimony concerning a specific violent incident is limited, as such evidence does not directly bear on the elements of falsity, scienter, or materiality that the jury must decide. By contrast, the risk that emotionally charged testimony could inflame the jury, invite moral blame untethered to the statutory elements, or divert the trial into collateral disputes substantially outweighs that limited relevance. Rule 403, therefore, counsels exclusion of such testimony in anything beyond the most general contextual terms.

15

**D.    Summary of Rulings and Trial Limitations**

For clarity and to facilitate orderly presentation of evidence at trial, the Court summarizes its rulings regarding Dr. Zakheim's testimony as follows:

**1.    Permitted testimony.**

Dr. Zakheim may offer experience-based testimony, grounded in his senior Department of Defense service, concerning:

- the structure, purpose, and general limitations of Government oversight mechanisms in contingency environments, including PMSAs;

- the effect of wartime conditions, resource constraints, and sampling practices on what such oversight mechanisms are likely to detect; and

- why the existence of PMSAs or other Government reviews finding a system "adequate" does not, standing alone, resolve factual disputes concerning internal deficiencies or disclosures.

**2.    Excluded testimony—intent, credibility, and ethics**

Dr. Zakheim may not testify that Fluor acted dishonestly, deceptively, or with intent to mislead; that it "hid" or "covered up" information; that it lacked integrity; or that it engaged in fraud. He may not offer expert opinions regarding Fluor's state of mind, motive, credibility, or corporate ethics, whether explicitly or through loaded characterizations or rhetorical framing.

**3.    Excluded testimony—counterfactual Government action and consequences.**

Dr. Zakheim may not state that DCMA, DCAA, an Award Fee Evaluation Board, an Inspector General, or suspension/debarment officials would have taken specific actions had they known additional information, including that they would have altered PMSA results, disapproved Fluor's systems, imposed particular

16

financial consequences, denied or clawed back award fees, or suspended or debarred Fluor. Such counterfactual predictions and legal conclusions are speculative and impermissible. These exclusions apply to the substance of the opinions, not merely their phrasing. Testimony that, in effect, predicts or declares Government decision-making outcomes is inadmissible regardless of whether it is presented as a general tendency, hypothetical scenario, or illustrative example.

    4.    **Limit on narrative fact summaries.**

Dr. Zakheim may not present a document-by-document factual narrative or select and characterize record evidence in a manner that effectively argues Relators' version of events under the guise of expert testimony. To the extent the underlying documents are relevant, they may be presented through fact witnesses or admitted into evidence directly. Expert testimony must add specialized context rather than merely repackage facts for advocacy.

    5.    **Rule 403 limitations**

Dr. Zakheim may testify generally about the challenges of operating in contingency environments, so far as that context bears on oversight limitations. He may not offer detailed, graphic, or emotionally charged testimony regarding violent incidents, including suicide bombings, nor may he state that Fluor's alleged conduct caused such incidents or resulted in loss of life.

### 6.   Preservation of objections and trial management.

The proponent of the expert testimony bears the responsibility for eliciting opinions that remain within the bounds set forth in this Order. The Court will not permit excluded opinions to be introduced through incremental questioning or cumulative context. That said, these rulings do not foreclose contemporaneous objections at trial where testimony exceeds the bounds set forth above. The Court will address any close questions outside the presence of the jury as necessary to ensure compliance with Rules 702 and 403.

## IV.   CONCLUSION

In sum, the Court concludes that Dr. Zakheim's testimony is admissible in part. He may testify regarding the structure, purpose, and limitations of PMSAs and Government oversight mechanisms, and about general contracting and oversight practices in contingency environments. He may not, however, testify regarding Fluor's intent, credibility, alleged concealment, legal compliance, or hypothetical Government actions, nor may he offer prejudicial narrative testimony unrelated to the elements of Relators' claims.

Accordingly, Defendants Fluor Corporation, Inc., and Fluor Intercontinental, Inc.'s Motion to Exclude the Testimony of Relators' Expert Dov S. Zakheim (DE 548) is granted in part and denied in part, consistent with the limitations set forth above.

**IT IS SO ORDERED**.

                                                          _____
                                                          Joseph Dawson, III
                                                          United States District Judge

Florence, South Carolina
January 14, 2026