# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* CHARLES R. SHEPHERD and DANNY V. RUDE; ROBERT SCOTT DILLARD; and RICKEY MACKEY,<br><br>Plaintiff-Relators,<br><br>v.<br><br>FLUOR CORPORATION, INC., FLUOR INTERCONTINENTAL, INC.,<br><br>Defendants. | CASE NO.: 6:13-cv-02428-JD<br><br>**Memorandum Opinion and Order on Defendants' Motion to Exclude in part Dr. Gaukler's Testimony** |

Before the Court is Defendants Fluor Corporation, Inc., and Fluor Intercontinental, Inc.'s Motion to Exclude Certain Opinions of Relators' Expert, Dr. Gary Gaukler, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (DE 542.) Relators have filed a Response in Opposition (DE 560), and Fluor has filed a Reply (DE 579). The motion concerns the admissibility and scope of Dr. Gaukler's proposed expert testimony regarding analyses derived from Fluor's Maximo data. For the reasons below, the motion is granted in part and denied in part.

## I.     BACKGROUND

### A.     Factual Background

This is a False Claims Act action arising from Defendants Fluor Corporation, Inc. and Fluor Intercontinental, Inc.'s ("Fluor") performance of logistics and life-support services for the United States military in Afghanistan under the Logistics

1

Civil Augmentation Program IV ("LOGCAP IV") contract and Task Order 0005 ("TO5"). Relators allege, among other things, that Fluor knowingly submitted false claims and false statements to the Government in connection with award fee determinations and property-management obligations, and that Fluor retaliated against certain employees who raised concerns regarding those practices. (*See generally* DE 121; *see also* DE 507; DE 512.)

In support of their claims, Relators designated Dr. Gary Gaukler as an expert witness. According to his report, Dr. Gaukler analyzed data extracted from Fluor's Maximo property-management system and related materials to identify patterns reflected in recorded response times, repair times, and other system entries. (DE 542-2.) Relators contend that this analysis will assist the jury in evaluating Fluor's representations regarding its performance and internal controls. (DE 560 at 1-2.)

**B.    The Parties' Positions**

Fluor does not seek to exclude Dr. Gaukler in his entirety. Rather, Fluor moves to exclude or limit discrete portions of his proposed testimony. Specifically, Fluor challenges opinions and characterizations that it contends exceed Dr. Gaukler's expertise, lack a reliable methodological foundation, or impermissibly opine on contractual compliance, fraudulent intent, and the interpretation of documents and communications. (DE 542-1 at 8–15.) Fluor also argues that certain aspects of the proposed testimony amount to narrative advocacy or speculative inference rather than expert analysis. (*Id.*)

Relators oppose the motion, arguing that Dr. Gaukler is qualified to perform the database queries and descriptive analyses reflected in his report, that those analyses employ reliable and accepted analytical techniques, and that his testimony will assist the jury in understanding complex data generated by Fluor's own Maximo system. (DE 560 at 5–6.) Relators further maintain that Dr. Gaukler does not purport to interpret contractual requirements, opine on fraud, or offer legal conclusions, but instead explains what the underlying data shows and how it was generated. (*Id.* at 10–18.) According to Relators, Fluor's criticisms improperly seek to transform disputes over the interpretation and significance of the data into admissibility challenges, and therefore go to the weight of the testimony rather than its admissibility under Rule 702. (*Id.* at 12.)

In reply, Fluor maintains that it does not challenge the admissibility of Dr. Gaukler's underlying Maximo queries or descriptive analytics. Instead, Fluor asserts that its motion seeks only to enforce the limits imposed by Federal Rules of Evidence 702 and 703 by excluding opinions that stray beyond reliable analysis into speculation, narrative, or conclusions unsupported by specialized knowledge. (DE 579 at 3-4.)

The motion is fully briefed and ripe for disposition. Trial in this matter has been scheduled, and the Court addresses the admissibility and scope of Dr. Gaukler's testimony in that procedural context.

## II.    LEGAL STANDARD

District courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). Rule 702 of the Federal Rules of Evidence was amended in response to *Daubert* and its progeny to provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of an expert witness's testimony bears the burden of proving that such testimony meets the requirements of Rule 702 by a preponderance of evidence. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10). As the text of the rule suggests, district courts have a "special obligation" as gatekeepers. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This means that regardless of the content of the expert testimony, "a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Beginning with qualifications, "[t]he test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006).

Turning to methodology, the court must consider "whether the reasoning or methodology underlying the testimony" is reliable. *Daubert*, 509 U.S at 592–93. Certain nonexclusive factors address the reliability of a particular theory or technique, namely, whether the theory or technique:

(1)   can be and has been tested;

(2)   has been subjected to peer review and publication;

(3)   has a known or potential rate of error; and

(4)   has attained general acceptance in the pertinent scientific community.

*See id.* at 593–94. Of course, given the district court's role regarding all expert testimony, "some of *Daubert*'s questions can help to evaluate the reliability even of experience-based testimony." *Kumho Tire Co.*, 526 U.S. at 151. But in any case, which of these factors apply "depends upon the particular circumstances of the particular case at issue." *Id.* at 150. And importantly, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Finally, relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *See id.* at 593; *see also* Rule 402, Fed. R. Evid.

However, "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018) (alteration omitted) (quoting another source).

### III.     DISCUSSION

Fluor does not seek wholesale exclusion of Dr. Gaukler's testimony. Instead, its motion targets specific opinions that Fluor contends exceed Dr. Gaukler's qualifications, lack a reliable methodological foundation, or risk misleading the jury by presenting speculation, narrative, or legal conclusions under the guise of expert analysis. (DE 542-1.) Relators respond that Dr. Gaukler is qualified, that his methods are reliable, and that Fluor's objections primarily concern weight rather than admissibility.[1] (DE 560.)

Applying Rule 702 and *Daubert*, the Court agrees with both parties in part. The admissibility of Dr. Gaukler's testimony turns not on his general competence, but on whether particular opinions satisfy Rule 702's requirements of qualification, reliability, and helpfulness.

---

[1] The Court recently entered an order striking certain rebuttal expert reports authored by Dr. Gaukler under Federal Rule of Civil Procedure 37(c)(1). (DE 541.) That ruling addressed the timeliness and procedural propriety of those rebuttal disclosures and does not govern the admissibility of Dr. Gaukler's timely disclosed expert opinions under Federal Rule of Evidence 702, which are the subject of the present motion.

A.   **Qualifications**

Fluor does not meaningfully dispute that Dr. Gaukler is qualified to analyze large datasets, apply statistical and analytical techniques, and identify patterns within structured data such as Fluor's Maximo system. Dr. Gaukler is a tenured Full Professor at the Drucker School of Management, Claremont Graduate University, located in Claremont, California. (DE 560-2 at 10.) He was previously a Professor in the Department of Industrial and Systems Engineering at Texas A&M University. (*Id.*) His academic work—both in research and teaching—centers on the application of analytics to logistics, supply chain management, and inventory management, including optimal inventory control policies, quality assurance and inspection strategies, and logistics. (*Id.* at 11.) He regularly teaches courses in operations management, supply chain management, logistics, procurement, statistics, business analytics, and predictive analytics. Relators have therefore met their burden under Rule 702 with respect to those opinions.

Fluor argues that certain opinions offered by Dr. Gaukler venture into areas—such as government-contract compliance, fraud, and intent—for which he lacks relevant expertise. (DE 542-1 at 9–15.) Relators respond that Dr. Gaukler offers no opinions regarding Task Order 5, Fluor's contractual obligations, fraud, or intent, and contend that Fluor fails to identify any portion of the report in which he does so. (DE 560 at 10.)

Rule 702 requires that an expert be qualified with respect to the specific opinions offered, not merely in a general sense. Even a well-qualified expert may not

7

testify outside the bounds of his expertise. Dr. Gaukler's training and experience are in data analytics and quantitative analysis, not in interpreting government contracts, assessing contractual compliance, or evaluating fraudulent intent. Accordingly, any testimony that crosses into those subjects would exceed the scope of his qualifications.

**Ruling:** Dr. Gaukler is qualified to testify regarding data analytics and related methodologies. He may not offer opinions interpreting contractual requirements, assessing contractual compliance, or opining on fraud or intent, and his testimony shall be confined to analyses and conclusions that can be reliably drawn from the data itself.

### B.     Maximo Queries and Descriptive Analytics

Although Fluor states that it does not challenge the admissibility of Dr. Gaukler's underlying Maximo queries, data extraction, or descriptive statistics, its motion advances a narrower conception of permissible expert testimony—one under which Dr. Gaukler would be limited to presenting raw query outputs while being precluded from identifying or highlighting patterns, trends, or anomalies reflected in the data. (DE 542-1 at 8–9; DE 579 at 2.) In Fluor's view, any step beyond tabulation risks impermissible inference or speculation.

The Court must therefore clarify the scope of admissible analytics-based testimony under Rule 702. Expert testimony explaining how data were selected, queried, summarized, and analyzed—and identifying objectively observable patterns reflected in those data—rests on specialized knowledge and reliable analytical methods. Such testimony assists the jury in understanding large and complex

datasets generated by Fluor's own systems and satisfies Rule 702(a)'s helpfulness requirement. *See* Fed. R. Evid. 702; *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 275 (4th Cir. 2021) (emphasizing the court's duty to distinguish between reliable expert assistance and testimony that risks misleading the jury).

At the same time, Rule 702 draws a clear distinction between identifying what the data show and offering explanations for why the data look as they do or what they ultimately signify in operational or legal terms. The former reflects technical expertise in analytics; the latter may require additional subject-matter expertise or rest on assumptions not grounded in a reliable methodology. *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) (excluding expert testimony where conclusions were not supported by a demonstrable analytical foundation); *see also United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (distinguishing permissible expert description from impermissible conclusions carrying legal or normative force).

**Ruling:** Dr. Gaukler may testify regarding his Maximo queries, data extraction, descriptive statistics, and the identification of objectively observable patterns reflected in the data. He may not offer explanations for the causes or implications of those patterns beyond what can be reliably inferred from his analytical methods.

C.    **Use of "Compliance" Terminology**

Fluor challenges Dr. Gaukler's repeated use of terms such as "compliance" or "noncompliance," arguing that such language constitutes an impermissible

9

contractual or legal conclusion. (DE 542-1 at 10.) Relators respond that Dr. Gaukler does not interpret the contract or opine on legal obligations, but instead uses the term "compliance" as shorthand to describe performance relative to certain benchmarks reflected in the data. (DE 560 at 10, 13–14.)

Rule 702 permits expert testimony that embraces an ultimate issue of fact, but it does not allow experts to state legal standards or apply law to the facts. *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). Whether particular terminology crosses that line depends on whether it carries a "separate, distinct and specialized meaning in the law . . . ." *Id.*

Here, characterizing Fluor's performance as "contractually compliant" or "noncompliant" risks conveying an authoritative conclusion about contractual obligations—particularly in the context of a government contract and False Claims Act claims—where the determination of compliance turns on contract interpretation and legal standards beyond Dr. Gaukler's expertise. Unlike the professional-norm testimony approved in *McIver*, the use of "compliance" terminology in this setting is closely tied to legal conclusions the jury must draw for itself.

At the same time, the underlying data and analytical results can be presented without using legally freighted labels. Doing so preserves the testimony's probative value while avoiding the risk of misleading the jury. *See* Fed. R. Evid. 702(a).

**Ruling:** Dr. Gaukler may describe what the Maximo data reflect in factual and analytical terms, including measured response times and recorded intervals. He may

not characterize those results as establishing contractual compliance or noncompliance.

## D. Speculative Inferences and Fraud-Related Opinions

Fluor next seeks to exclude opinions that go beyond describing data patterns and instead speculate about why those patterns exist, particularly where such explanations imply misconduct or fraud. (DE 542-1 at 11.) Fluor points to deposition testimony in which Dr. Gaukler disclaims expertise in fraud investigation, operational feasibility, and the real-world execution of logistics operations. (*Id.* at 12–13; DE 542-2, Gaukler Dep. 66:15–18, 85:23–24.) Relators respond that Dr. Gaukler merely explains reasonable inferences from the data and leaves ultimate conclusions to the jury. (DE 560 at 15.)

Rule 702 permits experts to draw inferences from data using specialized knowledge, but it requires that those inferences be supported by the same level of intellectual rigor that characterizes the expert's work in the relevant field. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Where an expert moves beyond describing patterns in data and offers explanations for why those patterns exist—particularly explanations tied to operational feasibility or alleged misconduct—the reliability of such opinions depends on whether the expert has a methodological basis and subject-matter expertise sufficient to support those explanations.

Here, Dr. Gaukler is qualified to identify patterns reflected in the Maximo data. But where he offers explanations that imply fraud or misconduct, he

11

simultaneously disclaims the expertise necessary to assess whether those explanations are feasible or supported by operational realities. In those circumstances, the proffered opinions rest not on reliable methodology, but on speculation. *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (distinguishing permissible expert inferences from impermissible legal or speculative conclusions).

Allowing such testimony would risk presenting conjecture under the imprimatur of expertise and would not assist the jury within the meaning of Rule 702(a).

**Ruling:** Dr. Gaukler may testify to inferences that are analytically supported by his data analysis. He may not offer speculative explanations, insinuations of fraud or misconduct, or opinions regarding intent or wrongdoing.

### E.    Document and Email Narration

Fluor challenges portions of Dr. Gaukler's proposed testimony in which he summarizes or interprets documents, emails, or communications, contending that such testimony amounts to narrative advocacy and places an expert gloss on materials the jury can read and evaluate for itself. (DE 542-1 at 14.) Fluor's objection is directed not at Dr. Gaukler's reliance on such materials as inputs to his analysis, but at testimony—reflected in his report and deposition—in which he recounts or interprets those materials without applying specialized expertise.

Relators respond that an expert must be permitted to explain what materials he reviewed and how those materials informed his analytical choices, particularly in a data-driven case of this complexity. (DE 560 at 18–19.)

Rule 703 permits experts to base opinions on facts or data that may themselves be inadmissible if experts in the field would reasonably rely on them. It does not authorize an expert to disclose, narrate, or interpret those materials to the jury where doing so does not depend on specialized knowledge and merely places the expert's subjective gloss on evidence the jury is equally capable of evaluating. Nor may an expert serve as a conduit for hearsay or advocacy; the probative value of expert testimony must derive from the application of specialized expertise, not from summarizing or characterizing documents or communications.

Accordingly, while Dr. Gaukler may identify categories of materials he reviewed and explain how those materials informed his methodological decisions, he may not narrate, interpret, or opine on the meaning of documents or communications where such testimony does not depend on specialized expertise and would not assist the jury within the meaning of Rule 702(a).

**Ruling:** Dr. Gaukler may identify the types of materials he reviewed and explain their relevance to his analytical methodology. He may not narrate, interpret, or opine on the meaning of documents or communications where such interpretation does not require specialized expertise.

### F.    Summary of Rulings

In sum, Dr. Gaukler's testimony is admissible to the extent it is confined to data analytics and methodologically grounded inferences, and excluded to the extent it ventures into contractual conclusions, fraud-related speculation, or narrative interpretation of documents.

Accordingly, Fluor's motion is granted in part and denied in part, as set forth above.

### IV.    CONCLUSION

For the reasons above, Defendants Fluor Corporation, Inc. and Fluor Intercontinental, Inc.'s Motion to Exclude Certain Opinions of Relators' Expert, Dr. Gary Gaukler (DE 542), is **GRANTED IN PART AND DENIED IN PART**. Dr. Gaukler may testify consistent with the limitations described in this Order. Testimony that exceeds those limitations is excluded.

**IT IS SO ORDERED**.

*[signature]*
Joseph Dawson, III
United States District Judge

Florence, South Carolina
January 14, 2026