IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| United States of America, *ex rel.* Charles R. Shepherd, Danny V. Rude, Robert Scott Dillard, And Rickey Mackey<br><br>Plaintiff-Relators,<br><br>v.<br><br>Fluor Corporation, Inc., and Fluor Intercontinental, Inc.,<br><br>Defendants. | Case Number: 6:13-02428-JD<br><br>Honorable Joseph Dawson, III<br><br>JURY TRIAL DEMANDED |

### **RELATORS' RESPONSE IN OPPOSITION TO FLUOR'S MOTION TO STRIKE**

Relators oppose Fluor's motion to strike potential jurors for cause. It would be improper and imprudent to strike members of the venire solely based on their answers to three unrelated questions on the Court's jury questionnaire. In arguing otherwise, Fluor overstates out-of-circuit caselaw and ignores guidance from the Supreme Court and the Fourth Circuit. The Court should deny Fluor's motion.

**I.  Effective Voir Dire Requires Live Examination**

The Court should examine potential jurors in person before striking them for cause. "The purpose of voir dire is to obtain a fair and impartial jury." *United States v. Schnabel*, 939 F.2d 197, 201 (4th Cir. 1991). District courts "must reach conclusions as to impartiality and credibility" of potential jurors "by relying on their own evaluations of demeanor evidence and of responses to questions." *United States v. Lancaster*, 96 F.3d 734, 739 (4th Cir. 1996) (quoting *Rosalez-Lopez v. United States*, 451 U.S. 182, 188 (1981)). Alone, jury questionnaires provide the court with minimal probative value because "written answers [do] not give counsel or the court any exposure

to the demeanor of the juror in the course of answering" questions. *See Mu'Min v. Virginia*, 500 U.S. 415, 425 (1991). Accordingly, appellate courts "commend the practice" of "oral examination of prospective jurors." *See United States v. Quinones*, 511 F.3d 289, 297 (2d Cir. 2007).

Live voir dire is particularly important because it allows courts to distinguish between individuals with real biases and those who can serve impartially with instruction. Jurors often disclose potential biases at first out of a sense of caution, only to affirm later that they can serve impartially. And "[t]he bluntness or hesitancy, confidence or discomfort displayed by prospective jurors . . . often reveals as much about bias as the actual answers given." *Id.* at 301. Owing to this reality, "[t]he Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on voir dire," but were later rehabilitated through live questioning. *See Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2021) (citing *Patton v. Yount*, 467 U.S. 1025, 1032 (1984); *and Murphy v. Florida*, 421 U.S. 794, 803 (1975)). So have appellate courts.

One example is *United States v. Hager*, 721 F.3d 167 (4th Cir. 2013), which Fluor cites in its brief. A juror answered on his questionnaire that he might not be able to remain impartial given the violence of the alleged crime, that he would find it difficult to presume the defendant's innocence, and that he generally questioned his ability to be fair. *Id.* at 190–92. Rather than striking him reflexively, the district court probed him about his answers and, after some back-and-forth, asked him whether he could deliberate fairly based on the court's instructions. When the juror stated he would do so, the district court declined to disqualify him. *Id.* The Fourth Circuit affirmed. *Id.* at 193. *Hager* is just one example of a district court determining after live voir dire that a juror whose questionnaire responses raised concern could in fact serve responsibly. Fluor's brief contains many more examples. *See, e.g.*, *Breard v. Netherland*, 949 F. Supp. 1255, 1267–68 (E.D. Va. 1996), *aff'd sub nom. Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998); *Fitz v. Warden, Nottoway*

2

*Corr. Ctr.*, No. 7:18CV00033, 2018 WL 5660310, at *8 (W.D. Va. Oct. 31, 2018); *Patton*, 467 U.S. at 1032; *Murphy*, 421 U.S. at 803.

Live examination also prevents potential jurors from easily skirting jury duty. As the Court knows, there is always a risk that "jurors [might] structure their answers" to questionnaires "so as to avoid jury service." *See Basham v. United States*, 109 F. Supp. 3d 753, 805 (D.S.C. 2013), *aff'd*, 789 F.3d 358 (4th Cir. 2015); *see also Infante v. Martel*, 953 F.3d 560, 563 (9th Cir. 2020) (district court noting that juror "might have had ulterior motives," including "to avoid jury service"). But doing so is more difficult in court, before a federal judge. On the other hand, striking based solely on written questionnaires creates perverse incentives for enterprising members of the venire: Check the box and get out of jury free.

For these reasons, although district courts have wide discretion to conduct voir dire how they see fit, courts in this district routinely supplement jury questionnaires with live questioning. *See, e.g.*, *United States v. Fulks*, No. CRIM 402-992-17, 2004 WL 5042206, at *1–2 (D.S.C. Dec. 23, 2004), *aff'd*, 454 F.3d 410 (4th Cir. 2006); *Basham*, 109 F. Supp. 3d at 805; *United States v. Council*, 77 F.4th 240, 251 (4th Cir. 2023) (affirming district court's procedures). Indeed, Fluor's myriad paragraph-long string-cites contain no decisions from this Court striking jurors for cause based on jury questionnaires alone. Nor does Fluor's brief cite any Fourth Circuit opinion endorsing this practice, as no such opinion exists.[1]

## II.  Fluor's Out-of-Circuit Cases Do Not Hold Otherwise

Instead, Fluor cites four out-of-circuit decisions for the proposition that "circuit courts have affirmed trial courts' authority to strike potential jurors based solely on questionnaire responses."

---

[1] Admittedly, the Fourth Circuit has not recognized a constitutional right for a party to rehabilitate a witness who has shown bias, or to have the court do so. *See Boggs v. Bair*, 892 F.2d 1193, 1201 (4th Cir. 1989). That said, whether the Court *should* do so is an entirely different matter. For the reasons stated herein, the answer is "yes."

3

Fluor's Mot. to Strike at 7 (citing *Quinones*, 511 F.3d at 30; *United States v. Sanders*, 133 F.4th 341, 378 (5th Cir. 2025); *United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2005); *and United States v. Chanthadara*, 230 F.3d 1237, 1271 & n.7 (10th Cir. 2000)). In one of these cases, the appellate court did the exact opposite, holding that the district court erred by striking a juror for cause based only on her questionnaire responses. *See Chanthadara*, 230 F.3d at 1272. And in the other three, the struck jurors had answered *several* questions in a way that pointed to a *specific* bias or infirmity. In other words, the questionnaires gave the district court enough information to deduce that the juror would need to be removed from the pool. The questionnaire here does not.

Start with *Quinones*. There, each challenged juror ranked himself "at the highest-offered numerical level of opposition to the death penalty" in one question, "identified no aggravating factor that would necessarily warrant imposition of the death penalty" in another question, and "identified each possible mitigating factor as one that could" weigh against the death penalty in a third question. 511 F.3d at 304. These responses provided strong evidence that the potential jurors could not perform their duties in the case, which involved the death penalty. *Id.* at 305.

Similarly, in *Purkey*, the challenged juror answered four separate questions indicating that she believed "major criminals['] . . . lives should be left to God," that she "questioned that the death penalty should be used," that she "questioned the right of the courts to administer the death penalty," and that she was "opposed to the death penalty, and . . . would have a difficult time voting to impose [it]." 428 F.3d at 750–51. Thus, the Eighth Circuit affirmed the district court's determination that the juror's views on the death penalty would prevent her from impartially deliberating in the case. *Id.* at 751.

The facts in *Sanders* were even more extreme. The challenged juror wrote that "it was God's job to judge—not man's," that the Bible teaches "thou shalt not kill," that "executing a

4

person" for murder "was just as wrong as the initial murder," that the criminal justice system had treated her brother unfairly, that her son had been killed, that the killing had been covered up, that she could "maybe" be impartial unless the defendant had been "set up," and that she "d[id]n't know" whether she could impartially deliberate. 133 F.4th at 377–78. The district court found that these views indicated the juror would not be able to impartially consider the death penalty and "would have had difficulty . . . follow[ing] the court's instructions," so it struck her for cause. *Id.* at 378. The Fifth Circuit affirmed.

These cases are a far cry from the supposedly problematic responses Fluor identifies here. Fluor contends that over twenty jurors should be struck because in the questionnaire, they wrote that they did not "feel" they could be impartial in (a) a suit between an individual and a company, (b) in a case "involving a foreign national," and/or (c) generally, in this case. Fluor's Mot. to Strike at 2–3. These questions do not come close to probing for the same bias in the way that the questionnaires in *Quinones* and *Purkey* did. 511 F.3d at 304; 428 F.3d at 750–51. So the Court cannot draw any conclusion about the jurors' biases with the same level of certainty. Nor did any jurors here consistently answer in a way that shows they would be "unable to follow the court's instructions," as in *Sanders*. 133 F.4th at 378. In essence, Fluor asks the Court to strike these jurors based on a single data point (or two) it has regarding what they "feel," rather than based on a demonstrable bias the Court has rooted out.

Judge Posner's unanimous opinion in *Thompson v. Altheimer & Gray*, 248 F.3d 621 (7th Cir. 2001), helps to explain the central flaw in Fluor's proposed approach.

> There is a critical difference between a "prior [belief]" in the Bayesian statistician's sense and "bias" in the sense that requires disqualification of a juror or judge. Everyone brings to a case a set of beliefs that may incline him in one direction or another. . . . It would be a bias only if it were irrational or unshakable, so that the prospective juror "would be unable to faithfully and impartially apply the law."

5

*Id.* at 624 (citation omitted).

For the court to determine whether these potential jurors have articulated prior beliefs or unshakeable biases, it needs to examine them live.

## CONCLUSION

For the foregoing reasons, the Court should deny Fluor's motion to strike jurors for cause. Respectfully submitted,

/s/ Andrew Hand
Richard Harpootlian

Richard Harpootlian (Fed. ID No. 1730)
Andrew Hand (Fed. ID No. 12176)
RICHARD A. HARPOOTLIAN P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810
rah@harpootlianlaw.com

Jonathan Loevy
Michael Kanovitz
Daniel Twetten
Anand Swaminathan
Frank Newell
Anna Dover
Gwen Parker
Heather Sticht
Dominique Gilbert
Alexandra Wolfson
Aadi Tolappa
**LOEVY & LOEVY**
311 N. Aberdeen St., Third Floor
Chicago, IL 60607
Telephone: (312) 243-5900
Facsimile: (312) 243-5902
anand@loevy.com
*Attorneys for Relators*
*Charles R. Shepherd*
*and Danny V. Rude*

6

Frank L. Eppes (Fed. ID No. 1003)
EPPES & PLUMBLEE, PA
PO Box 10066
Greenville, SC 29603
Telephone: (864) 235-2600
Facsimile: (864) 235-4600
feppes@eppesandplumblee.com

*Attorney for Relator Robert Scott Dillard*

Judah N. VanSyckel
SALUDA LAW, LLC
137 E. Butler Street
Lexington, SC 29072
Telephone: (803) 939-6927
Facsimile: (803) 902-8004
judah@saludalaw.com

*Attorney for Relator Rickey Mackey*