IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CHARLES R. SHEPHERD; DANNY V. RUDE; ROBERT SCOTT DILLARD; and RICKEY MACKEY, <br><br> Plaintiff-Relators, <br><br> v. <br><br> FLUOR CORPORATION; FLUOR INTERCONTINENTAL, INC., <br><br> Defendants. | Civil Action No. 6:13-cv-02428-JD |

**FLUOR'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1 TO EXCLUDE ALL EVIDENCE AND TESTIMONY RELATED TO THE NOVEMBER 12, 2016 SUICIDE BOMBING AT BAGRAM AIRFIELD**

Defendants Fluor Corporation and Fluor Intercontinental, Inc. (collectively, "Fluor"), by and through undersigned counsel, file this Reply in Support of their Motion in Limine to Exclude All Evidence and Testimony Related to the November 12, 2016 Suicide Bombing (the "Bombing") at Bagram Airfield ("Motion"). Dkt. 588.

**I.     INTRODUCTION**

Fluor's Motion set forth three, independently sufficient reasons why evidence and testimony about the Bombing must be excluded: "(1) the incident and the circumstances surrounding it are irrelevant and inadmissible; (2) even if marginally relevant, their probative value is slight and substantially outweighed by (a) the danger of unfair prejudice and (b) the risk of distracting the jury and wasting time; and (3) allowing evidence of the Bombing would require Fluor to mount a vigorous defense, which, at the minimum, would mean subpoenaing documents

1

and witness from the Army, triggering a whole new round of motions practice under the state secrets doctrine among other issues." Dkt. 588 at 12–13.[1]

Beyond the flurry of rhetoric, Relators' Response fails to meaningfully contend with any of these reasons. Indeed, they completely ignore Fluor's arguments regarding juror distraction, wasting time, and the state secrets doctrine. And while they rely extensively on the Army's investigative report (the "Report"), they do not even mention the fact that it is heavily redacted, much less grapple with the host of issues posed by those redactions. Nor do they acknowledge what this Court has already said about the Bombing in ruling on the parties' *Daubert* motions: that "detailed testimony about violent events—particularly where the proffer would invite the jury to attribute casualties to Fluor or to litigate the causes and responsibility for the attack—poses a substantial risk of inflaming the jury and diverting attention from the elements the jury must decide in this False Claims Act case." Dkt. 606 at 15. As the Court further observed, "[t]he probative value of detailed testimony concerning a specific violent incident is limited, as such evidence does not directly bear on the elements of falsity, scienter, or materiality that the jury must decide." *Id.* at 15 n.4. "By contrast, the risk that emotionally charged testimony could inflame the jury, invite moral blame untethered to the statutory elements, or divert the trial into collateral disputes substantially outweighs that limited relevance." *Id.* Consistent with these observations, the Court should grant Fluor's Motion in Limine No. 1 and exclude all evidence and argument about the Bombing.

---

[1] All docket citations herein use the court-generated page numbers reflected in blue text at the top of each document.

## II.   ARGUMENT

### A.   Relators' Prejudice Argument

Relators open with their most specious argument: "it is not even clear that any inflamed emotions inure to Fluor's detriment." Dkt. 622 at 3. They argue the fact that Fluor personnel were among the victims of the Bombing "could invoke sympathy for a company working under challenging war-time conditions." *Id.* But the entire reason Relators seek to introduce this evidence is to argue that *Fluor caused* these individuals' deaths because of poor property management practices. It is absurd to suggest that "invit[ing] the jury to attribute casualties to Fluor" would somehow benefit Fluor. *See* Dkt. 606 at 15. Indeed, as this Court observed, such inflammatory evidence invites the jury to improperly attempt to fix "moral blame" on Fluor, rather than focus on the facts and statutory elements. *See id.* at 15 n.4.

Relators further argue that Fluor's Motion "never actually articulates exactly what 'prejudice' it is supposedly so concerned about." Dkt. 622 at 3. Fluor disagrees.[2] Nonetheless, it will take this opportunity to reiterate some of its most pressing concerns.

Relators seek to introduce evidence and testimony about a suicide bombing on a United States military base in which service members and civilians were killed and injured. Relators' sole "evidence" is a heavily redacted Army Report for which there will be no witnesses and on which Fluor has had no opportunity to take discovery. Fluor's concern is that jurors, when presented with

---

[2]   *See, e.g.*, Dkt. 588 at 18 ("Any description of the Bombing will almost certainly arouse jurors' sense of patriotism, anti-terrorism sentiment, sympathy for the victims, and animus toward Fluor. This especially true given that the redacted Report is heavily one-sided and purports to assign the lion's share of blame to Fluor, without discussing the Army's own potential failures . . . . [Relators seek] to capitalize on jurors' emotional response to an incident in which active members of the United States military (alongside Fluor employees) were killed and injured by a terrorist."), 22 ("Introducing the heavily redacted Report into evidence carries the additional risk that the jury could place undue weight on the Army's findings." (quotations omitted)).

an incomplete and one-sided version of the underlying facts, will wrongly conclude that Fluor is to blame for the Bombing. Without the full, unredacted Report and testimony about its conclusions, Fluor will be unable to mount a full defense to that allegation.[3] Left with the false impression that Fluor contributed to the deaths and injuries of service members and civilians, jurors might develop strong negative emotions about Fluor. Those negative emotions are likely to interfere with their ability to fairly judge the facts based on the evidence presented.

In sum, the risk of prejudice Fluor is concerned about is the same risk of prejudice the Court described in its order. *See* Dkt. 606 at 15 & n.4.

**B.     Relators' Relevance Argument**

Relators' next argument is that the Bombing is "plainly relevant to [their] property-management claims" because the bomber "managed to obtain a load of materials that Fluor was supposed to be managing, and assembled a bomb from those materials, [which] the Army later determined were unaccounted for by Fluor." Dkt. 622 at 2, 4. Although the Army's Report does indeed assign blame to Fluor (wrongly in Fluor's view), it does not do so for the reasons Relators say. The Army expressed the view that "the primary contributing factor to the [Bombing] was Fluor's complacency and its lack of reasonable supervision of its personnel." Dkt. 622-1 at 5; *see also id.* at 15 (Army asserting "a poor understanding by Fluor supervisors as to who was responsible for [the bomber's] supervision," which "demonstrates an unreasonable complacency . . . to ensure Local National employees were properly supervised"). The Report does not say anything about property management.

---

[3]     As noted in Fluor's Motion, if Relators are allowed to introduce evidence about the Bombing, Fluor would need to issue a subpoena to the Army for the full, unredacted report and perhaps testimony about the Army's investigation, which would result in more motions practice and risk prolonging trial for which a jury has already been selected. *See* Dkt. 588 at 12–13, 24–25.

Left with no support for their inflammatory accusations, Relators cherry-pick, mischaracterize, and in one instance, outright invent quotes from the Report. They first state that the Report "plainly concluded that the Fluor subcontractor who created this bomb 'freely acquire[d] most of the components necessary for the construction of the suicide vest' from Fluor facilities." Dkt. 622 at 4 (quoting Dkt. 622-1 at 15). The Report does not conclude that the bomber acquired most of the components "from Fluor facilities." Rather, it states that he "likely smuggled small quantities of homemade explosive onto Bagram Airfield" and that some other components were "similar" to those found at his worksite. Dkt. 622-1 at 47. The Report does not say whether the bomber obtained these items from the Non-Tactical Vehicle Yard where he worked or whether he smuggled them in from outside, as he allegedly did with the explosives used in the device. Presumably, if investigators had evidence the bomber acquired any of the items from Fluor facilities, they would have included it in the Report.

Relators next contend the Report's reference to "switches that were readily available and unaccounted for in a trash container," is "consistent with trial witness testimony that Fluor would conceal excess inventory by dumping it." Dkt. 622 at 4–5 (quoting Dkt. 622-1 at 47). Relators then assert that the "[t]he Army concluded Fluor 'did not comply with the key contractual requirements,'" hinting at requirements relating to property management. *See id.* at 5. However, the language Relators purport to quote about noncompliance with contract requirements *does not appear anywhere in the Report*. Nor does the Report state or suggest that Fluor "dump[ed]" the switches in the trash container to "conceal excess inventory." The Report's criticism of Fluor related to safety and security concerns—not property mismanagement.

For these reasons and as discussed further in Fluor's moving brief, the Bombing simply has no bearing on any of the facts at issue in this litigation and should be excluded on that basis.

5

### C. Relators' False Equivalence Between the Bombing and "Mission Failure" Evidence

Relators offer not to introduce evidence related to the Bombing if Fluor does not argue that (1) "Relators failed to introduce evidence that Fluor's alleged inability to account for the government's property caused any mission failure"; (2) Relators' position is wrong "because otherwise there would be at least some evidence of mission failure"; and (3) "the Army was satisfied with Fluor's overall performance." Dkt. 622 at 3. Respectfully, that is not a serious offer. As Fluor explained in its response to Relators' Motion in Limine No. 8, Fluor's defense that there was no "mission failure" due to property management challenges simply means that Fluor was able to provide the services for which it contracted (e.g., it did not run out of toilet paper or laundry detergent). Dkt. 621 at 19–21. Whether Fluor had sufficient property and materials available to perform the contract in no way opens the door to evidence about a suicide bombing entirely unrelated to the issues in this case.

Moreover, evidence about how the Army viewed "Fluor's overall performance" on Task Order 5 is critical to Relators' award fee theory. It would be entirely unfair for Relators to argue that Fluor performed poorly and lied to government officials to conceal those deficiencies while preventing Fluor from presenting evidence that it performed well overall and that the government knew about areas where it had challenges. Simply put, preventing Fluor from presenting evidence that "the Army was satisfied with Fluor's overall performance" would seriously impede Fluor's ability to mount a defense to Relators' award fee theory.

If *Fluor* were to introduce evidence about *the Bombing*, then the door would be open. But Fluor does not catapult the Bombing into relevance simply by defending itself against Relators' allegations.

6

III.   **CONCLUSION**

For these reasons and those explained in Fluor's Motion, the Court should exclude all reference to, and evidence and testimony related to, the suicide bombing that occurred at Bagram Airfield on November 12, 2016.

Respectfully Submitted,

*/s/ Mark. C. Moore*
Mark C. Moore (Fed. ID No. 4956)
Michael A. Parente (Fed. ID No. 13358)
Maynard Nexsen PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 540-2146
Facsimile: (803) 727-1458
MMoore@maynardnexsen.com

Konstantine P. Diamaduros (Fed. ID No. 12368)
Maynard Nexsen PC
104 South Main Street, Suite 900 (29601)
Post Office Drawer 10648
Greenville, SC 29603-0648
Telephone: (864) 370-2211
Facsimile: (864) 282-1177

Craig D. Margolis (admitted *pro hac vice*)
Tirzah S. Lollar (admitted *pro hac vice*)
Christian D. Sheehan (admitted *pro hac vice*)
Elizabeth A. Carney (admitted *pro hac vice*)
Katelyn M. Deibler (admitted *pro hac vice*)
Elliot S. Rosenwald (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, Northwest
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
craig.margolis@arnoldporter.com

Rachel K. Higgins (admitted *pro hac vice*)
Sahrula Kubie (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710

                                          Telephone: (212) 836-8000
                                          Facsimile: (212) 836-8689

January 22, 2026                          *Counsel for Defendants Fluor Corporation and*
Columbia, South Carolina             *Fluor Intercontinental, Inc.*