IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CHARLES R. SHEPHERD; DANNY V. RUDE; ROBERT SCOTT DILLARD; and RICKEY MACKEY,<br><br>　　　　　　　Plaintiffs,<br>v.<br><br>FLUOR CORPORATION; FLUOR INTERCONTINENTAL, INC.,<br><br>　　　　　　　Defendants. | Civil Action No. 6:13-cv-02428-JD<br>Hon. Joseph Dawson, III |

### FLUOR'S BRIEF REGARDING WITNESS AGREEMENTS

Fluor Corporation and Fluor Intercontinental, Inc. (collectively "Fluor"), by and through undersigned counsel, respectfully submit this brief responding to Relators' assertions regarding Fluor's use of witness agreements.

Fluor and undersigned counsel take their ethical obligations seriously. As Fluor confirmed before entering into any of the witness agreements at issue, it is legally and ethically permissible to pay reasonable amounts to a fact witness to compensate the witness for time lost in order to give testimony in a matter in which the witness is not a party. Contrary to Relators' assertions, Fluor's witness agreements were not a secret. The only reason they were not previously disclosed is that Relators did not ask for them. Relators had every opportunity in their more than 200 written discovery requests and 30 depositions to ask whether there were any witness agreements or other financial arrangements, but they did not do so. Without such a request, Fluor was under no affirmative obligation to disclose the agreements. When Relators' counsel finally did ask—during

1

questioning of the first witness with such an agreement to testify at trial—Fluor did not object to the question or in any way interfere with the witness' answer.

Fluor has produced witness agreements for Messrs. Montalvo, Hamm, and Methot. Pursuant to the Court's order, Fluor is working diligently to collect agreements for individuals on either party's witness list that were in effect at the time testimony was or will be given—either at deposition or at the trial. Fluor will produce those agreements as soon as possible. Relators will be free to question witnesses about those agreements, within the parameters set out by the Court. Therefore, Relators have suffered no prejudice.

For these reasons and as discussed more fully below, Fluor's use of witness agreements is entirely proper, and Fluor did not violate any disclosure obligation.

## **DISCUSSION**

### I. Fact Witnesses May Be Paid a Reasonable Amount for Lost Time Related to Their Testimony

Agreements to compensate fact witnesses for the time that they spend preparing for and testifying in civil actions are common and permissible. For nearly thirty years, the American Bar Association ("ABA") has permitted paying fact witnesses "for time spent in attending a deposition or trial or in meeting with the lawyer preparatory to such testimony, provided that" three conditions are met:

> (1) "the payment [can]not be[] made for the substance or efficacy of the witness's testimony, and is being made solely for the purpose of compensating the witness for the time the witness has lost in order to give testimony in litigation in which the witness is not a party";
>
> (2) the compensation must be consistent with the law of the jurisdiction; and
>
> (3) the "compensation must be reasonable, so as to avoid affecting, even unintentionally, the content of a witness's testimony," and this inquiry is based on "all relevant circumstances."

ABA Formal Op. 96-402 at 1–3 (Aug. 2, 1996).[1]

Likewise, in 1997, the South Carolina State Bar issued an advisory opinion which found that a fact witness could be paid as long as the payment "is being made solely for the purpose of compensating the witness for the time the witness has lost in order to give testimony in litigation in which the witness is not a party." S.C. Ethics Advisory Op. 97-42 at 2 (citing ABA Formal Op. 96-402); *see also* S.C. Ethics Advisory Op. 02-10 at 2 (explaining that there is no prohibition on an attorney compensating a fact witness "for her loss of time in the present litigation provided that the compensation is reasonable and not calculated to influence her testimony"); S.C. Ethics Advisory Op. 08-05 (permitting a company's lawyer to pay a witness' attorneys' fees to ensure that the witness would participate in an interview with law enforcement related to the company's criminal action).[2]

Modern courts have therefore consistently held that "[a] witness may be compensated for the time spent preparing to testify or otherwise consulting on a litigation matter in addition to the time spent providing testimony in a deposition or at trial." *Prasad v. MML Invest. Servs., Inc.*, No. 04 Civ. 380(RWS), 2004 WL 1151735, at *5 (S.D.N.Y. May 24, 2004) (collecting cases); *see also Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 679 (D. Kan. 2000) (denying motion for sanctions because "neither [the defendant] or its counsel paid [the witness] for the substance or strength of his testimony" and the witness was "paid [] only for time spent in connection with

---

[1] For the Court's convenience, the ABA and South Carolina Ethics Opinions are compiled in Appendix A.

[2] Such agreements are also consistent with the Federal Anti-Gratuity Statute which explicitly creates an exception to the prohibition on non-expert witnesses receiving compensation for their testimony where the payment is for "reasonable cost of travel and subsistence incurred and *the reasonable value of time lost in attendance at any such trial*." 18 U.S.C. § 201(d) (emphasis added).

the litigation process"); *United States v. Philip Morris USA Inc.*, No. 99-2496, 2003 WL 27410570, at *4 (D.D.C. 2003) (recognizing that the parties agree "that payment of deposition-related expenses, including reasonable attorney's fees, is permissible so long as payment is not conditioned on the favorable content of the witness' testimony"); *Nite Glow Indus., Inc. v. Central Garden & Pet Co.*, No. 12-4047 (KSH) (CLW), 2023 WL 8927323, at *2 (D.N.J. Dec. 27, 2023) ("But where the circumstances show that a party is not paying its fact witness for, or because of, the witness's testimony, courts have declined to exclude it. . . . a party may compensate its own fact witness for the reasonable travel costs the witness incurs to attend the trial or hearing and for the reasonable value of time spent testifying."); *Klorczyk v. Sears, Roebuck & Co.*, No. 3:13-cv-00257 (JAM), 2017 WL 3272237, at *2 (D. Conn. Aug. 1, 2017) (permitting reasonable compensation for time spent testifying for a fact witness). Although some old cases found that such agreements violated public policy, modern courts widely reject that view following the ABA's 1996 Advisory Opinion.[3]

Moreover, these agreements are similar to those that arise in the criminal context. For example, the government is permitted to pay informants for the time that they spend testifying at

---

[3] For example, in *Alexander v. Watson*, 128 F.2d 627, 628–30 (4th Cir. 1942), the Fourth Circuit held that it was improper for counsel to pay two fact witnesses 10% of the total award if they testified at trial. Although the decision included broad language that "[a]ny agreement to pay the[] [witnesses] additional compensation for such testimony would have been void as lacking in consideration and also as contrary to public policy," *id.* at 630, courts quickly distinguished *Alexander* from cases where a party agrees to compensate a fact witness only for "time lost from the witness's own work." *See Smith v. Allen*, 212 F. Supp. 713, 714 (E.D. Va. 1962). And a majority of courts have abandoned rulings like *Alexander* entirely since the ABA opinion. *See supra* at 3 n.2. The lone exception appears to be New Jersey. *See Goldstein v. Exxon Rsch. & Engineering Co.*, No. 95–2410, 1997 WL 580599, at *4–5 (D.N.J. Feb. 28, 1997); *Rocheux Intern. of N.J. v. U.S. Merchants Fin. Grp., Inc.*, No. 06–6147, 2009 WL 3246837, at *4 (D.N.J. Oct. 5, 2009). However, the most recent decision from a New Jersey federal court permits these payments. *Nite Glow*, 2023 WL 8927323, at *3.

trial as long as the agreements are not contingent upon the substance of any trial testimony. *E.g.*, *United States v. Ladley* 517 F.2d 1190, 1193 (9th Cir. 1975). Similarly, the government is also permitted to use cooperation agreements to secure truthful testimony of cooperating witnesses in return for leniency, which courts have uniformly deemed proper. *E.g.*, *United States v. Hunte*, 193 F.3d 173, 174 (3d Cir. 1999) (collecting cases).[4]

## II.     Fluor's Witness Agreements Comply with ABA and South Carolina Guidance

Fluor's witness agreements abide by each of the guardrails set forth above. As the Court is already aware, the agreements confirm that:

> by reimbursing Witness for the value of Witness's time [] and/or any lost wages or expenses, [Fluor] is *not seeking to influence the Witness's testimony* at any proceeding, hearing, or trial, and that Witness *agrees to truthfully testify* at any such proceeding, hearing, or trial. The *reimbursement for the value of Witness's time and/or any lost wages or expenses is not, and shall not be, contingent upon the substance of the Witness's testimony* in the course of a proceeding, deposition, hearing or trail *nor shall it be contingent on the outcome* of any such proceeding, deposition, hearing or trial.

Court Ex. 1, Montalvo Witness Agreement at 1 (emphasis added).

The witnesses are paid different hourly rates depending on their last position with Fluor. Because Fluor is still in the process of gathering these agreements, undersigned counsel is not currently aware of the hourly rates for each and every potential witness. For the agreements that Fluor has been able to gather thus far, the rates range from $75 to $250 per hour. If the Court would like additional information on how each of the individual rates were determined, Fluor is happy to submit that information.

The additional concerns Relators have raised about the witness agreements are misplaced:

---

[4] In the criminal context, *Brady* and *Giglio* require the disclosure of these agreements. As discussed below, there is no such disclosure obligation in the civil context.

First, Relators have expressed confusion about the entity identified on the agreements – "FDEE Consulting, Inc." "FDEE" is an acronym for "Fluor Daniel Ex Employee." This entity was formed for the express purpose of entering into consulting agreements with former Fluor employees. The only fact witnesses with whom Fluor has executed witness agreements are former employees.

Second, Relators take issue with the "Confidential Information" section of the agreement, claiming that a witness might believe the agreement itself is confidential and hide its existence on the stand. *See* Court Ex. 1, Montalvo Witness Agreement at 2. Setting aside that this concern is both misplaced (because the first witness questioned did not hide its existence) and moot (given the Court's order to provide all witness agreements), Relators are misreading the agreement. The confidentiality provision applies only to information "concerning the business or operations of [Fluor], its affiliates or third parties with whom it conducts business," not the existence of the agreement itself. *See id.* at 2–3.

Third, Relators also take issue with the provision of the agreement that permits reimbursement "for any lost wages and/or the reasonable value of the Witness's time for preparing to testify, attending proceedings, and providing testimony as *specifically approved* by the Company." *Id.* at 2 (emphasis added). Relators' reading of this provision to require the witnesses to testify in a way that is "approved" by Fluor cannot be reconciled with the clear statement elsewhere in the agreement that payment is not contingent on the substance of the witness's testimony. In actuality, this "specifically approved" language simply means that Fluor is not required to reimburse a witness for testifying in an action that is not related to Fluor.

### III. Fluor Complied With All Disclosure Requirements in this Case

Relators also argue that Fluor should have disclosed these agreements earlier. However, Relators *never* requested this information in discovery, and Fluor is not aware of any requirement for a party to *sua sponte* disclose information that was not required by Rule 26 or otherwise requested in discovery.

First, Fluor did not breach any of its Rule 26 disclosure obligations. Under Rule 26, *for fact witnesses*, a party must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Fluor complied with this requirement, which—unlike the provision related to *expert witnesses*—says nothing about compensation. Rule 26 further requires a party to provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and *may use to support its claims or defenses*, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). Moreover, Rule 26(a)(3) requires "identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party *expects to offer* and those it *may offer* if the need arises" at trial. Fed. R. Civ. P. 26(a)(3)(A)(iii) (emphasis added). These provisions only require disclosure where the information would support Fluor's claims or defenses, which is inapplicable to the witness agreements.

Second, Relators did not serve a discovery request that would have called for the production of witness agreements. *See* Exs. 1, 2, 3, 4, 5, 6. Had they done so, Fluor would have produced the agreements. Nor did Relators ask any former Fluor employee at deposition whether

Fluor was compensating them in any way related to this case. Had they done so, the witness would have truthfully answered, as Mr. Montalvo and Mr. Hamm did at trial. But Relators took neither of these steps, and therefore, they did not learn about the witness agreements during discovery.

Third, there is no special rule that requires witness agreements to be disclosed outside of the traditional discovery process. In *Armenian Assembly of America v. Cafesijian*, the court encountered a similar issue, albeit in a different context. 924 F. Supp. 2d 183 (D.D.C. 2013).[5] In *Cafesijian*, the plaintiffs argued that a fact witness committed perjury by not disclosing an alleged "litigation bonus" if defendant was successful in the litigation and deprived plaintiffs of the opportunity to fully evaluate the witness' credibility. *Id.* at 193.[6] The court found that there was no issue because "[the witness] was never asked a question that required him to disclose any aspect of his compensation agreement" with the defendant. *Id.* at 193. Similarly, in *Nite Glow*, the witness was asked about and provided information relating to her witness agreement, under which she was paid $250 per hour for time spent on the case. *See* 2023 WL 8927323, at *3. It was only *after* this was disclosed at deposition that the actual agreement was required to be produced. *Id.*

The only cases that Fluor has identified that even suggest these sorts of agreements should be disclosed absent a specific request involve circumstances in which counsel took actions to conceal the existence of agreements. For example, in *State of New York v. Solvent Chemical Co., Inc.*, 166 F.R.D. 284, 290 (W.D.N.Y. 1996), a party had a consulting agreement with a fact witness and was deposed in the action. *Id.* at 290. The court was "trouble[ed]" that after a witness was

---

[5] The issue in *Cafesijian* was raised in a Rule 60(b)(3) motion regarding whether an adverse party committed fraud, misrepresentation, or misconduct. *Id.* at 193.

[6] Of course, the witness agreements at issue here provide no success bonus and in fact explicitly state that the compensation is not contingent on the outcome of the case. *See* Court Ex. 1, Montalvo Witness Agreement at 1.

asked whether they had any business relationships with the defendants after a particular year, to which the witness answered "no," and counsel did not correct the witness to explain that the parties communicated to prepare a witness agreement. *Id.*[7] Here, Relators did not ask such a question.[8]

Finally, even if earlier disclosure were required (which it was not as discussed above), Relators have suffered no prejudice. On the *first* witness for whom Fluor coordinated their trial appearance, Relators' counsel asked whether the witness was being paid for the time he was testifying. Mr. Montalvo truthfully answered that question and the number of follow up questions by Relators' counsel. The jury will have the opportunity to hear these same questions be asked of every other witness in this action, should Relators choose to ask to do so.[9] There is simply no prejudice to Relators.

## **CONCLUSION**

For the reasons set forth above, Fluor believes that its use and disclosure of all witness agreements in this case is proper and should not require any further action by the Court.

*[signature page follows]*

---

[7] *Prasad* references that there are situations that can make the nondisclosure of a witness agreement "before or during a deposition" "troubling," but the sole support is *Solvent Chemical*.

[8] Given Relators' counsel's representations that he has never encountered this issue, Fluor is constrained to point that the firm that bears his name (Loevy & Loevy) faced a similar issue, and unlike Fluor, instructed the witness not to disclose the financial arrangement. In *Portis v. City of Chicago*, No. 02 C 3139, 2005 WL 8179032, at *3 (N.D. Ill. Aug. 24, 2005), the Loevy firm retained a consultant to assist in the litigation. *Id.* at *1. The firm declined to identify the consultant as an expert witness, and he was therefore deposed during fact discovery. *Id.* at *3. Nonetheless, attorneys from the Loevy firm objected questions at deposition about the financial arrangements with the witness and instructed the witness not to answer. *Id.* Ultimately, the court compelled a new deposition to permit such questioning. *Id.* at *4.

[9] Fluor expects Relators to respond that the witness agreements might never have been discovered if they had not asked Tony Montalvo the question at trial. Even if such "might have" arguments were relevant, *Smith* involves this exact scenario, and the Eastern District of Virginia still determined that because this issue would "merely [go] to the credibility of the witness," this would "not justify a new trial." *See Smith*, 212 F. Supp. at 714.

Respectfully submitted,

*/s/ Mark C. Moore*
Mark C. Moore (Fed. ID No. 4956)
Michael A. Parente (Fed. ID No. 13358)
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 540-2146
Facsimile: (803) 727-1458
MMoore@maynardnexsen.com

Konstantine P. Diamaduros (Fed. ID No. 12368)
MAYNARD NEXSEN PC
104 South Main Street, Suite 900 (29601)
Post Office Drawer 10648
Greenville, SC 29603-0648
Telephone: (864) 370-2211
Facsimile: (864) 282-1177
KDiamaduros@maynardnexsen.com

Craig D. Margolis (admitted *pro hac vice*)
Tirzah S. Lollar (admitted *pro hac vice*)
Christian D. Sheehan (admitted *pro hac vice*)
Elizabeth A. Carney (admitted *pro hac vice*)
Katelyn M. Deibler (admitted *pro hac vice*)
Elliot S. Rosenwald (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, Northwest Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
craig.margolis@arnoldporter.com

Rachel K. Higgins (admitted *pro hac vice*)
Sahrula Kubie (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

February 6, 2026
Greenville, South Carolina

*Counsel for Defendants Fluor Corporation and Fluor Intercontinental, Inc.*