# EXHIBIT B
# MONTALVO CONTRACT
# (DECEMBER 30, 2024)



FDEE Consulting, Inc.
6700 Las Colinas Blvd
Irving, TX 75039

469.398.7660 tel
James.Pike@fluor.com

James Pike
Vice President

December 30, 2024

Angel L. Montalvo
113 Palm Springs Way
Simpsonville, SC 29681

Dear Mr. Montalvo:

This letter will confirm the agreement between Angel L. Montalvo (the "Witness") and FDEE Consulting, Inc. ("Agreement").

**I.  Scope of Engagement**: The Witness agrees to meet with Fluor Corporation, its affiliated companies, and/or legal counsel (collectively, the "Company"), review documents, testify or otherwise assist to provide information related to Witness's former employment with Fluor in any litigation matters involving Fluor as requested by the Company (the "litigation"). Witness also agrees to make himself reasonably available for assistance related to the litigation, as may be requested by the Company or its legal counsel, regarding any matter, dispute or controversy of which Witness has or may have reason to have knowledge, information, or expertise. Witness's cooperation in connection with such claims or actions shall include being available to meet with counsel to prepare for discovery, a hearing, or trial and to act as a witness. If Witness is called as a witness by the Company to give testimony (oral or written) in the litigation, Witness understands and agrees that, by reimbursing Witness for the value of Witness's time and and/or any lost wages or expenses, Company is not seeking to influence the Witness's testimony at any proceeding, hearing, or trial, and that Witness agrees to truthfully testify at any such proceeding, hearing, or trial. The reimbursement for the value of Witness's time and and/or any lost wages or expenses is not, and shall not, be contingent upon the substance of the Witness's testimony in the course of a proceeding, deposition, hearing, or trial nor shall it be contingent on the outcome of any such proceeding, deposition, hearing, or trial. The Company authorizes James D. Pike or his designee to request assistance from the Witness in connection with this Agreement.

Witness is, and will be at all times under this Agreement be, an independent contractor and shall not act as or be an agent or employee of the Company. For this reason, all of the Witness's activities will be at its own risk, and the Witness Shall not be entitled to, and hereby waives and disclaims any right to, benefits which Company may provide to employees of Company, including but not limited to Workers' Compensation or similar benefits or other insurance protection provided by the Company. The Witness will make his own arrangements for medical insurance and insurance coverage for the activities in connection with this Agreement. Witness will use his own judgment in connection with activities under this Agreement, and Company shall not have control over the means and methods used by Witness hereunder.



Initialed:

December 30, 2024
Montalvo, Angel L.
Page 2 of 4

II. **Reimbursement for Time Spent In Connection with this Agreement**: The Company shall reimburse the Witness for any lost wages and/or the reasonable value of the Witness's time for preparing to testify, attending proceedings, and providing testimony as specifically approved by the Company during the term of this Agreement as follows:

(i) **Fee**: Witness will be reimbursed Two Hundred Fifty Dollars ($250.00 USD) per hour for approved time spent in connection with this Agreement;

(ii) In order to comply with IRS Regulation 409A, the Witness agrees that he or she will not spend in excess of 1,000 hours for the term of this Agreement;

(iii) The Witness agrees that he or she will not spend in excess of 125 hours per month for the term of this Agreement;

(iv) The Witness will be reimbursed for any reasonable travel expenses incurred while providing services to the Company during the term of this Agreement provided that Witness complies with the requirements set forth in Exhibit A attached to this Agreement;

(v) Applicable taxes including FICA (Social Security and Medicare) taxes will be withheld on all payments made to Witness. A Form W-2 for the Witness's 2023 and any subsequent year's consulting compensation will be provided.

III. **Invoicing**: Within 30 days following the end of each month, the Witness will furnish the Company with an invoice detailing the time spent during such month and a description of activities performed in connection with this Agreement. All invoices must present a company code, general ledger account number and a cost object. James D. Pike or his designee must approve all invoices submitted by Witness before Company pays the invoice. The Company shall pay such invoice within thirty (30) days of receipt and approval. The Company reserves the right to reject invoices more than 60 days past due.

IV. **Confidential Information**. The Witness agrees that any information which he obtains in connection with this Agreement concerning the business or operations of the Company, its affiliates or third parties with whom it conducts business (including, but not as a limitation, technical information) shall be used only to perform such services and shall not be disclosed to anyone outside the Company, except with the prior written authorization of the Company. Further, to the extent any such information is in written form, all such documents are considered company property and upon termination or expiration of this Agreement, must be: (1) returned to the Company; or (2) with approval from Company, destroyed by Witness. The obligations of this paragraph shall extend for five (5) years past the termination or expiration of this Agreement and do not apply to any information which has been publicly released or is in the public knowledge or literature.

However, nothing in this Agreement prohibits or restricts Witness from either filing charges/complaints with any governmental agency or participating in an investigation or a proceeding before any governmental agency responsible for the enforcement of any local, state or federal law. In addition, nothing in this Agreement prohibits Witness from: (i) reporting possible violations of federal law or regulations, including

Initialed: ___

December 30, 2024
Montalvo, Angel L.
Page 3 of 4

any possible securities laws violations, to any governmental agency or entity, including but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Congress, Occupational Health and Safety Administration, or any agency Inspector General; (ii) making any other disclosures that are protected under the whistleblower provisions of federal law or regulations; or (iii) otherwise fully participating in any whistleblower programs, including the right to receive an incentive award authorized under federal statute or regulation for information provided to the Securities & Exchange Commission or any other federal regulatory or law enforcement agency.

V. **Term**: This Agreement is retroactive to November 1, 2024, and shall expire in twelve months from the date this Agreement is executed unless otherwise modified by subsequent written agreement signed by Witness and an authorized representative of the Company or terminated earlier by either party, with or without cause, upon 30-day written notice to the other party.

VI. **Supplier Expectations**: The Witness has read and understands Fluor's Business Conduct and Ethics Expectations for Suppliers and Contractors (the Ethics Expectations) and Witness will do nothing to violate the Ethics Expectations.

VII. **Anti-Corruption**: The Witness will not make and has not made directly or indirectly, any payments or given anything of value to any third party, including any foreign official, foreign political party or foreign party candidate in connection with the Company's activities or in obtaining or retaining business from any government agency or instrumentality. The Witness shall promptly notify the Company if in connection with this Agreement, Witness is approached, asked or requested or offers to make any payments or giving anything of value to any third party. Additionally, Witness agrees that during the entire term of this Agreement, Witness will not act as an agent, official, or employee of any foreign government, or foreign political party, or a candidate for foreign office, and that the reimbursements and expenses that will be paid to Witness under this Agreement will not be paid directly or indirectly to any such agent, official, employee, party or candidate on behalf of Company.

VIII. **Corporate Assets**: Witness is expected to respect the Company's assets as it would its own. Corporate assets take many forms (land, building, equipment, etc.). Witness is required to return any assets or related documents to Company upon termination or expiration on this Agreement.

IX. **Compliance with Law**: The Witness agrees to fully comply with the United States Foreign Corrupt Practices Act (Public Law 95-213, 95th Congress, December 19, 1977) and all other applicable State and United States Laws. The Witness acknowledges that Fluor Corporation and its subsidiaries require their contractors to fully comply with the laws of the United States.

X. **Use of Substances**: The Witness understands the Company's goal to maintain a Drug and Alcohol-free environment and agrees to fully comply with the requirements set forth in Exhibit B attached to this Agreement.

Initialed:

December 30, 2024
Montalvo, Angel L.
Page 4 of 4

**XI. Entire Agreement:** This Agreement consists of this letter and corresponding attachments Exhibits A & B referenced above. This Agreement, as defined in this paragraph, sets forth the full and complete understanding of the parties as of the date above stated, and supersedes any and all agreements and representations made or dated prior hereto with respect to the assistance to be provided by Witness in connection with this Agreement. This Agreement can only be amended in writing and signed by the duly authorized representatives of the parties.

**XII. Governing Law:** This Agreement shall be governed by and interpreted in accordance with the laws of the State of South Carolina.

Kindly indicate your agreement with the foregoing by executing the duplicate originals of this letter in the space below and returning a fully signed duplicate original to us.

FDEE CONSULTING, INC.

By: James Pike

Accepted and Agreed:

By: Angel L. Montalvo
Date: 7 JAN 2025

Initialed

## Exhibit A: Invoices and Expense Reimbursement

I. Guidelines

Witness will be reimbursed for all pre-approved reasonable and necessary travel and other business related expenses. Reimbursed expenses must: (a) be associated with activities performed in connection with the Witness Agreement between Witness and Company (the "Witness Agreement"), (b) be in compliance with Internal Revenue Service regulations, federal, state and other applicable laws, and (c) not otherwise be compensated from other sources. Witnesses who travel at the request of the Company must have documented approval from the Company Representative identified in the Witness Agreement ("Company Representative") or his designee before incurring any costs for travel for which Witness will seek reimbursement.

Failure to comply with each of the above guidelines may result in non-reimbursement of travel and business related expenses.

II. Travel and Other Reimbursable Expenses

The following expenses are reimbursable when approved by the responsible Company Representative or his designee:

A. Air Travel
   i. Coach class accommodations must be used for domestic travel in the United States.
   ii. International travel is not anticipated, but if necessary shall be via coach class accommodations unless other accommodations are pre-approved by the Company Representative or his designee.
   iii. Witness should plan and ticket travel at least 14 days in advance whenever possible to take advantage of cost savings opportunities.
   iv. Witness must provide a detailed itinerary for each airline ticket fee displayed on the invoice.

B. Vehicle Rental
   i. Intermediate or mid-size automobiles or smaller are authorized.

C. Personal Automobile Travel
   i. Witnesses using a personal automobile for business travel in connection with the Witness Agreement will be reimbursed at the standard mileage reimbursement rate as approved by the Internal Revenue Service. The Witness is responsible for insurance coverage. No maintenance costs of any kind or fuel charges will be reimbursed.

D. Hotels
   i. Witnesses will be reimbursed for accommodations at reasonably priced hotels.
   ii. It is the Witness's responsibility to learn the hotel's room cancellation requirements and to notify the hotel directly in time to make the cancellations. Witness will not be reimbursed for fees that may be incurred for failure to cancel a reservation.

E. Meals
   i. Meal charges must be reasonable.
   ii. Reimbursement for meals will only be made in conjunction with out-of-town travel.

**Exhibit A: Invoices and Expense Reimbursement- Page 1**

III. Time Charges

Fluor will pay only for the actual time spent in connection with the Witness Agreement except no reimbursement will be allowed for any time spent in complying with these requirements, nor will Witness be compensated for any time devoted to the preparation of billing invoices. . Actual time spent must be recorded and there shall be no rounding of a time charge to the next half-hour or quarter-hour.

IV. Invoicing

Backup documentation or receipts for expenses in excess of $25.00 is required. Company requires that expenses be identified by date incurred and category, e.g., travel, meals, etc. Each expense item must be sufficiently detailed to enable Company to determine the exact nature, purpose, and necessity of each expense.

Within 30 days following the end of each month, the Witness will furnish the Company with an invoice detailing the time spent in connection with the Witness Agreement during such month and a description of activities performed All invoices must present a company code, general ledger account number and a cost object. Witness shall include expenses on the invoice.

Each invoice requires a certification that the Witness has reviewed the invoice and believes that it accurately reports the time and expenses reasonably and necessarily incurred and directly related to the activities performed in connection with the Witness Agreement, and, further, that the invoice complies with these Billing Requirements.

The Company Representative or his designee must approve all invoices submitted by Witness before Company pays the invoice. The Company shall pay such invoice within thirty (30) days of receipt and approval. The Company reserves the right to reject invoices more than 60 days past due.

**Exhibit A: Invoices and Expense Reimbursement- Page 2**

## Exhibit B: Drugs and Alcohol

I. Guidelines

The Company prohibits the possession, use, manufacture, distribution, dispensation or presence of drugs and alcohol on Company premises or in connection with the activities performed by Witness under the Witness Agreement and as explained in detail below.

II. Chemical Screening

The Company may request that Witness be screened for use of drugs and/or alcohol if Witness is suspected of being under the influence of drugs and/or alcohol due to uncharacteristic behavior, mood swings, inability to appropriately respond to questions, the odor of alcohol on the breath or person, inappropriate of aggressive behavior, etc.

III. Prohibited Conduct

Prohibited conduct may include, but is not limited to the following:

A. Possessing, using, distributing, or dispensing drugs and alcohol while performing activities under the Witness Agreement A (on or off Company property).

B. Receiving a non-negative illicit substances screen result for drugs or alcohol.

C. Refusing to submit to chemical screening upon request.

D. Attempting to subvert / avoid chemical screening by means of sample substitution, adulteration or intentionally providing insufficient specimen quantity.

**Exhibit B: Substance Abuse- Page 1**