IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CHARLES R. SHEPHERD; DANNY V. RUDE; ROBERT SCOTT DILLARD; and RICKEY MACKEY,<br><br>Plaintiffs,<br><br>v.<br><br>FLUOR CORPORATION; FLUOR INTERCONTINENTAL, INC.,<br><br>Defendants. | Civil Action No. 6:13-cv-02428-JD<br>Hon. Joseph Dawson, III |

**FLUOR'S RESPONSE TO RELATORS' BRIEF
REGARDING WITNESS AGREEMENTS**

Relators' brief attempts to make very much out of very little, but two things remain clear: (i) Fluor's witness agreements are permissible, and (ii) Fluor had no obligation to disclose them in discovery. Despite this, Relators request numerous remedies that have no basis in law or fact. Despite Relators' claims to the contrary, Fluor is working expeditiously to produce copies of witness agreements for trial witnesses (and for those in place for such witnesses at their depositions) and provide information about the payments made to witnesses for time spent in preparation for or providing testimony. Because Relators will have this information and may use it to examine witnesses (within the limits the Court has prescribed), there is no prejudice.

Moreover, Relators' brief helpfully makes Fluor's point—that Relators threaten to turn the issue of permissible witness payments into a sideshow that may well upstage the trial itself. Relators accuse Fluor of "buy[ing] the silence" of former employees, Dkt. 676 at 17; engaging in "corruption of the judicial process," *id.* at 10; entering "Epstein-file territory," *id.* at 19; and potentially committing "a crime." *Id.* at 11. As described below, there is nothing improper about

1

these agreements, and while jurors can be made aware of the fact that witnesses are being compensated, the trial should proceed without questioning or argument implying such compensation is improper. Fluor requests that the Court continue to carefully police questioning, testimony, and argument related to these agreements and, at the appropriate time, will request a jury instruction prior to deliberations similar to the curative instruction the Court has already given.

## DISCUSSION

### I.     Fluor's Witness Agreements are Appropriate

Relators' concerns about various provisions of the witness agreements are inconsistent with the agreements' plain language. The agreements confirm that Fluor is "not seeking to influence the Witness's testimony" and requires the witness "to truthfully testify." Court Ex. 1, Montalvo Agreement at 1. The payments are made only "for the value of Witness's time and/or any lost wages . . . and shall not be contingent upon the substance of the Witness's testimony." *Id*. Relators' nefarious and conspiratorial interpretations cannot be reconciled with the plain text.[1] There is simply no reasonable inference that these witnesses are being asked to do anything except testify truthfully, and the agreements abide by each guardrail set forth by the American Bar Association, South Carolina Bar, and court precedent.[2] *See* Dkt. 671 at 2–6.

---

[1] For example, Relators claim that the agreements' exception to the confidentiality provision that permits any witness to report any suspected unlawful activity to the government is "damning." Dkt. 676 at 8. But the inclusion of this paragraph is necessary to comply with the Securities and Exchange Commission's Rule 21F-17. *See* Press Release, SEC: Companies Cannot Stifle Whistleblowers in Confidentiality Agreements, Sec. & Exch. Comm. (Apr. 1, 2015), https://www.sec.gov/newsroom/press-releases/2015-54. Moreover, the intention of this confidentiality provision is only to extend the general confidentiality provisions of Fluor's Code of Business Conduct Policy, Ex. 1, to former employees, who would no longer be bound by the policy without these agreements. There is nothing improper or nefarious about the agreements' confidentiality provision, which is similar to confidentiality agreements used generally for consultants in such circumstances.

[2] Although Fluor believes the agreements' language speaks for itself, to the extent the Court has any concerns that a witness could misunderstand it, Fluor is happy to specifically instruct each

Relators' reliance on the Fourth Circuit's 84-year-old decision in *Alexander* is misplaced. Another case Relators cite, *United States v. Lovenite*, confirms that the Fourth Circuit no longer follows *Alexander*'s outdated approach. 277 F.3d 454, 458 (4th Cir. 2002) (government may compensate informant who testified as fact witness).[3] And even if *Alexander* were still good law, it does not forbid payments for testimony that are limited to "time lost from the witness's own work." *See Smith v. Allen*, 212 F. Supp. 713, 714 (E.D. Va. 1962) (distinguishing *Alexander* and permitting payment to fact witness). The facts of *Alexander* are also quite different. In that case, two attorneys were asked to testify as fact witnesses and in return for their testimony would be paid "a fee of $75,000 in addition to the fees to counsel for [the witnesses] which had already been agreed upon, and that, if the fee were allowed, [the attorneys] might have 10 per cent" of the recovery. *Alexander v. Watson*, 128 F.2d 627, 628–29 (4th Cir. 1942). Because of the unique factual circumstances of that case, the Fourth Circuit determined the attorneys "should not have accepted employment knowing that they would be called to testify," and expressed concern that the payments were contrary to public policy. *Id.* at 630–31.[4] Unlike *Alexander*, Fluor is not offering fact witnesses a portion of any recovery in this case, but rather, a reasonable fee based on the time the witness spends preparing for and giving testimony in this litigation.

---

witness with a witness agreement that no provision of the agreement should be interpreted to prevent or impede the witness from providing complete and truthful testimony at trial. To be clear, Fluor does not believe such an instruction is necessary but for the avoidance of doubt is willing to provide it.

[3] As discussed in Fluor's initial brief, nearly all other courts have also abandoned *Alexander*'s common law rule entirely. *See* Dkt. 671 at 4 (collecting cases).

[4] Notably, a South Carolina Ethics Opinion has clearly stated that such an arrangement is permissible. *See* S.C. Ethics Advisory Op. 23-01 (citing ABA Formal Op. 96-402 and S.C. Ethics Advisory Op. 97-42).

**II.     Fluor Had No Obligation to Disclose the Agreements Earlier**

Relators have not pointed to any authority that required the disclosure of these agreements in discovery. Relators first argue that Rule 26 required Fluor to disclose any payments to fact witnesses, but in the same breath, recognize "the Rule is obviously limited to experts." Dkt. 676 at 13. They claim that Rule 26 omits this requirement for fact witnesses because Congress did not intend for payments to fact witnesses. *Id.* But this argument overlooks that Congress explicitly authorized these payments in the Federal Anti-Gratuity Statute, which permits payments to non-expert witnesses for "reasonable cost of travel and subsistence incurred and the reasonable value of time lost in attendance at any such trial." 18 U.S.C. § 201(d). This statutory language is proof that Congress recognized that witnesses may be compensated for the reasonable value of time, which is what Fluor's agreements do.

Relators next argue that these payments were requested in discovery. Yet, Relators can only point to a discovery request which asks for "[a]ll Documents which relate to, support and/or rebut any of the allegations or claims in the Second Amended Complaint." Dkt. 676-8 at 7. As the Court is well-aware, such overbroad requests are improper in discovery. *See Donnelly v. Arringdon Dev., Inc.*, No. 1:04CV889, 2005 WL 8167556, at *1–2 (M.D.N.C. Nov. 8, 2005). Even if this request was proper, it cannot reasonably be read to extend to these agreements since they do not support or rebut any allegations regarding Fluor's property management, receipt of award fees, alleged overstaffing, or retaliation against Relators Shepherd and Rude.

Relators also argue that the agreements should have been disclosed when former Fluor employees testified at deposition that they were not Fluor employees. Dkt. 676 at 13–14. But the agreements make clear that these individuals are *not Fluor employees*. Court Ex. 1 at 1 ("Witness is, and will be at all times under this Agreement, an independent contractor and shall not act as or

4

be an agent or employee of [Fluor].").[5] These witnesses answered the questions truthfully, and nothing in those answers could reasonably be read to require a correction to the witness' answer. In *Solvent Chemical*, the witness was asked "whether he had had any business relationships with ICC, Dover, or Solvent after late 1979," to which the witness answered "no," despite recently entering a witness agreement with the defendant. *New York v. Solvent Chem. Co., Inc.*, 166 F.R.D. 284, 290 (W.D.N.Y. 1996). No such question was asked by the Relators to any witness in this case, and thus *Solvent* does not apply here. *See id.* at 290 (nothing counsel's obligation to correct record about indisputably false answer to question). Fluor's former employees all correctly answered that they were not current Fluor employees, and thus did not "work" for Fluor in any reasonable sense of that term.[6] Moreover, Relators' arguments relating to Fluor discussing documents with certain witnesses at deposition is nothing more than Fluor invoking Local Rule 30.04(H).

### III. Relators' Speculation About the Agreements Has No Basis

Relators' brief is replete with examples of wild speculation without any basis in fact. Relators suggest that "[i]f Fluor's independent contractor agreements with current and former employees date as far back as the 2010s, a jury could reasonably conclude that after Fluor received the CID request for documents from the Department of Justice, Fluor set out to buy the silence of former employees with knowledge of the facts." Dkt. 676 at 17. As a preliminary matter, these witness agreements are only put in place for *former* Fluor employees, not current employees.

---

[5] The other provisions of the agreement, such as "Supplier Expectations," "Anti-Corruption," and "Use of Substances" confirms that this agreement is used for all of Fluor's consultants, not just former Fluor employees who may need to testify.

[6] In fact, Fluor asked one of the first witnesses who was deposed in this action if they were receiving any payment for the time they spent testifying. Ex. 2, Cummins Dep. 25:25–26:2. Relators were free to ask the same question of any witness presented by Fluor.

Moreover, the only person deposed by the Department of Justice during the investigation, Justin Jones, was and remains an employee and thus is not party to a witness agreement. The argument that Fluor is "buy[ing] the silence of former employees," *id.* at 17, is simply incorrect.[7]

Relators also speculate that witnesses "may well be billing 24/7 for indeterminate time periods, including any time spent thinking about the case." *Id.* at 5. There is no basis whatsoever for this accusation. Relators argue that the fact that Mr. Montalvo was in Greenville for a week before his testimony must mean that "either (a) that he spent a lot more time preparing with Fluor's counsel than he revealed; or (b) he was billing Fluor at $250/hour for a lot of his time, possibly at 24 hours a day." Dkt. 676 at 5–6. In fact, there is a third explanation: Mr. Montalvo *lives in the Greenville area*, a fact that is reflected on the face of Mr. Montalvo's witness agreement. Court Ex. 1, Montalvo Agreement at 1.

Similarly, the argument about Mr. Hamm's potential billing under the agreement is similarly misplaced. Mr. Hamm regrettably spent a week in Greenville after traveling from out of state due to *Relators' decision* to continue calling other witnesses before him. Of course, Mr. Hamm is entitled to be paid for reasonable standby time (that is, time he spent waiting to be called), and he clearly testified that this would only include the 8 hours of each trial day that he was on standby to be called to court. Feb. 5, 2026 Trial Tr. at 57:18–58:7. There is nothing improper about billing for the time that Mr. Hamm spent away from home and family waiting for Relators to call him.

---

[7] *Construction Laborers Pension Trust for Southern California v. CBS Corporation* is inapposite. *See* Dkt. 676 at 18. That case involved an individual attempting to "obstruct [an] internal investigation" into sexual harassment. 433 F. Supp. 3d 515, 548–59 (S.D.N.Y. 2020). Here, the witness agreements are entered when and if a former employee's testimony is sought. There is nothing obstructive about them, particularly in light of the agreements' safeguards.

**IV.     There is No Basis for Any of Relators' Requested Remedies**

Relators request additional voir dire of certain witnesses, depositions of two Fluor executives, exclusion of all witnesses subject to the agreements, and admission of the witness agreements into evidence. As set forth above, all of these purported "remedies" amount to theatrics meant to distract the Court and jury from the merits of the case. Introducing the agreements themselves into evidence would confuse the jury and invite needless inquiry into ancillary provisions that Relators purposefully misread. It is sufficient for the witnesses to testify to the matters outlined in the Court's carefully scripted questions already provided. Nothing more is needed.

Relators also ask the Court to enter "Default Judgment," Dkt. 676 at 24–25, which Fluor can only assume is a request for directed verdict because default is only entered where there is a failure to plead or otherwise defend an action. *See* Fed. R. Civ. P. 55. If Relators meant to request directed verdict or a new trial, "these remedies . . . should be applied only in exceptional circumstances." *Huskey v. Ethicon, Inc.*, No. 2:12–cv–05201, 2015 WL 4944339, at *15 (S.D.W. Va. Aug. 19, 2015). In *Smith*, the court was faced with deciding whether an agreement to pay a fact witness for their lost wages could warrant a new trial, which the court rejected, noting "th[e] fact could have been brought out on cross-examination" but because "it would go merely to the credibility of the witness . . . the subsequent discovery of the fact would not justify a new trial." *Smith*, 212 F. Supp. at 714.

Relators cite to one out-of-circuit case as support. Dkt. 676 at 25. But in *Cinergy*, the *entire trial* proceeded without disclosing a consultant agreement that defendant's *counsel* and the defendant entered into an agreement with a fact witness. *United States v. Cinergy*, No. 1:99–cv–1693–LJM–JMS, 2008 WL 7679914, at *12 (S.D. Ind. Dec. 18, 2008). Central to the court's

ruling is that the defendant extensively argued that the only evidence offered by the plaintiff was paid expert testimony, whereas the defendant was offering *unpaid* fact witness engineers to support their defense. *Id.* at *3, 5, 12–13. Because the defendant repeatedly referenced this "paid versus unpaid testimony theme" at trial without disclosing the consulting agreement, the Court determined that a new trial was warranted. *Id.* at *11, 13.[8]

Here, the facts do not support directed verdict or a new trial because Relators have suffered no prejudice.[9] On the very first witness with whom Fluor entered a witness agreement, Relators asked the witness whether Fluor was compensating him for the time he spent testifying, and Mr. Montalvo truthfully answered. The Court has permitted Relators to question every witness since Mr. Montalvo about whether they had a witness agreement with Fluor, including the amount of hours they anticipated invoicing the company. These questions (or any of the other questions that the Court has approved on the issue) sufficiently explore any potential bias from the agreements, and there is no reason to permit endless questioning on such a narrow issue that is unrelated to the actual facts of this case.

The only remedy that appears appropriate would be a limited instruction to the jury which informs the jury that they may consider the fact that Fluor has compensated a witness for lost time

---

[8] Notably, *Cinergy* found that the defendant should have disclosed the agreement, but this was because it was *actually requested in discovery* and the witness was *represented by counsel*. *Id.* at *14. The discovery request in *Cinergy* unambiguously requested the agreement: requesting "all documents relating to 'compensation' of former employees who were on Cinergy's witness lists, including consulting contracts, billing records, and invoices relating to payment of such witnesses." *Id.* at *6. Moreover, because the witness was represented by counsel the Court believed required Rule 26 required disclosure. *Id.* at *12, 14. That is simply not the case for Fluor's former employees, who have an agreement with Fluor, not Fluor's counsel, and is not represented by Fluor's counsel.

[9] To the extent that there was arguably any prejudice, the Court has already cured it by ordering Fluor to provide the witness agreements.

spent in preparing for or attending trial and providing testimony in assessing a witness' credibility while at the same time cautioning that the jury should not reach any adverse inference from the existence of the agreements themselves, which are legally permissible.[10]

## CONCLUSION

For the reasons set forth above and in Fluor's Brief, Dkt. 671, Fluor believes that its use and disclosure of witness agreements is proper and should not require any further action by the Court.

Relators argue that the agreements are "[c]orrupting [t]his [j]ury [t]rial." Dkt. 676 at 13. Respectfully, Fluor believes that Relators are turning this issue into something far larger than it should be. Undoubtably, both parties may probe witnesses for potential bias at trial, and the jury may weigh the witnesses' credibility according to those biases. But any attempt to turn the trial into one over permissible and lawful witness agreements should be rejected. Relators' attempts to distract the Court and jury risk extending an already lengthy jury trial with issues that have nothing to do with the merits.

*[signature page follows]*

---

[10] In *United States v. Levenite*, 277 F.3d 454 (4th Cir. 2002), the Fourth Circuit considered a jury instruction that was given about a paid government informant's testimony. As an initial matter, *Levenite* was considering a whole host of issues present in criminal cases that are not applicable here, such as disclosure obligations under *Brady* and *Giglio* and balancing the difficulty in obtaining witness testimony in some criminal prosecutions. *Id.* at 461–463. Moreover, the government informant in *Levenite* was paid an hourly rate and a "bonus" if the defendant was found guilty. *Id.* at 461–463. This heighted scrutiny is especially prudent in criminal matters, which concern a defendant's liberty interest, where a paid informant is entitled receive a "bonus" payment if their testimony assists in securing a conviction. This is an entirely different circumstances than here where the plain language of Fluor's witness agreements do not involve a "bonus" or "contingent" payment.

Respectfully submitted,

*/s/ Mark C. Moore*
Mark C. Moore (Fed. ID No. 4956)
Michael A. Parente (Fed. ID No. 13358)
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 540-2146
Facsimile: (803) 727-1458
MMoore@maynardnexsen.com

Konstantine P. Diamaduros (Fed. ID No. 12368)
MAYNARD NEXSEN PC
104 South Main Street, Suite 900 (29601)
Post Office Drawer 10648
Greenville, SC 29603-0648
Telephone: (864) 370-2211
Facsimile: (864) 282-1177
KDiamaduros@maynardnexsen.com

Craig D. Margolis (admitted *pro hac vice*)
Tirzah S. Lollar (admitted *pro hac vice*)
Christian D. Sheehan (admitted *pro hac vice*)
Elizabeth A. Carney (admitted *pro hac vice*)
Katelyn M. Deibler (admitted *pro hac vice*)
Elliot S. Rosenwald (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, Northwest Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
craig.margolis@arnoldporter.com

Rachel K. Higgins (admitted *pro hac vice*)
Sahrula Kubie (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

February 9, 2026
Greenville, South Carolina

*Counsel for Defendants Fluor Corporation and Fluor Intercontinental, Inc.*