IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| United States of America, *ex rel.* Charles R. Shepherd, Danny V. Rude, Robert Scott Dillard, And Rickey Mackey<br><br>Plaintiff-Relators,<br><br>v.<br><br>Fluor Corporation, Inc., and Fluor Intercontinental, Inc.,<br><br>Defendants. | Case Number: 6:13-02428-JD<br><br>Honorable Joseph Dawson, III<br><br>JURY TRIAL DEMANDED |

**RELATORS' SUPPLEMENT IN SUPPORT OF THEIR MOTION BRIEF REGARDING UNDISCLOSED CONTRACTS WITH WITNESSES**

1. This Supplement is intended to supplement, not replace, the Motion that the Relators filed on Sunday, and thus will not repeat the facts or discussion contained therein. Relators respectfully request that the Court read and consider that Motion before considering this additional Supplement. The original Motion is all the more important now that Fluor has filed the second of its two pleadings *without denying virtually any of the allegations therein.*

2. Moreover, the situation is getting worse and worse as the facts continue to trickle out of Fluor. On Tuesday, February 10, at 8:30 a.m., Fluor sent an email stating: "Here are the witness agreements." See Exhibit A (email exchange); Exhibit B (23 nondisclosure agreements entered into with trial witness for depositions and trial).[1]

---

[1] Fluor designated them "Confidential Information" pursuant to the protective order without cause or justification. Relators dispute that designation and ask the Court to permit them to make these trial witness nondisclosure agreements part of the record.

3. Despite the clear suggestion otherwise, however, these were not all of the "witness agreements." First, Fluor is expressly refusing to produce any other nondisclosure agreements or other independent contractor agreements with any witness that predates the deposition period. This restriction is totally inappropriate. At least ten witnesses, including Montalvo, testified or implied at their depositions that they had not worked for Fluor since leaving the company. They claimed to be "former" employees, a fact Fluor has highlighted.

4. It now turns out that at least seven of them (Montalvo, Hamm, Methot, Gross, Rabb, Ramirez, and Whitcomb) were working for Fluor, possibly dating back to the period when the DoJ was investigating. Fluor is thus still producing only some, but not all, of the agreements by which it has hired these witnesses. In Montalvo's case, for example, despite having been asked to confirm (falsely) in front of the jury by Fluor's counsel on cross-examination that he does not work for Fluor, it may well turn out that Montalvo has been working for Fluor as an independent contractor all the way back to the DoJ investigation. Fluor is improperly refusing to provide any such agreements.

5. Second, for some witnesses, Fluor continues to reserve for itself the right to withhold any and all agreements. When Relators' counsel sent a follow-up email asking Fluor's counsel to confirm that Fluor had produced "all" of the agreements for all of the witnesses on both parties' Rule 26 disclosures and trial witness lists, Fluor hedged. *See* Exhibit A. After first taking the position that it would only turn over trial nondisclosure agreements for witnesses on Fluor's witness list, Fluor is still refusing to turn over any agreements it signed with all Rule 26 witnesses in the case, and its limitation to agreements "that were in effect at the time testimony was or will be given, either at deposition or at trial" is an ambiguous qualifier. It permits Fluor, for example, to exclude any such agreements with former Fluor employees who Relators had intended to call but who have

now gone dark. Perhaps Fluor has now retained those witnesses, paid them, and confirmed that they do not intend to testify at trial; if so, counsel's qualifier would exclude them.

6.   Third, after the representation in Fluor's email that it had produced all of the witness agreements, Fluor's counsel told the Court yesterday that there are apparently three more agreements. To the extent Relators understood him, counsel seemed to be representing that Fluor was still trying to obtain nondisclosure agreements from three more trial witnesses.

7.   All three were witnesses whom Relators' counsel had just asked Fluor's counsel to bring to Court this week to testify: Ridley, Roesler and Reuter. *See* Exhibit C (Ridley and Reuter email exchange); Exhibit D (Roesler email exchange). It was not clear whether these three witnesses do not yet have nondisclosure agreements and Fluor is working on getting them, or whether they presently have oral understandings with Fluor that have not been reduced to writing.

8.   Relators' counsel could not make any sense of whatever Fluor was claiming about these witnesses on the record after court. It was something about agreements that Fluor was still trying to "obtain." Fluor had directed Relators to go through Fluor for all former employees, over whom it claims privilege. Then when Relators requested their testimony, Fluor apparently decided to sign up these three witnesses to pay them and require their nondisclosure of certain information that Fluor would not authorize them to share at trial. It is not at all clear whether these witnesses asked for or required payment of cash at an hourly rate to appear at trial. Who brought up the idea of paying them? When Relators requested their appearance at trial, did Fluor reach out and offer to pay them?

9.   If paying witnesses at this jury trial is going to be an acceptable option, Fluor has managed to secure a "monopoly," effectively preventing Relators from bidding on these witnesses too; since Fluor purports to control these witnesses, should Relators send their competing payment term proposals to Fluor to pass on to these witnesses? Relators are obviously being facetious. But once

witness payments of this scale are introduced to jury trials, the potential for corruption cannot be understated.

10. In addition, there continues to be ambiguity about (a) which Rule 26 witnesses Fluor continues to withhold agreements for; (b) whether Fluor's waffly disclaimers mean that Fluor has again (for the fourth time) purported to give Relators everything, only to later divulge that it has not.[2]

11. As for payments, Fluor has now provided an unverified, unsworn chart with amounts purporting to be limited to "time associated with a deposition (preparation, travel, the deposition itself, reviewing the transcript) or drafting a declaration." Exhibit E (payments chart).[3]

12. Fluor has expressly and improperly limited the payment information that it is willing to share to time supposedly associated with the depositions. If witnesses like Bradley ("never seen so much [slang] fraud in my entire log cap life") Hamm were on Fluor's payroll receiving money during discovery or during the DoJ investigation, that money is excluded from Fluor's latest disclosure. After these witnesses represented that they had broken from Fluor, the fact that Fluor was paying them for any purpose (not just "deposition time") could not be more probative. In fact, if Fluor was paying them under the guise of other purposes, that is even more relevant.[4]

---

[2] First, Fluor disclosed none of this. Then, after Montalvo spilled the beans, Fluor produced three agreements, giving the impression that those were all there was. Then, Hamm revealed on the stand that he had entered into at least one other agreement governing his deposition, whereupon Fluor produced the 20 additional agreements. Then, Fluor revealed after Court that this list was not complete either.

[3] Moreover, why was Fluor covering this deposition time at all? If the witness was demanding to be paid, why were Relators not given any notice or option to split the fees. The very fact that a witness demanded to be paid (if that is what happened) is relevant to bias.

[4] The payments to Hamm covering what Fluor characterizes as deposition time amount to 44.5 hours. Hamm testified at trial that he prepared for just a few hours, though he was impeached with deposition testimony that it was more like 15-18 hours. On the witness stand, Hamm claimed his final total would be in the 70 hour range, but he refused to commit to any upper bound to what he would bill Fluor once the jury went home. That was the question that prompted the Court to instruct the jury that witness payments are appropriate. Likewise, Fluor's summary of its payments to Methot do not seem to line up with Methot's own testimony at his

13. Compounding the problem, Fluor continues to expressly refuse to agree to Relators' request that Fluor provide the invoices these witnesses sent to Fluor. The nondisclosure contracts require witnesses to bill Fluor for their time within 30 days of services provided. These invoices will tell the Court, Relators, and the jury exactly what the trial witnesses are being paid for (or at least think they are being paid for). This is the most relevant evidence of all, particularly if the time is not in fact related to deposition or trial preparation as has been represented to the Court. There is no justification to continue to withhold any such invoice, nor the communications around them.[5]

14. It gets even worse. Far worse, in fact.

15. The Court is aware that Relators were able to obtain declarations from a number of Fluor employees (without paying them). One was a man named David Erp, who signed a declaration attesting to seeing wrongdoing during his Fluor tenure, consistent with many contemporaneous emails bearing his name. A member of Fluor's TAT training team, his original declaration stated that he had seen Fluor personnel "not following requirements as stated in the [MMP]," failing to conduct cyclical inventories, hiding losses in ghost bins, and improperly adjusting discrepant inventory levels prior to PMSA audits. Exhibit F (Erp Declaration). Although Relators counsel originally assisted in the preparation/drafting of the declaration, Erp ultimately insisted on writing it on his own.

---

deposition. Today, Fluor represented that it has paid Methot for 31.5 hours of time. At his deposition, he testified he had spent around 12 to 14 hours preparing. For a witness whose testimony parties agree will almost certainly consist of "I don't remember," it seems odd that Fluor would spend over 10 hours on trial preparation alone.

[5] Fluor claims it has paid Montalvo nothing, so has provided no payment information. Because Relators' counsel was ambushed and did not explore the topic, the only thing the jury heard was $250/hour. The fact that Montalvo has been working for Fluor for more than a year and has not yet been paid is incredibly probative. The reasonable inference is that his number will be so high that it cannot be paid until trial is over. Or that Fluor was holding out on paying him until he delivered. There are too many questions unanswered, especially given the importance of this witness and the extent to which Fluor relies on his testimony.

16. Months after Relators disclosed his declaration, Fluor sent back a "counter-declaration" by Erp, disavowing parts of the original. Exhibit G (Erp Counter-Declaration).

17. Yesterday, Relators learned that Fluor had signed Erp to at least two independent contractor agreements after Relators disclosed the declaration and before he created the counter-declaration, and that Erp had been $450 in connection with creating this counter-declaration. Exhibit B (nondisclosure agreements dated September 20, 2023, and November 27, 2023); Exhibit D (showing $450 payment). This is not normal, and not acceptable. Erp was never deposed, and has never testified. There is thus no need for a "witness agreement" even in the sense that Fluor uses the term. Erp had been willing to work with Relators' counsel on the original declaration without demanding any payment. Yet Fluor paid him $450 to create a new counter-declaration. None of this is even remotely okay.

18. In addition to Erp, three other Declarants signed counter-declarations for Fluor, each disavowing their original declarations. Despite its representation of completeness ("Here are the witness agreements.") Fluor has not yet produced written agreements with any of them. Each of these three "Counter-Declarants" claimed to have misunderstood the words of their original declarations drafted with their assistance by Relators' counsel based on conversations with the declarant. As stated, however, Erp had written his own Declaration on his own computer and sent it to Relators.

19. If it turns out that Fluor hired these other three counter-declarants too, these are extremely important trial witnesses. They all signed declarations incriminating to Fluor's interests. Then, it may well be that Fluor reached out and offered to pay them. For some reason, they flipped. And the offer to pay these declarants would not have been associated with any deposition testimony --

because there were no depositions. Even now, Fluor has not disclosed any such payment agreements, if they exist.

20. In fairness to the Court, it has been candid that it has not yet had a chance to review the facts, though it hopefully soon will. In the meantime, the Court made clear on the record yesterday that it would not entertain argument suggesting that trial counsel are involved in anything untoward. Based on the incomplete information they know so far, Relators' counsel have no problem with that. By all appearances, the problems are being caused by the client, Fluor, rather than by Arnold & Porter.

21. It is long past time for someone at Fluor to go on record. At this point, the Court should unambiguously order that Fluor:

  a. Produce immediately every agreement or contract with any witness associated with the case, including every person who either party disclosed pursuant to Rule 26 and/or included on trial witness lists;

  b. Produce immediately a list of all payments to any witness associated with the case, including every person who either party disclosed pursuant to Rule 26 and/or included on trial witness lists for the period of time after which they were no longer employed by Fluor;

  c. Produce immediately all invoices submitted by or associated with, and all communications relating to the same, for any witness associated with the case, including every person who either party disclosed pursuant to Rule 26 and/or included on trial witness lists;

  d. Certify in writing and under oath through a Fluor corporate representative that it has produced all information responsive to (A) through (C) above.

e. Permit a FRCP 30(b)(6) deposition on this topic, as well as the deposition of James Pike.[6]

f. The situation has veered out of control, and needs to be remedied. However, only when the Court has all of the information will it be in a position to make a just ruling.

Respectfully submitted,

/s/ Andrew Hand
Andrew Hand

Richard Harpootlian (Fed. ID No. 1730)
Andrew Hand (Fed. ID No. 12176)
RICHARD A. HARPOOTLIAN P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810
rah@harpootlianlaw.com

Jonathan Loevy
Michael Kanovitz
Daniel Twetten
Anand Swaminathan
Frank Newell
Anna Dover
Gwen Parker
Heather Sticht
Dominique Gilbert
Alexandra Wolfson
Aaditya Tolappa
**LOEVY & LOEVY**
311 N. Aberdeen St., Third Floor
Chicago, IL 60607

---

[6] Mr. Pike is identified in the Compensation Agreements as the Fluor employee liaising with the compensated witness about invoices and payments.

Telephone: (312) 243-5900
Facsimile: (312) 243-5902
anand@loevy.com
*Attorneys for Relators*
*Charles R. Shepherd*
*and Danny V. Rude*

Frank L. Eppes (Fed. ID No. 1003)
EPPES & PLUMBLEE, PA
PO Box 10066
Greenville, SC 29603
Telephone: (864) 235-2600
Facsimile: (864) 235-4600
feppes@eppesandplumblee.com

*Attorney for Relator Robert Scott Dillard*

Judah N. VanSyckel
SALUDA LAW, LLC
137 E. Butler Street
Lexington, SC 29072
Telephone: (803) 939-6927
Facsimile: (803) 902-8004
judah@saludalaw.com

*Attorney for Relator Rickey Mackey*

9