## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| United States of America, *ex rel.* Charles R. Shepherd, Danny V. Rude, Robert Scott Dillard, And Rickey Mackey<br><br>Plaintiff-Relators,<br><br>v.<br><br>Fluor Corporation, Inc., and Fluor Intercontinental, Inc.,<br><br>Defendants. | Case Number: 6:13-02428-JD<br><br>Honorable Joseph Dawson, III<br><br>JURY TRIAL DEMANDED |

## RELATORS' MOTION FOR A FINDING OF PRIVILEGE WAIVER

Relators, by their counsel, respectfully ask the Court to find that Fluor has waived any privilege over the investigation that has become the centerpiece of the Fluor's defense at trial. In support of that relief, Relators state as follows.

### Discussion

Fluor is inappropriately trying to have it both ways. It is defending this case by arguing that it identified a problem with materials management, investigated that problem in 2013, and disclosed the results of that investigation to the Government.

Specifically, Fluor argues that its 2013 investigation, directed by Tony Montalvo and conducted by Ernest Ridley, concluded that the Government lost only about $1.5 million of Government materials, and that Mr. Montalvo disclosed those results to Maria McNamara of the DCMA. The conclusions of the 2013 investigation were repeated in a 2014 disclosure that Fluor made to the Department of Defense OIG, signed by Dave Methot.

At this point in this jury trial, this is really Fluor's only viable defense left: Upon learning of

a problem, Fluor investigated and then disclosed what it learned.

Many of the people who participated in Fluor's investigation are trial witnesses who will testify, including Justin Jones (Fluor's corporate representative, who helped lead it); Jeff Nix (one of the original whistleblowers); Relator Richard Mackey (who was interviewed about the problem); Ernest Ridley (who created the "phone books" while attempting to account for the unreported losses); Tony Montalvo (who gave Ridley the assignment, and communicated the results to the DCMA via the 2013 disclosure); Rick Reuter (Montalvo's boss); Dave Methot (head of Fluor's compliance department); Jerald Reeves (head of materials & property under Montalvo); David Payne (the member Fluor's security department, and the trial's first witness); and Brian Wilson (Payne's boss). All of these witnesses will testify about Fluor's investigation into the inventory accountability problems in Fluor's material management department.

During discovery, Fluor asserted a privilege over this investigation, thereby erecting a giant shield around hundreds of documents relating thereto. The resulting privilege log is enormous, containing thousands of entries. See Exhibit A.

In 2023, the Court considered this investigation in a particular context: Fluor filed a motion to compel Relators and Relators' counsel to provide discovery because certain investigation-related documents that Fluor claimed privilege over were at one point in the possession of Relators and Relators' counsel. The Court resolved that issue by concluding that so long as Relators and their counsel were not involved in obtaining such documents, there was no basis to grant Fluor's motion to compel. The Court ordered Relators to answer limited interrogatories related to that narrow question, Relators did so, and the issue was resolved.

The case is now being tried. The Court has had several weeks to see it all play out, and as is

now strikingly obvious, Fluor is trying to have it both ways by: (a) relying on the investigation and the resulting disclosure as its primary defense; and (b) withholding hundreds of documents related to that investigation.

To pull this off, Fluor is (and has been) executing a very simple play. Just as it did when the issue was presented to the Court during discovery, Fluor has simply given its investigation two different names. Sometimes Fluor calls the investigation its (1) materials management investigation (MMI), while other times it calls the investigation its (2) the inventory adjustment analysis (IAA), also referred to by defense counsel at this trial as the negative adjustment review (NAR) and the inventory adjustment review (IAR).

Meanwhile, every document and every fact in the case has been deposited into one of two buckets. If the email, fact, or other document is uncomfortable to Fluor for any reason, it was deemed to be part of the MMI investigation, logged for privilege, and shielded from disclosure. If the email or document is instead something Fluor prefers to use offensively, it goes into the other bucket, and thus becomes one of the hundreds of trial exhibits used to support Fluor's trial defense that Fluor took the materials management problem seriously, investigated it, and disclosed the results of that investigation to the Government.

If that ever was a viable strategy, it no longer is. *United States v. Duke Energy Corp.,* 208 F.R.D. 553, 558 (M.D.N.C. 2002) ("A party may not use a privilege (or work product) as a shield during discovery and then hammer it into a sword for use at the trial."). Whether Fluor calls its investigation the MMI, the IAA, the IAR, or the NAR, it's really all the same thing. Fluor has not identified any principled way to distinguish them. That is because it cannot. As has become clear at this trial, any purported distinction is artificial and contrived.

3

Indeed, the very same people were involved in both of the two purportedly distinct investigations, and both were occurring during the exact same time frame (2103). And both of the purportedly different investigations looked at the exact same issue.

Mr. Montalvo, for example, appears on 324 entries in Fluor's privilege log. He testified at length at this trial about his role in the inventory adjustment investigation, even while Fluor seeks to maintain a privilege over his role in the supposedly distinct materials management investigation -- looking at the exact same issue. Mr. Ridley (who will testify Friday) appears on more than 20 privilege log entries, and Mr. Methot appears on 141 privilege log entries.

Meanwhile, the supposedly different materials management investigation to which Fluor objected to Relators ;presenting in opening statement *arrived at the exact same conclusions: $31.3mm and $1.4mm in actual and unreported losses.* See Exhibit B (PX 1626). These are the very same numbers, to the penny, that Fluor is claiming at this trial it disclosed to the Government as a result of its (supposedly different) inventory adjustment investigation. Moreover, the non-privileged inventory adjustment version of the investigation has no formal working papers justifying this number. Only the materials management investigation version does. The two "different" investigations reached the exact same conclusion.

Fluor's representations during discovery notwithstanding, any pretext that this is anything other than one investigation with two names is no longer defensible. Having told this jury for two weeks to accept the results of the inventory adjustment investigation, Fluor can no longer maintain any privilege. Given Fluor's positions, arguments and defenses at this trial, any privilege it once could legitimately assert over the materials management investigation has long since been waived. *Hege v. Aegon USA, LLC,* C/A No. 8:10-1578-GRA, 2011 WL 1791883, at *4 (D.S.C. May 10,

4

2011) ("One way a party may implicitly waive the privilege is by placing a privileged communication 'at issue' in a case."); *United States v. White,* 944 F. Supp. 2d 454, 459 (D.S.C. 2013) ("[T]he waiver of the privilege is based upon a premise that when a party's conduct reaches a certain point of disclosure, fairness requires that the privilege cease." (quoting *In re Long Point Road Limited Partnership v. RTC Land Assets Trust,* 1997 WL 33344311, *3-4 (Bkrtcy.D.S.C.1997)).

Mr. Nix illustrates the problem for Fluor. He worked in Fluor's compliance department, where he investigated the inventory adjustment problem that Fluor admits is not privileged. Mr. Nix later filed a qui tam case. Fluor seeks to muzzle Mr. Nix by conveniently claiming that some portion of the work he did was covered by the materials management investigation, not the inventory adjustment investigation.

Justin Jones is in the very same boat. Fluor intends to call him to tell Fluor's story, including its investigation and disclosure to the Government of the materials management problems in Afghanistan. Meanwhile, Fluor has stashed dozens of documents relating to Jones' investigation on its massive privilege log.

Another upcoming witness, Ernest Ridley, raises the same concerns. Ridley was the leader of the team that investigated and quantified the unreported lost materials. Simultaneously, Fluor is sequestering documents bearing Ridley's name on the materials management investigation privilege log. Meanwhile, Ridley is the person whose work led to the $31.3 million and $1.4 million conclusions -- for "both" investigations.

Whatever may have been true during discovery, Fluor can no longer maintain this strategy. *IntegraMed Am., Inc. v. Patton,* 298 F.R.D. 326, 330 (D.S.C. 2014) ("[P]rivilege cannot at once be

used as a shield and a sword . . . ." (*quoting HSH Nordbank AG N.Y. Branch v. Swerdlow,* 259 F.R.D. 64, 74 (S.D.N.Y.2009)). Any previous privilege assertion -- even assuming it was legitimate at the time -- has now been waived. *See City of Myrtle Beach v. United Nat'l Ins. Co.,* C/A No. 4:08-1183-TLW-SVH, 2010 WL 3420044, at *5 (D.S.C. Aug. 27, 2010) ("[I]f a defendant voluntarily injects an issue in the case, whether legal or factual, the insurer voluntarily waives, explicitly or impliedly, the attorney-client privilege."); *United States ex rel. Lutz v. Lab'y Corp. of Am. Holdings,* No. CV 9:14-3699-RMG, 2020 WL 13076121, at *2 (D.S.C. Dec. 28, 2020) (a party waives privilege when "the asserting party put the protected information at issue by making it relevant to the case" through an "affirmative act"); *Graham v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* No. 0:16-CV-01153-MBS, 2017 WL 116798, at *4 (D.S.C. Jan. 12, 2017) ("The court finds that Defendant implicitly waived attorney-client privilege by asserting the affirmative defense.").

All if this has practical effects for the remainder of trial, and Fluor should have to decide which way it is playing things. Fluor cannot, for example, be allowed to rely on Justin Jones' testimony about the investigation he undertook leading up to the disclosures upon which Fluor's defense relies while at the same time withholding dozens of the relevant communications (all of the "bad ones") about the investigation on its privilege log. Likewise, Ridley cannot testify for Fluor about his investigation when Fluor is maintaining investigatory documents bearing his name on the undisclosed log – and if Relators elicit the same, Fluor's acquiescence waives any objection. Relator Mackey, too, is going to testify about the whistleblowing interview he gave to Jones under the "MMI" banner, the summary document of which Fluor turned over in discovery.

That last fact is especially illuminating. Mackey blew the whistle. Fluor wants to tell this

jury that it listened to Mackey, investigated, and disclosed. The inconvenient fact for Fluor is that Jones received that information wearing his "MMI hat," and the results of the interview are on interview summaries bearing the name MMI, a document that Fluor turned over during discovery. All of this illustrates further the farce and pretext of trying to pretend there really are two different things going on. The waiver is unavoidable.

When Relators' counsel flagged the issue for the Court this week (February 10), Fluor argued that Relators should have raised these concerns in 2022 and 2023 when the parties briefed and argued Fluor's motion to compel. That argument totally misses the point. At trial, Fluor is only now arguing that its property and material systems worked just fine as shown by the results of the 2013 investigation. That affirmative use of the 2013 inventory adjustment investigation was not before this court in 2022 and 2023 when the Court was considering Fluor's motion to compel return of documents it labelled part of the "materials management investigation." In fact, if any party has been harmed by delay on this issue, it is Relators. If Fluor knew in 2022 and 2023 that it intended to affirmatively use the 2013 IAA that was so inexorably intertwined with the 2013 MMI, Fluor should have informed this Court and the Relators instead of claiming broad privilege.

When Relators previewed the issue earlier this week, Fluor also suggested to the Court that it was Relators who were putting this all at issue, not Fluor. This is both irrelevant and wrong. It is wrong because, as the Court has already heard, Fluor has asked this jury to accept that it investigated and disclosed the problem, which is a waiver of the privilege. And it is irrelevant because it would not matter if the issue had been truly driven by Relators. Absent objections, all of the testimony about Fluor's investigation would still constitutes a waiver, even if Relators were the ones that elicited it. *United States v. Sanders,* 979 F.2d 87, 92 (7th Cir. 1992) (privilege can be

7

waived in court when a party fails to object); 8 Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.) ("Failure to assert the privilege objection correctly can mean that the privilege is waived.").

Nor could Fluor legitimately object at this point when Relators elicited it, which is why they did not even try. That ship sailed long ago. Jones gave 1,000+ pages of individual and FRCP 30(b)(6) deposition testimony without once asserting privilege. Nor could he. His investigation is too wrapped up in his story. Same for Ridley, for whom Fluor also asserted no privileges when he described his investigation. Even Methot, the witness who Fluor is now desperately trying to shield given how poorly he testified, did not assert the any privileges during his entire deposition. *See Goenechea v. Davidoff,* No. CCB-15-3384, 2016 WL 560689, at *3 (D. Md. Feb. 11, 2016) (a party can "choose to either waive the privilege or object at the deposition" citing *In re: Grand Jury Proceedings # 5,* 401 F.3d 247, 250 (4th Cir. 2005)).

The presentation of this issue is evolving as this trial develops. Given what has happened at this jury trial over the past two weeks, Fluor no longer has legitimate grounds to continue to shield communications relating to its materials management investigation from Relators. The privilege should be deemed waived, with Fluor ordered to produce those documents to Relators forthwith. Relators also anticipate the possibility that they will ask this Court to allow Relators to ask witnesses about the 2013 materials management investigation over which Fluor claims privilege.

Based on the foregoing, Relators seek the following relief:

A.      The Court should deem any privilege asserted over Fluor's materials management investigation to have been waived by what has transpired at this jury trial, and order Fluor to produce all of the documents being withheld on the privilege log. Alternatively, and short of that:

B.      In order for the Court to better understand the issue and have more context, Relators

8

respectfully submit that this Court should consider at least some of the documents over which Fluor

claims privilege. Relators have no way of knowing which of the hundreds of documents Fluor has

withheld are no longer privileged based on what has happened at trial, but Relators have done their

best to surmise from the information on the privilege log about where it would be helpful to start.

Relators therefore move the Court to review *in camera* the limited set of documents identified on

Exhibit C. That would allow the Court to be in a better position to evaluate Relators' arguments as

the trial progresses, including any attempts by Fluor to simultaneously elicit testimony about

investigatory steps undertaken by its witnesses while also trying to maintain a privilege.

Respectfully submitted,

/s/ Andrew Hand
Richard Harpootlian

Richard Harpootlian (Fed. ID No. 1730)
Andrew Hand (Fed. ID No. 12176)
RICHARD A. HARPOOTLIAN P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810
rah@harpootlianlaw.com

Jonathan Loevy
Michael Kanovitz
Daniel Twetten
Anand Swaminathan
Frank Newell
Anna Dover
Gwen Parker
Heather Sticht
Dominique Gilbert
Alexandra Wolfson
Aadi Tolappa
**LOEVY & LOEVY**
311 N. Aberdeen St., Third Floor

Chicago, IL 60607
Telephone: (312) 243-5900
Facsimile: (312) 243-5902
anand@loevy.com
*Attorneys for Relators*
*Charles R. Shepherd*
*and Danny V. Rude*

Frank L. Eppes (Fed. ID No. 1003)
EPPES & PLUMBLEE, PA
PO Box 10066
Greenville, SC 29603
Telephone: (864) 235-2600
Facsimile: (864) 235-4600
feppes@eppesandplumblee.com

*Attorney for Relator Robert Scott*
*Dillard*

Judah N. VanSyckel
SALUDA LAW, LLC
137 E. Butler Street
Lexington, SC 29072
Telephone: (803) 939-6927
Facsimile: (803) 902-8004
judah@saludalaw.com

*Attorney for Relator Rickey Mackey*

10