IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CHARLES R. SHEPHERD; DANNY V. RUDE; ROBERT SCOTT DILLARD; and RICKEY MACKEY, <br><br> Plaintiffs, <br><br> v. <br><br> FLUOR CORPORATION; FLUOR INTERCONTINENTAL, INC., <br><br> Defendants. | Civil Action No. 6:13-cv-02428-JD <br> Hon. Joseph Dawson, III |

## FLUOR'S OPPOSITION TO RELATORS' MOTION
## FOR A FINDING OF PRIVILEGE WAIVER

Halfway through trial is no time to resolve a discovery dispute that could and should have been raised years ago. Relators have known since even before the case was unsealed that Fluor conducted an internal investigation under the supervision and at the direction of counsel. They had every opportunity to challenge Fluor's privilege assertion over that investigation, and they did not do so. Relators have likewise known for years that part of Fluor's defense is that, following a separate, non-privileged review of unreported inventory adjustments, Fluor reported its findings to the prime government property administrator ("GPA"), Maria McNamara. If Relators truly believed either that the inventory adjustment review was inextricably intertwined with the privileged investigation or that Fluor somehow put the privileged investigation at issue, Relators could have asked the Court to adjudicate those issues. They did no such thing. Their current motion to compel therefore comes years too late and should be denied for that reason alone. Were the Court to entertain Relators' motion on the merits, it fails as a matter of black letter privilege law. Fluor respectfully requests that the Court deny Relators' motion in its entirety.

## **BACKGROUND**

As discussed in Fluor's Opposition to Relators' Motion in Limine No. 6, Relators attempt to conflate two distinct internal reviews. The first was a review of unreported inventory adjustments which was underway by February 2013 by Fluor materials management leadership and principally conducted by a team of three individuals: Ernest Ridley, David Whelan, and Reed Wilson. The results of this inventory adjustment review were reported to Ms. McNamara, which resulted in her issuing a corrective action request ("CAR") advising Fluor not to submitted lost, theft, damaged, and destruction ("LTDD") reports for inventory adjustments. Fluor has never asserted privilege over this investigation, and there has been extensive testimony about it during trial.

The second review was initiated by Fluor's Legal Department in March 2013 after Fluor received a Civil Investigative Demand ("CID") from the Department of Justice ("DOJ"). This investigation was conducted under the supervision and at the direction of Fluor counsel. It included a review of a wide range of issues related to Fluor's materials management practices in Afghanistan and is often referred to as the Materials Management Investigation or "MMI." On June 9, 2014, Fluor made a disclosure pursuant to Federal Acquisition Regulation ("FAR") 3.1003 to the Department of Defense Office of Inspector General ("DOD-IG"). Fluor reported that it "identified some instances when individuals reported 10% cyclic inventories as having been done when the inventories were not done or were not done properly. Annual inventory reports for FY 2011 and FY 2012 provided to the Government Property Administrator (GPA) relied in part on these misreported inventories." Ex. 1, 2014 DoD IG Disclosure at 2.[1]

---

[1] Fluor also did not provide the DoD IG with any privileged information in its disclosure, just the underlying facts. Ex. 2, Methot Dep. 231:15–22.

As the Court knows, Fluor has always asserted privilege over the MMI and has sought to vigorously protect that privilege throughout this litigation. As the Court will recall, there was extensive briefing and argument regarding Fluor's belief that Jeffrey Nix and David Payne stole privileged documents from Fluor's MMI and used that privileged information to draft their respective *qui tam* complaints. As part of that briefing, Fluor provided detailed information, including sworn declarations from two in-house Fluor attorneys, demonstrating that the MMI was conducted under privilege. *See, e.g.*, Dkt. 296-3 (Declaration of Justin Jones); Dkt. 296-4 (Declaration of Don Yenovkian); Dkt. 296-9 (Declaration of James A. Hughes).

## DISCUSSION

### I.    Relators' Motion to Compel Is Untimely

Local Rule 37.05(A) provides that a party must move to compel "within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed or, where no response has been received, within twenty-one (21) days after the response was due." D.S.C. Local Rule 37.01(A).[2] This Court has strictly enforced this requirement, denying Fluor's motion to compel False Claims Act ("FCA") disclosure statements and a privilege log on the basis that it was untimely. Dkt. 483. Other courts have done the same. *See Kelly v. Equifax, Inc.*, No. 8:12–cv–03095–MGL, 2013 WL 5954799, at *3 (D.S.C. Nov. 7, 2013) (twenty-four days untimely); *cf. Spencer Med. Assocs. v. Comm'r*, 155 F.3d 268, 273 (4th Cir.1998) ("At the outset we note that the mere untimeliness of SMA's motion supports the court's denial.").

---

[2] There is an exception to this deadline where "counsel are actively engaged in attempts to resolve the discovery dispute, they may agree to extend the time to comply with the discovery request so long as the extension does not place the due date beyond thirty (30) days before the deadline for completion of discovery as set by the scheduling order." *Id.* This exception is not applicable here.

Here, Relators have known that Fluor asserted privilege over communications and work product generated during the MMI since before this case was even unsealed.  Contemporaneous with the filing of a motion to dismiss, Fluor filed a motion for limited, expedited discovery regarding the misappropriation of Fluor's privileged information.  Fluor consistently asserted privilege over the MMI during discovery.  Dkt. 127-1; Dkt. 274 at 1, 4-6; *see generally* Dkt. 688-1; *see infra* at 8.  Relators never challenged that privilege, and in fact, the team of Relators' attorneys who led discovery were careful to respect it during depositions.  *See* Ex. 3, Jones Dep. 217:22–25 (Relators' counsel stating "I'm going to try to ask some questions around that without asking you to reveal privileged information."); *id.* at 224:16–17 ("Let me try to approach it a different way and see if I can do so without invading privilege.").  Relators' attempt to invade Fluor's privilege mid-way through trial is untimely and should be denied on that basis alone.

Relators contend that they could not have brought this motion earlier because Fluor is "only now arguing that its property and material system worked just fine as shown by the results of the 2013 investigation."  Dkt. 688 at 7.  With all due respect, that argument is disingenuous at best. As an initial matter, Fluor's defense is not and has never been that its materials management was working "just fine"; as the Court has seen from the evidence presented at trial, Fluor experienced significant challenges with materials management.  Fluor has been and will continue presenting evidence, however, that it continually sought to make process improvements and was transparent with the government throughout this process.  Fluor's reporting to Ms. McNamara regarding the results of its inventory adjustment review are a key piece of that defense; Fluor's MMI is not.

## II.    Relators' Arguments Fail on the Merits

### A.  The Inventory Adjustment Review Is Separate From the MMI

As an initial matter, Relators are wrong to conflate the non-privileged inventory adjustment review and the privileged MMI.[3]  As noted above, these investigations were initiated at different times for different purposes and led by different individuals.  The inventory adjustment review was led by Messrs. Montalvo, Ridley, and Rash, without involvement from Fluor attorneys.  The MMI, by contrast, was a response to the CID Fluor received in March 2013 and was conducted under the supervision of the Fluor Law Department.  Of course, because both reviews related to materials management in Afghanistan, there is some overlap in the individuals from whom information was gathered.  For example, Mr. Montalvo, as the head of Fluor's materials management group, was naturally consulted on the MMI.[4]  But that does not somehow collapse separate investigations into one.  *See In re Target Corp. Customer Data Breach Sec. Breach Litig.*, No. 14-2522, 2015 WL 6777384, at *2 (D. Minn. Oct. 23, 2015) (privilege maintained over counsel-led investigation but not over a company's ordinary course investigation); *Maldondo v. Solara Med. Supplies*, No. 20-12198-LTS, 2021 WL 8323636, at *4–5 (D. Mass. June 2, 2021) (same).

---

[3] As with their briefing on the witness agreement issue, Relators make completely unfounded assertions like:  "If the email, fact, or other document is uncomfortable for Fluor for any reason, it was deemed to be part of the MMI investigation, logged for privileged, and shielded from disclosure."  Dkt. 688 at 3.  Fluor will not dignify these accusations with a response.  Fluor will simply state that it carefully reviewed thousands of documents for privilege during discovery and only logged those that were protected by attorney-client privilege and the attorney work product doctrine.  Fluor's privilege assertions have nothing to do with whether the document is "good" or "bad" for Fluor.

[4] Some individuals were involved in only one investigation.  Mr. Ridley, for example, testified that he was not involved in the MMI, and his subsequent interview with DOJ did not discuss any MMI findings because he was not privy to that information.  *See* Ex. 4, Ridley Dep. 76:14–77:2, 186:25–187:14; *see also id.* at 138:22–139:1 (Mr. Ridley not even aware of Fluor's 2014 DoD IG disclosure).

Nor does the fact that Fluor included the results of the inventory adjustment review in a presentation provided to DOJ mean that two investigations are the same. That presentation, titled "Overview of Fluor Material Management: LOGCAP IV Contract for Afghanistan Support," provided a summary of the issues Fluor had faced managing property and materials on LOGCAP IV. It discussed the contract requirements; the challenges encountered during transition; how Maximo works; Fluor's PMSA history and corrective action plan; Fluor's inventory adjustment review and reporting to Ms. McNamara, including that chart listing "actual gains" and "actual losses";[5] different types of inventory adjustments; LTDDs; and a 100% inventory effort. Fluor objected to the presentation slide deck (PX 1626) not because it was part of the MMI, but because it referenced DOJ (thus presenting the door-opening problem the parties have discussed with the Court throughout trial) and was subject to Federal Rule of Evidence 408. Ex. 5, Trial Tr. 1258:2– 1260:11. Fluor has never taken the position that all of the information in that slide deck was generated during the MMI. In other words, the fact that Fluor included information from a non-privileged review in a presentation to DOJ says nothing about whether the source of that information was a privileged investigation.

### B. Fluor Has Not Waived Its Privilege over the MMI

Because the inventory adjustment review was not part of the MMI, the only way in which Fluor could waive attorney-client privilege or work product protection over the latter would be if it put the investigation itself at issue. That has not happened and so there has been no waiver.

"[T]he attorney-client privilege enjoys a special position as 'the oldest of the privileges for confidential communications known to the common law.'" *In re Allen*, 106 F.3d 582, 600 (4th

---

[5] As witnesses have testified, "actual gain" and "actual loss" did not mean *physical* loss or gain; it simply meant that Fluor could not explain the negative or positive inventory adjustment.

Cir. 1997) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). It applies not only to communications to or from an attorney but also to an attorney's non-lawyer agents, particularly if engaged in an internal investigation. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014) ("*KBR I*") (Kavanaugh, J.). If the privilege applies, it "affords all communications between attorney and client absolute and completion protection from disclosure." *Allen*, 106 F.3d at 600. It may mean that "potentially critical evidence [is] withheld from the factfinder . . . but our legal system tolerates those costs because the privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *KBR I*, 756 F.3d at 764 (quoting *Upjohn*, 449 U.S. at 389).

"[T]he work product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Id.* at 238. The doctrine also recognizes that "attorneys must rely on the assistance of investigators and other agents" and thus also "protect[s] material prepared by agents for the attorney." *Id.*

For these reasons, privilege or work product waiver should not be found lightly. At-issue waiver occurs where there is "[s]elective disclosure for tactical purposes." *United States v. Jones*, 696 F.3d 1069, 1072 (4th Cir. 1982).[6] It is "a narrowly limited exception to the attorney/client privilege." *Brown Univ. v. Thorpe*, 2012 WL 12894480, at *3 (E.D. Va. Mar. 30, 2012). It

---

[6] Relators do not appear to seriously argue that Fluor waived privilege through its 2014 DOD-IG disclosure. In any event, the Fourth Circuit squarely rejected that argument in granting Fluor's mandamus petition in another LOGCAP IV case. *In re Fluor Intercontinental, Inc.*, 803 F. App'x 697, 701 (4th Cir. 2020).

requires "an affirmative act" by the party holding the privilege to put privileged material it at issue in the case. *See U.S. ex rel. Lutz v. Lab. Corp. of Am. Holdings*, No. 2020 WL 13076121, at *4 (D.S.C. Dec. 28, 2020). A party puts privileged information at issue only "where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication." *SD3, LLC v. Black & Decker (U.S.), Inc.*, 2016 WL 4722001, at *2 (E.D. Va. July 29, 2016).[7] This Court therefore correctly held that Relators would be entitled to probe the privileged MMI only if Fluor "elicit[s] testimony or argue[s] that the contents or conclusions of the privileged MMI substantively confirm, validate, or prove the accuracy of the [inventory adjustment review] or otherwise establish that the issues were minor or immaterial." Dkt. 649 at 14. Fluor has not done so.

Relators' remaining waiver arguments are equally without merit. First, Relators argue that because Fluor produced a copy of an interview that Relator Rickey Mackey gave during the MMI, this is "illuminating" and shows "[t]he waiver is unavoidable." Dkt. 688 at 6–7. What Relators conveniently omit is that Fluor produced Mr. Mackey's interview notes pursuant to an express non-waiver agreement, under which Relators agreed that Fluor's production of statements by the four relators that would otherwise be privileged would not constitute a broader privilege waiver. Ex. 6, Non-Waiver Agreement at 2.

Second, Relators claim that Fluor waived privilege by not asserting privilege during depositions. That is simply not true. *See, e.g.*, Ex. 3, Jones Dep. 69:4–71:16, 151:23–152:11; Ex. 2, Methot Dep. 151:10–152:3, 217:16–218:6. Frequent privilege instructions were not necessary

---

[7] Two of Relators' cited cases reference South Carolina state law privilege, which only applies in diversity cases. *See Graham v. Nat'l Union Fire Ins., Co. of Pitt.*, No. No. 0:16-CV-01153-MBS, 2017 WL 116798, at *4 (D.S.C. Jan. 12, 2017) (cited at Dkt. 688 at 6); *City of Myrtle Beach v. United Nat. Ins. Co.*, No. 4:08–1183–TLW–SVH, 2010 WL 3420044, at *1, 5–6 (D.S.C. Aug. 27, 2010) (cited at Dkt. 688 at 6).

because Relators' counsel largely recognized and respected the boundaries related to the MMI. That unfortunately no longer appears to be the case.

Finally, Relators' requested relief is not necessary and would not assist the Court in reaching a ruling. Relators ask the Court to review ten isolated documents *in camera* to adjudicate whether an entire investigation should be considered privileged. If the Court were inclined to consider that relief, Fluor expects that substantial additional briefing and documentation would be required to provide the Court with the full context necessary to evaluate the documents.

## **CONCLUSION**

For the reasons set forth above, Fluor respectfully requests that the Court deny Relators' Motion to Compel a Finding of Privilege Waiver, Dkt. 688. If the Court grants Relators' motion and finds privilege waiver, Fluor respectfully requests that the Court stay the trial to give Fluor time to file an emergency mandamus petition with the Fourth Circuit.

*[signature page follows]*

Respectfully submitted,

/s/ Mark C. Moore
Mark C. Moore (Fed. ID No. 4956)
Michael A. Parente (Fed. ID No. 13358)
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 540-2146
Facsimile: (803) 727-1458
MMoore@maynardnexsen.com

Konstantine P. Diamaduros (Fed. ID No. 12368)
MAYNARD NEXSEN PC
104 South Main Street, Suite 900 (29601)
Post Office Drawer 10648
Greenville, SC 29603-0648
Telephone: (864) 370-2211
Facsimile: (864) 282-1177
KDiamaduros@maynardnexsen.com

Craig D. Margolis (admitted *pro hac vice*)
Tirzah S. Lollar (admitted *pro hac vice*)
Christian D. Sheehan (admitted *pro hac vice*)
Elizabeth A. Carney (*admitted pro hac vice*)
Katelyn M. Deibler (*admitted pro hac vice*)
Elliot S. Rosenwald (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, Northwest Washington,
DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
craig.margolis@arnoldporter.com

Rachel K. Higgins (admitted *pro hac vice*)
Sahrula Kubie (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

February 14, 2026                    *Counsel for Defendants Fluor Corporation and*
Greenville, South Carolina           *Fluor Intercontinental, Inc.*