IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| United States of America, *ex rel.* Charles R. Shepherd; Danny V. Rude; Robert Scott Dillard; Rickey Mackey,<br><br>    Plaintiff-Relators,<br><br>    v.<br><br>Fluor Corporation, Inc.; Fluor Intercontinental, Inc.,<br><br>    Defendants. | C/A No. 6:13-cv-02428-JD |

**MOTION TO QUASH TRIAL SUBPOENAS**

The United States of America, by and through the Department of the Army, hereby moves to quash the subpoenas served by Defendant Fluor Corporation, Inc. ("Fluor") on January 26, 2026, commanding Lieutenant General (Retired) Thomas S. James, Army contracting officer Gordon Jones, and an Army Records Custodian (together, "Trial Subpoenas") to appear and testify at trial on or after January 27, 2026, subject to call. The Court should quash the Trial Subpoenas for two reasons. First, the Trial Subpoenas should be quashed on sovereign immunity grounds because Fluor has not filed a separate, independent action under the Administrative Procedure Act ("APA"). Second, if the Court reviews the Army's decision not to comply with the Trial Subpoenas under the APA, its review would be deferential, and there would be no basis for second-guessing the Army's determination. The Trial Subpoenas were procedurally deficient under Army regulations and would impose an undue burden, including by requiring review of information that is designated as classified, and other sensitive information potentially implicating governmental privileges. For these reasons, the Court should quash the Trial Subpoenas.

1

I.    BACKGROUND

On January 26, 2026, a day before trial, Fluor submitted to the Army a request purporting to "supplement" a prior request made for another case on August 7, 2020, for "an unredacted, complete version" of the U.S. Army Regulation 15-6 Report ("Report") regarding the November 2016 suicide-bomber attack at Bagram Airfield in Afghanistan. Fluor submitted its August 2020 request in connection with *Hencely v. Fluor Corporation, Inc.*, No. 6:19-cv-00489 (D.S.C.), a private tort action which Fluor acknowledges has no connection to this litigation. *See* Attach. C-1, Fluor Jan. 26, 2026 Ltr. at 2. Fluor is currently in possession of a redacted version of the Report, which is public. *See* Dkt. 622-1. Fluor submitted both the August 2020 and January 2026 requests pursuant to DoD Directive 5405.2, 32 C.F.R. 516 subpart G, and Army Regulation ("A.R.") 27-40 chapter 7 ("*Touhy* requests"). The Army responded to Fluor's August 7, 2020 *Touhy* request on September 14, 2020, declining to release the unredacted, complete version of the Report because a significant portion of the Report remained classified. Attach. B.

In addition to renewing its request for the unredacted Report, Fluor's January 26, 2026 *Touhy* request was accompanied by three Trial Subpoenas seeking the testimony of (1) the Investigating Officer who signed the Report, Lt. Gen. (Ret.) Thomas S. James, Jr., (2) the Army Contracting Officer Gordon Jones, and (3) the Army records custodian. Attach. C-1–C-4, Fluor Jan. 26, 2026 Ltr. The next day, January 27, 2026, the Army denied Fluor's *Touhy* request in a letter outlining the following procedural and substantive deficiencies:

1. <u>Fluor's request was untimely</u>: A.R. 27-40 ¶ 7-2(d) and 32 C.F.R. § 516.41 require that requests for official information and testimony be submitted in writing at least 14 days before the desired date of production. Here, Fluor submitted its request for documents and testimony less than 24 hours before trial was scheduled to begin. Attach. D, Army Jan. 27, 2026 Ltr. at 1.

2. <u>Fluor's request failed to meet the specificity requirements of 32 C.F.R. § 97.9</u>: this regulation mandates that a request describe with specificity the nature of the official information sought and its relevance. Attach. D, Army Jan. 27, 2026 Ltr. at 2.

3. <u>Fluor's request was overbroad, unduly burdensome, and failed to address the factors enumerated in 32 C.F.R. § 97.8</u>: this regulation enumerates factors to be considered in releasing official information, including whether "a litigation request or demand" is "overbroad, unduly burdensome, or otherwise inappropriate under applicable law or court rules," as well as whether the disclosure would reveal classified or privileged information. Attach. D, Army Jan. 27, 2026 Ltr. at 2.

## II.   ARGUMENT

### A. PRINCIPLES OF SOVEREIGN IMMUNITY REQUIRE QUASHING THE TRIAL SUBPOENAS BECAUSE FLUOR HAS NOT FILED A SEPARATE APA ACTION

The United States Supreme Court has recognized the authority of federal agencies to restrict testimony of their agents. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). "Federal agencies," therefore, "may promulgate so-called *Touhy* regulations [under 5 U.S.C. § 301] to govern the conditions and procedures by which their employees may testify about work-related issues at trial." *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007); *see, e.g.*, A.R. 27-40 (setting forth Army's internal guidance for the release of official information). Under "an unbroken line of authority," a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations. *See Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989). The policy behind such prohibitions is "to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." *Id.* at 70.

3

"[I]t is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999). "[I]n the context of an agency's response to a third-party subpoena, 'the proper method for judicial review of the agency's final decision pursuant to its regulations is through the [APA].'" *Id.* (quoting *United States v. Williams*, 170 F.3d 431, 434 (4th Cir. 1999)). "The APA waives sovereign immunity and permits a federal court to order a non-party agency to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *Id.* But here, following the Army's denial of Fluor's *Touhy* request, Fluor has not sought APA review of the Army's decision. As a result, sovereign immunity—having not been waived—bars any review of the Army's denial.

If Fluor wishes to seek review of the Army's decision, the proper remedy is to file a separate APA action. *See Smith v. Cromer*, 159 F.3d 875, 881 (4th Cir. 1998); *Boron Oil*, 873 F.2d at 70; *cf. COMSAT*, 190 F.3d at 273 (Plaintiff filed a standalone action against the agency to obtain APA review of *Touhy* denial relating to arbitrator-issued subpoenas.). In *Cromer*, a state court ordered federal officials to comply with subpoenas in a state proceeding. 159 F.3d at 877. After the matter was removed to federal court, the district court quashed the subpoenas, and the Fourth Circuit affirmed. *Id.* at 877–78. "Based upon the *Touhy* doctrine and principles of sovereign immunity," neither the state court nor the federal district court had authority to enforce the subpoenas, and the proper remedy to challenge the agency's decision, "if any" was to "be found in the [APA]." *Id.* at 881; *see Maryland v. Smith*, 766 F. Supp. 3d at 512 (quashing state court subpoenas to FBI personnel based on sovereign immunity and noting the proper avenue for seeking judicial review was "a separate APA action").

The same result should follow here. To be sure, the Fourth Circuit has not squarely addressed whether a separate APA action is required in this posture, where the subpoenas originated in federal court. But regardless of whether an action originated in state or federal court, subpoena proceedings against a non-party agency "fall within the protection of sovereign immunity." *See COMSAT*, 190 F.3d at 277. Because sovereign immunity has not been waived in this case, the Trial Subpoenas should be quashed. *See Cromer*, 159 F.3d at 881; *Boron Oil*, 873 F.2d at 70.

And to be clear, Fluor cannot argue that the exigent circumstances of a trial currently underway somehow change the analysis. Because "[s]overeign immunity is jurisdictional in nature," it cannot be overcome by exigency or other discretionary considerations. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). In any event, to the extent Fluor invokes exigent circumstances, it is notable that Fluor has had over five years to seek review of the agency's denial of its August 2020 *Touhy* Request. *See* Attach. A, Aug. 7, 2020 Fluor Ltr.; Attach. B, Sept. 14, 2020 Army Ltr. And as to its January 2026 request, Fluor has been on notice for years through various disclosures that Relators may rely on the suicide bombing at Bagram Airfield to prove their claims. Anticipating such, Fluor filed a motion in limine to exclude all evidence related to the bombing. During the years' long discovery window preceding this trial, Fluor had ample opportunity to timely seek the Report and testimony via *Touhy* requests, yet failed to do so until the eve of trial.

In short, because Fluor has not sought APA review, there is no waiver of sovereign immunity and thus no basis for "the [c]ourt to order a non-party agency to comply" with the Trial Subpoenas. *See COMSAT*, 190 F.3d at 277. The Court should therefore quash the Trial Subpoenas on sovereign immunity grounds.

## B. THE AGENCY REASONABLY DENIED THE *TOUHY* REQUESTS

To the extent the Court is inclined to undertake a limited review of the Army's decision not to comply with the Trial Subpoenas, its review would be under § 706 of the APA to determine whether the agency decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See COMSAT*, 190 F.3d at 274 (citing 5 U.S.C. § 706). This review is narrow and deferential. *See id.* at 278; *see also Boron Oil*, 873 F.2d at 72 (EPA's denial of *Touhy* requests that failed to comply with internal EPA regulations was not arbitrary and capricious, as EPA's "strict adherence to its internal regulations [was] essential . . . in preventing its expert employees from being targeted as potential witnesses in private actions"); *Gulluni v. Levy*, 85 F.4th 76 (1st Cir. 2023) (Agency's denial of a *Touhy* request based on law enforcement privilege was not arbitrary and capricious).

In *COMSAT*, for example, the National Science Foundation ("NSF") refused to comply with subpoenas for testimony and documents issued by an arbitrator at the request of a private plaintiff. 190 F.3d 269. The NSF sent letters explaining its analysis under its *Touhy* regulations. *Id.* at 273. The plaintiff then commenced an action in federal district court, and sought to compel compliance with the subpoenas. *Id.* The magistrate judge, applying Federal Rule of Civil Procedure 45, held that sovereign immunity did not apply and entered an order directing the NSF to comply with the subpoenas. *Id.* at 274. On appeal, the Fourth Circuit reversed, holding that "review of NSF's refusal to comply with the subpoenas is governed by the [APA]," and that the agency's decision was not arbitrary and capricious. *Id.* at 274, 278. In reviewing the NSF's reasons for not complying, the court afforded deference to the agency's determinations, including that compliance "would measurably strain agency resources and divert NSF personnel from their official duties." *Id.* at 278. "When an agency is not a party to an action," the Fourth Circuit reasoned, "its choice of whether or not to comply with a third-party subpoena is essentially a policy

6

decision about the best use of the agency's resources." *Id.* The court thus deferred to the NSF's reasonable determination to decline to comply with the subpoenas. *Id.*

Here, the Army reasonably declined to comply with the Trial Subpoenas because they were both procedurally and substantively deficient. First, as to procedural deficiency, the Trial Subpoenas were served on January 26, 2026, and stated that the witnesses were "subject to call" the following day, January 27, 2026. By allowing only a single day's notice, the Trial Subpoenas run afoul of relevant regulations, which require requests to be submitted in writing at least 14 days in advance. *See* A.R. 27-40 ¶ 7-2(d); 32 C.F.R. § 516.41. And as the Army's denial letter explained, Fluor's 2020 request—related to a separate litigation—cannot cure this deficiency. Each request for official information or testimony "must describe, in writing and with specificity, . . . its relevance to the litigation . . . ." 32 C.F.R. § 97.9. Fluor's January 2026 requests for information and testimony for use at trial are distinct from previous requests for information and testimony, which were for a different purpose in a different matter. Attach. C-1–C-4, Fluor Jan. 26, 2026 Ltr. at 3. The untimeliness of Fluor's requests, in contravention of applicable regulations, alone provides a sufficient basis for upholding the Army's determination. *See Boron Oil*, 873 F.2d at 72.

The Trial Subpoena issued to Lt. Gen. (Ret.) James was also procedurally deficient for an additional reason: it was not signed by either the Clerk of the Court or an attorney as required by Federal Rule of Civil Procedure 45(a)(3). *See* Attach. C-2. It cannot be arbitrary and capricious for the Army to refuse compliance with an improperly issued subpoena. *See, e.g.*, *Molina v. City of Visalia*, 2015 WL 5193579, at *2 (E.D. Cal. Sept. 4, 2015). The Court should thus quash the subpoena issued to Lt. Gen. (Ret.) James for the additional reason that it was unsigned.

Second, as to substantive deficiency, the Army's denial letter explained that Fluor's request did not adequately demonstrate the specific nature of the information sought and its relevance, as

7

required by 32 C.F.R. § 97.9. Fluor stated only that the purpose of each Trial Subpoena is to "respond to any evidence Relators are allowed to introduce about the *Bagram* bombing at trial." Attach. C-1, Fluor Jan. 26, 2026 Ltr. at 3. Fluor's letter does not further explain why such testimony is requested. And despite offering no more than a contingent justification for its request, which depends on what "may or may not occur during trial," Fluor seeks the release of sensitive government information and testimony, thus imposing an undue burden on the Army. Attach. D, Army Jan. 27, 2026 Ltr. at 2 (citing 32 C.F.R. §§ 97.8, 97.9).

A declaration from Col. Darren W. Pohlmann, Senior Legal Advisor to the U.S. Army Central (ARCENT) Commander, explains in detail the burden posed by Fluor's request. *See* Attach. E, Darren W. Pohlmann, Feb. 9, 2026, Declaration (the "Pohlmann Decl."). More than half the documents in the Report, along with its exhibits and supporting documents, are currently classified as Secret or Confidential. Pohlmann Decl. ¶5. Importantly, "[t]hese documents contain information concerning military operations, contractor performance in a theater of combat, and internal U.S. Army deliberations." *Id.* Much of this information is outside ARCENT's classification authority, and the declassification process would entail enormous burden on a protracted timeline, with no guarantee that these efforts would ultimately result in declassification of the requested information. *Id.*

Further, much of the information Fluor requests may implicate governmental privileges, including state secrets, deliberative process, law enforcement, and attorney-client privilege. *Id.* ¶9. The Pohlmann Declaration explains that, without a proper review, the report and testimony Fluor requests could place a records custodian "in the precarious position of potentially violating federal law" in connection with those privileges. *Id.* ¶9. More broadly, properly responding to Fluor's request would be unduly burdensome, particularly where Fluor delayed its *Touhy* request until the

day before trial. The request would require ARCENT to devote substantial resources "to review, sort, and process thousands of pages of sensitive documents." *Id.* ¶7. "Such an effort," the Declaration explains, "would divert critical personnel from their primary national security missions." *Id.*

The factors supporting the Army's denial closely mirror those supporting the NSF's denial in *COMSAT*, which included potential "strain [on] agency resources" and the "diver[sion of agency] personnel from their official duties." 190 F.3d at 278. Indeed, the Army's reasons for denial here are even more compelling because Fluor's request seeks classified and potentially privileged materials, as well as testimony related to those materials, which would divert critical personnel from their national security missions. Given the speculative, contingent nature of Fluor's request, and the burden it would impose, the Army reasonably denied Fluor's *Touhy* request, and there is no basis for second-guessing that decision. *See id.* Therefore, if the Court reviews the Army's denial of Fluor's *Touhy* requests—without Fluor filing a separate APA action—it should uphold the Army's determination and quash the Trial Subpoenas.

### III.    CONCLUSION

For the foregoing reasons, the United States, by and through the Army, requests that the Court quash the Trial Subpoenas.

Respectfully submitted,

BRYAN P. STIRLING
United States Attorney
District of South Carolina

By:	*s/Beth C. Warren*
BETH C. WARREN (#11360)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, S.C. 29201
Telephone: (803) 929-3037

JAMIE ANN YAVELBERG
MICHAL L. TINGLE
ART J. COULTER
JAMES P. NEALON
Attorneys, Civil Division
Commercial Litigation
Branch P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0237

*Attorney for the United States of America*

10