**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| United States of America, *ex rel.* Charles R. Shepherd; Danny V. Rude; Robert Scott Dillard; Rickey Mackey, | C/A No. 6:13-cv-02428-JD |
| Plaintiff-Relators, | |
| v. | |
| Fluor Corporation, Inc.; Fluor Intercontinental, Inc., | |
| Defendants. | |

**DECLARATION OF COL DARREN W. POHLMANN**

I, COL Darren Pohlmann, hereby make this declaration pursuant to 28 U.S.C. § 1746. I declare as follows:

1. I am the Staff Judge Advocate for the United States Army Central (ARCENT) and Third Army, located at Patton Hall, Shaw Air Force Base, South Carolina. ARCENT is the Army Service Component Command for United States Central Command (CENTCOM) with oversight of all Army operations and personnel located in the CENTCOM area of responsibility. The statements herein are based upon my personal knowledge, my review of official records maintained by my office, and information provided to me by my staff in the course of my official duties.

2. I make this declaration in support of the United States Army's Motion to Quash the subpoenas served by Defendant Fluor Corporation, Inc. ("Fluor") in the above-captioned litigation, which seek the production of an Army Regulation (AR) 15-6 investigation report and the testimony of current and former Army personnel.

3. As the Staff Judge Advocate, I am the senior legal advisor to the ARCENT Commander who is a three-star/Lieutenant General. My responsibilities include advising on the release of official information pursuant to federal regulations, including 32 C.F.R. Part 97 and Part 516, commonly known as the Army's *Touhy* regulations.

4. **Personal Review and Scope of Records**. I have personally reviewed Fluor's demand for information dated January 26, 2026. The full and complete official report of the AR 15-6 investigation referenced in Fluor's demand, along with all exhibits and supporting documents (hereafter "the Investigation File"), is voluminous at 3,667 pages and within the possession and control of ARCENT.

5. **Classification and Declassification Burden**. Approximately 60% of the documents in the Investigation File—which comprises several thousand pages—are currently classified at the SECRET and CONFIDENTIAL levels. These documents contain information concerning military operations, contractor performance in a theater of combat, and internal U.S. Army deliberations. Of these documents, approximately 90% are classified according to provisions outside ARCENT's declassification authority.  Declassification of such information is a complex, line-by-line process that requires review by multiple Subject Matter Experts and Original Classification Authorities (OCAs). Within ARCENT alone, seven subject matter experts would be required to work declassification of the full report, and ARCENT has identified at least three other OCAs outside ARCENT but within the Department of Defense.  The timelines for such interagency reviews vary widely, from weeks to potentially years, depending on the equities involved. There is no guarantee that the information can be declassified for public release.

6. **Stakeholder Equities and Coordination**. As referenced above, while ARCENT is the proponent and custodian of the Investigation File, a significant portion of the documents originated with other three Army entities, five other Department of Defense components, and the Department of Homeland Security. ARCENT does not possess the unilateral authority to declassify information classified by another agency. In addition, a number of documents fall under NATO declassification authority. The NATO declassification process is wholly outside of the US government control. To respond to Fluor's request, ARCENT would be required to undertake a time-consuming formal coordination process, referring hundreds of documents to their respective originating agencies and organizations for separate classification and releasability reviews. ARCENT has no control over the timelines or outcomes of these external reviews.

7. **Undue Burden on Army Resources**. Properly responding to Fluor's request would require ARCENT to employ an indeterminate but substantial amount of time, resources, and personnel. This would involve a full-time effort by multiple attorneys, paralegals, and security managers to review, sort, and process thousands of pages of sensitive documents. Such an effort would divert critical personnel from their primary national security missions and is therefore unduly burdensome, particularly given the immediate timeline demanded by Fluor.

8. **Prior Release of Information**. The Army has already processed three Freedom of Information Act (FOIA) requests related to this same AR 15-6 investigation. In response to those requests, made through the proper legal channels, the Army has already released several hundred pages of non-exempt, unclassified, or properly redacted documents. This demonstrates that the Army is not withholding information to which the public is lawfully entitled but rather is following established statutory procedures for the release of government information.

9. **Governmental Privileges and Custodian's Risk**. The Investigation File contains information protected by multiple, well-established governmental privileges. Compelled production or testimony from a records custodian without a full review would place that custodian in the precarious position of potentially violating federal law. The privileges implicated include, but are not limited to:

a. The State Secrets Privilege, as disclosure of certain information could cause serious damage to national security;

b. The Deliberative Process Privilege, which protects pre-decisional analyses, recommendations, and deliberations integral to the Army's decision-making functions;

c. The Law Enforcement Privilege, which protects sensitive information related to investigations; and

d. The Attorney-Client Privilege and Work Product Doctrine, covering legal advice sought and provided during the investigation.

An unprepared custodian cannot be expected to make real-time privilege determinations on the witness stand and would be at risk of unlawfully disclosing privileged or classified information.

10. **Authority Regarding Former Personnel**. The subpoenas also seek testimony from former Army personnel. The Department of the Army has no legal authority to compel former service members or employees to appear and testify in private litigation. Even if these individuals were to volunteer, any testimony concerning official information they acquired during their Army service remains subject to the Army's *Touhy* regulations, and separate, express approval from the Department of the Army would be required before they could provide such testimony. ARCENT has not undertaken such a review due to Fluor's failure to comply with the governing regulations.

11. For all the foregoing reasons, requiring ARCENT to respond to the subpoenas on the eve of trial is unreasonable, oppressive, and unduly burdensome. It would require the Army to short-circuit mandatory review processes designed to protect national security and other critical government interests, in direct violation of federal law and regulations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 9th day of February 2026.

Darren W. Pohlmann
Colonel, U.S. Army
Staff Judge Advocate