IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* CHARLES R. SHEPHERD and DANNY V. RUDE; ROBERT SCOTT DILLARD; and RICKEY MACKEY, | ) ) ) ) ) | CASE NO.: 6:13-cv-02428-JD |
| Plaintiff-Relators, | ) ) | **MEMORANDUM ORDER & OPINION** |
| vs. | ) ) | |
| FLUOR CORPORATION INC., FLUOR INTERCONTINENTAL, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

This action arises under the False Claims Act ("FCA") and is presently before the Court during a jury trial. Relators have moved for relief concerning compensation agreements between Defendants Fluor Corporation and Fluor Intercontinental, Inc. (collectively, "Fluor"), and certain fact witnesses. Relators seek an order compelling Fluor to produce all agreements, transactions, invoices, and related communications concerning compensation provided to trial witnesses. (DE 676; DE 684; DE 690.) Relators further request leave to conduct a mid-trial deposition of a Fluor employee to explore the scope and implementation of those agreements. In addition, Relators request broad latitude for cross-examination and, as an ultimate remedy, entry of default judgment.

Fluor opposes the motion, contending that the agreements at issue are permissible under applicable law and ethical standards, no rule required their

disclosure during discovery, and the relief requested is unwarranted and disproportionate. (DE 678; *see also* DE 671; DE 693.)

Having considered the parties' written submissions, relevant agreements, arguments presented in hearings, and the record developed at trial, the Court concludes that the motion should be denied in part and granted in part, as set forth below.

## I.    BACKGROUND

This Memorandum Order and Opinion follows several hearings conducted during trial after the issue of witness compensation agreements arose in open court. The Court allowed both parties to present arguments, submit briefings, and supplement the record with relevant agreements and related materials.

The issue concerns certain fact witnesses—primarily former Fluor employees—who entered into written agreements with FDEE Consulting, Inc., an entity formed to engage former employees in matters related to their prior employment. (DE 672; DE 682.) Several of the agreements identify James Pike, a vice president at Fluor, as the authorized company representative. The agreements generally provide that the witness will be available, upon request, to meet with counsel, review documents, prepare for testimony, testify, or otherwise assist in litigation matters involving Fluor. (*Id*.)

These agreements specifically state that the witness is an independent contractor and not an agent or employee of Fluor. (*Id*.) They also provide for compensation at an hourly rate for time spent preparing for and providing testimony,

2

subject to specified caps, and reimbursement of reasonable travel expenses. (*Id*.) The agreements also include language stating that compensation is not contingent upon the substance of testimony or the outcome of the case, and that the witness agrees to testify truthfully. (*Id*.) In addition, the agreements contain confidentiality provisions applicable to non-public company information, with an express carve-out for reporting to governmental authorities. (*Id*.) The agreements produced to the Court range in date from 2023 through 2026.

The existence of these agreements first surfaced during the first week of trial when a witness disclosed that he was being compensated for time spent in connection with his testimony. Before that point, neither the Court nor Relators had been provided copies of the agreements. It is undisputed that Relators did not serve discovery requests specifically seeking compensation agreements or financial arrangements between Fluor and fact witnesses during the discovery phase of this litigation.

Defendants respond that the agreements are lawful and consistent with prevailing ethical guidance permitting reasonable compensation to fact witnesses for time and expenses. Fluor further asserts that no rule required disclosure of such agreements during discovery, the agreements do not condition payment on testimony content or case outcome, and Relators' requested remedies are disproportionate and would risk diverting the jury's attention from the merits of the case. (DE 678; *see also* DE 671; DE 693.)

After the issue arose at trial, the Court implemented interim procedures to ensure fairness to both sides and to prevent undue prejudice. The Court issued a proposed set of structured questions to govern the examination concerning the agreements. (DE 673.) Those guardrails were designed to permit appropriate impeachment regarding compensation while avoiding inflammatory characterizations or questioning that could confuse the jury or create unfair prejudice. The Court also directed the parties to exchange copies of relevant witness compensation agreements so that examination could proceed on an informed basis.

The matter is now fully briefed and ripe for resolution.

## II.     LEGAL STANDARD

The issues presented implicate three distinct legal frameworks for the Court's consideration:

(1) discovery obligations under the Federal Rules of Civil Procedure;

(2) the legality and ethical permissibility of compensating fact witnesses; and

(3) the Court's authority to regulate the presentation of evidence and examination of witnesses at trial.

Each is addressed in turn.

## A.     Discovery Principles and Timing

Rule 26(a)(1)(A)(i) requires parties to disclose the identity and contact information of individuals likely to have discoverable information that a party may use to support its claims or defenses. Rule 26(a)(2) further requires disclosure of expert witnesses and, in the case of retained experts, a written report that includes,

among other things, a statement of the compensation to be paid for the study and testimony. Fed. R. Civ. P. 26(a)(2)(B)(vi).

The Federal Rules do not expressly require automatic disclosure of compensation arrangements with non-expert fact witnesses. Absent a specific discovery request, such agreements are not categorically subject to mandatory disclosure under Rule 26(a). The rules distinguish between expert compensation, which must be disclosed, and fact witness testimony, which does not carry a parallel automatic disclosure requirement regarding payment arrangements.

Discovery in this case was governed by the Court's Scheduling Order, which required completion of fact discovery by February 28, 2025, and required that discovery disputes be raised in accordance with Local Civil Rule 37.01. Rule 37(c) authorizes sanctions where a party fails to provide information required by Rule 26(a) or (e), but the imposition of sanctions lies within the Court's discretion and turns on whether any nondisclosure was substantially justified or harmless.

The Federal Rules reflect a policy of broad pretrial discovery so that litigation does not proceed "in the dark." *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947). At the same time, discovery is limited to the scope of the requests propounded and to the deadlines and procedures established in a scheduling order. Parties are responsible for obtaining relevant information during the discovery period through appropriate interrogatories, document requests, and depositions.

Although evidence intended solely for impeachment is exempt from initial disclosure under Rule 26(a)(1)(A)(ii), such materials remain discoverable if properly

requested and not otherwise privileged. The Rules, therefore, provide mechanisms by which a party may obtain information bearing on witness bias, financial arrangements, or other credibility-related matters during the pretrial phase.

The agreements at issue here are not attorney work product within the meaning of *Hickman*; rather, the dispute concerns whether they were subject to mandatory disclosure under Rule 26 or otherwise required to be produced during the discovery period. 329 U.S. at 508–509.

## B.     Agreements to Compensate Fact Witnesses

Agreements to reimburse fact witnesses for reasonable time and expenses are not per se improper. Neither federal evidentiary principles nor prevailing ethical standards categorically prohibit compensating a non-expert witness for time spent preparing for or providing testimony, provided that the payment is reasonable and not contingent upon the substance of the testimony or the outcome of the case.

ABA Formal Opinion 96-402 states that a lawyer may compensate a non-expert witness for time spent preparing for, attending, or testifying at a proceeding, so long as the payment is not conditioned on the content of the testimony and does not violate applicable law. ABA Model Rule 3.4 likewise prohibits offering a witness an inducement that is prohibited by law, including compensation contingent upon the content of the testimony or the outcome of the case.

Federal courts addressing this issue have consistently distinguished between (1) reasonable reimbursement for time and expenses and (2) improper inducements tied to favorable testimony or results. *See, e.g., Smith v. Pfizer, Inc.*, 714 F. Supp. 2d

845, 852–53 (M.D. Tenn. 2010) (finding that it is not improper for a fact witness to be paid for trial preparation, trial time, and affidavit preparation); *United States v. Philip Morris USA Inc.*, No. 99-2496 (GK), 2003 WL 27410570, at *4 (D.D.C. Aug. 18, 2003) (holding that the payment of deposition-related expenses, including reasonable attorney's fees, is permissible so long as payment is not conditioned on the favorable content of the witness' testimony).

In the criminal context, courts have likewise held that compensation arrangements do not render testimony inadmissible per se, though such arrangements may be explored on cross-examination as bearing on credibility. *See United States v. Levenite*, 277 F.3d 454, 461 (4th Cir. 2002).

Accordingly, the existence of compensation alone does not render testimony improper. Courts instead examine whether the arrangement is contingent, excessive, coercive, or otherwise structured in a manner that raises concerns regarding reliability or fairness.

## C.     Credibility, Bias, and Cross-Examination

The credibility of witnesses is ordinarily tested through cross-examination and evaluated by the jury. *Hoffa v. United States*, 385 U.S. 293, 311 (1966). Financial arrangements between a party and a witness may be relevant to potential bias and are, therefore, proper subjects for examination.

At the same time, the trial court retains broad discretion to control the mode and order of examining witnesses and presenting evidence. Fed. R. Evid. 611(a). Rule 611 authorizes the Court to exercise reasonable control over examination to make the

procedures effective in order to determine the truth, avoid wasting time, and protect witnesses from harassment or undue embarrassment.

Even relevant evidence may be excluded or limited if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

The balancing required by Rule 403 lies within the sound discretion of the trial court and must account for the risk that otherwise permissible bias evidence could devolve into a collateral dispute that distracts from the central issues in the case. Thus, while compensation arrangements may be explored for credibility purposes, the Court has authority under Rules 403 and 611 to structure that inquiry to permit legitimate impeachment while avoiding inflammatory characterizations, juror confusion, or undue diversion of trial time.

## III.    DISCUSSION

Relators seek broad relief, including compelled production of agreements and related financial materials, leave to conduct a mid-trial deposition, expanded cross-examination without limitation, and entry of default judgment. The Court addresses each theory of relief in turn.

## A.    Discovery and Disclosure

Relators argue that Fluor's failure to disclose the witness compensation agreements during discovery warrants sanctions and further compelled production. (DE 676; DE 684; DE 690.)

As explained above, Rule 26(a) does not require automatic disclosure of the compensation arrangements with non-expert fact witnesses. The agreements at issue concern former employees who are testifying as fact witnesses, not retained experts. Accordingly, Rule 26(a)(2)'s expert compensation disclosure requirements do not apply.[1]

The Court further finds that, on the present record, Relators have not demonstrated that Fluor violated a specific discovery order requiring production of such agreements. The Scheduling Order required completion of fact discovery by February 28, 2025. (DE 489.) While the record reflects that Relators did not propound discovery requests specifically seeking consulting agreements or compensation paid to fact witnesses, the Court does not rest its ruling solely on that circumstance. Rather, the Federal Rules do not impose an independent automatic obligation to disclose such agreements absent a specific request, court order, or applicable supplementation duty.

Nor have Relators established, on this record, that Rule 26(e)'s duty to supplement was triggered by a prior disclosure that became materially incomplete or incorrect due to the existence of these agreements. The Court's ruling is limited to

---

[1] The Court notes that before trial, Relators moved in limine to bar any suggestion of impropriety arising from counsel's payment of reasonable travel expenses for non-local witnesses. (DE 596 at 35–36.) Defendants did not oppose that motion and requested that any ruling apply equally to both parties. (DE 621 at 30.) The Court's pretrial rulings reflected the settled principle that reimbursement of reasonable travel expenses for fact witnesses is not improper and is generally irrelevant absent some contingent or coercive feature. (DE 649 at 24–25.)

The compensation agreements presently at issue extend beyond mere travel reimbursement.

9

the present evidentiary showing and does not foreclose a different result upon a materially different record.

Although the timing of disclosure during trial is not ideal, the Court cannot conclude that Fluor violated a mandatory disclosure obligation under Rule 26(a) or (e) based on the record presently before it.[2] Rule 37(c) sanctions are, therefore, not warranted on this basis.

At the same time, once the existence of the agreements were revealed, the Court directed that they be produced so that examination could proceed on an informed basis. That remedial step adequately mitigated any prejudice arising from the timing of disclosure.[3] Accordingly, the Court denies Relators' motion to compel production of materials beyond the agreements and payment totals ordered disclosed in Section IV.

## B.     Legality and Structure of the Agreements

Relators contend that the agreements at issue exceed permissible reimbursement and constitute improper inducements that threaten the integrity of the proceedings. Specifically, Relators argue that: (1) the hourly consulting structure and annual caps render the payments extraordinary; (2) the requirement that witnesses provide "truthful" testimony mirrors language condemned in *Golden Door*

---

[2]     The Court notes that financial interest or compensation arrangements may bear on potential bias and credibility. The relevance of such matters does not depend on which party benefits from the arrangement, but on whether the jury is afforded sufficient information to evaluate possible bias.

[3]     This ruling does not mean that any other witness agreements are not to be equitably shared between the parties if they arise after the issuance of this order. *See infra* Section IV.

*Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 865 F. Supp. 1516 (S.D. Fla. 1994); (3) the confidentiality provisions chill testimony; and (4) under *Alexander v. Watson*, 128 F.2d 627 (4th Cir. 1942) any agreement to pay a fact witness more than statutory witness fees is void as against public policy. (DE 676; DE 690.)

The Court addresses each component in turn.

### 1.     Nature of the Agreements

The agreements provide for hourly compensation—generally $250 per hour—for time spent reviewing documents, preparing for testimony, traveling, and testifying, subject to annual caps of up to 1,000 hours. (DE 682.) Witnesses must submit invoices detailing the services performed. Fluor has submitted a summary of payments made to certain witnesses, reflecting amounts ranging from several hundred dollars to approximately $7,000 for deposition-related activity. (DE 681.)

Relators argue that the 1,000-hour cap and consulting language transform the arrangement into something more akin to expert retention or ongoing employment. The Court agrees that the breadth of the contractual language—particularly the obligation to make oneself "reasonably available" for litigation assistance—goes beyond a simple reimbursement form. That distinction is relevant to credibility and bias.

However, the legal question is not whether the agreements are stylistically expansive, but whether they condition payment on the content or outcome of testimony, or otherwise create a contingent or coercive financial inducement.

11

The agreements expressly disclaim contingency based on outcome or substance. (*See* DE 682 at 1.) The present record contains no evidence that payment was tied to favorable testimony, nor that any witness forfeited compensation for testimony unfavorable to Fluor. The amounts disclosed to date are not comparable to the six-figure payments at issue in *Golden Door*.

While Relators question whether additional or prior payments exist, the Court's ruling is confined to the agreements and payments presently before it.

### 2.     *Golden Door* **and Related Authority**

Relators rely heavily on *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 865 F. Supp. 1516 (S.D. Fla. 1994). In that case, the court imposed sanctions where an insurer paid fact witnesses $120,000 in connection with deposition testimony and where the structure of the payments violated Florida's professional responsibility rules. *Id.* at 1518.

Relators emphasize *Golden Door*'s discussion that paying a witness for "truthful" testimony may be improper if tied to materiality or helpfulness.

*Golden Door*, however, involved materially different circumstances. There, substantial payments were made in connection with deposition testimony, and the district court found a violation of specific state ethical rules. 865 F. Supp. at 1524–25. The sanction imposed was the exclusion of the tainted testimony. *Id.*

Here, by contrast:

- The agreements expressly state that compensation is not contingent upon the substance or outcome of testimony. (DE 682 at 1.)

- There is no language conditioning payment on testimony being "approved," "helpful," or "material."

- The amounts disclosed to date are not of the magnitude present in *Golden Door*.
- No state disciplinary rule violation has been established on this record.

The inclusion of a clause requiring truthful testimony does not, standing alone, render an agreement improper. Ethical authorities uniformly require that any compensation arrangement not be conditioned on content. *See* ABA Model Rule 3.4; ABA Formal Opinion 96-402. A statement that testimony must be truthful, without more, mirrors the witness's independent legal obligation under oath and does not create a contingent financial incentive.

*Golden Door* does not suggest that any agreement referencing "truthful" testimony is per se void. Rather, it addressed a materially different factual scenario involving significant payments and violations of ethical standards under Florida law.

### 3. *Alexander v. Watson* and Fourth Circuit Authority

Relators also cite *Alexander v. Watson*, 128 F.2d 627 (4th Cir. 1942), arguing that the Fourth Circuit held that "[a]ny agreement to pay" witnesses more than statutory witness fees is void as contrary to public policy.

*Alexander* arose in a markedly different context. There, individuals sought compensation for services rendered in a prior tax case in which they participated solely as witnesses, after having previously settled and released claims for attorney services. *Alexander*, 128 F.2d 630–32. The Fourth Circuit rejected their claim for fees, emphasizing that compensation for testimony beyond lawful witness fees was improper in that context. *Id. Alexander* did not address structured, non-contingent reimbursement agreements entered into prior to testimony. Nor did it involve

13

structured consulting agreements entered into before testimony, accompanied by express disclaimers of contingency.

Subsequent federal authority, including decisions within this Circuit, has recognized that reasonable compensation for time and expenses is permissible, provided it is not contingent upon the content of testimony or the outcome of the case. *See Levenite*, 277 F.3d at 461–63.

To the extent *Alexander* articulates a public policy against paying for testimony itself, that principle is not offended where payment compensates time lost and is not conditioned on substance or result. The facts here are distinguishable from *Alexander*. The agreements compensate time and require invoicing for services performed; they do not promise payment for particular testimony.

Accordingly, *Alexander* does not compel the conclusion that these agreements are void per se.

### 4.     Production and Disclosure Issues

Relators further argue that the nondisclosure provisions, combined with compensation, effectively condition payment on silence or approved testimony.

As addressed separately in Section III. B. 7., the confidentiality clauses do not purport to restrict truthful testimony in response to lawful questioning, and the agreements include carve-outs for reporting to governmental authorities. There is no evidence before the Court that any witness was instructed not to answer a question based on the contract, or that payment was withheld or threatened on that basis.

The obligation to make oneself reasonably available for litigation assistance likewise does not convert the agreement into improper inducement. Parties routinely meet with fact witnesses in preparation for testimony. Compensation for time spent in such preparation is permissible so long as it remains non-contingent. *See* Sections III. B. 2, 3.

### 5.     Request to Reopen Discovery and Conduct Mid-Trial Deposition

Relators request leave to conduct a mid-trial deposition of a Fluor employee regarding the scope of the agreements and related payments.

Mid-trial depositions are extraordinary measures that risk disrupting the orderly progression of the trial. Relators have not shown that such relief is necessary to prevent manifest injustice. The agreements themselves have been produced, and the existence and mechanics of compensation may be explored through witness examination. The Court, therefore, declines to authorize a mid-trial deposition.

To the extent invoices reflecting payments made under the agreements are requested, the Court will require disclosure of the total amounts paid to each testifying witness through the date of testimony, to ensure meaningful impeachment. Broader production of communications or negotiation history is not warranted on the present record.

### 6.     Deposition Testimony/Employment Status

Relators also argue that certain witnesses testified at deposition that they did not "work for" Fluor and that the existence of consulting agreements renders those statements misleading.

The agreements expressly characterize the witnesses as independent contractors and disclaim employee or agency status. (*See* DE 682 at 1.) Whether a particular deposition answer was incomplete or imprecise is a matter that may be explored through cross-examination. Relators have not shown that any witness knowingly provided false testimony or that Fluor knowingly permitted false testimony to stand.

The appropriate mechanism for testing the accuracy and completeness of prior statements is cross-examination before the jury, not the imposition of sanctions absent a showing of intentional misconduct.

### 7.    Confidentiality Provisions

Relators stress the confidentiality language in the agreements, arguing that it may chill testimony or restrict disclosure of relevant information. The provision states:

> any information which [the witness] obtains in connection with this agreement concerning the business or operations of the company, . . . shall be used only to perform such services and shall not be disclosed to anyone outside the company, except with the prior written authorization of the company.

(DE 682.) The confidentiality provision restricts disclosure of non-public company information obtained in connection with the agreement, but it also contains an express carve-out for reporting possible violations of law to governmental authorities. (DE 682 at 2.) The agreements further state that the reimbursement for time and other expenses is not "contingent upon the substance of the Witness's testimony in the course of a proceeding, deposition, hearing, or trial, nor shall it be contingent on

the outcome of any such proceeding, deposition, hearing, or *trial*." (DE 672; Montalvo Agreement) (emphasis added.)

The Court does not interpret the confidentiality provision as prohibiting truthful testimony in response to lawful questioning at deposition or trial. Nor has Relators presented evidence that Fluor invoked the provision to prevent a witness from answering a question in this proceeding. The Court interprets the agreements according to their plain terms and will not infer restrictions not expressed in the contractual language. *See Hotchkiss v. Nat'l City Bank of New York*, 200 F. 287 (S.D.N.Y. 1911) (Hand, J.) ("A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties."). These agreements, on their plain terms, have not been shown on this record to violate any ethical rule, as they are not contingent and do not seek to undermine the fact-finding process through fraud or subornation.[4] *See* ABA Formal Op. 96-402; ABA Model Rule 3.4.

On this record, the Court finds no basis to conclude that the confidentiality language suppressed testimony. Consistent with Rule 403 and 611, the Court prohibits Relators from asking questions about the subjective meaning of these agreements.

**Conclusion as to Legality**

The Court does not minimize Relators' concerns. The breadth of the agreements, timing of disclosure, and consulting terminology are all legitimate

---

[4]    The plain terms of the agreement also state that the witnesses are not employees of Fluor and are instead independent contractors. (DE 682.)

subjects for impeachment and credibility assessment. However, on the present record, the agreements:

- Do not condition payment on favorable testimony;

- Do not tie compensation to case outcome;

- Do not provide payment for specific substantive testimony;

- Do not reflect payments of the magnitude or structure condemned in *Golden Door*; and

- Do not fall squarely within the narrow factual holding of *Alexander*.

Accordingly, the Court declines to declare the agreements void or to impose sanctions on the theory that they constitute per se improper inducements. The appropriate remedy remains full and fair cross-examination, subject to the Court's authority under Rules 403 and 611.

## C.     Scope of Cross-Examination and Trial Management

As this Court declines to adopt a per se rule excluding testimony from fact witnesses who receive non-contingent compensation for time and expenses, Relators remain free, within reasonable limits, to vigorously cross-examine such witnesses. Reimbursement for time lost from a witness's own work bears on credibility and may properly be explored before the fact-finder.[5] *Smith v. Allen*, 212 F. Supp. 713, 714 (E.D. Va. 1962).

---

[5]     The Court notes that financial interest or compensation arrangements—regardless of which party benefits—may bear on credibility. The permissible scope of examination turns on relevance and proportionality, not on comparative characterizations of financial incentives.

In criminal cases, where compensated informants frequently testify, courts have emphasized procedural safeguards over exclusion. For example, in *Levenite*, the Fourth Circuit upheld the admission of testimony from a paid informant, noting full disclosure of the arrangement, the opportunity for thorough cross-examination, corroboration of the testimony, and cautionary instructions to the jury. *Levenite*, 277 F.3d at 462. Similarly, the Fifth Circuit has held that even a contingent-fee informant is not per se disqualified and that credibility concerns are addressed through adversarial testing and jury evaluation. *See Cervantes-Pacheco*, 826 F.2d 310, 315–16 (5th Cir. 1987).

Other courts have likewise recognized that payments to a witness do not render the witness incompetent to testify, but instead present issues for the trier of fact to weigh. *See United States v. Davis*, 261 F.3d 1, 38–39 (1st Cir. 2001). The Supreme Court has long observed that the "established safeguards" of the adversarial system leave credibility to be tested through cross-examination and determined by the jury. *Hoffa*, 385 U.S. at 311–12.

Accordingly, Relators may explore the existence, scope, and amount of compensation for purposes of bias impeachment. However, the Court retains authority under Rules 403 and 611 to prevent inquiry that is cumulative, unduly prejudicial, or likely to devolve into collateral mini-trials regarding contract negotiations or speculative misconduct. That said, the Court had issued structured guardrails governing examination regarding these agreements. Those guardrails permit inquiry into:

19

- The existence of the agreement;

- The scope of reimbursement;

- The hourly rate and expense reimbursement;

- The non-contingent nature of payment; and

- The absence of outcome-based compensation.

The Court imposed those limitations pursuant to its authority under Rules 403 and 611. The purpose of those guardrails is not to shield *biased* evidence, but to prevent inflammatory characterizations or collateral mini-trials regarding contract negotiation, attorney advice, or speculative coercion.

The jury is entitled to know that witnesses are being compensated for time and expenses. The jury is not assisted by inflammatory characterizations unsupported by evidence.

The Court concludes that the structured approach previously adopted appropriately balances probative value against the risk of unfair prejudice, confusion, and undue delay. Accordingly, Relators' request for vigorous cross-examination is GRANTED subject to the foregoing parameters.

## D.     Request for Sanctions and Default Judgment

Relators also seek default judgment as a sanction for Defendants' alleged nondisclosure and misconduct. (DE 676 at 25.)

Sanctions under Rule 37 are appropriate where a party fails to comply with a discovery order or disclosure obligation and such failure is not substantially justified or harmless. Fed. R. Civ. P. 37(b), (c). The imposition of severe sanctions—such as

default—requires a showing of willfulness, bad faith, or fault, and ordinarily is reserved for situations in which lesser sanctions would be ineffective to remedy the prejudice caused.

Separate from the Federal Rules, a district court possesses inherent authority to impose sanctions for conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991). The exercise of that authority, however, requires a finding of bad faith or conduct tantamount to bad faith. *Id.*

On the present record, Relators have not demonstrated that Fluor violated a specific court order, acted in willful bad faith, or engaged in conduct rising to the level of fraud on the court or abuse of the judicial process. Nor have Relators shown that any prejudice resulting from the timing of disclosure could not be mitigated through production of the agreements, disclosure of payment totals, and appropriate cross-examination.

Default judgment is a severe and disfavored remedy. The circumstances presented here do not warrant such relief. Accordingly, Relators' request for default judgment or additional sanctions is denied.

## IV.    CONCLUSION

For the foregoing reasons, Relators' Motion (DE 676; DE 684; DE 690) is **GRANTED IN PART and DENIED IN PART.**

1. **Production of Agreements**

Defendants shall produce to Relators all written witness compensation agreements executed in connection with this litigation and relating to the witness' anticipated or actual testimony for any witness who has testified at

trial or whom Defendants intend to call as a witness at trial, to the extent not already produced.

2. **Disclosure of Amounts Paid**

   For each witness described in Paragraph 1, Defendants shall disclose to Relators the total amounts paid to that witness pursuant to such agreements through the date of the witness's testimony.

3. **Additional Discovery**

   Relators' request to compel production of additional transactions, invoices, communications, or negotiation history related to the agreements is **DENIED.**

4. **Mid-Trial Deposition**

   Relators' request to conduct a Rule 30(b)(6) deposition of James Pike, or any other representative of Fluor, on this subject during trial is **DENIED.**

5. **Cross-Examination**

   Relators may cross-examine witnesses regarding the existence, scope, and non-contingent nature of the compensation agreements, consistent with the guardrails previously articulated by the Court pursuant to Rules 403 and 611. Inquiry into speculative interpretations, subjective understandings of contractual language, or collateral matters beyond those parameters is not permitted.

6. **Default Judgment and Sanctions.**

   Relators' request for default judgment or additional sanctions is **DENIED.**

The Court's prior rulings governing the mode and scope of examination remain in effect.

IT IS SO ORDERED.

Joseph Dawson, III
United States District Judge

Greenville, South Carolina
February 17, 2026