**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CHARLES R. SHEPHERD; DANNY V. RUDE; ROBERT SCOTT DILLARD; and RICKEY MACKEY, <br><br> Plaintiff-Relators, <br><br> v. <br><br> FLUOR CORPORATION; FLUOR INTERCONTINENTAL, INC., <br><br> Defendants. | Civil Action No. 6:13-cv-02428-JD |

**FLUOR'S RESPONSE IN OPPOSITION TO
THE UNITED STATES' MOTION TO QUASH TRIAL SUBPOENAS**

Defendants Fluor Corporation and Fluor Intercontinental, Inc. (collectively, "Fluor"), by and through undersigned counsel, hereby file their Response in Opposition to the Motion to Quash Trial Subpoenas ("Motion to Quash") filed by the United States of America, by and through the Department of the Army. Dkt. 701. For the reasons that follow, Fluor urges the Court to deny the Motion to Quash—and to continue to reject any request by Relators to reference or admit evidence concerning the 2016 Suicide Bombing at Bagram Airfield in Afghanistan (the "Bombing").

I.     **BACKGROUND**

On January 8, 2026, Fluor moved the Court for an order prohibiting Relators from making any reference to the Bombing at trial. Dkt. 588. Relators have contended (both pretrial and at various points during the presentation of their case) that the Bombing constitutes an example of "mission failure" and is somehow relevant to their allegations that Fluor failed to properly

1

inventory government materials under LOGCAP IV. *See generally* Dkt. 622. But as laid out in Fluor's briefing, the Bombing is in no way relevant to the allegations in this case and would serve only to inflame jurors' emotions and distract them from the task at hand. *See generally* Dkt. 588, 639.

Fluor's motion explained that Relators' only evidence related to the Bombing is the Army's investigative report (the "Report"), the vast majority of which is redacted and remains classified. *See* Dkt. 588 at 9–10. Moreover, "the redacted Report is heavily one-sided and purports to assign the lion's share of blame to Fluor, without discussing the Army's own potential failures, which Fluor contends are the primary contributing cause of this tragedy." *Id.* at 18.

Accordingly, Fluor expressed its "concern[s] that jurors, when presented with an incomplete and one-sided version of the underlying facts, will wrongly conclude that Fluor is to blame for the Bombing," and that "[w]ithout the full, unredacted Report and testimony about its conclusions, Fluor will be unable to mount a full defense to that allegation." Dkt. 639 at 3–4. Based on these concerns, Fluor noted that if its motion was not granted, it would have no choice but to issue a trial subpoena to the Army to obtain the unredacted Report. Dkt. 588 at 6 n.3, 12–13. Fluor further noted its expectation that the Army would resist any attempt to obtain the unredacted Report,[1] which would ultimately require the Court to adjudicate Fluor's entitlement to it if Fluor was required to defend itself against Relator's allegations concerning the Bombing at this trial. *Id.* at 24–25.

---

[1]     This expectation stemmed from Fluor's counsel's unsuccessful efforts to secure the unredacted Report for use in *Hencely v. Fluor Corp.*, 554 F. Supp. 3d 770 (D.S.C. 2021), a case specifically related to the Bombing. As reflected in the Motion to Quash and exhibits thereto, Fluor's counsel made multiple attempts to secure the full Report, but the Army denied their requests on the ground that "a significant portion of the Report remained classified." Dkt. 701 at 2.

On January 23, 2026, the Court denied Fluor's motion *without prejudice*.[2] Dkt. 650 at 6–8. Consequently, on January 26, 2026, Fluor served the three trial subpoenas ("Subpoenas") which are the subject of the Motion to Quash. *See* Dkt. 701-4 (Subpoena to retired Lt. Gen. Thomas S. James, Jr.); Dkt. 701-5 (Subpoena to retired Army Contracting Officer Gordon Jones); Dkt. 701-6 (Subpoena to Army Records Custodian). Simultaneously, Fluor renewed its request for the complete Report by supplementing its previous *Touhy* request. *See* Dkt. 701-3. The Army denied Fluor's *Touhy* request on January 27, 2026 (Dkt. 701-7) and sought an extension of time to file any motions. *See* Dkt. 674. The Army filed the instant Motion to Quash on February 17, 2026. Dkt. 701.[3]

## II.    LEGAL FRAMEWORK

The federal Housekeeping Statute, 5 U.S.C. § 301 (2006), permits executive agencies and military departments to promulgate regulations for the management of their internal affairs. The statute consists of two sentences, one of which explicitly prohibits an agency from invoking the statute to withhold information from the public. In its entirety, the statute provides:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding

---

[2]    While the Court denied this and other motions *in limine* without prejudice pretrial, the Court has consistently and appropriately prevented Relators from mentioning the Bombing through the first three weeks of trial. Further, it appears that Relators insistence on pressing this issue has diminished somewhat over the last week of trial. And, of course, the issues raised by the instant Motion could well be mooted if Relators fail to renew their earlier efforts to invoke the Bombing and/or the Court refuses to allow mention of the same.

[3]    The Government complains that Fluor issued the Subpoenas on the "eve of trial." *Id.* at 5. However, any arguable prejudice to the Government was clearly mitigated by its decision to take over three weeks to file its Motion to Quash. Fluor also strongly disagrees with the Government's suggestion that Fluor has known about the Relator's intention to present evidence of the Bombing at trial "for years." *Id.* As explained below, the timing of the Subpoenas was necessary and appropriate under the circumstances.

> information from the public or limiting the availability of records to
> the public.

5 U.S.C. § 301.

Pursuant to the Housekeeping Statute, which "does not authorize withholding information from the public or limiting the availability of records to the public," *id.*, the Army promulgated regulations which purport to limit the release of official information in litigation, including testimony of former Army employees. *See* 32 C.F.R. § 516.

Such regulations—the Army's regulations and analogous regulations promulgated by other federal agencies—are commonly referred to as "*Touhy* regulations," based on a 1951 Supreme Court case, *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 463–65 (1951). In *Touhy*, the Supreme Court held that a district court could not find a federal agency employee in contempt of court for refusing to comply with a subpoena, where the employee relied on an order issued by the Attorney General pursuant to the Housekeeping Statute then in effect that instructed employees to refuse to produce records in response to subpoenas. *See id.* As described in further detail below, the Supreme Court in *Touhy* explicitly did not address whether the Attorney General had the authority to refuse to produce documents in response to a subpoena or to prohibit subordinates from doing the same. *Id.* at 467, 473 (Frankfurter, J., concurring).

The Army's *Touhy* regulations seek to limit the availability of information by, *inter alia*, purporting to allow the Army to direct any former employee who is ordered by a court to provide testimony to refuse to comply with such a court order. The regulations state: "Former [Department of Army] personnel may freely respond to requests for interviews and subpoenas *except in instances involving official information . . . .*" 32 C.F.R. § 516.47(b) (emphasis added); *see also* 32 C.F.R. § 516.41(c) ("If present or former [Department of Army] personnel receive a subpoena

4

. . . and it appears the subpoena . . . seeks disclosures described in a above, the individual should immediately advise the appropriate SJA or legal adviser.").

## III.     ARGUMENT

If Relators are permitted to reference the Bombing at trial, Fluor would clearly be entitled to mount a full defense, which would require access to the unredacted Report as well as the testimony sought by the Subpoenas. That said, to the extent that the Court prohibits Relators from referencing the Bombing, Fluor has no need for the Report or the related testimony. Therefore, Fluor respectfully requests that the Court continue to disallow any reference to the Bombing (and accordingly deny the instant Motion as moot) or, alternatively, deny the Motion to Quash for the reasons set forth below.

### A.     The *Touhy* Regulations Are Invalid as Applied to Former Army Employees.

As a threshold matter, the Motion to Quash fails *ab initio* because it is premised on the legally invalid theory that the Army can invoke the *Touhy* regulations to preclude ***former*** employees from testifying in this case. As a result, the *Touhy* regulations cannot serve as a basis for quashing the subpoenas of Lt. Gen. (Ret.) Thomas S. James, Jr. and retired Army Contracting Officer Gordon Jones.

The *Touhy* regulations were promulgated based on the statutory authority in the federal "Housekeeping Statute," 5 U.S.C. § 301. The plain text, structure, and legislative history of the statute unambiguously limit the statutory grant of authority to the conduct of an agency's ***current*** employees. In fact, every court that has analyzed the issue has held that *Touhy* regulations are invalid, and lacking statutory authority, insofar as they attempt to restrict access to testimony of ***former*** government employees. As reflected below, courts have repeatedly and emphatically rejected attempts by federal agencies to preclude former employees from testifying:

- In *Koopmann v. U.S. Dep't of Transp.*, the court explained: "[T]he text, structure, and purpose of the Housekeeping Statute all compel the conclusion that the phrase 'conduct of its employees' refers to current employees alone and, thus, that USDOT's regulations regulating when 'employees' may testify are invalid to the extent they purport to apply to former employees. Notably, the few courts to have considered the issue presented here have all reached the very same conclusion." 335 F. Supp. 3d 556, 562 (S.D.N.Y. 2018).

- In *La. Dep't of Transp. v. U.S. Dep't of Transp.*, the court held: "The term 'employees' is not ambiguous, and, thus, USDOT has no authority to extend that definition to the conduct of former employees." No. 15-2638, 2015 WL 7313876, at *7 (W.D. La. Nov. 20, 2015).

- In *Gulf Oil Corp. v. Schlesinger*, the court permitted depositions of former government employees, over agency objections, because the *Touhy* regulations were "based upon 5 U.S.C. § 301, which on its face applies only to employees and not former employees of government agencies and departments." 465 F. Supp. 913, 917 (E.D. Pa. 1979).

- In *U.S. ex rel. Roby v. The Boeing Co.*, the court allowed a defendant in a False Claims Act action to rely on expert testimony of a former government employee, over the Department of Defense's objection, because "Section 301 does not give an agency head such authority," and thus "the Government is barred from asserting the DOD's Touhy regulations, Title 32 C.F.R. § 97.1, *et seq.*, as a means to prevent Defendant from calling [the former employee] as an expert witness in this action." 189 F.R.D. 512, 517 (S.D. Ohio 1999).

- In *Sherwood v. BNSF Ry. Co.*, the court explained that "just a handful of courts have wrestled with this precise issue. They all reached the same conclusion, however, that the regulations are invalid to the extent they purport to apply to former employees." No. 2:16-CV-00008-BLW, 2019 WL 943548, at *2–3 (D. Idaho Feb. 25, 2019).

- In *Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*, the court refused to apply an agency's *Touhy* regulations to former employees because "the language of the statute at 5 U.S.C. § 301 authorizes prescribing regulations for 'the conduct of its employees,' that is, present employees." 98 Fed. Cl. 639, 644 (Fed. Cl. 2011).

- In *McElya v. Sterling Med., Inc.*, the court rejected the Navy's attempt to use *Touhy* regulations to restrict a litigant's access to current and former Navy witnesses, holding the *Touhy* regulations were inapplicable because "5 U.S.C. § 301 does not give an agency head such authority." 129 F.R.D. 510, 514 (W.D. Tenn. 1990).

- In *Hoffman v. BLR Grp. of Am., Inc.*, the court denied the government's motion to limit the scope of the testimony of a current Air Force employee based on DOD *Touhy* regulations, and explained: "By its terms, § 301 does not authorize agencies to withhold information from the public. Thus, to the extent that [the DOD *Touhy* regulation] attempts to do just that, it is not enforceable." No. CV 08-005-JPG, 2009 WL 10689505, at *3 (S.D. Ill. Jan. 12, 2009).

The unanimity in the above caselaw is not surprising given the unambiguous language of the statute. The Housekeeping Statute authorizes the head of a military department to "prescribe

regulations for . . . the conduct of its employees." 5 U.S.C. § 301. The most natural reading of "employees" as used in the statute refers to persons who are currently employed by the department. For example, *Black's Law Dictionary* defines an "employee" as "[s]omeone who *works* in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." *Employee*, <u>Black's Law Dictionary</u> (11th ed. 2019) (emphasis added). As Judge Furman observed in *Koopmann*, "those definitions accord with common sense and ordinary usage. . . . If a business posts a sign on a door stating 'Employees Only,' it would plainly be unreasonable for a former employee to construe that as an invitation and enter. Indeed, a former employee who did so could undoubtedly be charged with trespassing, and could not be heard to complain that the sign was ambiguous, let alone an invitation to enter." 335 F. Supp. 3d at 560.

The statute refers only to "employees," not "former employees." The Army's *Touhy* regulation, which purport to prohibit "[f]ormer [Army] personnel" from providing certain testimony in private litigation, *see* 32 C.F.R. §§ 516.41(c), 516.47(b), would require the Court to insert the word "former" before "employees" in the Housekeeping Statute. Doing so would violate the basic tenet that a court's "job is to interpret the words consistent with their 'ordinary meaning.'" *See Wis. Cent. Ltd v. United States*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("In the business of statutory interpretation, if it is not the best, it is not permissible."); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 466 (7th Cir. 2020) (in construing a statute, a court's "task is to interpret the words of Congress, not add to them" (quoting *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346 (7th Cir. 2018))).

For these reasons, the Court should reject the Government's attempt to rely on the *Touhy* regulations as a basis for quashing subpoenas of former government employees. And, because the Army's *Touhy* regulations are invalid as applied here, the Government's position should be rejected even if the Army's denial of the *Touhy* request is assessed under the APA's "arbitrary and capricious" standard. Under the APA standard, a necessary prerequisite for agency conduct is a *valid* agency regulation. Here, the Army's action has no such basis.

**B.    Fluor Is Not Required to File a Separate Action Under the APA to Enforce the Subpoenas.**

The Government's lead argument is that sovereign immunity "bars any review of the Army's denial" and Fluor must "file a separate APA action." Dkt. 701 at 4. In support of this contention, the Government relies on plainly distinguishable precedent involving actions initiated in *state* court, as the Government concedes. *Id*. The Government's argument has no merit in a *federal* court proceeding.

When this issue has arisen in federal court, courts in this circuit have repeatedly rejected the argument presented here by the Government. As one court explained, in this context, the filing of a separate APA action "would serve no purpose whatsoever." *See Lamb v. Wallace*, No. 7:16-CV-44, 2018 WL 847242 at \*1–3 (E.D.N.C. Feb. 13, 2018) ("Requiring Plaintiffs to initiate a collateral action would serve no purpose whatsoever, particularly in a district where the court's local rules would likely mean that the collateral action would be assigned to the same judge."). Other courts resoundingly agree. *See*, *e.g.*, *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 744 (D. Md. 2008) (initiating separate APA action to enforce subpoena against nonparty federal agency not required because it would result in time-consuming additional litigation and instead could be resolved as part of the underlying litigation); *Sauer Inc. v. Lexington Ins. Agency, Inc.*, No. 5:13-CV-180, 2014 WL 5580954 at \*4–5 (E.D.N.C. Oct. 31, 2014) (holding "[a] dispute over non-

8

compliance with a subpoena may be resolved under the APA as part of the underlying litigation, without requiring the party seeking to enforce the subpoena to file a separate proceeding under the APA"; rejecting Army Corps' argument to the contrary); *Attkisson v. United States*, No. 1:23-cv-01106, 2024 WL 3877599, *2 n.4 (D. Md. Aug. 20, 2024) (noting that "courts in this circuit have not required parties challenging a *Touhy*-based denial to proceed in a collateral action").

The Government's argument lacks legal merit and, in practical terms, the Government's desired outcome would make no sense. The Court should reject the argument.

**C.     Fluor Complied with the Applicable Regulatory Requirements.**

Even assuming that the Government can invoke the *Touhy* regulations, and even assuming that this Court reviews the Army's denial of the requests at issue using an APA standard, the Court should still reject the Government's arguments. As explained above, the Government's position rests on an invalid regulation that lacks statutory authority as applied to former employees. In addition, as set forth below, Fluor complied with the regulations to the fullest extent possible under the circumstances.

*First*, Fluor's request was procedurally proper. The Government claims the request was "untimely" because the regulations require submission "14 days in advance." *See* Dkt. 701 at 7. However, Fluor submitted its request on January 26, 2026, in advance of a trial that was estimated to last six weeks. Fluor's request did not seek testimony on the first day of trial; rather, the request sought testimony during the ensuing six-week window. Thus, the request satisfied the 14-day provision in the regulation. Moreover, Fluor submitted its request one business day after the Court issued its order on Fluor's Motion *in Limine* No. 1, leaving open the possibility that Relators would introduce evidence related to the Bombing.

9

*Second*, Fluor's request was substantively proper. The Government complains that Fluor "did not adequately demonstrate the specific nature of the information sought and its relevance." Dkt. 701 at 7. However, Fluor's request described the information sought with specificity and explained its potential "relevance" (an issue that is, of course, in dispute). As set forth herein and in prior submissions, Fluor's position has always been that the Bombing has no relevance to this matter. As the Court is aware, Relators take the opposite position. But if Relators were to introduce evidence of the Bombing, Fluor would be compelled to respond, including by presenting the testimony sought through the Subpoenas.

As a practical matter, Fluor has fully explained to the Army why Fluor has a potential need for the testimony, and that suffices under both the letter and spirit of the regulations. In any event, the Government's overly rigid interpretation of the regulations, as applied here, would require Fluor to wait until such time as evidence related to the Bombing is introduced *before* submitting a *Touhy* request—at which time, Fluor would require rebuttal testimony *immediately*, and the Army would no doubt claim the request was untimely. That cannot be the law.

### D. The Government's Concerns About Classified Information Provide Further Reason for Precluding All Evidence Related to the Bombing.

The Government emphasizes the "burden" associated with allowing trial testimony from the three subpoenaed witnesses. *See* Dkt. 701 at 8–9. The Government notes, for example, that many facts surrounding the Bombing are classified, and testimony surrounding the Bombing may implicate a host of governmental privileges. As the Government notes, notwithstanding Fluor's August 2020 *Touhy* request seeking release of the entirety of the Report, the vast majority of the Report remains classified to this day.

Fluor respectfully requests that the Court continue to prohibit any reference to or any introduction of evidence related to the Bombing. In the unlikely event that Relators present any

new or persuasive arguments that cause the Court to reconsider this issue, Fluor disputes that any such "burden" provides a valid basis for the Government to preclude Fluor from presenting the evidence necessary to fairly and completely respond. That said, the Government's concerns regarding classified information are understandable and legitimate. In fact, for reasons set forth in the Government's brief, if *any* evidence related to the Bombing is introduced at trial in this matter, it would create a risk that testimony will veer into state secrets or other governmental privileges.[4] The specter of that outcome should not be used to deny Fluor the ability to defend itself; rather, the risk that witnesses will be compelled to disclose classified information only reinforces why the Court should preclude any evidence related to the Bombing.

## IV.     CONCLUSION

For the reasons set forth above, Fluor respectfully urges the Court to continue to prohibit Relators from making any reference to the Bombing or, alternatively, to deny the Motion to Quash on its merits.

[*Signature Page Follows*]

---

[4] Testimony in separate litigation arising out of the Bombing illustrates that this risk is real, as witnesses in that case struggled to testify without disclosing classified information. *See*, *e.g.*, *Hencely v. Fluor Corp.*, No. 6:19-cv-00489-BHH (D.S.C.), Dkt. 153 at 7–8.

11

Respectfully Submitted,

/s/ Mark C. Moore
Mark C. Moore (Fed. ID No. 4956)
Michael A. Parente (Fed. ID No. 13358)
Maynard Nexsen PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 540-2146
Facsimile: (803) 727-1458
MMoore@maynardnexsen.com

Konstantine P. Diamaduros (Fed. ID No. 12368)
Maynard Nexsen PC
104 South Main Street, Suite 900 (29601)
Post Office Drawer 10648
Greenville, SC 29603-0648
Telephone: (864) 370-2211
Facsimile: (864) 282-1177

Craig D. Margolis (admitted *pro hac vice*)
Tirzah S. Lollar (admitted *pro hac vice*)
Christian D. Sheehan (admitted *pro hac vice*)
Elizabeth A. Carney (admitted *pro hac vice*)
Katelyn M. Deibler (admitted *pro hac vice*)
Elliot S. Rosenwald (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, Northwest
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
craig.margolis@arnoldporter.com

Rachel K. Higgins (admitted *pro hac vice*)
Sahrula Kubie (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

February 22, 2026
Columbia, South Carolina

*Counsel for Defendants Fluor Corporation and Fluor Intercontinental, Inc.*

12