IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| United States of America, *ex rel.* Charles R. Shepherd, Danny V. Rude, Robert Scott Dillard, and Rickey Mackey,<br><br>        Plaintiff-Relators,<br><br>v.<br><br>Fluor Corporation., and Fluor Intercontinental, Inc.,<br><br>        Defendants. | Case Number: 6:13-02428-JD<br><br>Honorable Joseph Dawson, III |

**RELATORS' REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL
OR, IN THE ALTERNATIVE, TO AMEND JUDGEMENT**

Jon Loevy
Mike Kanovitz
Daniel Twetten
Anand Swaminathan
Frank Newell
Anna Dover
Gwen Parker
Heather Sticht
Dominique Gilbert
Alexandra Wolfson
Aadi Tolappa
**LOEVY & LOEVY**
311 N. Aberdeen St., Third Floor
Chicago, IL 60607
Telephone: (312) 243-5900
Facsimile: (312) 243-5902
dan@loevy.com
anand@loevy.com

Frank L. Eppes
**EPPES & PLUMBLEE, PA**
PO Box 10066
Greenville, SC 29603
Telephone: (864) 235-2600
Facsimile: (864) 235-4600
feppes@eppesandplumblee.com

Judah N. VanSyckel
**SALUDA LAW, LLC**
137 E. Butler Street
Lexington, SC 29072
Telephone: (803) 939-6927
Facsimile: (803) 902-8004
judah@saludalaw.com

Richard Harpootlian
**RICHARD A. HARPOOTLIAN P.A.**
1410 Laurel Street – P.O. Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810
rah@harpootlianlaw.com

**TABLE OF CONTENTS**

I.     A NEW TRIAL ON DAMAGES AND PENALTIES SHOULD BE GRANTED............ 1

II.    A NEW TRIAL SHOULD BE GRANTED TO CLARIFY THE DAMAGES. ................ 7

III.   THE COURT ERRED BY EXCLUDING EVIDENCE OF THE SUICIDE BOMBING
       EVEN AFTER FLUOR REPEATEDLY OPENED THE DOOR .................................... 8

IV.    FLUOR ABUSED PRIVILEGE ASSERTIONS IN A MANNER THAT REQUIRES A
       NEW TRIAL.................................................................................................... 10

V.     THE COURT IMPROPERLY LIMITED CROSS-EXAMINATION OF METHOT ..... 11

VI.    THE COURT ERRED BY REFUSING TO ALLOW RELATORS TO CROSS
       FLUOR'S EXPERTS ON MATERIAL THEY DID NOT REVIEW TO REACH
       THEIR OPINIONS ......................................................................................... 12

VII.   THE COURT ERRED BY PREVENTING RELATORS FROM REBUTTING NEW
       DEFENSE EVIDENCE..................................................................................... 13

VIII.  THE COURT ERRED BY BARRING TESTIMONY OF JIM SHERMAN AND
       DISMISSING THE ESTIMATING THEORY HIS OPINIONS EXPLAINED.............. 14

IX.    THE COURT ERRED BY UNDULY RESTRICTING CROSS-EXAMINATION ON
       WITNESS PAYMENTS.................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Benedict v. Hankook Tire Co. Ltd.*,
  2018 WL 3352952 (E.D. Va. July 9, 2018) ................................................................. 14

*Buechler v. BNSF Ry. Co.*,
  343 F. Supp. 3d 1202 (D. Wyo. 2018) ......................................................................... 4

*City of Myrtle Beach v. United Nat'l Ins. Co.*,
  2010 WL 3420044 (D.S.C. Aug. 27, 2010) ................................................................. 11

*City of Richmond v. Madison Management Group, Inc.*,
  918 F.2d 438 (4th Cir. 1990) ....................................................................................... 7

*Clawson v. FedEx Ground Package Sys., Inc.*,
  451 F. Supp. 2d 731 (D. Md. 2006) ............................................................................. 5

*De Leon v. Holder*,
  761 F.3d 336 (4th Cir. 2014) ....................................................................................... 2

*Gibbons v. Gibbs*,
  167 F.4th 131 (4th Cir. 2026) ..................................................................................... 13

*Grant ex rel. United States v. Zorn*,
  107 F.4th 782, 791 (8th Cir. 2024) .............................................................................. 7

*Grant ex rel. United States v. Zorn,*
  145 S. Ct. 2812 (2025) ................................................................................................. 7

*Graves v. United States*,
  150 U.S. 118 (1893) ..................................................................................................... 2

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ..................................................................................... 14

*Hencely v. Fluor Corp.*,
  146 S. Ct. 1086 (2026) ................................................................................................. 8

*Hunger v. Leininger*
  15 F.3d 664 (7th Cir. 1994) ......................................................................................... 6

*In re Under Seal*,
  749 F.3d 276 (4th Cir. 2015) ....................................................................................... 5

*N.L.R.B. v. Wix Corp.*,
  309 F.2d 826 (4th Cir. 1962) ............................................................................... 10

*Olson v. Fairview Health Servs. of Minn.*,
  831 F.3d 1063 (8th Cir. 2016) ............................................................................... 1

*Pregis Corp. v. Doll*,
  2010 WL 11437351 (E.D. Va. Aug. 10, 2010).......................................................... 8

*Pugh v. Louisville Ladder, Inc.*,
  361 F. App'x 448 (4th Cir. 2010) .......................................................................... 14

*Rybas v. Riverview Hotel Corp.*,
  2015 WL 10096189 (D. Md. Jan. 15, 2015)............................................................ 14

*S.E.C. v. Jarkesy*,
  603 U.S. 109 (2024)................................................................................................ 7

*The Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*,
  2010 WL 2653373 (E.D. Va. July 2, 2010)............................................................. 14

*Tull v. United States*,
  481 U.S. 412 (1987)................................................................................................ 6

*United States ex rel Tyson*,
  488 F. Supp. 2d at 745 (N.D. Ill. 2007) .................................................................. 6

*United States ex rel. Behnke v. CVS Caremark Corp.*,
  798 F. Supp. 3d 515 (E.D. Pa. 2025) ................................................................... 5, 7

*United States ex rel. Drakeford v. Tuomey*,
  792 F.3d 364 (4th Cir. 2015) .............................................................................. 1, 3

*United States ex rel. Morsell v. Gen Digit., Inc.*,
  712 F. Supp. 3d 14 (D.D.C. 2024)........................................................................... 7

*United States v. Bornstein*,
  423 U.S. 303 (1976)................................................................................................ 5

*United States v. Ebersole*,
  411 F.3d 517 (4th Cir. 2005) ................................................................................. 4

*United States v. Gallagher*,
  90 F.4th 182 (4th Cir. 2024) .................................................................................. 4

*United States v. Killough*,
  848 F.2d 1523 (11th Cir. 1988) .............................................................................. 2

*United States v. McLaurin*,
  764 F.3d 372 (4th Cir. 2014) ................................................................. 10

*United States v. Ramirez-Castillo*,
  748 F.3d 205 (4th Cir. 2014) ................................................................. 5

*United States v. Rangel*
  781 F.3d 736 (4th Cir. 2015) ................................................................. 6

*United States. ex rel. Bunk v. Gosselin World Wide Moving, N.V.*,
  741 F.3d 390 (4th Cir. 2013) ............................................................. 3, 6

*Universal Health Services, Inc. ex rel. Escobar v. United States*,
  579 U.S. 176 (2016) ............................................................................. 6

*Zorn v. Grant*,
  145 S. Ct. 2816 (2025) .......................................................................... 7

## STATUTES

31 U.S.C. § 3729 ....................................................................... 1, 3, 4, 5

## OTHER AUTHORITIES

481 U.S. 412 (1987) .................................................................................. 6

## RULES

Fed. R. Civ. P. 51 ..................................................................................... 3

v

Relators respectfully submit this reply in support of their motion brought pursuant to Federal Rules of Civil Procedure 59 and 60, requesting a new trial against Defendants Fluor Corporation, Inc., and Fluor Intercontinental, Inc. (hereinafter collectively "Fluor") on liability as to their award fees and excess labor fraud claims, and on damages and penalties as to their property fraud claims. *See* R. 785.[1]

## I.    A NEW TRIAL ON DAMAGES AND PENALTIES SHOULD BE GRANTED

Defendants offer no response to Relators' key point that each LTDD constitutes a violation of the False Claims Act. Their brief instead argue that "[a]n LTDD is not a claim for payment, as it neither requests nor results in payment." R.796 at 38. An LTDD, however, does not need to constitute a claim for Fluor to be liable. The FCA clearly states that "any person who" violates any provision of 31 U.S.C. § 3729(a)(1) "is liable to the United States Government for a civil penalty." 31 U.S.C. § 3729(a)(1). Here, the jury found that Defendants violated 31 U.S.C. § 3729(a)(1)(G) when they "knowingly concealed, avoided, or improperly decreased" an obligation to the Government. *See* R. 775 at 15–16. The question is *how many times* did Fluor violate Section G by engaging in such conduct. Because the jury already found liability under Section G, it is appropriate to have a new trial to determine how many times Fluor violated Section G. *See United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364 (4th Cir. 2015); *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1073–74 (8th Cir. 2016) (penalty for each act of concealment under reverse false claim provision).

Defendants respond by arguing that Relators "presented no evidence from which a reasonable jury could have calculated the number of penalties." That is incorrect. Relators

---

[1] The FCA automatically applies trebling and penalties: The procedural basis for both trebling damages and imposing civil penalties is the FCA itself, which Relators properly invoked. *See* R. 785-1 at 38–39. Relators sought amended judgment at this juncture in light of the Court's March 13 judgment, R. 780, and remain willing to revive this motion later. Indeed, Relators do not dispute the absence of finality.

introduced, for example, PX1365, which itemizes each LTDD Fluor submitted in connection with LOGCAP IV. Br. at VIII(2). Fluor's evidentiary arguments are wrong too: that some specific LTDDs were presented to the jury by Fluor rather than by Relators makes no difference, and juries can base conclusions on evidence admitted into the record, even if not discussed in trial testimony. *De Leon v. Holder*, 761 F.3d 336 (4th Cir. 2014); *Graves v. U.S.*, 150 U.S. 118, 123 (1893); *see also U.S. v. Killough*, 848 F.2d 1523, 1532 (11th Cir. 1988); R. 770 at 5.

The evidence Relators presented was abundantly clear at trial: the LTDDs were submitted when Fluor knew its property system was inadequate, its managerial personnel engaged in willful misconduct and lack of good faith in order to pass DCMA audits it knew Fluor would otherwise fail, and knew of property losses Fluor was not reporting. *See* Tr. at 133:11–167:8, 1192:7–1193:17, 1242:1–1243:20, 1289:9–23, 1397:3–1400:3; 3349:25–3365:25, 3367:18–3371:9; PX 24 at 1; PX 1325 at 8–11; PX 1071 at 3. Fluor concealed and avoided its obligations to report losses whenever it submitted LTDDs representing the losses for that period of time. [2]

In fact, the jury could have found that each inventory adjustment that lacked any documented justification constituted an instance that Fluor avoided an obligation. That would

---

[2]  Fluor argues that Relators failed to object to the absence of an instruction about property management system disapproval. That is not true. *See e.g.,* R. 761 at 9. Although the Court erred by omitting this instruction, the jury could still have found that Fluor's omissions and misrepresentations about its failing property management system constituted a violation. The jury had the Property Clause in evidence. DX 274. As for Fluor's claim that the "Court instructed the jury on just one path to liability with respect to Relators' property fraud case: that Fluor concealed from the government property loss that had resulted from the willful misconduct or bad faith on the part of Fluor's 'managerial personnel,' as defined in the FAR." R. 796 at 36, Fluor's argument only bolsters Relators' assertion from their opening brief that "[i]t follows that if Fluor had even $15,000,000 in unjustified losses that the jury would find Fluor not operating in accordance with FAR 52.245-1. Each LTDD was provided 'in accordance with FAR 52.245-1.'" R. 785-1 at 36–37. The jury had sufficient evidence to conclude that a minimum of $15 million in unjustified losses resulted from "the willful misconduct or bad faith on the part of Fluor's 'managerial personnel,'" in violation of FAR 52.245-1, *see* R. 797-1 at 23, and thus that each LTDD claiming compliance with the FAR constituted a discrete violation subject to the fines and penalties of § 3729(a)(1)(G).

total more than 135,000 violations through early 2013 alone. *See* PX 1620 at 5–6 (finding 80.5% of the sampled universe of 168,868 negative inventory adjustments lacked such justification); Tr. at 3353:22–3354:6 (the 80.5% were unexplained losses and unreported losses); *id.* at 3341:7–21 (Nix double-checked findings because having that many samples fail was "actually quite shocking"). Relators have eschewed that figure for a far more conservative—and easily defended—one: the total LTDDs submitted. Relators thus submit the most conservative and likely number of FCA violations the jury would have found based on the evidence presented at trial, or 6,739. *See* DX 553 (MMB-0015); PX 1365 (listing LTDDs). It would frustrate the FCA's purpose if numerous violations of the Act could be looped into one overarching scheme rather than each violation facing a penalty. *See Drakeford*, 792 F.3d at 389; *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390 (4th Cir. 2013); *Olson*, 831 F.3d at 1073–74. The Act is clear that *each* violation is subject to a penalty. 31 U.S.C. § 3729(a)(1).

With no good answer on the merits, Fluor posits an erroneous procedural argument that Relators supposedly failed to object to the verdict form. First, Relators "object[ed] promptly," as required by the Rule. Fed. R. Civ. P. 51(c)(2). The Court initially apprised the parties of its proposed verdict form the morning of March 9, 2026, first at 8:36am, Ex. 1 (Emails from the Court) at 1, then amended at 10:13am EST, at 2. That was when Relators could have first "learned that the instruction will be...given" without instructing the jury to tally the violations, *i.e.*, that their "request [for a different verdict form]…has been…refused." Fed. R. Civ. P. 51(c)(2)(B). The Court's emails attached both the 19-page verdict form and the 36-page jury charges. During a break, Relators noticed the omission on the verdict form of a line for the jury to identify the total violations, and raised the concern on the record at the first opportunity immediately thereafter. Tr. at 8755:19–8756:24 ("On the property fraud portion of the verdict

3

form on Page 16, after you go through the questions about liability, it goes directly to the damages question about the amount of obligation avoided or decreased…There is usually a number one, which is a number of violation -- number of false claims, but here it is missing. And we would submit that we don't believe that that should be omitted...for a reverse false claim because the statute under 3729 is pretty clear.").[3]

Second, the argument is preserved elsewhere. In their proposed verdict form, Relators included a special interrogatory on the total number of FCA violations. *See* Ex. 2 (Relators' Proposed Verdict Form and Cover Email) at 5. *See Buechler v. BNSF Ry. Co.*, 343 F. Supp. 3d 1202, 1207 (D. Wyo. 2018) (the party that wanted an additional special interrogatory "preserved this objection by offering its proposed verdict form and objecting on the record to that provided by the Court."). Prior to closing arguments, Relators reiterated that they were preserving all objections to the final instructions and verdict form, and resubmitted them to the Court to make that clear. Tr. at 8595:16–19.

Defendants also wrongly contend that "Relators did not object to the Court's jury instructions" on the "lack of instruction on this provision[,]" *i.e.*, of the first clause of Section G. Br. at n.20. That too is incorrect. *See* R. 761 at 7 (Relators' counsel requesting the insertion of text regarding submission of false records or statements, taken directly from § 3729(a)(1)(G)); *cf. United States v. Gallagher*, 90 F.4th 182, 193 n.2 (4th Cir. 2024) (no forfeiture when party makes argument in pre-trial motion and again during trial); *United States v. Ebersole*, 411 F.3d 517, 526 (4th Cir. 2005) (same).

Even if plain error did apply here (it does not), Relators would satisfy the standard

---

[3]  To the extent Fluor asserts that Relators should have objected before closing arguments began, the Court erred by failing to provide the proposed verdict form with sufficient time for the parties to thoroughly review it for any objections.

regardless. *See United States v. Ramirez-Castillo*, 748 F.3d 205, 212 (4th Cir. 2014). An error is "plain" if it was "clear or obvious at the time." *Id.* at 215 (cleaned up). As explained in Relators' opening brief, the FCA expressly states that a person who violates the FCA must pay the government a civil penalty for each violation, and the Fourth Circuit and other appellate courts have held that systemic FCA violations trigger penalties in each instance, rather than incurring only one penalty for a prolonged course of conduct. *See* R. 785-1 at 35–36 (collecting cases).[4]

Defendants also assert that the application of penalties to § 3729(a)(1)(G) violations is "unsettled," but they cite no cases to support that. Indeed, no court has refused penalties for acts taken to avoid or conceal an obligation to repay because the statute so clearly grants such penalties. In short, it was "clear and obvious" that the Court should have asked the jury to determine how many false records or statements Fluor submitted related to its property fraud.[5]

This error also affected Relators' and the Government's substantial rights, because it clearly impacted the total penalties Fluor was required to pay to the United States Army, a financial impact in the tens of millions of dollars. *See United States v. Rangel*, 781 F.3d 736,

---

[4] Fluor cites *United States v. Bornstein*, 423 U.S. 303, 313 (1976) for their argument that "[t]he determination of how many violations occurred must be based on the defendant's 'specific conduct.'" R. 796 at 37. But, as explained in *United States ex rel. Behnke v. CVS Caremark Corp.*, 798 F. Supp. 3d 515, 520–21 (E.D. Pa. 2025), Fluor overlooks that in *Bornstein*, the prime contractor's decision to "submit 35 false claims instead of some other number was, so far as [the subcontractor] was concerned, wholly irrelevant completely fortuitous and beyond [the subcontractor's] knowledge or control." *Bornstein*, 423 U.S. at 312. In this case, as in *Behnke*, the jury has already found that Fluor possessed this knowledge, R. 775 at 15–16, thus, each submission twith this knowledge was a separate violation. *Behnke*, 798 F. Supp. 3d at 521.

[5] Fluor argues that Relators have waived their ability to argue plain error by not addressing it in Relators' opening brief. That argument strains reason. Relators could not waive arguments on plain error before Fluor argued that it applies here. Now that Fluor has made that argument, it is in play and fair game. *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 735 (D. Md. 2006) (no waiver if reply "was effectively the [party's] first opportunity to brief the issue[]"). For similar reasons, Fluor's lone citation for its waiver argument, *In re Under Seal*, 749 F.3d 276, 292 (4th Cir. 2015), is inapt, because in that case a party failed to discuss plain error in its briefs or at oral argument, *even after the opposing party had done so. See id.*

745–46 (4th Cir. 2015) ("[a]ffecting substantial rights" means "a reasonable probability that the error affected the outcome of trial" (citation omitted)). As explained throughout, had the Court asked, the jury likely would have found a reverse-false-claim violation for every LTDD, which was central to Relators' property theory that the jury credited by finding liability. And as to the fourth prong, declining now to correct a plain and prejudicial error due to what was at most a momentary and immaterial delay would profoundly tarnish the integrity of the trial. *Cf. Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994) (declining to find waiver where a party's objection "was not egregiously late and caused not even the slightest prejudice" to the other party).

Fluor next argues that penalties would be an unconstitutionally excessive fine under the Eight and Fifth Amendments. Not so. It is within the Court's discretion to assess anywhere from the minimum to maximum penalties for each FCA violation, here a range of $27,637,500 (6,739 x $5,500) to $74,129,000 (6,739 violations x $11,000). Relators maintain that the jury awarded the United States $30 million in actual damages, but even considering a $15 million single damages award against a maximum penalty of approximately $74 million–just under a 5:1 ratio– this would not violate the Due Process or Excessive Fines clauses. *E.g., United States ex rel Tyson*, 488 F. Supp. 2d at 745 (N.D. Ill. 2007) (FCA case upholding "ratio of the total judgment ($334 million) to actual damages ($48 million) [of] approximately 6.9:1" and collecting cases with higher such ratios). Given the clear precedent that the FCA "imposes significant penalties on those who defraud the Government," *Universal Health Services, Inc. ex rel. Escobar v. United States*, 579 U.S. 176, 180 (2016), this is reasonable. *See Bunk*, 741 F.3d at 407–08.

Fluor also argues that "the Seventh Amendment precludes any nonjury finding of liability for civil penalties," R. 796, citing *Tull v. United States*, which held as much about the Clean Water Act. But the inquiry is statute specific. 481 U.S. 412, 422 (1987); *see S.E.C. v. Jarkesy*,

603 U.S. 109, 124 (2024). Fluor of course cites no FCA case supporting its position. But even if it did, Fluor faces a bigger problem: It has repeatedly waived its Seventh Amendment right to have a jury decide how many times it violated the FCA by strenuously arguing the court *should not ask the jury*. *E.g.*, Tr. at 8757:2–4; 8881:5-8881:24; R. 785-25 (March 9, 2026, Email from E. Rosenwald). In similar situations when the issue is then left to the courts in FCA suits, they routinely determine the number of civil penalties. *See e.g.*, *United States ex rel. Morsell v. Gen Digit., Inc.,* 712 F. Supp. 3d 14 (D.D.C. 2024); *United States ex rel. Behnke v. CVS Caremark Corp.*, 798 F. Supp. 3d 515 (E.D. Pa. 2025); *see also Grant ex rel. United States v. Zorn*, 107 F.4th 782, 791 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 2812 (2025), *and cert. denied sub nom. Zorn v. Grant*, 145 S. Ct. 2816 (2025). If anyone was denied a right to a jury determination, it was not Fluor but Relators, who repeatedly asked for the jury to resolve the issue.

For all of these reasons, if the Court declines to order a new trial on damages and penalties, the Court should find Fluor liable for 6,739 False Claims Act violations, on which it should assess the maximum penalty of $11,000 per violation.

## II.     A NEW TRIAL SHOULD BE GRANTED TO CLARIFY THE DAMAGES.

Opposing the request to aggregate the jury's two damages assessments of $15 million each, Fluor relies on *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 461 (4th Cir. 1990), representing that the  Fourth Circuit there "reversed the district court's decision to aggregate." R. 796. In fact, the Court remanded for a new trial so a jury could determine damages with clearer instructions. That result would be equally proper here.

Alternatively, it would also be appropriate for the Court to aggregate the two damages assessments. Unlike in *City of Richmond*, the instructions in this case were not "inexorabl[e]" to any reading. 918 F.2d at 461. Under the instructions given here, it remained "possible that the jury simply inserted the amount that the [plaintiff] was damaged and assumed that the court

7

would later figure out how to apportion that amount among the liable defendants." *Id.*

Fluor insists that because Relators asked the jury during closing to write the damages on both lines rather than "split it in half," the jury must have meant no aggregation. What matters, however, is how *the Court*, not a party, instructs the jury. *Pregis Corp. v. Doll*, 2010 WL 11437351 (E.D. Va. Aug. 10, 2010). And here the jury instructions were silent on aggregation.

## III.     THE COURT ERRED BY EXCLUDING EVIDENCE OF THE SUICIDE BOMBING EVEN AFTER FLUOR REPEATEDLY OPENED THE DOOR

As Relators explained in their post-trial motion, the Court grievously erred by excluding all evidence of the suicide bombing at Bagram Air Field. Fluor does not grapple in earnest with Relators' arguments. Instead, Fluor mischaracterizes the Army's investigative report, the questions Fluor asked witnesses, and black-letter evidentiary law.

First, Fluor tries to rewrite the Army's report. See R. 796 at 13–15. The Army's report states that Fluor's subcontractor "freely acquire[d] most of the components necessary for the construction of the suicide vest," which appeared to come from his work station, due to Fluor's poor supervision *within its facilities*. *See* R. 785-2 at 15, 47. Indeed, as the Supreme Court recently summarized, "[t]he Army's investigation found Fluor primarily responsible for the attack" and that Fluor allowed a subcontractor "to check out tools that he did not need for his job and that he used to make the bomb inside Bagram" in a Fluor-managed yard. *Hencely v. Fluor Corp.*, 146 S. Ct. 1086, 1092 (2026). Contrary to Fluor's description, the report says what it says.

Fluor also contends the report is irrelevant because Relators "conce[de] that their property theory extends only to 2014." R. 796 at 14. That is simply not true.[6] And even if it were,

---

[6] In support, Fluor cites one phrase from one sentence of Relators' brief describing when Fluor submitted LTDDs to the government. *See* R. 785-1 at 40. This is not a concession. It provides a floor for how many discrete times Fluor violated the FCA. Moreover, neither the court's instructions nor the jury's verdict limited Relators' property theory to a specific time period. *See* R. 770 at 25–26; R. 775 at 15.

the 2016 bombing would still be critically relevant to demonstrating the materiality element of the FCA and countering Fluor's defenses as to Relators' property theory, as set forth in Relators' opening brief. R. 785-1 at 12–16. The suicide bombing demonstrates the critical importance of property management to warfighter-safety, and thus to the Government, and to countering Fluor's assertions that its fraud never caused "mission failure," or that the Government never complained about Fluor's performance. Tr. at 2486:11–2496:8, 4971:16–4973:4, 6196:6–6203:16, 7567:24–7568:16. For similar reasons, the Army's report would also have been relevant to Relators' award-fee theory, because it demonstrates the relationship between property failures and safety, and thus would impact award fee scores. *See* R. 785-3 at 4; R. 785-4 at 2.[7]

Fluor maintains next that it never opened the door to the bombing, but the questions Fluor actually asked (which its brief avoids mentioning) are both damning and dispositive. *See* R. 796 at 17–18. For example, Fluor twice asked Danny Rude something like: "[A]re you aware of the government ever raising concerns with Fluor [that] there were a significant amount of dangerous conditions left unmitigated all across theater?" Tr. at 2487:3–6, 2487:18–20. Then Fluor asked Preston Howard, "[I]s safety a core value of Fluor's?", and when he answered "[y]es," asked him to "explain." *Id.* at 4961:16–23. And Fluor asked Steve Whitcomb if he would "say anything to . . . Fluor employees with respect to safety," allowing him to testify at length about how safety was "a[n] important issue for Fluor." *Id.* at 6197:19–20. These questions plainly opened the door for Relators to discuss a critical example of when Fluor's property failures created *unsafe* conditions that endangered lives.

---

[7] Fluor argues the Army's report is irrelevant because Relators move for a new trial only on damages and penalties on their property theory. R. 796 at 15. Fluor misses the point. What matters is not whether the report will be relevant in a future trial; it is whether it was relevant to the trial that just finished. As explained, the answer is "yes." *See* R. 785-1 at 10–15.

Fluor's attempts to explain its questions fall short,[8] but they also do not matter. When it comes to "opening the door," the relevant inquiry is *not* why a party asked a question; it is what effect that question and resulting testimony had on the jury. *United States v. McLaurin*, 764 F.3d 372, 384 (4th Cir. 2014). Here, the jury heard Fluor's questions about taking "safety" and "dangerous conditions" seriously and, without context, concluded that Fluor excelled in these areas. After the Court overruled Relators' objections to Fluor's questions, Relators were entitled to rebut that false impression with a key example of when Fluor's failure to follow its procedures and lax security had the very sort of tragic consequences it strongly implied never occurred.[9]

## IV.    FLUOR ABUSED PRIVILEGE ASSERTIONS IN A MANNER THAT REQUIRES A NEW TRIAL

Rather than truly grapple with any of Relators' arguments that there really was only one investigation, Fluor's first and primary argument is that Relators supposedly lost the ability to challenge Fluor's abuse of the privilege assertion by waiting more than 21 days after Fluor served its privilege log. According to Fluor, Relators had to bring a motion to compel at that time, or they waived any right to challenge anything for the rest of the litigation.

The argument is unpersuasive. Early in discovery, when first Fluor asserted a privilege over what it called the MMI, Relators did not yet have any context for what that even meant, and had no

---

[8] For example, Fluor explains that it only asked Howard about safety "to respond to *Relators'* insinuation" that Fluor "put[] profits over people" when Relators examined Howard. R. 796 at 18. Yet when Relators asked Howard the relevant question, Fluor objected, and the Court sustained. Tr. at 4928:21–23. There is no basis to "impeach[]" or "contradict[]" a question the jury was not allowed to consider. *N.L.R.B. v. Wix Corp.*, 309 F.2d 826, 832 n.6 (4th Cir. 1962).

[9] Fluor again contends that courts "commonly exclude references to violence, terrorism, or death." R. 796 at 13. Fluor does not even try to explain all the times it discussed or elicited testimony about violence, terrorism, and death. Tr. at 91:17–24, 95:9–25, 117:14–21, 1517:1–1521:3, 4841:13–4842:2, 4958:9–22, 6196:6–6203:16, 7233:6–7236:3, 8691:23–8692:1, 8694:20–8695:3. In Fluor's view, these topics are fair game, so long as no one (including the Army) attempts to assign any blame to Fluor.

10

reasonable way to even understand at the time the game Fluor was playing. Witnesses had not yet been deposed, and no one had yet testified about the IAA and the associated predicate for the waiver of the abusive MMI privilege designations. Most important, Relators did not yet know, and had no possible way of knowing, that Fluor was going to rely at trial on the so-called the IAA investigation, or that many of Fluor's trial witnesses would eventually testify about subjects covered in documents that Fluor had stashed in the MMI privilege log. Only when Fluor did that at trial did Fluor waive the privilege, so Relators' challenges before and at trial were in fact timely. Tr. 2561:3–2563:11.

Even Fluor does not even dispute that if Fluor really did create two different names (MMI and IAA) for a single investigation of the lost property issue, Fluor could not just declare privilege over some of the (unfavorable) documents and findings from that investigation, calling it the MMI; and then turn around and present other (favorable) documents and findings from that same investigation at trial, calling it instead the IAA. That strategy is plainly an abusive use of privilege as a sword and a shield. *Stanko v. Stirling*, 2022 WL 22887110, at \*2 (D.S.C. May 23, 2022).

Fluor insists that is not what happened here, but fails to substantiate its position. It does not, and cannot, deny that the MMI and IAA investigations both involved the same people, the same subject, the same conclusion, and the same time frame. If there really is a coherent basis to distinguish these as two separate investigations, Fluor has never been able to articulate it.

For these reasons, the Court should have deemed the privileged waived, and required Fluor to disclose the documents on the privilege log. The Court should do that now, and order a new trial on damages at which those documents are admissible. Alternatively, it should deem the privilege waived, order the documents disclosed to Relators, and give Relators an opportunity to justify why the improper withholding justifies a new trial.

## V.    THE COURT IMPROPERLY LIMITED CROSS-EXAMINATION OF METHOT

Fluor's Response argues that "Relators strategy was to call Mr. Methot for the sole

purpose of eliciting his failure of recollection and then to call him a liar." R.796 at 13. Fluor adds that "Relators sought to double down on this accusation by tying his lack of recall with the fact that he had been paid" a substantial amount of money by Fluor (billing for 330 hours) in connection with his testimony. *Id.* Fluor is correct. That is exactly what Relators wanted to do, and it was improper to have prevented Relators from doing it.

Far from being required to accept at face value Mr. Methot's lack of memory—and thus inability to testify to the glaring contradictions between that disclosure and other evidence—it was more than reasonable for the jury to infer that he was lying, and in turn covering up facts helpful to Relators. At bottom, Fluor trumpeted Mr. Methot's qualifications and credentials, and essentially asked the jury to "trust him" that the 2014 DOD IG disclosure told the whole story; Relators were prevented from challenging his selective lack of memory as an actual lack of candor for the jury's consideration on a critical issue. That was unfair.[10]

Fluor also argues that Relators won the property claim, and that cross-examination exposing the lack of Mr. Methot's credibility thus would not have affected the jury's damages calculation. This argument fails in light of Mr. Methot's disclosure, the very point of which was to minimize the extent and magnitude of the fraud. Effectively preventing cross-examination of Mr. Methot directly impeded Relators' ability to establish the full damages.

## VI. THE COURT ERRED BY REFUSING TO ALLOW RELATORS TO CROSS FLUOR'S EXPERTS ON MATERIAL THEY DID NOT REVIEW TO REACH THEIR OPINIONS

The Court improperly prevented Relators from asking Fluor's experts about what

---

[10] Fluor continues to maintain that questioning would have required its counsel to assert a privilege in front of the jury. The argument remains unavailing. There was no risk that Mr. Methot was going to testify about anything that could have been privileged. He gave a lengthy deposition, before which he reviewed all of the documents, and was not wavering from his insistence that he did recall many relevant facts.

12

materials they chose not to review before reaching their conclusions, and why. *See* R. 785-1 at 21–24. Black-letter evidentiary law allows parties to cross-examine experts on material they reviewed and did not rely on, and on what material they *did not* consider and why. *Id.* at 22–24 (citing cases). Fluor does not (and cannot) rebut this. Instead, Fluor responds with a strawman, painting the questions as attempts to introduce "inadmissible materials on which [the experts] did not rely." R. 796 at 25. Fluor's characterization simply does not match reality. *See* Tr. at 7604:7–9 (asking Richardson, "were you relying on [Fluor's counsel] to show you what you wanted to see, or did you say show me all?", after which objection sustained); *id.* at 8293:9–16 (asking Ruckdaschal if he had "seen [two] documents as part of [his] review," and whether they were "listed in [his] report as things [he] reviewed" (they were), after which objection sustained)[11]; *id.* at 6691:10–14 (asking Rice, "[w]ere you presented with any evidence of what the other assignable causes were for this spike before this PMSA?", after which objection was sustained).

## VII.    THE COURT ERRED BY PREVENTING RELATORS FROM REBUTTING NEW DEFENSE EVIDENCE

As explained in Relator's opening brief, it was error to bar rebuttal of new facts Fluor introduced during its case-in-chief. *See* R. 785-1 at 24–26. Fluor responds, as it did at trial, by contending its evidence created no "unfair[] surprise[]." R. 796 at 27–28 (citation omitted). And going one step further, Fluor now also argues that Relators were not entitled to rebut any facts they "could have asked" witnesses about during Relators' case-in-chief. *Id.* at 28. These are rules

---

[11] Fluor contends that Relators waived the right to challenge the Court's ruling on their questions to Ruckdascahl because after the Court sustained Fluor's objection, Relators moved on. *See* R. 796 at 25 n.13. Parties are not obligated to ask the same objectionable questions repeatedly to preserve issues for appeal. The case Fluor cites in support plainly does not apply here. There, the appellant who challenged the district court's blanket exclusion of evidence had never even attempted to "offer[] the missing evidence" into admission. *Gibbons v. Gibbs*, 167 F.4th 131, 139 (4th Cir. 2026). Not so here. Relators asked the question, Fluor objected, the Court sustained the objection; Relators had to move on because the Court's time restrictions.

of Fluor's creation. The Fourth Circuit does not require a party to demonstrate surprise or some sort of "due diligence" to present a rebuttal. *See Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 458–59 (4th Cir. 2010). And new perspectives on familiar topics, like Snyder's discussion of critical item shortages and Richardson's discussion of DX 801, still warrant rebuttal. *Benedict v. Hankook Tire Co. Ltd.*, 2018 WL 3352952, at *3, *19–22 (E.D. Va. July 9, 2018).

## VIII. THE COURT ERRED BY BARRING TESTIMONY OF JIM SHERMAN AND DISMISSING THE ESTIMATING THEORY HIS OPINIONS EXPLAINED

The Court also erred by excluding Sherman as an expert, and again by allowing Richardson and Walter to testify about the topics on which they rebutted Sherman, despite barring Sherman. Fluor does not even attempt to contest the merits of either point. *See* R. 796 at 29. First, the Court excluded Sherman because he analyzed labor estimates that Fluor presented to the government, which formed the basis for Fluor's billing for labor, rather than considering the invoices themselves. *See* R. 601 at 10. Yet the Fourth Circuit recognizes FCA claims premised on inflated estimates. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 787–91 (4th Cir. 1999). Second, Richardson's and Walter's opinions on staffing were disclosed solely to rebut Sherman's opinion. *See* R. 785-18 at 4, 42–43; R. 785-19 at 24–30 ("Counsel for Fluor asked me to analyze and respond to Mr. Sherman's report…"). A party may not introduce an expert to "rebut" excluded testimony. *See Rybas v. Riverview Hotel Corp.*, 2015 WL 10096189, at *6 (D. Md. Jan. 15, 2015); *The Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*, 2010 WL 2653373, at *7 (E.D. Va. July 2, 2010).

## IX. THE COURT ERRED BY UNDULY RESTRICTING CROSS-EXAMINATION ON WITNESS PAYMENTS

Fluor first renews its trial argument that Relators are misreading the agreements, but Relators are not misreading them. The agreements say what they say. They require the witnesses to perform services in exchange for money, and they restrict what the witnesses can disclose without

14

Fluor's "authorization." Fluor is still advocating its own reading of the agreements, but the core problem is that the agreements should have been presented and argued to the jurors, who should have been permitted to make their own factual determination about what they mean and how they might impact the motives and biases of the witnesses they heard.[12]

As for the propriety of the agreements, Relators stand on the record, case cites, and arguments they have already made. They have made multiple filings on this subject, and have said everything they can say about these agreements. In Relators' view, parties cannot pay witnesses in the manner that occurred here. If the judicial system blesses the ability of wealthy corporations like Fluor to pay lay witnesses tens of thousands of dollars (not to mention doing so secretly), the institution of jury trials will be fundamentally tarnished, if not shattered.[13]

As it did at trial, Fluor argues that the Court's guardrail limitations on the questions Relators could ask supposedly sufficed. Fluor, however, mischaracterizes them as "exemplar" questions; these were the only permissible questions, not just examples. Tr. 1789:23-1791:1. And as Relators pointed out correctly at trial, these questions actually made things worse for Relators, by leaving the jury with the unfair and inaccurate impression that the agreements were normal and legitimate.[14]

---

[12] Fluor also argues that Relators "misrepresent" what services the agreements cover, R.796 at 21, but Fluor's self-serving description is not corroborated. To this day, Fluor is withholding the invoices describing what the witnesses did to earn the money. Having declined to require Fluor to disclose those descriptions even in camera, this Court is in no position to just accept Fluor's descriptions.
[13] Fluor's attempt to distinguish the federal anti-gratuity statutes falls short. Fluor went far beyond paying witnesses just for the "reasonable cost" of travel, subsistence, or time "lost in attendance at any ... trial, hearing, or proceeding." R. 796 at 22, citing 18 U.S.C. § 201(c)(2). As Fluor points out, Relators are not prosecutors, and do not charge anyone with crimes. But these witness payments do violate this statute—in both letter and spirit. No matter how uncomfortable that may be for everyone, they plainly do. And to the extent there is any uncertainty about that, Relators were prevented from discovering the full amounts paid to these lay witnesses for their "time," and in additional perks like first class travel; this was also error.
[14] Fluor continues to defend the denials at ten of the witnesses' depositions that they worked for Fluor, even while they were on paying contracts to provide services. That misdirection kept the agreements secret from Relators, who therefore did not know to ask for them.

15

Respectfully submitted,

/s/ Andrew Hand
Andrew Hand

Richard Harpootlian (Fed. ID No. 1730)
Andrew Hand (Fed. ID No. 12176)
RICHARD A. HARPOOTLIAN P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810
rah@harpootlianlaw.com

Jonathan Loevy
Michael Kanovitz
Daniel Twetten
Anand Swaminathan
Frank Newell
Anna Dover
Gwen Parker
Heather Sticht
Dominique Gilbert
Alexandra Wolfson
Aadi Tolappa
LOEVY & LOEVY
311 N. Aberdeen St., Third Floor
Chicago, IL 60607
Telephone: (312) 243-5900
Facsimile: (312) 243-5902
anand@loevy.com
*Attorneys for Relators*
*Charles R. Shepherd*
*and Danny V. Rude*

Frank L. Eppes (Fed. ID No. 1003)
EPPES & PLUMBLEE, PA
PO Box 10066
Greenville, SC 29603
Telephone: (864) 235-2600
Facsimile: (864) 235-4600
feppes@eppesandplumblee.com
*Attorney for Relator Robert Scott*
*Dillard*

16

Judah N. VanSyckel
SALUDA LAW, LLC
137 E. Butler Street
Lexington, SC 29072
Telephone: (803) 939-6927
Facsimile: (803) 902-8004
judah@saludalaw.com
*Attorney for Relator Rickey Mackey*