**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

UNITED STATES OF AMERICA *ex rel.*
CHARLES R. SHEPHERD; DANNY V.
RUDE; ROBERT SCOTT DILLARD; and
RICKEY MACKEY,

     Plaintiff-Relators,

  v.

FLUOR CORPORATION; FLUOR
INTERCONTINENTAL, INC.,

     Defendants.

Civil Action No. 6:13-cv-02428-JD
Hon. Joseph Dawson, III

**FLUOR'S OPPOSITION TO RELATORS'
<u>MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

Mark C. Moore (Fed. ID No. 4956)
Michael A. Parente (Fed. ID No. 13358)
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 540-2146
Facsimile: (803) 727-1458
MMoore@maynardnexsen.com

Konstantine P. Diamaduros (Fed. ID No. 12368)
MAYNARD NEXSEN PC
104 South Main Street, Suite 900 (29601)
Post Office Drawer 10648
Greenville, SC 29603-0648
Telephone: (864) 370-2211
Facsimile: (864) 282-1177
KDiamaduros@maynardnexsen.com

Craig D. Margolis (admitted *pro hac vice*)
Tirzah S. Lollar (admitted *pro hac vice*)
Christian D. Sheehan (admitted *pro hac vice*)
Elizabeth A. Carney (admitted *pro hac vice*)
Katelyn M. Deibler (admitted *pro hac vice*)
Elliot S. Rosenwald (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, Northwest
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
craig.margolis@arnoldporter.com

Rachel K. Higgins (admitted *pro hac vice*)
Sahrula Kubie (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Counsel for Defendants Fluor Corporation and Fluor Intercontinental, Inc.*

July 2, 2026

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

LEGAL STANDARD............................................................................................... 5

ARGUMENT ........................................................................................................... 6

I.     Step One: A Reasonable Lodestar Figure is No More Than $10,930,728 ......................... 6

       A.     The Court Should Substantially Reduce the Hours for Which Relators Are Entitled to Recover Fees ................................................................. 7

       B.     Relators' Proposed Hourly Rates Are Inflated ..................................................... 19

              1.     Reasonable Hourly Rates in the District of South Carolina ..................... 19

              2.     Relators Are Not Entitled to Out-of-District Rates................................. 20

              3.     Relators Are Entitled to No More Than At-Cost Reimbursement for Contract Attorneys ............................................................... 24

II.    Step Two: The Court Should Reduce the Lodestar 30% for Unsuccessful Claims ............................................................................................. 27

III.   Step Three: The Lodestar Figure Should be Further Reduced by 50% for Lack of Success on the Property Management Claim .............................................. 30

IV.    Relators' Request for $5,564,983.97 in Expenses Should Be Denied or Significantly Reduced.................................................................................. 32

CONCLUSION....................................................................................................... 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ams. for Prosperity v. Grewal*,
No. 19-cv-14228, 2021 WL 1153194 (D.N.J. Mar. 26, 2021) ................................................15

*Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*,
No. 05-cv-2782-MBS, 2015 WL 4469765 (D.S.C. July 21, 2015) ...................................11, 12

*Awalt v. Marketti*,
No. 11-cv-06142, ECF 643 (N.D. Ill. May 23, 2018)................................................................23

*BAM Cap., LLC v. Houser Transp., Inc.*,
No. 19-cv-00105, 2020 WL 97459 (W.D.N.C. Jan. 8, 2020)....................................................38

*Barber v. Kimbrell's Inc.*,
577 F.2d 216 (4th Cir. 1978) ......................................................................................................6

*Barranco v. 3D Sys. Corp.*,
No. 13-cv-00412, 2018 WL 4512186 (D. Haw. June 15, 2018)................................................25

*Benjamin v. Sparks*,
No. 4:14-CV-186-D, 2020 WL 1943474 (E.D.N.C. Apr. 22, 2020) .........................................35

*Blum v. Stenson*,
465 U.S. 886 (1984)...............................................................................................................2, 7

*Broyles v. Dir., Off. of Workers' Comp. Programs*,
974 F.2d 508 (4th Cir. 1992) ....................................................................................................11

*Buffington v. Baltimore County*,
913 F.2d 113 (4th Cir. 1990) ....................................................................................................34

*Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*,
No. 10-cv-01207, 2016 WL 5341247 (E.D. Cal. Sept. 23, 2016) ............................................33

*Carroll v. Northampton Rests., Inc.*,
No. 21-cv-115, 2024 WL 1223442 (E.D. Va. Mar. 21, 2024)..................................................15

*Cherry v. Champion Int'l Corp.*,
186 F.3d 442 (4th Cir. 1999) ....................................................................................................35

*Chrysafis v. Marks*,
No. 21-cv-2516, 2023 WL 6158537 (E.D.N.Y. Sept. 21, 2023) ..............................................13

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
   954 F. Supp. 2d 276 (S.D.N.Y. 2013)................................................................25

*Collins v. Village of Woodbridge*,
   197 F.R.D. 354 (N.D. Ill. 1999).........................................................................14

*Constellis Emp. Stock Ownership Plan ex rel. Brundle v. Wilmington Tr., N.A.*,
   258 F. Supp. 3d 647 (E.D. Va. 2017) ................................................................14

*Cook v. Jones & Jordan Eng'g, Inc.*,
   No. 06-cv-00627, 2009 WL 3169152 (S.D. W. Va. Sept. 29, 2009).......................39

*Cosenza v. City of Worcester*,
   No. 18-cv-10936, ECF 295 (D. Mass. filed Mar. 1, 2023)....................................23

*Daly v. Hill*,
   790 F.2d 1071 (4th Cir. 1986) ....................................................................32, 34

*Denton v. PennyMac Loan Servs., LLC*,
   252 F. Supp. 3d 504 (E.D. Va. 2017) ...........................................................15, 32

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. 2016) .......................................................................25

*Doe v. Kidd*,
   656 F. App'x 643 (4th Cir. 2016) ......................................................................31

*E. Associated Coal Corp. v. Dir., Off. of Workers' Comp. Programs*,
   724 F.3d 561 (4th Cir. 2013) ..............................................................................5

*Epps v. City and County of Denver*,
   No. 20-cv-01878, ECF 380 (D. Colo. filed June 1, 2022)....................................23

*Fair Hous. Council of Greater Wash. v. Landow*,
   999 F.2d 92 (4th Cir. 1993) ..........................................................1, 2, 16, 40

*Fernandes v. Montgomery County*,
   No. CIV. SAG10752, 2013 WL 6330705 (D. Md. Dec. 3, 2013) .........................32

*Fox v. Vice*,
   563 U.S. 826 (2011).............................................................................................5

*Francisco v. Verizon S., Inc.*,
   272 F.R.D. 436 (E.D. Va. 2011) .......................................................................39

*Goodwin v. Metts*,
   973 F.2d 378 (4th Cir. 1992) ...........................................................................29

*Guillen v. Armour Home Improvement, Inc.*,
 No. DLB-19-2317, 2024 WL 1346838 (D. Md. Mar. 29, 2024) ..............................................31

*Hagan v. MRS Assocs., Inc.*,
 No. Civ. A. 99-3749, 2001 WL 531119 (E.D. La. May 15, 2001) .........................................12

*Hanwha Azdel, Inc. v. C&D Zodiac, Inc.*,
 No. 6:12-CV-00023, 2015 WL 1417058 (W.D. Va. Mar. 27, 2015) ......................................35

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983)......................................................................................................... *passim*

*Hogan v. Cherokee County*,
 No. 18-cv-00096, 2022 WL 526008 (W.D.N.C. Feb. 22, 2022) ...........................................38

*Honestech, Inc. v. Sonic Sol.*,
 725 F. Supp. 2d 573 (W.D. Tex. 2010)..................................................................................14

*Hudson v. Pittsylvania County*,
 No. 11-cv-00043, 2013 WL 4520023 (W.D. Va. Aug. 26, 2013) ..........................................13

*Jones v. Dancel*,
 792 F.3d 395 (4th Cir. 2015) .................................................................................26, 32, 33, 38

*Kendrick v. Carter Bank & Tr., Inc.*,
 No. 19-cv-00047, 2025 WL 1569070 (W.D. Va. June 3, 2025)..............................................35

*Lynn v. Maryland*,
 295 F. Supp. 2d 594 (D. Md. 2003).......................................................................................34

*Mancilla v. Chesapeake Outdoor Servs., LLC*,
 No. 22-cv-00032, 2024 WL 2803947 (D. Md. May 31, 2024)...............................................31

*Martin v. Cavalier Hotel Corp.*,
 48 F.3d 1343 (4th Cir. 1995) ................................................................................................13

*McAfee v. Boczar*,
 738 F.3d 81 (4th Cir. 2013) ............................................................................................ *passim*

*Mebane v. GKN Driveline N. Am., Inc.*,
 No. 18-cv-892, 2025 WL 2784076 (M.D.N.C. Sept. 30, 2025) ..................................15, 26, 32

*In re Metts*,
 642 B.R. 424 (Bankr. D.S.C. 2022).......................................................................................11

*Missouri v. Jenkins ex rel. Agyei*,
 491 U.S. 274 (1989)..........................................................................................................10, 11

iv

*Morris v. Bland*,
No. 5:12-cv-3177-RMG, 2015 WL 12910631 (D.S.C. Jan. 15, 2015)....................................12

*Nat'l Wildlife Fed'n v. Hanson*,
859 F.2d 313 (4th Cir. 1988) ...............................................................................................3

*NCO Fin. Sys., Inc. v. Montgomery Park, LLC*,
No. GLR-11-1020, 2023 WL 2571760 (D. Md. Mar. 20, 2023) ...............................................5

*Newport News Shipbuilding & Dry Dock Co. v. Holiday*,
591 F.3d 219 (4th Cir. 2009) .............................................................................................20

*Norinder v. Fuentes*,
657 F.3d 526 (7th Cir. 2011) .............................................................................................33

*Palmetto Bluff Invs., LLC v. Westchester Surplus Lines Ins. Co.*,
No. 9:23-cv-05263-DCN, 2026 WL 674265 (D.S.C. Mar. 10, 2026) ....................................13

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)...........................................................................................................31

*Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*,
Nos. 1:17-cv-3037-TDS, 1:17-cv-3038-TDS, 2019 WL 13150582
(D.S.C. May 31, 2019)........................................................................................................35

*Priestley v. Astrue*,
651 F.3d 410 (4th Cir. 2011) .............................................................................................18

*Prison Legal News v. Stolle*,
129 F. Supp. 3d 390 (E.D. Va. 2015) ..............................................................................9, 18

*Prison Legal News v. Stolle*,
681 F. App'x 182 (4th Cir. 2017) .......................................................................................31

*Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*,
887 F.3d 610 (4th Cir. 2018) ...............................................................................................8

*Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*,
Nos. 15-cv-156, 13-cv-607, 2017 WL 4400754 (E.D.N.C. Sept. 29, 2017) .....................34, 39

*Robinson v. Equifax Info. Servs., LLC*,
560 F.3d 235 (4th Cir. 2009) ...............................................................................................6

*Rum Creek Coal Sales, Inc. v. Caperton*,
31 F.3d 169 (4th Cir. 1994) .................................................................................................8

*S. Appalachian Mountain Stewards v. Zinke*,
No. 16-cv-00026, 2017 WL 5147620 (W.D. Va. Nov. 6, 2017) ...........................................38

*S. Bost. Energy LLC v. Hartford Steam Boiler Specialty Ins. Co.*,
 No. 18-cv-596, 2019 WL 3843062 (E.D. Va. Aug. 15, 2019) ...............................................18

*S. Carolinians for Responsible Govt. v. Krawcheck*,
 No. 3:06-cv-1640-MBS, 2012 WL 2830274 (D.S.C. July 9, 2012) ......................................39

*Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*,
 730 F. Supp. 2d 513 (E.D. Va. 2010) ..................................................................................16

*Sines v. Kessler*,
 343 F.R.D. 311 (W.D. Va. 2022) .........................................................................................32

*Singbush v. Fla. Neurological Ctr., LLC*,
 No. 19-cv-603, 2022 WL 21830631 (M.D. Fla. Dec. 15, 2022) ..........................................22

*Spell v. McDaniel*,
 852 F.2d 762 (4th Cir. 1988) ...............................................................................................32

*State v. Murdaugh*,
 --- S.E.2d ---, 2026 WL 1322305 (S.C. May 13, 2026)........................................................22

*Stuart v. Walker-McGill*,
 No. 11-cv-804, 2016 WL 320154 (M.D.N.C. Jan. 25, 2016) ...............................................10

*Summers v. Adams*,
 No. 3:08-2265, 2010 WL 2179571 (D.S.C. May 26, 2010) ..................................................32

*Sun Publ'g Co. v. Mecklenburg News, Inc.*,
 823 F.2d 818 (4th Cir. 1987) .................................................................................................7

*Trimper v. City of Norfolk*,
 58 F.3d 68 (4th Cir. 1995) ....................................................................................... *passim*

*Triplett v. N.C. Dep't of Pub. Safety*,
 No. 15-cv-00075, 2017 WL 3840422 (W.D.N.C. Sept. 1, 2017) ..........................................39

*Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*,
 128 F. Supp. 3d 919 (E.D. Va. 2015) ...................................................................................11

*U.S. ex rel. Abbott-Burdick v. Univ. Med. Assocs.*,
 No. 2:96-1676-12, 2002 WL 34236885 (D.S.C. May 23, 2002)...........................................20

*U.S. ex rel. Coppock v. Northrop Grumman Corp.*,
 No. 98-cv-02143 (N.D. Tex. filed Sept. 10, 1998) ...............................................................23

*U.S. ex rel. Doe v. Acupath Labs., Inc.*,
 No. 10-4819, 2015 WL 1293019 (E.D.N.Y. Mar. 19, 2015).................................................21

*U.S. ex rel. Doe v. Biotronik, Inc.*,
   No. 09-cv-3617, 2015 WL 6447489 (E.D. Cal. Oct. 22, 2015)................................................21

*U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*,
   352 F.3d 908 (4th Cir. 2003) ...............................................................................................30

*U.S. ex rel. Kirchgessner v. James River Air Conditioning Co.*,
   No. 16-cv-232, 2019 WL 413547 (E.D. Va. Feb. 1, 2019) ...............................................21, 22

*U.S. ex rel. Maxwell v. Anham USA, Inc.*,
   No. 14-cv-156, 2020 WL 4460364 (E.D. Va. Aug. 3, 2020) ................................................27

*U.S. ex rel. Nichols v. Omni H.C., Inc.*,
   No. 4:02-cv-66, 2009 WL 365615 (M.D. Ga. Feb. 10, 2009) ...............................................30

*U.S. ex rel. Palmer v. C&D Techs., Inc.*,
   897 F.3d 128 (3d Cir. 2018)...................................................................................................14

*U.S. ex rel. Peterson v. Sanborn Map Co., Inc.*,
   No. 11-902, 2014 WL 2815592 (E.D. Mo. June 23, 2014) ...................................................21

*U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*,
   No. 06-cv-433, 2014 WL 691500 (S.D. Miss. Feb. 21, 2014) ...............................................21

*U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*,
   41 F.3d 1032 (6th Cir. 1994) .................................................................................................27

*U.S. ex rel. Young v. Somerset Farms, Inc.*,
   No. 02-2846, 2014 WL 2048181 (E.D. Pa. May 16, 2014)....................................................21

*United States v. AthenaHealth, Inc.*,
   No. 17-12125, 2022 WL 658654 (D. Mass. Mar. 3, 2022) ...................................................30

*United States v. Claris Vision, LLC*,
   No. 18-cv-00176, 2025 WL 3063169 (D.R.I. Nov. 3, 2025)..................................................21

*United States v. Everglades Coll., Inc.*,
   855 F.3d 1279 (11th Cir. 2017) .............................................................................................30

*United Supreme Council v. United Supreme Council of Ancient Accepted Scottish
   Rite for 33° of Freemasonry*,
   No. 16-cv-1103, 2019 WL 3848784 (E.D. Va. Aug. 15, 2019) .............................................25

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020) ...................................................................................25

*Wiskur v. Equifax Info. Servs., LLC*,
   No. 22-cv-1256, 2024 WL 2176451 (E.D. Va. Apr. 2, 2024)................................................10

*Zen42 LLC v. Wash. & Lee Univ.*,
    No. 17-cv-00053, 2018 WL 4625627 (W.D. Va. Sept. 26, 2018)...........................................19

*Zhang v. GC Servs., LP*,
    537 F. Supp. 2d 805 (E.D. Va. 2008) ......................................................................................5

**INTRODUCTION**

Relators asked the jury to award them close to $1 billion (before trebling); the jury's response was a verdict of $15 million (less than 2% of what they sought). In so doing, the jury rejected all but one of their five claims. Fantastically (and inaccurately) characterizing this result as "historic," Relators now hope to make up some of the difference by seeking so-called "reasonable" attorneys' fees and costs of the staggering sum of $95.8 million. This figure is six times the jury's damages award, more than triple what the government would receive as the true party-in-interest (assuming the verdict stands), and more than fifteen times what any of the Relators would individually net (before their lawyers take their cut through contingency agreements).[1] After scouring the public record, Fluor has found *no* False Claims Act ("FCA") case where a relator dared to seek fees so disproportionate to the verdict, let alone one where a court awarded anything close. The law explains this result—"[t]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorneys' fees." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

Relators' request is best explained as "gamesmanship"—an opener that they assume the Court will reject, all the while hoping that the resulting sum remains far above what they obtained from the jury. *See Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993). But a prevailing party "may not submit a fee request which is merely an opening bid in the quest for an award." *Id.* The FCA limits prevailing relators to "*reasonable* expenses which the court finds to have been *necessarily* incurred, plus *reasonable* attorneys' fees and costs." 31 U.S.C. § 3730(d)(2) (emphases added). Relators bear the burden to establish reasonableness and

---

[1] The math here assumes that the Court would award the Relators here the maximum 30% of the trebled damages provided by law, *see* 31 U.S.C. § 3730(d)(2), which would then be shared among five individuals (the four named relators and Nix).

necessity, *Blum v. Stenson*, 465 U.S. 886, 897 (1984); however, their petition is so plagued by deficiencies and questionable billing practices that the only reasonable conclusion is that they "intended to submit an outrageously excessive fee petition in the hope that the district court would at least award some, preferably high, percentage of the requested fees." *Landow*, 999 F.2d at 98. An award of reasonable fees and costs is built from the bottom up, not the top down, and must be limited (to borrow a phrase from Relators) to what was "needed to get the recovery" obtained at trial. Dkt. 793 at 2.

Relators' petition is deficient at each step the lodestar analysis requires. *See McAfee v. Boczar*, 738 F.3d 81, 88–89 (4th Cir. 2013) (setting forth the "three-step process" required for "[t]he proper calculation of an attorney's fee award"). This process entails fairly simple math— requiring a calculation of *reasonable* hours multiplied by a *reasonable* hourly attorney rate *before* adjusting for the outcome of the case. *See id.* Relators inflate all of these.

***First***, Relators inflate the initial lodestar figure by claiming a grossly excessive number of hours multiplied by grossly excessive rates. Relators' request is based on vague time entries and indecipherable block billing—such as Mr. Loevy's billing 105 hours each week of trial with the description "Nothing but trial" (purporting to bill from 6 am to 11 pm on *every* weekday, regardless of whether trial was held that day, and 10 hours per day on weekends). There are numerous other examples of facially suspect time entries, such as a contract attorney billing *exactly* 55 hours per week for approximately 70 straight weeks (nearly a year and a half including weeks with major holidays); time entries with more than 24 hours in a single day (as high as 30); and billing to attend trial twice in a single day. To make matters worse, Relators admit that many billing entries were mere "estimate[s]" and still others were "revised" *after* the jury returned its verdict. And, there was consistent overstaffing—70% of the over 50 depositions had at least three attorneys attending,

and several depositions had as many as six attorneys present.  Partners (with their correspondingly higher billing rates) also regularly performed associate-level work like legal research and document management.  Paying clients would never tolerate these practices, and as the Supreme Court has held, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Hensley*, 461 U.S. at 434 (citation omitted).  As reflected in the Declaration of Fluor's attorneys' fees expert Grant Stiefel, a reasonable number of hours is no greater than 27,421 for Relators' law firm attorneys.  Ex. 3, Stiefel Decl. ¶ 131.[2]

Relators further inflate their fee petition by seeking unreasonable rates.  The Court should apply the prevailing hourly rates in South Carolina, because any number of highly qualified local attorneys could have ably represented Relators.  Indeed, Relators retained some of the State's most accomplished plaintiff-side practitioners (such as Dick Harpootlian and Frank Eppes), but had them do nothing—either during discovery or at trial.  While it was certainly Relators' prerogative to retain the Chicago-based Loevy & Loevy as their counsel, Relators cannot credibly claim that "no attorney, with the required skills, is available locally," as is required when a party seeks out-of-district rates.  *See Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988).  Even if Relators were entitled to a so-called "national rate," they have not carried their burden of proving that such a rate exists, let alone what it is.  Nor have Relators shown that the Loevy & Loevy attorneys who worked on this case have been awarded anything close to the rates they seek here; instead, data from recent cases, in jurisdictions with higher billing rates than South Carolina, show that courts have applied rates nearly $1,000 per hour lower than what Relators now propose.

---

[2] Relators' fee petition also includes time entries totaling more than 54,000 hours for contract attorneys—the equivalent of 28 years' worth of work (assuming a standard 2,000 billable hour year).  Because Relators would be entitled only to reimbursement for the actual costs incurred to pay contract attorneys and Relators have failed to provide any documentation of those costs, the Court should decline to award any fees or expenses related to contract attorneys.

***Second***, the Court must subtract fees for hours spent on unsuccessful claims. *McAfee*, 738 F.3d at 88. Relators, however, do not discount for their failed efforts to convince the government to intervene in this case; nor for claims they pursued in discovery but abandoned at trial (e.g., fit-for-duty exams, over-estimating, Total Case Incidence Rates, "illegal acquisition and use of government material," AM-2 matting, and performing work "at risk"), nor for the claims on which they went to trial and lost (i.e., award fee, staffing, and retaliation). Because Relators have given the Court no reliable basis to determine how much time was spent on their lone successful claim (as opposed to all others), the Court should apply a 30% deduction to the lodestar.

***Third***, Relators do not account for their disappointing result on the sole claim on which they won at trial. Even on the property management claim, the jury awarded only $15 million of the $222 million Relators sought. Courts must "compar[e] [a plaintiff's] lofty expectations" against a "paltry damages award" and appropriately reduce "an excessive fee award that would . . . constitute a windfall." *See McAfee*, 738 F.3d at 92. Relators have not grappled with this reality; indeed, they try instead to improperly "get well" on their poor verdict through a fee claim. This should result in a 50% reduction.

***Finally***, Relators' claim for a similarly outrageous $5.5 million in expenses is unsupported and based entirely on an unverified, unsworn Excel spreadsheet without supporting receipts or invoices. The complete lack of documentation alone is grounds to deny Relators' expense request in its entirety. *See Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995). Moreover, Relators' spreadsheet reflects expenses that are plainly improper, such as hundreds of dollars spent at cocktail bars in Chicago a month after the jury verdict; thousands of dollars for LinkedIn premium subscriptions; substantial amounts for limousine services; and purchases at what appear to be liquor stores. Perhaps most strikingly, Relators' half-million-dollar request for data-hosting

expenses in the *first four months* of 2026 is nearly identical to what they paid in *all* of 2025. Relators have not demonstrated that any of the expenses they seek were reasonable and necessary.

For all of these reasons and as discussed in greater detail below, the Court should award no more than $3,825,755 in reasonable attorneys' fees and no costs or expenses.[3] For the Court's convenience, Fluor has attached as Exhibit 1 a summary of the reductions Fluor proposes at each step of the analysis.

## LEGAL STANDARD

A prevailing relator is entitled to "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(2). "Principles construing what constitutes a 'reasonable fee' apply uniformly to federal fee-shifting statutes." *E. Associated Coal Corp. v. Dir., Off. of Workers' Comp. Programs*, 724 F.3d 561, 570 n.3 (4th Cir. 2013). First and foremost, the fee-seeking party must "submit appropriate documentation" to establish an entitlement to an award. *Fox v. Vice*, 563 U.S. 826, 838 (2011). Then, "[t]he proper calculation of an attorney's fee award involves a three-step process." *McAfee*, 738 F.3d at 88.

---

[3] Relators attempt to bait Fluor into disclosing its own counsels' hours and rates, claiming that they "are entitled to fees at least commensurate to those that Fluor's counsel charged Fluor in this case." Dkt. 793 at 25. Fluor declines to take this bait (notwithstanding Relators' wildly inaccurate speculation) because "opposing counsel's fees are not relevant" to a party's request for attorneys' fees. *NCO Fin. Sys., Inc. v. Montgomery Park, LLC*, No. GLR-11-1020, 2023 WL 2571760, at *2 (D. Md. Mar. 20, 2023). Such requests improperly "shift the burden . . . of proving the reasonableness of [Relators'] own fees by having defense counsel produce their time sheets and defend the reasonableness of their efforts." *Zhang v. GC Servs., LP*, 537 F. Supp. 2d 805, 809 (E.D. Va. 2008). Relators alone bear this burden, as the Court recognized in denying their request for discovery from Fluor on this question. *See* Dkt. 791; *accord, e.g., E. Assoc. Coal Corp.*, 724 F.3d at 569 (citing *Hensley*, 461 U.S. at 433) ("The party seeking attorneys' fees has the burden of proving that the rate claimed and the hours worked are reasonable.").

- "First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" *Id.* (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)).  It must also assess the lodestar against a set of twelve factors to determine whether it is appropriate to depart from this figure, recognizing that, at this step, "departures from the lodestar figure are to occur rarely and only in extraordinary cases." *Id.* at 88, 89.[4]

- "Next, the court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Id.* at 88 (quoting *Robinson*, 560 F.3d at 244).

- "Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *Id.* (quoting *Robinson*, 560 F.3d at 244).  A court commits reversible error if it "overstate[s] [a prevailing party's] success." *See id.*

## ARGUMENT

### I.    Step One: A Reasonable Lodestar Figure is No More Than $10,930,728

In his attached Declaration, Grant Stiefel, one of the country's foremost experts on attorney billing, presents a detailed model recalculating a reasonable number of hours for Relators' work on this case.  As summarized in the chart attached as the first exhibit to Mr. Stiefel's Declaration,

---

[4] The twelve factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 88 n.5 (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)).

6

Mr. Stiefel performed a line-by-line review of Relators' fee requests, applied deductions to certain categories of improper billings, and then multiplied the remaining hours by reasonable rates to arrive at a proposed lodestar. Ex. 3-W, Proposed Fee Model. As described below and in Mr. Stiefel's Declaration, that reasonable lodestar is no more than $10,930,728 prior to reductions for lack of success. Ex. 3, Stiefel Decl. ¶ 140.[5]

A.     The Court Should Substantially Reduce the Hours for Which Relators Are Entitled to Recover Fees

Relators have failed to meet their burden of demonstrating they are entitled to claim 110,143 hours of billed time. *See Blum*, 465 U.S. at 897. "It is the responsibility of counsel to provide only necessary services to their clients." *Sun Publ'g Co. v. Mecklenburg News, Inc.*, 823 F.2d 818, 820 (4th Cir. 1987). Therefore, like an attorney providing services to a paying client, a party seeking attorneys' fees from an opponent must exercise billing judgment and may not recover fees related to "excessive, redundant, or otherwise unnecessary [time]." *Hensley*, 461 U.S. at 434. Yet, Relators request more than $90 million in fees based on unsupported and incomplete records that are in places facially suspect and in others plagued by obvious errors and unacceptable billing practices.

At the outset, Fluor is constrained to respond to Relators' assertions that Fluor forced them to expend the hours for which they seek compensation by refusing to engage in supposedly "reasonable" settlement discussions. Dkt. 793 at 1, 8. There was nothing reasonable about Relators' approach to settlement. In December 2023, Relators demanded *$295 million*, excluding their retaliation claims, which Relators proposed to resolve separately. Ex. 4, Swaminathan Letter

---

[5] This figure excludes fees for contract attorneys, which Relators did not sufficiently document. *See infra* at 24–26. Mr. Stiefel also calculated a lodestar including contract attorneys' time, which is $3,019,360 before any reduction is provided for lack of success. Ex. 3, Stiefel Decl. ¶ 139.

(Dec. 27, 2023) at 1, 4. Relators refused to revisit that figure during mediation in late 2025. Fluor would have considered any reasonable settlement demand in good faith, but Relators' outrageous requests did not allow for productive discussions. As the jury's verdict confirms, Relators grossly overvalued their case.[6] Accordingly, any suggestion by Relators that Fluor's posture in settlement discussions justifies their fee request is meritless.

Fluor now discusses below some of the most glaring deficiencies in Relators' motion and refers the Court to the Declaration of Mr. Stiefel for a more thorough discussion. *See generally* Ex. 3, Stiefel Decl.

***Vague Time Entries & Block Billing.*** "[G]eneralized billing that inadequately describes the tasks performed within each block of time for which the party seeks fees" is improper. *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 621 (4th Cir. 2018). The Fourth Circuit has "frequently exhorted counsel to describe specifically the tasks performed, a practice which is especially necessary when [a court] [considers] an award in a case where the plaintiff has not prevailed on all the claims." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994).

Nevertheless, nearly 25,000 hours are based on records replete with vague and block-billed time entries. *See* Ex. 3, Stiefel Decl. ¶ 43; *see also* Ex. 3-D, Block Billed Entries. For example,

---

[6] Relators' December 2023 settlement demand raises additional questions about their request for nearly $96 million in attorneys' fees and expenses. In that letter, Relators estimated that they would incur $43 million for the life of the case—a grossly excessive figure in itself but less than half of what they now ask the Court to award. *Id.* at 4. It is difficult to imagine that Relators overran their estimate by $50 million. And if they did, that is not the sort of thing that a reasonable paying client would tolerate, and thus not compensable under a fee-shifting provision. *See Hensley*, 461 U.S. at 434.

Relators seek reimbursement for *hundreds* of internal meetings described only as "Team Call";[7] "Team mtg";[8] "Call with AS re: Next steps";[9] among similarly unhelpful descriptors. These entries "fail to document what matters were discussed, how they were related to the case, or why they advanced the efficient litigation of this matter." *See Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 400 (E.D. Va. 2015). Likewise, Relators seek fees related to research[10] and document review,[11] but provide the Court with little to no detail to substantiate that the billed hours are reasonable or even spent on their single successful claim, as opposed the many others on which the jury found against them or that were abandoned along the way to trial.

Among the more egregious examples comes from Relators' lead trial counsel, who block billed his time for each week in a single entry, with seven entries of 105 hours each for "Nothing but trial," regardless of how many witnesses he was responsible for or even how many days the Court held trial that week. For example, the first week of trial had only three trial days, *see* Dkt. 651, yet Mr. Loevy billed 105 hours for that week, just like all the others. Moreover, the notion that Mr. Loevy worked from "6am to 11pm" on each weekday, Dkt. 793-1, Pt. 1 at 173—without breaks or time to deal with personal matters—beggars belief. Indeed, Mr. Loevy was observed in outdoor exercise during this time window and is known to have returned to Chicago on at least

---

[7] *See* Dkt. 793-1, Pt. 1 at 112 (entries on February 19, 2021, March 3, 2021, April 26, 2021, May 4, 2021, May 17, 2021, August 12, 2021, August 24, 2021, August 30, 2021, September 7, 2021, September 15, 2021, September 20, 2021 all between 0.5 to 1.0); *see also id.* at 115, 119 (similar).

[8] *See id.* at 73, 84, 114 (multiple billing entries).

[9] *See id.* at 113, 115, 117, 119 (multiple billing entries).

[10] *See* Dkt. 793-1, Pt. 1 at 229–30 (multiple 7.75 and 8.0 hour entries for "TCIR Research – Fluor" with no further detail); *id.* at 13, 15 (numerous time entries by Ms. Gilbert for "fluor SJ research").

[11] For example, many of the contract attorneys billed thousands of hours of work for "Document Review" or "Review relativity docs" without any indication as to the subject matter of the documents or what claims they related to. *See generally* Dkt. 793-1, Pt. 2.

one, if not more, trial weekends. Because Mr. Loevy failed to break out his time into discrete tasks, the Court cannot assess the reasonableness of Relators' request. The Court's task is made even more difficult since Mr. Loevy's time records (along with many others) were not contemporaneously kept. *See Wiskur v. Equifax Info. Servs., LLC*, No. 22-cv-1256, 2024 WL 2176451, at *5 (E.D. Va. Apr. 2, 2024) (failure to contemporaneously document time "reduces the reliability of the records").[12]

Additionally, Relators' heavy use of block billing is of particular concern because many of the tasks for which they bill are clerical or administrative in nature and thus not compensable. The Supreme Court has explained that tasks that fall into this category include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989) ("Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it" (citation omitted)); *see also Stuart v. Walker-McGill*, No. 11-cv-804, 2016 WL 320154, at *10 (M.D.N.C. Jan. 25, 2016) (travel arrangements). Here, Relators seek recovery, for example, for time attorneys spent booking travel;[13] "review[ing] timesheets of employees who reported working 84 hours or more during the week";[14] billing their time to this case;[15] printing

---

[12] *See* Dkt. 793-1, Pt. 1 at 141 (April 6, 2025 and April 7, 2025 time entries for "[r]eview hours to estimate hours to date in case"); *id.* at 145 (April 16, 2026 time entry to "review timesheet entries for fee petition and review relevant corr and revise entries"); *see also id.* at 171 (0.25-hour time entry for "Conference with Gilbert, D. re: timesheet edits to be made"); *id.* at 8 (1.25-hour time entry for "updating timekeeping -- go through gmail to update time records for Fluor tally").

[13] *See* Dkt. 793-1, Pt. 1 at 228–29 (multiple billing entries by Ms. Scott for booking travel).

[14] *See* Dkt. 793-2, Pt. 2 at 108 (Ms. Carfield explaining that this was her only work on this case). This assertion is confusing given that Fluor did not produce timesheets.

[15] *E.g.*, Dkt. 793-1, Pt. 1 at 8, 171 (multiple entries by multiple attorneys).

documents;[16] organizing a "to-do list";[17] and correspondence related to invoices.[18]  Purely clerical, ministerial, and administrative work is not compensable in an attorneys' fee award.  *Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 929–30 (E.D. Va. 2015) (collecting cases); *see also Jenkins*, 491 U.S. at 288 n.10.  By block billing, Relators prevent the Court from being able to assess how much time was spent on potentially compensable legal services versus clerical and administrative tasks.

As set forth in Mr. Stiefel's Declaration, in light of the serially deficient description of counsel's time, a 20% reduction in the number of block-billed hours is appropriate.  *See* Ex. 3, Stiefel Decl. ¶ 47.  To avoid double counting, Mr. Stiefel applies this reduction only after more specific deductions have been applied, resulting in a recommended reduction of 3,628 hours based on 18,140 block-billed hours that are not subject to other deductions.  Ex. 1, Fee Award Summary.

***Quarter-Hour Billing.***  The Loevy & Loevy attorneys seek to recover fees in quarter-hour increments, a practice that is "disfavored" because it artificially inflates hours.  *See Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, No. 05-cv-2782-MBS, 2015 WL 4469765, at *9 (D.S.C. July 21, 2015); *In re Metts*, 642 B.R. 424, 430 (Bankr. D.S.C. 2022); *Broyles v. Dir., Off. of Workers' Comp. Programs*, 974 F.2d 508, 510–11 (4th Cir. 1992).  Under this method, a task that takes merely a few minutes would be billed as at least 15 minutes.  For example, Mr. Newell has

---

[16] *See id.* at 12 (2.00 for "compiling fluor expert reports and printing tasks"); *id.* at 169 (multiple time entries by Ms. Sticht for "Correspondence with local printer in Boston, MA for deposition next week"; ""Correspondence with Motter, M. to remind him to order copies of previously approved deposition transcripts"; and ""Correspondence with local printer in Greenville, SC for Gross, Gregg deposition; multiple follow up").

[17] *See id.* at 12 (0.75 bill by Ms. Gilbert for "organizing to-do list / tasks"); *see also id.* (0.75 entry for "go through fluor scheduling emails, task updates").

[18] *See id.* at 167–68 (multiple billing entries by Ms. Sticht regarding reviewing invoices from experts and document hosting); *see also id.* at 134–35, 137, 139 (same by Mr. Newell).

18 entries for 0.25 hours for "review LinkedIn for witness messages" (or something substantially similar), and Ms. Gilbert and Ms. Sticht also appear to have similarly inflated entries for routine correspondence.[19]    To account for the likely inflation caused by quarter-hour billing, courts routinely reduce such fee requests.  *See Hagan v. MRS Assocs., Inc.*, No. Civ. A. 99-3749, 2001 WL 531119, at *4–5 (E.D. La. May 15, 2001) (10% reduction); *see also Ashley II*, 2015 WL 4469765, at *9–10 (20% reduction in part for quarter-hour billing).  The Court should do so here and apply a further 10% reduction for quarter-hour billing.  *See* Ex. 3, Stiefel Decl. ¶ 75.

 ***Overstaffing, Unnecessary Duplication, and Other Inefficiencies.***  The Fourth Circuit has recognized "the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney," especially where "[g]eneralized billing by multiple attorneys on a large case . . . produces unacceptable duplication." *Rum Creek*, 31 F.3d at 180.  Here, Relators grossly overstaffed.  It appears that three or more of Relators' attorneys attended approximately 41 out of the 57 depositions in this case, with as many as six attorneys attending some depositions. With the exception of the Fluor 30(b)(6) deposition, only one of Relators' attorneys examined each witness.   Although a "second chair" attorney for most depositions would be reasonable, "[Relators'] counsel has not explained why a . . . third[, fourth, fifth, or sixth attorney] was needed" and therefore Relators' should not be able to recover fees for those attorneys' time.  *See Morris v. Bland*, No. 5:12-cv-3177-RMG, 2015 WL 12910631, at *6 (D.S.C. Jan. 15, 2015) (permitting fees for one attorney at each deposition because counsel had not explained why more were needed).

---

[19] Dkt. 793-1, Pt. 1 at 143; *id.* at 8 (0.5 hours for "rescheduling tmw morning to fit in new expert call"; 0.25 hours for "schedule coordination re expert calls"); *id.* (multiple 0.25 entries for "reply emails"); *id.* at 169 ("Sent new Blue Sky invoice to Taylor & Partners" and "Correspondence with CoCounsel representative to inquire on status of prior inquiry.").

12

This pattern of overstaffing continues with Relators' billing entries for numerous other tasks, including attending court hearings[20] and meetings with the Department of Justice.[21] When, as here, there is no "adequate explanation" as to why multiple attorneys were required, courts in the Fourth Circuit routinely find such fees unreasonable. *See Palmetto Bluff Invs., LLC v. Westchester Surplus Lines Ins. Co.*, No. 9:23-cv-05263-DCN, 2026 WL 674265, at *7 (D.S.C. Mar. 10, 2026); *Hudson v. Pittsylvania County*, No. 11-cv-00043, 2013 WL 4520023, at *7 (W.D. Va. Aug. 26, 2013) (excluding two attorneys' billing entries for travel to and attendance at court hearings because those "entries constitute duplication of [the arguing attorney's work]"); *cf. Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1360 (4th Cir. 1995) (affirming exclusion of hours spent "attending trial when that attorney examined no witnesses at trial and had no active participation in the trial" (internal quotation marks omitted)).

Reductions are likewise warranted because of inefficient staffing where, among other issues, many partners performed work that could and should have been delegated to more junior attorneys with lower billing rates. "Recognizing that an objectively reasonable client may prefer that more hours be billed to cost-effective associates," courts often "reduce fee awards where hours recorded fall heavily onto partners and senior associates billing at high rates." *See Chrysafis v. Marks*, No. 21-cv-2516, 2023 WL 6158537, at *8 (E.D.N.Y. Sept. 21, 2023). For example, while

---

[20] *See* Dkt. 793-1, Pt. 1 at 78, 129 (Mr. Swaminathan and Mr. Newell attending November 19, 2019 hearing); *id.* at 86, 115 (Mr. Swaminathan and Mr. Twetten attending May 2, 2023 hearing); Dkt. 793-8 at 7 (Mr. Hand traveling to and attending May 2, 2023 hearing); Dkt. 793-9 at 5 (Mr. VanSyckel seeking to recover fees related to travel to and attendance at Court hearings on November 19, 2019 and May 2, 2023).

[21] For example, at least four attorneys seek to recover for attending an April 25, 2017 meeting with DOJ in Washington, D.C. Dkt. 793-8 at 9, 12 (travel time for Mr. Kenney and Mr. Harpootlian); *see also* Dkt. 793-1, Pt. 1 at 74 (Mr. Swaminathan billing 11.25 hours on April 25, 2017 for, *inter alia*, "Fluor presentation mtg in DC"); *id.* at 219 (Mr. Kanovitz billing 11.25 for "Fluor meeting with government"). Mr. Newell may have also billed to attend this meeting. *Id.* at 128 (Mr. Newell billing 9.0 hours on the same day, but the entry is marked as "REDACTED").

it is typical practice for junior attorneys to prepare outlines and a preliminary set of potential deposition exhibits, it appears that Loevy & Loevy partners were responsible for completing over 65% of all work related to depositions. *See* Ex. 3-R, Deposition Preparation Entries. Likewise, Relators' attorneys spent over 3,500 hours preparing for less than 466 hours of deposition time— a 7-to-1 preparation-to-deposition ratio—which far exceeds the ratio courts have deemed permissible.[22] *See* Ex. 3, Stiefel Decl. ¶¶ 96–98. These inefficiencies in preparing for and taking depositions warrant a 40% reduction for this time. *See id.* ¶ 99.

***Excessive Internal Conferencing.*** Relators also seek compensation for nearly 10,000 hours solely for internal communications. Ex. 3, Stiefel Decl. ¶ 48; Ex. 3-G, Internal Communications Entries. It appears that Relators' counsel held large weekly team meetings, additional meetings throughout the week, and approximately ten "Team Summits," apparently half-to-full-day meetings for which some attorneys traveled to Chicago. *See* Ex. 2, Billing Demonstrative at 2 (8.25 hours for team summit meeting). In many instances, Relators ask the Court to award them fees for at least *eight* to *ten* different attorneys to attend the same meeting, without providing any description as to how that meeting advanced the litigation or why all of the participants were necessary. *See, e.g.*, *id.* at 5 (at least ten attorneys attending the same meeting); Dkt. 793-1, Pt. 1 at 167 (at least eight attorneys attending the same meeting); *id.* (same on January 22, 2024). Courts routinely decline to award fees for multiple attorneys to attend meetings under similar circumstances. *See Constellis Emp. Stock Ownership Plan ex rel. Brundle v. Wilmington Tr., N.A.*, 258 F. Supp. 3d 647, 667 (E.D. Va. 2017) (ordering 15% reduction where attorneys held

---

[22] *U.S. ex rel. Palmer v. C&D Techs., Inc.,* 897 F.3d 128, 133 (3d Cir. 2018) (affirming "a maximum of 1.75 preparation hours per hour of documented deposition time"); *Collins v. Village of Woodbridge*, 197 F.R.D. 354, 358 (N.D. Ill. 1999) (similar); *Honestech, Inc. v. Sonic Sol.*, 725 F. Supp. 2d 573, 587–88 (W.D. Tex. 2010) (awarding 2:1 ratio of preparation-to-deposition time); *see also* Ex. 3, Stiefel Decl. ¶ 98 (12:1 preparation-to-deposition ratio warranted 75% reduction).

14

"weekly phone conference[s], which often lasted for 30 minutes to an hour for which three to five attorneys billed time," because "[a] discount is required for this kind of double-counting"); *Carroll v. Northampton Rests., Inc.*, No. 21-cv-115, 2024 WL 1223442, at *9 (E.D. Va. Mar. 21, 2024) (crediting only one time entry for internal calls). Given this excessive internal conferencing, a 50% reduction of this category is appropriate, still permitting Relators to recover over 5,000 hours for internal communications based on the assumption that at least some were reasonable and necessary. *See* Ex. 3, Stiefel Decl. ¶ 57.

*Improper Redactions & Cut-off Time Entries.* Relators provided Fluor with a "redacted" copy of their billing entries, for which all "redacted" time entries are entirely removed, rather than partially redacted. These "redactions" span 2,626 time entries and account for more than $6.6 million in fees. *See id.* ¶¶ 84–85; Ex. 3-O, Redacted Time Entries. An assertion of privilege does not "relieve[] [Relators] of the burden of proving the reasonableness of the fees." *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 523 (E.D. Va. 2017). When an entry is "entirely redacted," one "cannot determine whether the undisclosed actions were reasonable." *Id.* at 525. Relators "could have provided [partially redacted entries] without compromising potentially privileged information." *Ams. for Prosperity v. Grewal*, No. 19-cv-14228, 2021 WL 1153194, at *4 (D.N.J. Mar. 26, 2021). For example, they could have redacted the privileged subject matter while retaining the general type of activity (e.g., "Fact research re [privileged] in preparation for Hamm deposition"). *See* Ex. 3, Stiefel Decl. ¶ 86. By failing to partially redact, Relators "den[y] [Fluor] a fair hearing about the amount of attorneys' fees that [it] will become obligated to pay" and also "den[y] the Court the benefit of the adversarial process," as Fluor cannot meaningfully respond to any of those entries. *See Mebane v. GKN Driveline N. Am., Inc.*, No. 18-cv-892, 2025 WL 2784076, at *7 (M.D.N.C. Sept. 30, 2025). That is particularly problematic because Relators'

15

non-redacted entries evince a practice of billing for "non-compensable . . . activities." *Grewal*, 2021 WL 1153194, at *4.

In addition, Relators' records omit key information from thousands of entries over which they do not claim privilege. The entries for 1,244 hours of work are truncated and incomplete, making it impossible to determine what work was completed. Ex. 3, Stiefel Decl. ¶ 70; Ex. 3-H, Incomplete Billing Entries. Because of over-redaction and truncation, the Court should disallow all fees associated with all 10,381 hours of time entries that Fluor was denied an opportunity to review. Ex. 1, Fee Award Summary.

***Unnecessary Work.*** At the second and third steps of the fee reasonableness analysis, the Court removes fees attributable to unsuccessful claims and reduces the lodestar for lack of success. *See McAfee*, 738 F.3d at 88–89; *infra* at 6. Before reaching either step, however, the Court must first exclude hours that were unnecessarily expended even in support of successful claims. *See Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 730 F. Supp. 2d 513, 523 (E.D. Va. 2010) (applying reduction for "excessive resources committed to this case," even as to motions on which the party prevailed). Such reductions are warranted here.

For example, Relators billed thousands of hours related to witness interviews, declaration drafting, and the like. But only three of these 28 declarants testified at trial (Ayanna Cassanova, Heather O'Connor, and David Erp), and Fluor has identified less than six hours of time related to Mr. Erp's preliminary interview and declarations, Dkt. 793-1, Pt. 1 at 225, and no entries for the other two. This is unsurprising because the lion's share of declaration-related time entries do not identify the witness allegedly interviewed. *E.g.*, *id.* at 230 (multiple entries referencing "calls to potential witnesses"). Without this information, Relators cannot meet their burden to show that the work was necessary, even assuming it was related to the property-management claim.

16

Likewise, Relators seek 305 hours ($300,005) in fees related to the scheduled deposition of Ed Nukic, which *Relators* chose to cancel. *See* Ex. 3, Stiefel Decl. ¶ 111–12; Ex. 3-T, Nukic Entries.[23] None of the complex international procedural wrangling that preceded Relators' last-minute cancellation of this deposition was even arguably necessary to any claim—successful or otherwise. The Court should therefore decline to award any fees related to the Nukic deposition.

*Verbatim Repetition of Time Entry Narratives.* As set forth in Mr. Stiefel's Declaration, Relators' counsel appears to have cut-and-pasted identical narratives for hundreds of time entries. Ex. 3, Stiefel Decl. ¶ 71. For example, Ms. Scott's records state that she spent 133 days (totaling 911.75 hours and $752,193 in requested fees) doing the exact same thing: "Case emails and calls to potential witnesses – Fluor." *See id.* ¶ 72. It is difficult to see how one attorney spent a third of a year making telephone calls, especially when another member of their team, Kevin Thomas, claims to have spent over 649 hours doing essentially the same thing, also repeating verbatim his description of this work hundreds of times. *See id.* ¶ 75; *see also id.* ¶¶ 77–82 (similar).[24] Mr. Stiefel identifies 4,044 hours of these vague, cut-and-paste entries. *See* Ex. 1, Fee Award Summary. Because these rote descriptions fail to provide Fluor or the Court sufficient information to determine whether this time was reasonably spent, it should be excluded from any award.

*Nonworking Travel Time.* Relators seek $595,191 for 357 hours—at their full hourly rates—for time spent traveling but not performing any legal work. *Id.* ¶ 93; *see also* Ex. 3-P,

---

[23] Relators counsel notified Fluor's counsel of their decision not to take Mr. Nukic's deposition one business day before the scheduled deposition in Bosnia, claiming that the Bosnian court only "recently" determined that U.S.-based attorneys could not question Mr. Nukic. *See* Ex. 5, Newell Email to the Court (Jan. 16, 2026). *But see* Ex. 6, Declaration of Naida Custovic (explaining that the May 6, 2025 Federal Ministry of Justice opinion number 02-45-1625/25 confirmed that U.S. lawyers could not conduct the deposition).

[24] Mr. Thomas has 361 identical entries totaling nearly $500,000 in requested fees described as "reference ongoing search spreadsheet to locate and connect with former employees." Ex. 3, Stiefel Decl. ¶ 75; *see also* Ex. 3-J, Thomas Duplicative Billing Entries (Set One).

Travel Entries.  It is well-settled that attorneys may not recover full hourly billing rates for time spent traveling.  *See S. Bost. Energy LLC v. Hartford Steam Boiler Specialty Ins. Co.*, No. 18-cv-596, 2019 WL 3843062, at \*5 (E.D. Va. Aug. 15, 2019); *Priestley v. Astrue*, 651 F.3d 410, 419 (4th Cir. 2011) (affirming reduced billing rate for travel time).  Where this occurs, the Court has discretion to fix the appropriate rate.  *See Prison Legal News*, 129 F. Supp. 3d at 404 (fixing rate at $200 per hour).  Here, the Court should apply a 50% reduction to the fees sought related to travel time and award $297,595.50 in total fees for these hours.  Ex. 3, Stiefel Decl. ¶ 93.

**Contract Attorney Billing.**[25]  Approximately 53% of Relators' claimed hours are for work performed by contract attorneys.  This category presents several substantial problems.  To start, five contract attorneys billed less than 50 hours in this case, *see* Dkt. 793-3 at 2, many of whom completed little to no substantive work outside of reviewing background materials.[26]  Relators are not entitled to recover fees for attorneys who contributed nothing to the case.

Furthermore, Relators seek 54,897 hours (nearly *twenty-eight years' worth*) for contract attorney document review.  *See* Ex. 3, Stiefel Decl. ¶ 132–33.  This number appears to be inflated, as a number of the stated contract attorney hours are suspect.  For example, from April 15, 2022 through the week ending September 1, 2023—approximately 70 consecutive weeks—Kevin LaCorte billed *exactly* 55.00 hours each week.  *See* Dkt. 793-1, Pt. 2 at E124–654.  After one week

---

[25] As discussed *infra* at 24–26, contract attorney fees are properly recouped as an expense, not as part of Relators' attorneys' fees request.  Because Relators did not substantiate their expenses, they are not entitled to recover any of them.  For completeness, however, Fluor briefly discusses here the flaws in Relators' contract attorneys' bills from an attorneys' fees perspective.

[26] Relators seek 21.75 hours for Annie Decker's work, which included reviewing a confidentiality order, the Second Amended Complaint, Motion to Dismiss response, "other internal documents prepared for case"; drafting "follow up notes and questions" followed by limited "research on FCA penalties and structure."  *See* Dkt. 791, Part 2.  Likewise, Rodney Nutt billed 35.00 hours, of which approximately half of the time was spent reviewing the Second Amended Complaint and training materials, with limited document review thereafter.  *Id.*

in which he billed 43.00 hours, he then continued to bill *exactly* 55.00 hours from September 15, 2023 through December 6, 2024—approximately 68 additional consecutive weeks. *Id.* at E665–E1095. This billing pattern continued throughout holiday weeks (14.25 hours on New Year's Day, *id.* at E422; 11.25 hours on Christmas Day, *id.* at E791; and 14.5 hours on New Year's Day, *id.* at E798). Likewise, Amanda Clark billed nearly 13 weeks of consecutive eight-hour days with little variation. *See* Dkt. 793-1, Part 2 at E4–E88. These entries raise serious questions, and Relators provide no evidence that they did anything to verify that their contract attorneys—who presumably all worked remotely—were in fact working the hours for which they billed.

### B.      Relators' Proposed Hourly Rates Are Inflated

Relators seek hourly rates ranging from $250 to $1,600 per hour for attorney time and $200 per hour for paralegal time. *See* Dkt. 793-3 at 2; Dkt. 793-8 at 5; Dkt. 793-9 ¶ 6. These rates far exceed prevailing rates in the District of South Carolina, where this case is venued. As discussed below, the Court should award hourly rates of $300 to $800 per hour for work done by attorneys other than contract attorneys (based on the seniority levels discussed below), which are at the high end of the prevailing rates within this judicial district.

### 1.      Reasonable Hourly Rates in the District of South Carolina

"[T]he proper measure of fees is the prevailing market rate in the relevant market, and not the rate charged by the actual attorney in question." *Trimper*, 58 F.3d at 76 (emphasis omitted). "A party entitled to fees receives a reasonable fee for an attorney who is appropriately credentialed in light of the case's nature. A party is not, however, entitled to force its adversary to pay a premium fee for the party's optimal lawyer." *Zen42 LLC v. Wash. & Lee Univ.*, No. 17-cv-00053, 2018 WL 4625627, at *1 (W.D. Va. Sept. 26, 2018). Generally, the relevant market is "the district in which the court sits." *U.S. ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, No. 2:96-1676-12, 2002 WL 34236885, at *7 (D.S.C. May 23, 2002).

19

As explained in the attached affidavit of long-time South Carolina trial attorney John T. Lay Jr., reasonable rates for attorneys in complex *qui tam* litigation in this District are as follows:

- $700–$800 per hour for a senior partner with 20 or more years of experience;

- $500–$600 per hour for a mid-level partner with 10 to 20 years of experience;

- $450–$500 per hour for a partner with less than ten years of experience; and

- $300–$450 per hour for associates.

*See* Ex. 7, Lay Aff. ¶ 21. Mr. Stiefel agrees that these rates are more than reasonable based on the objective local market data he has reviewed. Ex. 3, Stiefel Decl. ¶ 117–20.

### 2. Relators Are Not Entitled to Out-of-District Rates

As noted, "the community in which the court sits is the appropriate point for selecting the proper rate" unless "extrajurisdictional counsel rendered services that were truly unavailable." *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009) (internal quotation marks omitted) (alteration adopted). Relators inaccurately claim *no* attorney in the State of South Carolina could have handled this case, overlooking the many accomplished attorneys that practice here. Indeed, Relators themselves hired attorneys from Richard A. Harpootlian P.A. (the "Harpootlian Firm") and Eppes & Plumblee, P.A., who have documented histories of success in FCA cases and other complex litigation. Yet, Relators did not use those accomplished lawyers to do anything of substance in this case. There is no question those attorneys could have competently handled this case, or at least significant portions of it. Relators have thus failed to carry their burden of demonstrating that there were no competent local counsel capable of representing them. *See* Ex. 7, Lay Aff. ¶¶ 9–19.

Moreover, courts have repeatedly rejected Relators' argument that the specialized nature of FCA work means that they should be compensated at a "national market rate." *United States v.*

20

*Claris Vision, LLC*, No. 18-cv-00176, 2025 WL 3063169, at *2 (D.R.I. Nov. 3, 2025); *U.S. ex rel. Doe v. Biotronik, Inc.*, No. 09-cv-3617, 2015 WL 6447489, at *12 (E.D. Cal. Oct. 22, 2015); *cf. U.S. ex rel. Kirchgessner v. James River Air Conditioning Co.*, No. 16-cv-232, 2019 WL 413547, at *2 (E.D. Va. Feb. 1, 2019) (rejecting fees consistent with the *Laffey* matrix because relator did not show that no attorney in Richmond could take the case).[27] For example, in a case venued in Mississippi, the relators retained counsel located in Washington, D.C. and sought D.C. billing rates. *U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 06-cv-433, 2014 WL 691500, at *11 (S.D. Miss. Feb. 21, 2014). The relators submitted a declaration that there was only one firm located in Jacksonville, Mississippi, that could handle the matter, and that law firm was unable to take on the case due to workload concerns. *Id.* The relators also submitted another declaration stating that relators had to speak with multiple out-of-state firms before finding one who would serve as their counsel due to the complex nature of the case. *Id.* Even with this record, the court denied the request to award D.C.-based fees because "[t]here is no evidence that [r]elators sought representation in the Gulfport, Mississippi, area. Nor is there any indication that [r]elators contacted more than one Mississippi law firm regarding representation." *Id.* at 12.

Likewise here, Relators have not made any showing that they could not obtain representation by local attorneys. To the contrary, Mr. Lay's affidavit makes clear that there is competent, qualified FCA counsel located in South Carolina who are capable of handling these

---

[27] Courts frequently apply normal local billing rates to FCA actions. *See U.S. ex rel. Doe v. Acupath Labs., Inc.*, No. 10-4819, 2015 WL 1293019, at *1, 11–13 (E.D.N.Y. Mar. 19, 2015) ($350 and $375 per hour for attorneys with 20 and 22 years' experience); *U.S. ex rel. Peterson v. Sanborn Map Co., Inc.*, No. 11-902, 2014 WL 2815592, at *4 (E.D. Mo. June 23, 2014) ($350 per hour); *U.S. ex rel. Young v. Somerset Farms, Inc.*, No. 02-2846, 2014 WL 2048181, at *2 (E.D. Pa. May 16, 2014) ($300 per hour for a lawyer with 24 years' experience).

matters.  Ex. 7, Lay Aff. ¶¶ 9–19.[28]  As the Harpootlian Firm touts on its website, it has played important roles in securing FCA recoveries substantially larger than the one Relators obtained here, without requiring the services of an out-of-state firm like Loevy & Loevy.  *See id.* ¶¶ 12–14. And in a recent "notorious" case that drew "the eyes of the nation," the Harpootlian Firm's attorneys handled a six-week trial and ensuing appeal in a manner the South Carolina Supreme Court praised as "skillful[]," "superbly competent and professional."  *State v. Murdaugh*, --- S.E.2d ---, 2026 WL 1322305, at *1, *16 (S.C. May 13, 2026) (per curiam); *see also* Ex. 7, Lay Aff. ¶ 15.

Moreover, even if Relators had tried and failed to secure local counsel such that they might be entitled to something other than South Carolina rates, they have not supported their request for a "nationwide" FCA rate because no such rate exists.  There are well-established relators' attorneys around the country who charge rates far below what Relators here claim is reasonable.  *Singbush v. Fla. Neurological Ctr., LLC*, No. 19-cv-603, 2022 WL 21830631, at *5 (M.D. Fla. Dec. 15, 2022) (partners at Bracker & Marcus, LLC—a successful Relators' firm based in Atlanta—seeking $550 hourly rate in 2022); *Kirchgessner*, 2019 WL 413547, at *4 (awarding $425 for partners and $273 for associates in a *qui tam* action venued in Richmond and litigated by attorneys based in the Washington, D.C. metropolitan area).

If there were no competent local counsel available, Relators could have presented evidence about the rates Loevy & Loevy attorneys typically charge.  *See Rum Creek*, 31 F.3d at 175 (out-of-district rates deemed reasonable because the "rates were charged to and actually paid by" the

---

[28] Relators claim that the rates they seek are consistent with "Motley Rice SC rates."  Dkt.793-3 at 2.  But Relators have not submitted any evidence that Motley Rice has received such rates in an FCA case, and Fluor has found none.  Outside of the FCA context, Courts have awarded Motley Rice attorneys rates far below what Relators now seek.  *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570, 2015 WL 6666703, at *11–12 (S.D.N.Y. Oct. 28, 2015) (noting "the cost of retaining counsel is considerably less in the District of South Carolina than [the Southern District of New York]" and awarding rates between $350–450 per hour for senior attorneys).

fee-seeking party, which "believed them to be reasonable"). But Relators did not do that either, presumably because the available data does not support anything close to the exorbitant rates they seek here. Instead, it shows that the same Loevy & Loevy attorneys recently sought far lower hourly rates; *see Cosenza v. City of Worcester*, No. 18-cv-10936, ECF 295 at 4 (D. Mass. filed Mar. 1, 2023) (Mr. Loevy requesting $700 per hour); *Epps v. City and County of Denver*, No. 20-cv-01878, ECF 380 at 5 (D. Colo. filed June 1, 2022) (Mr. Loevy requesting $650 per hour); *Awalt v. Marketti*, No. 11-cv-06142, ECF 643 (N.D. Ill. May 23, 2018) (seeking $400 for Mr. Swaminathan; $450 for Mr. Twetten; $375 for Mr. Newell; $550 for Mr. Loevy; and $550 for Mr. Kanovitz); and were ultimately awarded even less. Ex. 3, Stiefel Decl. ¶ 122.[29]

Finally, Relators tout their counsel's alleged FCA expertise, claiming it warrants out-of-district rates. But Loevy & Loevy is first and foremost a civil rights firm.[30] Fluor has identified only one prior FCA case Mr. Loevy ever handled; it was more than 20 years ago and did not proceed to trial. *See U.S. ex rel. Coppock v. Northrop Grumman Corp.*, No. 98-cv-02143 (N.D. Tex. filed Sep 10, 1998). The Loevy & Loevy website lists only two FCA cases as "big wins"—both occurring over ten years ago in cases in which the government intervened and settled.[31] Not only do Relators' counsel not have particular FCA expertise, but their *lack* of experience has clearly led to a variety of billing inefficiencies here. For example, experienced FCA counsel would

---

[29] Each of these cases concerned civil rights issues. Fluor has found no attorney-fees briefing by these attorneys in any prior FCA case, presumably because they do not routinely handle such cases.

[30] Loevy & Loevy's website describes it as "an award-winning civil rights firm." https://www.loevy.com/. The website for the marijuana distribution business Mr. Loevy and Mr. Kanovitz founded similarly describes them as "civil rights attorneys who spent their careers fighting for the wrongly convicted." https://wearejusticegrown.com/our-roots/; *see also id.* ("The work of their civil rights firm, Loevy & Loevy, aptly represents the values of our cannabis company.").

[31] *See* Big Wins, Loevy & Loevy, https://www.loevy.com/big-wins/ (last visited June 19, 2026).

23

not need to spend five hours researching whether "materiality was required for factually false claims" or 16 hours drafting a legal standard section for a summary judgment motion. Dkt. 793-1, Pt. 1 at 14–15.

For all these reasons, the Court should find that Relators are not entitled to recover out-of-district billing rates, and should instead receive the following rates identified as reasonable by Messrs. Lay and Stiefel: $700–$800 for senior partners; $500–$600 for midlevel partners; $450–$500 for junior partners; and $300–$450 for associates. *See* Ex. 7, Lay Aff. ¶ 21; Ex. 3, Stiefel Decl. ¶¶ 117–20.[32]

### 3. Relators Are Entitled to No More Than At-Cost Reimbursement for Contract Attorneys

Relators seek billing rates between $550 and $825 per hour for the work of 26 contract attorneys. *See* Dkt. 793-3 at 2.[33] Those rates are completely unreasonable. In light of the paucity of support Relators have provided, the Court should decline to award any fees for these attorneys. If, however, the Court is inclined to permit some reimbursement for their time, it should calculate such fees at a reasonable rate of between $42 to $120 per hour, as described below.

In general, there are four categories of contract attorneys: (i) those who perform primarily document review ("document review attorneys") and (ii) those who perform more substantive

---

[32] Relators' argument they should be entitled to "greater hourly rates" in light of the risk they assumed when accepting this matter overlooks that counsel is likely already receiving 33 to 40% of the Relators' share in this case. *See What's the Price of Justice?*, Chicago Mag, https://www.chicagomag.com/chicago-magazine/november-2018/jon-loevy/ (Oct. 16, 2018). Given that they are already reimbursed for reasonable fees through this motion *plus* 33% to 40% of their client relators' share, Relators' counsel is amply rewarded for the risk they undertook. Besides, in virtually every fee-shifting case, the attorneys took on risk by accepting the matter and there is no resulting, automatic "boost" to their hourly rates.

[33] In their fee petition, Relators categorize Anna St. John as a "Loevy attorney" and seek $825/hour for her work. *See* Dkt. 793-3 at 2. But her declaration says that her work on this case was on a "contract basis," *see* Dkt. 793-2 at 28, and therefore, she should be considered a contract attorney.

work related to document review ("augmented support attorneys"); (iii) those who have specialized experience in a particular area ("specialized services attorneys"); and (iv) those who provide interim services in place of full-time counsel ("interim counsel attorneys"). Ex. 8, Chhatwal Decl. ¶ 16. To reduce costs for a fee-paying client, document review attorneys are engaged to review documents at rates far below even the most junior associate attorneys. As a result, the rates typically paid to such contract attorneys are generally between $42 to $55 per hour. *Id.* ¶ 19.[34] Further, even where "augmented support" or "specialized services" attorneys are used on substantive tasks, they are generally only paid between $60 and $120 per hour. *Id.* ¶¶ 24, 31.

Because these rates are so much lower than those charged by full-time attorneys, many courts have determined that costs associated with contract attorneys should not be considered part of the lodestar analysis at all and should instead be reimbursed as a fixed cost based on what the firm *actually* paid for their services. *See Wells Fargo & Co.*, 445 F. Supp. 3d at 527–29. "[T]here is absolutely no excuse for paying those temporary, low-overhead employees $40 or $50 an hour and then marking up their pay ten times for billing purposes." *In re Beacon Assocs. Litig.*, No. 09 Civ 777, 2013 WL 2450960, at *18 (S.D.N.Y. May 9, 2013); *see also City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013) (questioning the "reasonableness" of seeking $295 to $435 per hour for contract attorneys who primarily reviewed documents, where the attorneys' rate was likely $60 per hour, and a fee-paying client likely "would have negotiated a substantial discount in the hourly rates charged").

---

[34] These rates are consistent with what other courts have recognized. *See United Supreme Council v. United Supreme Council of Ancient Accepted Scottish Rite for 33 Degree of Freemasonry*, No. 16-cv-1103, 2019 WL 3848784, at *1 (E.D. Va. Aug. 15, 2019) ($46 to $80/hour); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 527 (N.D. Cal. 2020) ($35 to $50/hour); *Barranco v. 3D Sys. Corp.*, No. 13-cv-00412, 2018 WL 4512186, at *5 (D. Haw. June 15, 2018) ($75/hour); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438 (S.D.N.Y. 2016) ($39/hour).

Here, Relators have not documented what they actually paid contract attorneys for their work. As discussed more fully below, "the law is clear that no litigation costs should be awarded in the absence of adequate documentation," and where a party does not submit "receipts or bills" to justify expenses, the Court may deny those costs in total. *See Trimper*, 58 F.3d at 77; *Jones v. Dancel*, 792 F.3d 395, 404 (4th Cir. 2015); *Mebane*, 2025 WL 2784076, at \*6; *see also infra* at 32–33. Even if the Court were to award Relators some contract attorney fees, Relators cannot rely on either the Fitzpatrick or *Laffey* matrices to justify the rates. These matrices apply to hourly billing rates in the District of Columbia, and Relators do not make any argument as to why D.C. billing rates should apply to their contract attorneys, none of whom claim to live, work, or be licensed to practice in D.C. *See* Dkt. 793-2 at 3–7. Moreover, as Mr. Chhatwal explains, these rates generally do not vary across locality. Ex. 8, Chhatwal Decl. ¶ 17.

The Court should therefore decline to award any fees for Relators' contract attorneys. At most, it should award customary rates that are actually paid in the market for contract attorney work. These are: $42–$55 for document review attorneys; $60–$75 for Relators' two augmented support attorneys; $75–$120 for Relators' sole specialized services attorney; and $150–$250 for Relators' sole interim counsel attorney. *Id.* ¶¶ 18, 24, 31, 41; *see also id.* ¶ 42 (identifying which attorneys fall into each grouping); *see also* Ex. 3, Stiefel Decl. ¶ 126–27 (adopting Mr. Chhatwal's rates for use in fee model). Awarding Relators roughly ten times what they paid for these attorneys' work would be a windfall, rather than reimbursement for incurred costs.[35]

---

[35] There are three current Loevy & Loevy attorneys—Anna Dover, Gwen Parker, and Kevin Thomas—who previously worked on this case as contract attorneys. Ms. Parker is not listed as a full-time employee on Loevy & Loevy's website. Her declaration says she transitioned to "full time" in June 2025, but it is unclear if the means she is a full-time contract attorney or a full-time Loevy & Loevy employee. Despite seeking hourly rates between $750 and $1,150, approximately 70% of the time they billed to this case—at least 6,841.25 hours—was for work as a contract attorney, which Mr. Stiefel's accounts for in his fee model. Ex. 3, Stiefel Decl. ¶ 125–27.

26

\*    \*    \*

Based on all the above, taking into account the discounts and deductions, Fluor calculates a reasonable lodestar at the end of Step 1 of $10,930,728.  Ex. 3, Stiefel Decl. ¶ 131.[36]

## II.    Step Two: The Court Should Reduce the Lodestar 30% for Unsuccessful Claims

Even this greatly reduced lodestar figure is far more than Relators are entitled to receive. Unsuccessful claims must "be treated as if they had been raised in separate lawsuits" and hours spent in support of such claims must be entirely removed from a fee award unless Relators can show they arise from "a common core of facts" or "related legal theories."  *Hensley*, 461 U.S. at 435.  Three categories of unsuccessful work are entirely unrelated to the claim on which Relators prevailed, and the Court should decrease the lodestar accordingly.

*Seeking Government Intervention.*  Relators billed approximately 5,000 hours between the filing of their complaint and October 1, 2018—the date the government declined to intervene in this case.  *See* Dkt. 77; *see generally* Dkt. 793-1, Pt. 1.  Of those hours, Relators completed legal research, reviewed documents, conducted internal meetings, worked with experts, drafted "white papers," and prepared other materials presumably designed to convince the government to intervene.  But Relators failed in that effort and were left to litigate the matter on their own.  *See* Dkt. 77.[37]  It is appropriate to exclude fees for "unsuccessful" "efforts to convince the government to intervene" in a *qui tam* case.  *U.S. ex rel. Maxwell v. Anham USA, Inc.*, No. 14-cv-156, 2020

---

[36] This figure does not include time for Frank Eppes.  Fluor did not object to a reasonable delay in Relators' submission of Mr. Eppes's billing records as a result of his illness around the time their motion was due.  *See* Dkt. 793 at 31 n.7.  Now that nearly two months have passed, however, Relators' failure to obtain and submit his records plainly constitutes waiver.

[37] Relators' time entries also include time spent negotiating sharing agreements.  Matters related to the relators' share "d[o] not directly involve the *qui tam* defendants," and associated fees therefore cannot be charged against Fluor.  *See U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1046 (6th Cir. 1994).

WL 4460364, at *4 (E.D. Va. Aug. 3, 2020) (declining to award any fees during "government investigation" phase). There is simply no basis to reward Relators for expending thousands of hours attempting to convince the government to do something it ultimately did not do—especially where, had they succeeded, Relators would have needed far less attorney time for the ensuing seven years of the case.

***Abandoned Theories.*** Shortly after the government's declination, Relators filed a 125-page Second Amended Complaint combining the hodgepodge of allegations from the various Relators' individual *qui tam* complaints. Dkt. 121. This consolidated complaint included numerous theories unrelated to property management that Relators pursued to varying degrees through discovery but ultimately abandoned before trial, including claims related to fit-for-duty exams, over-estimating, total case incidence rates ("TCIR"), "illegal acquisition and use of government material," AM-2 matting, and performing work outside Fluor's scope of work. *See* Dkt. 121 ¶¶ 46–48, 337–341 (over-estimating); *id.* ¶¶ 311–318 (TCIR); *id.* ¶¶ 347–354 (fit for duty); ¶¶ 355–380 ("illegal acquisition" and AM-2 matting); *id.* ¶¶ 384, 416 (work outside scope).

***Claims that Failed at Trial.*** Relators cannot recover fees for four of their five trial theories, including their overstaffing and award fee theories, and Relators Shepherd and Rude's retaliation claims. Indeed, Relators appear to concede that the staffing and award fee claims are distinct from their property management theory. *See* Dkt. 793-2 at 38. Likewise, the retaliation claims arose under a different subsection of the FCA. *See* 31 U.S.C. § 3730(h)(2). Each of these claims relied on alleged wrongdoing with respect to a specific aspect of Fluor's contract, requiring different facts, expert analysis, and legal argument.[38]

---

[38] Likewise, Relators have stridently argued to this Court that property management "was a 'separate and complete major industrial operation.'" Dkt. 797-1 at 4–7. Though Fluor does not agree that it was as "separate" or "complete" as required for liability, there is no dispute that it was

The only attempt Relators made to calculate the time they spent on unsuccessful claims was to perform a search for 14 words in their attorneys' billing records. *See* Dkt. 793 at 16–17; Dkt. 793-2 at 38. Based on this exercise, Relators estimate that only 10.69% of their time was spent on the four claims they lost (as opposed to the one they won). Relators' process for identifying work spent on unsuccessful claims is wholly inadequate. Given the extensive use of block billing and vague narratives identified by Mr. Stiefel, it is no surprise that these terms do not appear frequently in Relators' bills. Indeed, using Relators' methodology, it would appear that only a tiny fraction of attorney time was spent on Relators' allegations related to PMSAs, as the term "PMSA" does not appear once in all of the time entries for Relators' contract attorneys and appears only 410 times in the more than 10,000 Loevy & Loevy entries. The word "property" itself appears only 111 times in Loevy & Loevy's records, and "DCMA" appears only 158 times. By their own methodology, therefore, Relators may seek less than 6% of their time on property claims. Moreover, Relators' list of 14 search terms is arbitrary and incomplete, omitting terms like "AFEBs" (plural), "Roesler" (a non-property-related witness), and "staffing," just to name a few. Nor does it address the abandoned claims discussed above—for example, "TCIR" appears 151 times in the Loevy billing records, more often than "property."

Because the process Relators use to identify time spent on abandoned or unsuccessful claims is completely unreliable, they have failed to meet their burden of showing which hours were incurred only for their successful claims. Where, as here, there is insufficient documentation to reasonably determine which time entries pertain to which claims, courts routinely apply a percentage deduction. *See, e.g.*, *Goodwin v. Metts*, 973 F.2d 378 (4th Cir. 1992) (affirming 50%

distinct from presenting to AFEBs or determining staffing levels. For example, the AFEB claims involved a deep analysis of work order reporting times by fact witnesses and at least one expert (Dr. Gaukler), none of which had any bearing on the property claim.

29

attorneys' fee reduction due to plaintiff's "failure to prevail on most of their claims" and "duplication of their attorneys' efforts"); *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 923–24 (4th Cir. 2003) (affirming attorneys' fee award for approximately 50% of the fees sought).[39]  Here, given that Relators at various points pursued nearly a dozen theories, all but one of which was unsuccessful, the Court should reduce the lodestar by at least 30%, leaving a remaining lodestar of $7,651,510.[40]

## III.    Step Three: The Lodestar Figure Should be Further Reduced by 50% for Lack of Success on the Property Management Claim

After calculating the overall lodestar and then removing unsuccessful claims, "the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'"  *McAfee*, 738 F.3d at 88.  "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."  *Hensley*, 461 U.S. at 440.  A court may reduce a fee award if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole."  *Id.* at 439–40; *see also id.* at 436 ("[T]he most critical factor is the degree of success obtained.").  At trial, the jury awarded $15 million of the $222 million Relators sought on their property claim (roughly 6.7%).  *See* Dkt. 777 at 8657:16–18.  Relators are simply wrong that the Court cannot consider this disparity when assessing a

---

[39] *United States v. Everglades Coll., Inc.*, 855 F.3d 1279, 1292–93 (11th Cir. 2017) (affirming fee award of $60,000, which reflected a 95% reduction of the lodestar based on limited "degree of success"); *U.S. ex rel. Nichols v. Omni H.C., Inc.*, No. 4:02–cv–66, 2009 WL 365615, at *3 (M.D. Ga. Feb. 10, 2009) (awarding 50% reduction in attorneys' fees sought where relator was unsuccessful in 75% of their claims); *United States v. AthenaHealth, Inc.*, No. 17-12125, 2022 WL 658654, at *7 (D. Mass. Mar. 3, 2022), *aff'd*, 56 F.4th 152 (1st Cir. 2022) (reducing award by 50% when it was "impossible to ascertain from the time entries how much time was spent on each claim" but only one of two theories was resolved in relators' favor).

[40] As with the step one figure, this figure does not include contract attorney billings. *See supra* at 7 n.5.  At reasonable rates, a 30% discount for contract attorneys leaves $2,113,552 remaining.

30

reasonable attorneys' fee award. *See* Dkt. 793 at 15. Indeed, it would be reversible error not to do so. *See McAfee*, 738 F.3d at 92.

Relators' success rate of less than 7% on the property claim warrants a substantial post-lodestar reduction. While the reduction need not be proportional (i.e., more than 90%), it should be meaningful. For example, the Fourth Circuit has affirmed a 45% reduction for a substantial lack of success. *Prison Legal News v. Stolle*, 681 F. App'x 182, 184–85 (4th Cir. 2017). Similarly, district courts have reduced fee awards by 50% and 35% where the plaintiffs obtained 17% and 15% of their damages, respectively—far more than Relators obtained here. *Guillen v. Armour Home Improvement, Inc.*, No. DLB-19-2317, 2024 WL 1346838, at *19 (D. Md. Mar. 29, 2024); *Mancilla v. Chesapeake Outdoor Servs., LLC*, No. 22-cv-00032, 2024 WL 2803947, at *12–13 (D. Md. May 31, 2024). Indeed, there are few directly on-point cases within the Fourth Circuit because it is rare to find a case where a plaintiff "prevails" as weakly as Relators did here. But if reductions of 35% and 50% are appropriate for plaintiffs who fare nearly three times better on a percentage basis than Relators did, then at least a 50% reduction is appropriate here.[41] Applying

---

[41] Many cases addressing attorneys' fees disputes are civil rights cases, which often present an issue entirely different from FCA cases—how to compensate attorneys for a plaintiff's success in obtaining important injunctive relief in the absence of a substantial damages award. *Cf. Doe v. Kidd*, 656 F. App'x 643, 657–58 (4th Cir. 2016). FCA cases, by contrast, revolve entirely around recovering money, not vindicating other rights, making Relators' poor damages showing the only relevant factor in assessing their degree of success.

Relators argue that their "success in unchartered areas is significant enough" to warrant full fees, relying on a single decision from the Southern District of Florida as support. Dkt. 793 at 16 n.4. But there is nothing significant about this case, as a number of FCA actions have been filed against defense contractors operating in a warzone, including those under LOGCAP contracts. *E.g.*, Defense Contractor Pleads Guilty to Major Fraud in Provision of Supplies to U.S. Troops in Afghanistan, Dept. of Just., https://www.justice.gov/archives/opa/pr/defense-contractor-pleads-guilty-major-fraud-provision-supplies-us-troops-afghanistan (Dec. 8, 2014). Even if pursuing an FCA matter were somehow made more difficult based on the fact that the alleged fraud occurred in a warzone, the lodestar figure already accounts for any supposedly unique features of this litigation: complex questions require more time and more-experienced attorneys—items already addressed by the substantial number of hours that Fluor recognizes as

this 50% reduction to the $7,651,510 figure from step two results in a final lodestar of $3,825,755.[42]

## IV.    Relators' Request for $5,564,983.97 in Expenses Should Be Denied or Significantly Reduced

Relators seek $5,564,983.97 in expenses based on an unverified, unsworn Excel spreadsheet that is not supported by any actual receipts or invoices. *See* Dkt. 793-7; Dkt. 793-8. "[T]he law is clear that no litigation costs should be awarded in the absence of adequate documentation," and where a party submits an "unverified Chart of Expenses with no receipts or bills attached," a district court may deny those costs in full. *See Trimper*, 58 F.3d at 77; *Mebane*, 2025 WL 2784076, at *6.[43]   This alone warrants complete denial of the expenses Relators seek.[44]

This case exemplifies the need for supporting documentation. Relators can recover only "reasonable litigation expenses," *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986), that were "necessarily incurred," 31 U.S.C. § 3730(d)(2). These do not include expenses that would not "normally [be] charged to a fee-paying client," *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir.

---

reasonable, and the high-end South Carolina rates that Fluor applies to its lodestar calculation. *Supra* at 19–20.  It is therefore an improper consideration for this stage of the analysis. *Cf. Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010) ("factors subsumed in the lodestar calculation cannot be used as a ground for increasing" the award after the lodestar is calculated).

[42] As with prior steps, this figure does not include contract attorney billings. *See supra* at 7 n.5. At reasonable rates, a further 50% discount for contract attorneys leaves $1,056,776 remaining.

[43] *Sines v. Kessler*, 343 F.R.D. 311, 324 (W.D. Va. 2022); *Denton v. Pennymac Loan Servs., LLC*, 252 F. Supp. 3d 504, 531 (E.D. Va. 2017); *Fernandes v. Montgomery County.*, No. CIV. SAG10752, 2013 WL 6330705, at *7 (D. Md. Dec. 3, 2013).

[44] Relators should not be provided an opportunity to supplement their motion with documentation to support their requested costs.  More than two weeks *before* Relators filed their motion, Fluor informed Relators of *Trimper* and Relators' burden to submit receipts and bills to support any costs or expenses sought.  *See* Ex. 9, Lollar Email to the Court.  Relators nevertheless submitted their motion without the requisite documentation.  Because a fee petition "should not result in a second major litigation," *Hensley*, 461 U.S. at 437, the Court should not consider belated evidence which would likely trigger additional briefing.

1988) (citation and internal quotations omitted); *see also Summers v. Adams*, No. 3:08–2265, 2010 WL 2179571, at *4 (D.S.C. May 26, 2010), or "questionable litigation expenses." *See Dancel*, 792 F.3d at 404.

Despite these well-established rules, Relators seek to recover a multitude of expenses that are unreasonable on their face, including $2,693.24 in LinkedIn subscriptions; approximately $2,000 in limousine and/or chauffeured driving services; nearly $800 at cocktail bars located in Chicago incurred more than a month *after* trial concluded; and more than 100 airline bookings (totaling about $50,000) *during* trial. *See* Ex. 10, Expenses Demonstrative at 5; Dkt. 793-7 at C191–352.[45] Without actual documentation about the expenses that were actually incurred, neither Fluor nor the Court can adequately assess whether any of these expenses (and those discussed below) are reasonable and necessarily incurred. In circumstances like this, the Court should "disallow the [cost] request in its entirety." *See Dancel*, 792 F.3d at 404; *Trimper*, 58 F.3d at 77.

To the extent that the Court considers Relators' request despite the absence of supporting documentation, there are certain categories of expenses that should be either denied in their entirety or significantly reduced.

***Expert Witness Fees***. Relators seek to recover $728,852.04 in expert witness fees. Relators have not submitted *any* documentation showing that the experts' rates are reasonable or that the number of hours charged were reasonable. The Court should therefore deny these fees in full. *See Norinder v. Fuentes*, 657 F.3d 526, 536 (7th Cir. 2011) (affirming district court's decision to deny expert witness fees due to "[in]adequate documentation to support the claimed expenses");

---

[45] Exhibit 10 is a list of expenses that appear especially suspect on their face. To be clear, Fluor objects to expenses outside of those set forth in Exhibit 10 as set forth below.

33

*Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, No. 10-cv-01207, 2016 WL 5341247, at *5 (E.D. Cal. Sept. 23, 2016).

If the Court awards any expert fees, they should be substantially reduced. First, Relators seek reimbursement of $10,125.00 for two payments made in 2020 to "The Shay Consulting and Arcade Group," which does not appear to be related to any of the experts who were actually retained in this action. *Cf. Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, Nos. 15-cv-156, 13-cv-607, 2017 WL 4400754, at *9 (E.D.N.C. Sept. 29, 2017) (party "cannot recoup the full amount of their expenses where those expenses were not necessary to the outcome").

Second, Relators seek (i) $57,232.23 in fees for James Sherman, whose testimony was excluded by the Court and whose opinions related exclusively to labor staffing (Dkt. 601); (ii) $153,075.50 in fees for Dov Zakheim, who did not testify at trial and whose opinions were significantly limited by the Court (Dkt. 606); and (iii) $94,817.34 in fees for John Lyle, whose testimony also was significantly limited (Dkt. 604) and whose opinions relate solely to Relators' award fee theory, on which Fluor prevailed.[46] "[Relators] were only partially successful and cannot recoup the full amount of their expenses where those expenses were not necessary to the outcome." *Raleigh Wake*, 2017 WL 4400754, at *9 (citing *Daly*, 790 F.2d at 1083–85). For this reason, courts frequently decline to award costs for excluded experts, *see Lynn v. Maryland*, 295 F. Supp. 2d 594, 599 (D. Md. 2003) (no fees awarded for excluded expert testimony), or expert opinions that were offered in support of claims on which the fee-seeking party did not prevail, *see Buffington v. Baltimore County*, 913 F.2d 113, 128 n.12 (4th Cir. 1990) (directing district court to

---

[46] Additionally, far from proving Mr. Lyle's rate is reasonable, it is not even clear what it was. At trial, Mr. Lyle testified that his rate ranged from $200 to $250 per hour. Dkt. 730 at 5536:21–23. But in his expert report, Mr. Lyle stated it was $472.50. *See* Ex. 11, Lyle Report at 105.

34

consider whether expert's testimony related to successful claims when assessing the reasonableness of expert fees).

Third, Relators seek $240,564.81 in fees for Gary Gaukler and $173,037.16 in fees for Michael Rudolph. However, the Court struck both Mr. Gaukler and Mr. Rudolph's "rebuttal reports" (Dkt. 541) and significantly limited the opinions they could offer under *Daubert* (Dkt. 603, 607). Any fees associated with these stricken opinions or excluded opinions are unrecoverable. *See Lynn*, 295 F. Supp. 2d at 599. Relators do not even attempt to meet their burden of showing which fees were associated with these experts' permissible work.

***Costs Associated with Court Reporting or Transcripts***. Relators seek $249,113.76 in costs associated with Court Reporting & Transcripts. It appears that some of these costs are incorrectly catalogued by Relators in their fee petition. *See, e.g.*, Dkt. 793-7 at C382. Moreover, although certain costs associated with court reporters and transcript services may be taxed against an opposing party, many line-item charges are often not taxable. *E.g.*, *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 448–49 (4th Cir. 1999) (party cannot recover both for a deposition transcript and videography without showing that both were "necessary"; potential use for impeaching the witness at trial was insufficient); *Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd*., Nos. 1:17-cv-3037-TDS, 1:17-cv-3038-TDS, 2019 WL 13150582, at *3 (D.S.C. May 31, 2019) (disallowing costs for processing and delivery of transcripts, for condensed copies of transcripts, and expedited transcripts).[47] Likewise, any costs associated with depositions that related to unsuccessful claims

---

[47] *Kendrick v. Carter Bank & Tr., Inc.*, No. 19-cv-00047, 2025 WL 1569070, at *2 (W.D. Va. June 3, 2025) (videography and exhibit expenses are nonrecoverable); *Benjamin v. Sparks*, No. 4:14-CV-186-D, 2020 WL 1943474, at *2 (E.D.N.C. Apr. 22, 2020) (disallowing costs for exhibits, delivery, shipping, handling, litigation support, room rentals, and condensed transcript services). To show that videography services were necessary, courts consider whether "witnesses are beyond the court's subpoena power and there is no assurance that the witnesses will attend the trial." *See Hanwha Azdel, Inc. v. C&D Zodiac, Inc.*, No. 6:12–CV–00023, 2015 WL 1417058, at *5 (W.D.

(e.g., Scott Roesler, Tommy Marks, Julia Blandin-Weiner) should also be denied.  And finally, there are a number of charges that Relators claim are part of this category but do not appear to be related to this litigation at all.  *See* Ex. 10, Expenses Demonstrative at 1 (showing charges to "Neulion" (a streaming video provider); ScanStat Technologies (a provider of data services for medical offices); what appear to be court reporting services for different cases; and multiple e-discovery vendors).

*ESI, Data Hosting, Litigation Support, and Discovery Support Costs.*  The overwhelming majority of costs Relators seek ($4.1 million) relate to ESI, data hosting, and other litigation and discovery support.  There are serious problems here too.  As it relates to ESI costs, the limited information Relators provided raises significant concerns about double billing or overcharging.  For example, the unverified chart of expenses contains multiple duplicative charges for alleged data hosting costs.  *E.g.*, Ex. 10, Expenses Demonstrative at 2 (duplicative charges for $75,906.28 to Repario, both paid on February 28, 2022, among other duplicative charges).  Most egregiously, despite seeking $572,223.85 in total data hosting costs for all of 2025, Relators somehow seek nearly that same amount, $553,301.38, for the first four months of 2026 alone—including a charge for more than $300,000 (exceeding 6 months' of 2025 data charges) in April 2026, just after trial concluded.  *See* Dkt. 793-7 at C668–78; Ex. 10, Expenses Demonstrative at 2.

Likewise, Relators have engaged a significant number of vendors that do not appear to be e-discovery vendors at all—either because they identify themselves as something other than e-discovery vendors or because Fluor could not reasonably identify what vendor the charge was for (TLA Tech Syllo; Blue Star; Marathon Document Solutions; ArcherHall; Taner; and Special

---

Va. Mar. 27, 2015).  In light of the FCA's nation-wide subpoena power, Relators could not make this showing for a lion's share of the trial witnesses.  *See* 31 U.S.C. § 3731(a).

Counsel; Undisputed Legal, Inc.; Legal Outsourcing 2.0, Inc.).  Relators provide no explanation of why it would have been reasonable to engage so many e-discovery vendors for this specific case.  Some of these entities are not e-discovery vendors but providers of AI-driven tools, making it appear that Relators seek recovery for ordinary overhead expenses.

***Travel Costs (Airfare, Transportation, Meals, etc.).***  Relators seek $341,171.99 in various travel-related expenses.[48]  Fluor agrees that certain travel-related expenses may be recoverable, but it is Relators' burden to show that the specific amounts they seek are reasonable.  By providing nothing more than a barebones spreadsheet that does not explain what the costs are or why they were incurred, Relators have failed to meet their burden.  For example, Relators seek more than $50,000 for more than 100 different airline bookings *during trial* (calculated from January 21 to March 11), some of which are for thousands of dollars each.  Dkt. 793-7 at C191–352.  To the extent counsel decided to fly to their home cities each weekend of trial, that certainly is their prerogative, but those expenses are not "necessarily incurred."[49]

Likewise, Relators seek substantial reimbursements for what they claim is "food."  But this sum includes fees that are patently unreasonable and were not necessary, including: (i) more than $800 in charges on April 7 and 8, 2026 (nearly a month after trial) to cocktail bars in Chicago;[50] (ii) numerous purchases at liquor stores; and (iii) charges that do not appear to be tied to any travel

---

[48] For simplicity, Fluor uses the totals from Dkt. 793-7, but there are entries within these categories that appear to be sorted into incorrect categories.  *E.g.*, Dkt. 793-7 at C1009–15 (charges categorized as "lodging" at "Westin Restaurants").

[49] Indeed, this also calls into question whether counsel's block billed trial entries include unrecoverable travel time.  *See, e.g.*, Dkt. 793-1, Pt. 1 at 173 (Mr. Loevy block billing 105 hours each week of trial).

[50] This figure includes a charge of $641.68 at the Blind Barber, a "[b]arber [s]hop by day and cocktail lounge by night," located two blocks from Loevy & Loevy's Chicago office.  *See* Blind Barber Chicago, https://blindbarber.com/pages/Chicago.

for this case and were incurred in Chicago (where Loevy & Loevy is based). *See* Ex. 10, Expenses Demonstrative at 4. These are precisely the kind of "questionable litigation expenses" that should not be charged to Fluor. *See Dancel*, 792 F.3d at 404.

Relators also seek $165,844.45 in expenses related to lodging. Again, while some of these charges likely were necessarily incurred, charges for hotels in Columbia, South Carolina, and Deer Park, Texas, *during* trial, Dkt. 793-7 at C926, C986, raise concerns that not all of these expenses are appropriate. Without any information about who was staying in these hotels and why, Relators simply have not met their burden to show that such stays were reasonable. For example, to the extent any hotel charges (or other travel expenses) were incurred on the Relators' personal behalf (such as for Mr. Dillard to attend depositions, or Messrs. Mackey and Rude to attend trial), these costs are unrecoverable. *See Harrison*, 352 F.3d at 923–24.

***Office Supplies, Legal Research & Subscriptions.*** Relators seek $8,778.11 for "office supplies," and $8,458.08 in "Legal Research & Subscriptions." First, it appears that at least some of these charges cannot be fairly considered "office supplies,"[51] but even assuming that they are, office supplies are an overhead expense that cannot be charged to an opposing party. *See Hogan v. Cherokee County*, No. 18-cv-00096, 2022 WL 526008, at *12 (W.D.N.C. Feb. 22, 2022); *S. Appalachian Mountain Stewards v. Zinke*, No. 16-cv-00026, 2017 WL 5147620, at *2 (W.D. Va. Nov. 6, 2017). Likewise, Relators seek $3,861.11 in Westlaw and Lexis charges—in addition to other subscriptions to Toggl, Scribd, Canva, and Course Hero[52]—which are also considered

---

[51] It is not clear that these charges are for office supplies at all as this category includes $3,862.27 to Amazon; $2,496.46 to Walmart; charges to Target, Miniso, and Eyebuydirect (which only appears to sell prescription eyeglasses).

[52] This appears to be an expense for a full-year subscription to CourseHero Premium, charged on February 4, 2026. Dkt. 793-7 at C805. Not only is it unclear how this was even used for this case, more than 90% of the time it covers was after the jury returned its verdict.

overhead.  *See BAM Cap., LLC v. Houser Transp., Inc.*, No. 19-cv-00105, 2020 WL 97459, at \*4–5 (W.D.N.C. Jan. 8, 2020) (computer research costs are considered firm overhead and may not be separately awarded as a cost); *Cook v. Jones & Jordan Eng'g, Inc.*, No. 06-cv-00627, 2009 WL 3169152, at \*6 (S.D. W. Va. Sept. 29, 2009).

***Printing, Copying, and Miscellaneous Expenses.***  Relator seeks \$83,145.00 in printing and copying costs.[53]  "The burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge" and failure to do so supports denying all sought costs.  *Francisco v. Verizon S., Inc.*, 272 F.R.D. 436, 445 (E.D. Va. 2011) (citation omitted). Where a plaintiff "neither provides an estimate regarding the number of pages copied nor specifies the rate per page normally charged by the representing firm," a court cannot reasonably evaluate the claimed expense.  *See Triplett v. N.C. Dep't of Pub. Safety*, No. 15-cv-00075, 2017 WL 3840422, at \*14 (W.D.N.C. Sept. 1, 2017) (considering a case with similar facts under which the court limited printing expenses to only include \$0.05 cents per page for each of the trial binders that were printed for the court).  Further, as set forth in Exhibit 10, the number of questionable expenses Relators seek to recover call into question the entire fee petition, including \$12,571.95 in what appear to be credit card payments to "Elan Credit Cards" and \$1,228.52 in charges from 2015 at "Greenville Custom" (which has zero Google hits).  These costs should be denied.

***Further 50% Reduction for Lack of Success.***  To the extent the Court decides to award some expenses and costs, the Court must then reduce its determination of reasonable and necessarily incurred expenses further based on Relators' relative lack of success in this case.  *See*

---

[53] \$5,515.28 of these charges are to "Fortis Data LLC" which appears to be an eDiscovery vendor, not a printing or copying vendor; and \$2,975.00 in 2024 charges to "Extreme Media Productions, LLC (a video production service). Fortis Data, https://www.fortisdatallc.com/ (last visited June 3, 2026); Extreme Media Productions, https://extrememediasc.com/ (last visited June 3, 2026).

*Raleigh Wake*, 2017 WL 4400754, at \*8 (40% reduction of expenses for partial success); *S. Carolinians for Responsible Govt. v. Krawcheck*, No. 3:06-cv-1640-MBS, 2012 WL 2830274, at \*2 (D.S.C. July 9, 2012) (35% reduction). Because Relators prevailed on only one theory out of several, Fluor respectfully submits that a 50% reduction is appropriate. *See supra* at 30–32.

\*      \*      \*

It is neither Fluor's job to show that these expenses are unreasonable nor the Court's job to guess what charges are reasonable and necessarily incurred. Despite knowing their burden, Relators submitted an "an unverified 'Chart of Expenses,' with no receipts or bills attached." *See Trimper*, 58 F.3d at 77. The Court should deny this request in full, or in the alternative, eliminate all unreasonable expenses that were not reasonably incurred and reduce whatever is left by 50% in light of Relators' lack of success on a majority of their claims.

**CONCLUSION**

Relators' request for fees, costs, and expenses seeks to recover excessive fees and rates far exceeding those awarded to the most experienced attorneys in this district. They make no attempt to seek only fees that relate to the theory on which they prevailed, and ask this Court to ignore that they were awarded less than 2% of the damages that they sought. Courts must be wary of attorneys' temptation "to submit an outrageously excessive fee petition in the hope that the district court would at least award some, preferably high, percentage of the requested fees." *Landow*, 999 F.2d at 98. The Court should reject Relators' excessive requests and instead award $3,825,755 in reasonable attorneys' fees and no costs or expenses.[54] *See* Ex. 1, Fee Award Summary.

*[signature page follows]*

---

[54] This figure does not include any costs associated with contract attorneys. *See supra* at 7 n.5. If the Court considers contract attorneys in the lodestar analysis, the appropriate lodestar after all reductions is $1,056,776.

40

Respectfully submitted,

 /s/ Mark C. Moore
Mark C. Moore (Fed. ID No. 4956)
Michael A. Parente (Fed. ID No. 13358)
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 540-2146
Facsimile: (803) 727-1458
MMoore@maynardnexsen.com

Konstantine P. Diamaduros (Fed. ID No. 12368)
MAYNARD NEXSEN PC
104 South Main Street, Suite 900 (29601)
Post Office Drawer 10648
Greenville, SC 29603-0648
Telephone: (864) 370-2211
Facsimile: (864) 282-1177

Craig D. Margolis (admitted *pro hac vice*)
Tirzah S. Lollar (admitted *pro hac vice*)
Christian D. Sheehan (admitted *pro hac vice*)
Elizabeth A. Carney (admitted *pro hac vice*)
Katelyn M. Deibler (admitted *pro hac vice*)
Elliot S. Rosenwald (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, Northwest
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
craig.margolis@arnoldporter.com

Rachel K. Higgins (admitted *pro hac vice*)
Sahrula Kubie (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Counsel for Defendants Fluor Corporation and
Fluor Intercontinental, Inc.*

July 2, 2026

41